The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| STATE OF WASHINGTON, Plaintiff, v. HENRY ROSENAU Defendant. | No. CR06-157MJP<br>MOTION TO SUPPRESS<br>Noted on Motion Calendar: September 16, 2011 |
|---|---|

The defendant, through undersigned counsel, moves this Court to suppress all evidence and statements obtained as a result of an unlawful search and seizure. This motion is based on the Fourth and Fifth Amendments to the United States Constitution, the defense brief in support of this motion, and any evidence which may be adduced at a hearing on this motion.

**FACTS AND DECLARATION OF COUNSEL**

I swear under penalty of perjury that the following is true to the best of my knowledge based on information and belief:

1. I am the counsel of record for the above-named defendant.
2. The above matter arose out of a joint investigation by agents of the United States Bureau of Immigration and Customs Enforcement (ICE) and the Royal Canadian Mounted Police (RCMP).



PLATT & BUESCHER
Attorneys at Law
P.O. Box 727
Coupeville, WA 98239
Phone: (360) 678-6777
Fax: (360) 678-0323

3. Law enforcement personnel on both sides of the Canada/United States Border were actively engaged in a joint operation.

4. This joint investigation was a part of a larger joint venture known as "Operation Frozen Timber."

5. Jesse Miller, special agent with ICE, testified that the RCMP was a very important part of the ICE investigation and that without the RCMP, ICE would have faced hardship. Transcript of Grand Jury Proceedings, Testimony of Jesse Miller, 13.

6. Miller further testified that the RCMP does a "really good job in regards to gathering facts to help us with our cases down here." *Id.*

7. Special Agent Miller also confirmed in his testimony that the RCMP leaves law enforcement and prosecution to the United States. *Id.*

8. On September 21, 2005, ICE agents in the United States witnessed a helicopter flying north toward the Canadian Border.

9. Thereafter ICE contacted RCMP and/or the Integrated Border Enforcement Team.

10. The Integrated Border Enforcement Team is a joint investigation team composed of law enforcement personnel from both Canada and the United States.

11. ICE had the RCMP personnel travel to certain properties located in Yale, Canada.

12. These properties were owned by Glen Stewart, but Mr. Rosenau was currently leasing the premises, had occupational rights, and had an option to purchase the property.

13. RCMP entered the property after driving past a gate with a large sign that reads "private property."

14. After driving about a half mile past the gate, RCMP made contact with Mr. Rosenau.



PLATT & BUESCHER
Attorneys at Law
P.O. Box 727
Coupeville, WA 98239
Phone: (360) 678-6777
Fax: (360) 678-0323

15. RCMP agents detained Mr. Rosenau and required him to remain at a Suburban vehicle for approximately one hour.

16. RCMP, Constable Kachur, claims he read Mr. Roseanu his "rights."

17. RCMP never read Mr. Rosenau his *Miranda* rights.

18. RCMP then interrogated Mr. Rosenau and asked Mr. Rosenau questions including whether Mr. Rosenau knew the names of certain individuals, whether Mr. Rosenau had been a flying a helicopter earlier that day, and where such flying may have occurred.

19. Mr. Rosenau allegedly made several statements while being interrogated.

20. RCMP officials then conducted a warrantless search of a helicopter allegedly owned by Mr. Rosenau without his consent.

21. RCMP opened and prowled through a gym bag found in the helicopter without consent.

22. RCMP officials laid out items on the ground seized from the helicopter. RCMP discovered Satellite Phones, a GPS device, on which they then viewed programmed coordinates, a firearm and gathered other items and information.

23. RCMP also took keys from Mr. Rosenau's pocket and a Blackberry from his person.

24. RCMP also conducted a search of a shop building without a warrant or consent.

25. RCMP then told Rosenau he was free to leave, but also stated that Mr. Rosenau was going to die as an old man in an American jail.

DATED this 6th day of September, 2011.

Respectfully submitted,
PLATT & BUESCHER

*s/Craig Platt*________________
Craig Platt
Attorney for Defendant
WSBA #12396



PLATT & BUESCHER
Attorneys at Law
P.O. Box 727
Coupeville, WA 98239
Phone: (360) 678-6777
Fax: (360) 678-0323

**INTRODUCTION**

On September 21, 2005, United States and Canadian authorities were engaged in a joint venture. As a result Fourth Amendment protections were implicated and Fifth Amendment protections applied. The RCMP engaged in an unlawful search and seizure during this joint venture. Moreover, the RCMP failed to advise Mr. Rosenau of his *Miranda* rights before a custodial interrogation. As a result all fruits of this unlawful search and seizure and all statements made by Mr. Rosenau must be suppressed.

**LAW AND ARGUMENT**

Prior to the incorporation of the Fourth Amendment into the Fourteenth Amendment, it was important to determine whether Federal officials substantially participated in raids conducted by State officials. This was because a "joint venture" would subject State actors to the requirements of the Fourth Amendment. *Stonehill v. U.S.*, 405 F.2d 738, 743 (9th Cir. 1968). This inquiry remains pertinent in order to determine whether Fourth and Fifth Amendment protections apply with respect to foreign law enforcement. *See United States v. Peterson*, 812 F.2d 486 (9th Cir. 1987)(joint venture search implicated Fourth Amendment); *U.S. v. Emery*, 591 F.2d 1266 (9th Cir. 1978)(statements suppressed where Mexican authorities engaged in joint venture with United States failed to give Miranda warnings).

I. **JOINT VENTURE AND FOURTH AMENDMENT PROTECTION**

In general, neither the Fourth Amendment nor the judicially created exclusionary rule applies to acts of foreign officials. *United States v. LaChapelle,* 869 F.2d 488, 489 (9th Cir.1989), *quoting United States v. Maher,* 645 F.2d 780, 782 (9th Cir.1981). However, an exception to the inapplicability of the exclusionary rule applies when "United States agents' participation in the investigation is so substantial that the action is a joint venture between United



PLATT & BUESCHER
Attorneys at Law
P.O. Box 727
Coupeville, WA 98239
Phone: (360) 678-6777
Fax: (360) 678-0323

States and foreign officials." *U.S. v. Barona*, 56 F.3d 1087, 1093 (9th Cir. 1995). To invoke the "joint venture doctrine," it must be determined whether the analysis contained in *United States v. Verdugo–Urquidez* applies, the defendant must show that the United States and foreign officials were engaged in a joint venture, a violation of foreign law occurred made the search unreasonable, and the United States did not rely in good faith upon the foreign officials' representations that their law was being complied with. *See Barona*, 56 F.3d at 1093.

a. ***Verdugo-Urquidez***

In *Verdugo-Urquidez*, the Supreme Court held that the Fourth Amendment does not apply to search and seizures by United States agents of property that is owned by a nonresident alien and located in a foreign county. *United States v. Verdugo-Urquidez*, 494 U.S. 259, 261, 110 S.Ct. 1056, 1059 (1990). The Court reasoned that the term "the people" as used in Fourth Amendment refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with the United States to be considered part of community. *Verdugo-Urquidez*, 494 U.S. at 266, 110 S.Ct. at 1061. However, *Verdugo* does not apply in the instant case for several reasons.

First, the Supreme Court's opinion in *Verdugo* makes no reference to the joint venture doctrine. *United States v. Baboolal*, No. 05-CR-215, 2006 U.S. Dist. LEXIS 40645 at *4 (E.D. Wis. June 16, 2006). The facts in *Verdugo* concern a search initiated by and conducted primarily by an actual United States agency. *Verdugo-Urquidez*, 494 U.S. at 262-263, 110 S.Ct. at 1059. Cases where the joint venture doctrine is discussed as an issue concern the search and seizures of foreign authorities as opposed to those of actual United States agencies. *See Stonehill v. United States*, 405 F.2d 738 (9th Cir. 1968)(Philippine authorities); *United States v. Rose*, 570 F.2d 1358 (9th Cir. 1978)(Canadian Police); *United States v. Rosenthal*, 793 F.2d 1214 (11th Cir.



PLATT & BUESCHER
Attorneys at Law
P.O. Box 727
Coupeville, WA 98239
Phone: (360) 678-6777
Fax: (360) 678-0323

1984)(Columbian authorities); *United States v. Behety*, 32 F.3d 503 (11th Cir. 1994)(Guatemalan Officials); *United States v. Barona*, 56 F.3d 1087 (9th Cir. 1995)(Danish and Italian authorities). This case, unlike *Verdugo*, concerns a search conducted by foreign authorities.

Second, the *Verdugo* Court did not concern itself with the application of foreign law. The joint venture doctrine requires courts to look to foreign law when determining whether a search is reasonable. *See Barona*, 56 F.3d at 1094; *U.S. v. Peterson*, 812 F.2d 486, 490 (9th Cir. 1987).

Finally, the actual holding of the case is inapplicable. The Court in *Verdugo* held that the Fourth Amendment does not apply *to search and seizures by United States agents of property that is owned by a nonresident alien and located in a foreign county*. *Id*. at 261, 110 S.Ct. at 1056(emphasis added). This motion does not concern suppressing items or information resulting from a search or seizure conducted by United States, rather it concerns the RCMP.

b. **Joint Venture**

If American law enforcement officials participate in a foreign search, or if the foreign authorities actually conducting the search were acting as agents for their American counterparts, the exclusionary rule can be invoked. *Rose*, 570 F.2d at 1362(citing *United States v. Morrow*, 537 F.2d 120, 139 (5th Cir. 1976)). In *Peterson*, the Ninth Circuit held that the Fourth Amendment was implicated due to the existence of a joint venture. In arriving at this conclusion, the Ninth Circuit found relevant the fact that United States agents termed their actions a "joint investigation," treated the affair as one in which marijuana was destined for the United States, were involved in translating and intercepting transmissions, and advised foreign authorities of the relevance of information received by foreign authorities. *Peterson*, 812 F.2d at 490.



PLATT & BUESCHER
Attorneys at Law
P.O. Box 727
Coupeville, WA 98239
Phone: (360) 678-6777
Fax: (360) 678-0323

Here, the Government has admitted this case is the result of a joint investigation. Information provided in discovery shows that this joint investigation was a part of "Operation Frozen Timber." The investigation concerned RCMP gathering intelligence for ICE, ICE was directing RCMP where to focus their efforts, and the RCMP were leaving the prosecution to U.S. authorities. As a result of this joint investigation, the RCMP made contact with Rosenau on September 21, 2005 and engaged in an unlawful search. The activities of the Canadian and U.S. authorities went far beyond mere cooperation. Operation Frozen Timber and the joint investigation of September 21, 2005 constitute a joint venture.

c. **Violation of Canadian Law**

If a joint venture exists between United States and foreign officials, the law of the foreign country must be consulted at the outset as part of the determination whether or not the search was reasonable. *Peterson*, 812 F.2d at 490. Like the Fourth Amendment, Section Eight of the Canadian Charter of Rights and Freedoms provides that "[e]veryone has the right to be secure against unreasonable search or seizure."

Canadian search and seizure law roughly reflects that of the United States. An assessment of the constitutionality of a search and seizure, or of a statute authorizing a search or seizure, must focus on its "reasonable" or "unreasonable" impact on the subject of the search or the seizure. The guarantee protects a reasonable expectation of privacy. A reasonable expectation of privacy is to be determined on the basis of the totality of the circumstances. If an accused person establishes a reasonable expectation of privacy, the inquiry must then proceed to determine whether the search was conducted in a reasonable manner. *R. v. Edwards*, [1996] 1 S.C.R. 126; *Hunter v. Southam Inc.*, 1984 CanLII 33 (S.C.C.), [1984] 2 S.C.R. 145.



PLATT & BUESCHER
Attorneys at Law
P.O. Box 727
Coupeville, WA 98239
Phone: (360) 678-6777
Fax: (360) 678-0323

The party seeking to justify a warrantless search must be required to rebut a presumption of unreasonableness. *Hunter et al., v. Southam Inc.*, 1984 CanLII 33 (S.C.C.), [1984] 2 S.C.R. 145; *R. v. Golden,* 2001 S.C.C. 83 (CanLII), 2001 SCC 83 (CanLII), 2001 S.C.C. 83 (CanLII), [2001] 3 S.C.R. 679, 2001 SCC 83, *R. v. Mann*, 2004 S.C.C. 52 (CanLII), 2004 S.C.C. 52 (CanLII). In order to rebut the presumption of unreasonableness, three things must be established, namely (1) that the search was authorized by law, (2) that the law authorizing the search was reasonable, and (3) that the manner in which the search was carried out was reasonable. Only where these three criteria are met is the "presumption of unreasonableness" rebutted: in all other cases, a warrantless search infringes s. 8 of the Charter. *R. v. Collins*, 1987 CanLII 84 (S.C.C.), 1987 CanLII 84 (S.C.C.), 1987 CanLII 84 (S.C.C.), [1987] 1 S.C.R. 265.

Here, on September 21, 2005, the RCMP entered properties leased by Rosenau without consent. Thereafter a warrantless search was conducted. RCMP searched a helicopter owned by Mr. Roseau without consent. Thereafter, RCMP removed keys from Mr. Rosenau's pocket, took his Blackberry, and searched a shop located on the premises. The RCMP had no probable cause or legal justification to conduct these searches. The search and seizure was not authorized by Canadian Law and the manner in which the search was carried out was not reasonable. The search and seizure was in violation of the Section Eight of the Canadian Charter of Rights and Freedoms and the Fourth Amendment by virtue of the joint venture doctrine. The Government bears the burden of rebutting the presumption that the RCMP search and seizure was reasonable.

d. **No Good Faith Reliance**

If foreign law was not complied with, "the good faith exception to the exclusionary rule becomes part of the analysis." *Barona*, 56 F.3d at 1092-1093. The good faith exception to the exclusionary rule announced in *Leon* applies to the foreign search. *Peterson*, 812 F.2d at 492.



PLATT & BUESCHER
Attorneys at Law
P.O. Box 727
Coupeville, WA 98239
Phone: (360) 678-6777
Fax: (360) 678-0323

The Fourth Amendment exclusionary rule should not be applied so as to bar the use in the prosecution's case in chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be invalid. *U.S. v. Leon*, 468 U.S. 897, 923, 104 S.Ct. 3405, 3420 (1984). Although, *Leon* speaks only in terms of good faith reliance on a facially valid search warrant, its reasoning applies as well to reliance on foreign law enforcement officers' representations that there has been compliance with their own law. *Peterson*, 812 F.2d at 492(reliance on wiretap's legality by United States authorities participating in joint narcotics investigation was objectively reasonable where federal officers sought, and received, assurances from high ranking Philippine law enforcement authorities that all necessary authorization was being obtained, and thus evidence seized on basis of wiretap information was admissible under good-faith exception to exclusionary rule).

Here, there is no evidence that United States law enforcement relied in good faith on a warrant for the search of properties leased by Mr. Rosenau in Yale, Canada. Additionally, there is no evidence that United States law enforcement sought assurances from Canadian authorizes that the search conducted by the RCMP was lawful. Finally, there is no evidence that Canadian officials provided United States authorities with assurances that the search was lawful. In sum, United States authorities did not act in reasonable reliance on representations made by Canadian authorities that the search was lawful. As a result, the good faith exception does not apply to circumvent application of the exclusionary rule.

## II. JOINT VENTURE AND FIFTH AMENDMENT PROTECTION

The Fifth Amendment provides that "[n]o person shall…be compelled in any criminal case to be a witness against himself." In order to protect this privilege, police officers must inform a criminal suspect of his or her right to remain silent prior to any custodial interrogation,



PLATT & BUESCHER
Attorneys at Law
P.O. Box 727
Coupeville, WA 98239
Phone: (360) 678-6777
Fax: (360) 678-0323

the right to counsel, and the right to cease questioning if he or she requests the assistance of counsel. *Miranda v. Arizona*, 384 U.S. 436, 474, 16 L.Ed.2d 694, 86 S.Ct. 1602, 1627 (1966). The prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of defendant unless it demonstrates use of procedural safeguards effective to secure privilege against self-incrimination. *Miranda*, 384 U.S. 436, 445, 86 S.Ct. 1602, 1612.

United States law enforcement officials may not intentionally evade the requirements of *Miranda* by purposefully delegating interrogation duties to foreign law enforcement officers and then having the fruits of the interrogation admitted at trial in the United States. Two exceptions have developed to the general rule that voluntary statements obtained by foreign officials during a custodial interrogation without benefit of *Miranda* warnings are admissible. Namely, such statements will not be admissible if obtained by foreign officials (1) engaged in a joint venture with, or (2) acting as agents of, United States law enforcement officers. *United States v. Abu Ali*, 528 F.3d 210, 228 (4th Cir. 2008). When a joint venture exists, the failure of foreign authorities to provide *Miranda* warnings to one subject to custodial interrogation requires suppression of statements. *See U.S. v. Emery*, 591 F.2d 1266 (9th Cir. 1978)(joint venture existed between United States and Mexican authorities such that statements given by one suspect while under interrogation by Mexican authorities were subject to suppression for failure of such authorities to administer *Miranda* warnings); *see also U.S. v. Covington*, 783 F.2d 1052, 1056 (9th Cir. 1985)(holding Miranda and Edwards apply to foreign officers acting as agents of United States law enforcement).

Here, a joint venture between United States authorities and Canadian authorities clearly existed. Mr. Rosenau was detained by the RCMP for up to an hour. Mr. Rosenau was never free to leave. During the detention, the RCMP subjected Mr. Rosenau to an interrogation. Mr.



PLATT & BUESCHER
Attorneys at Law
P.O. Box 727
Coupeville, WA 98239
Phone: (360) 678-6777
Fax: (360) 678-0323

Rosenau answered questions without ever being informed of his Miranda rights. As a result, the statements made by Mr. Rosenau are not admissible pursuant to the Fifth Amendment and *Miranda*.

**CONCLUSION**

A joint venture existed between United States and Canadian authorities in the above matter. The existence of a joint venture triggered Fourth and Fifth Amendment protections. The RCMP engaged in a warrantless search and seizure that was in violation of Section Eight of the Canadian Charter of Rights and Freedoms. As a result, any fruits of this warrantless search and seizure must be suppressed as required by the Fourth Amendment. In addition, Mr. Rosenau was subject to a custodial interrogation by RCMP while engaged in a joint venture. Mr. Rosenau was never informed of his *Miranda* rights. As a result, all statements made by Mr. Rosenau during such custodial interrogation are inadmissible.

DATED this 6th day of September, 2011.

Respectfully submitted,
PLATT & BUESCHER

*s/Craig Platt*________________
Craig Platt
Attorney for Defendant
WSBA #12396
P.O. Box 727
Coupeville, Washington 98239-0727
Telephone: (360) 678-6777
Fax: (360) 678-0323
Email: craig@plattbuescher.com

CERTIFICATE OF SERVICE

I hereby certify that on 9/6/2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorney(s) of record for the defendant(s). I hereby certify that I have served the attorney(s) of record for the defendant(s) that are non CM/ECF participants via telephax.

*s/Craig Platt*________________
Craig Platt
Attorney for Defendant
WSBA #12396
P.O. Box 727
Coupeville, Washington 98239-0727
Telephone: (360) 678-6777
Fax: (360) 678-0323
Email: craig@plattbuescher.com