Chief Judge Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> HENRY ROSENAU, <br><br> Defendant. | NO. CR06-157MJP <br><br> GOVERNMENT'S CONSOLIDATED RESPONSE TO DEFENSE MOTIONS <br><br> Noted: September 23, 2011 <br> No oral argument requested |

The United States of America, by and through Jenny A. Durkan, United States Attorney for the Western District of Washington, and Susan M. Roe, Assistant United States Attorney for said District, files this response to the defendant's pretrial motions.

FACTS RELEVANT TO THE MOTIONS

As set forth in greater detail in Attachments A-C, (*Affidavit of Peter Ostrovsky, ICE ROIs of September 21, 2005, RCMP "will say" Report*) on September 21, 2005, Canadian law enforcement surveilling north of the U.S.-Canada border watched a Canadian helicopter fly towards and from the border. The aircraft dangled hockey bags on the two southbound trips, but had none on the northbound trips. Canadian law enforcement surmised the hockey bags, likely full of marijuana, were being left in the United States. The Canadians contacted ICE officials and informed ICE of what they had seen. ICE independently investigated the activity south of the border, located the off-loaders, followed them, arrested them and seized the 1,100 pounds of marijuana. None of the ICE activities were done at the request of or

GOVERNMENT'S CONSOLIDATED RESPONSE
TO DEFENSE MOTIONS/ ROSENAU- 1
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

were controlled by Canadian authorities.  RCMP independently investigated the activity north of the border, followed the helicopter, identified the pilot, Henry Rosenau, spoke with him and found evidence near and in the helicopter.  None of the RCMP activities were done at the request or were controlled by ICE officials.  *See Attachments.*

Henry Rosenau was extradited from Canada according to an Order of Surrender to face the three counts of the Superseding Indictment on April 28, 2011.  The Order of Surrender, dated December 15, 2009, was issued by the Minister of Justice and put into action once the defendant lost his appeal of the initial order of extradition at the Canadian Supreme Court.  *See Attachment D, Canadian Order of Surrender*.

The defendant received significant factual information regarding the government's case in chief in the Extradition Request.  Since his appearance in this District, the government has acted in good faith and provided the defense with discovery.  The government attorney and case agent have met with defense counsel on several occasions to review the evidence, discovery and to discuss the length and breadth of the government's case.  *See Attachments F, B and C,  Excerpt of Extradition Request, ICE ROIs of September 21, 2005, RCMP "will say" Report*.

LAW AND ARGUMENT  RELEVANT TO THE MOTIONS

> ***1. The Doctrine of Specialty Applies to Offenses, Not Evidence***

Defense either misstates or misunderstands the rule of specialty or overlooked the Canadian Order of Surrender.  The doctrine of specialty limits the crimes for which an extraditee may be prosecuted.  It does not define or limit how the prosecution is presented or prescribe what evidence the prosecution may present.  The Order of Surrender specifically states the three offenses, as set out in the Superseding Indictment, on which the defendant may be prosecuted.  *See Attachments D and E, Order of Surrender and Letter Accompanying Surrender Order.*

The "doctrine of specialty has never been construed to permit foreign intrusion into the evidentiary or procedural rules of the requisitioning state, as distinguished from limiting

GOVERNMENT'S CONSOLIDATED RESPONSE
TO DEFENSE MOTIONS/ ROSENAU- 2
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

the jurisdiction of domestic courts to try or punish the fugitive for any crimes committed before the extradition, except the crimes for which he was extradited." *United States v. Thirion*, 813 F.2d 146, 153 (8th Cir.1987) (quotations omitted).

The doctrine of specialty is satisfied if the extraditing country honors the limitations placed on the prosecution by the surrendering state. *See United States v. Cuevas*, 847 F.2d 1417, 1426 ((9th Cir. 1988). The government is not required, under the auspices of specialty, to try a defendant on the same evidence that was presented to the surrendering state, so long as it satisfies the requirement that trial is for the same offenses arising out of the same allegations of fact. *United States v. Andonian*, 29 F.3d 1432, 1438 (9th Cir.) 1994. Accord, *United States v. Baramdyka*, 95 F. 3d 840, 845 (9th Cir) 1996, where the Court explained, " Under the doctrines of dual criminality and specialty, following extradition to the United States from a foreign country, a criminal defendant may only be prosecuted for conduct considered criminal under the laws of both nations [dual criminality] and for offenses specified in the extradition agreement [specialty]. *United States v. Khan,* 993 F.2d 1368, 1372-73 (9th Cir.1993); *see also United States v. Andonian,* 29 F.3d 1432, 1434-35 (9th Cir.1994), *cert. denied,* 513 U.S. 1128, (1995).

There is no attempt to prosecute the defendant for anything other than the three counts on which he was extradited. The motion to invoke the rule of specialty should be denied.

***2. ICE and RCMP Did Not Conduct a "Joint Investigation" Such That the U.S. Constitution Applies to Canadian Law Enforcement. Further, the Canadian Evidence Is Admissible in U.S. Courts.***

It is long established that the Fourth Amendment exclusionary rule does not apply to foreign searches by foreign officials in the enforcement of foreign law, even in situations in which the evidence is seized from American citizens. *United States v. Peterson*, 812 F. 2d 486 (9th Cir.) 1987, *United States v. Rose*, 570 F. 2d 1358 (9th Cir.) 1978.  That the exclusionary rule is inapplicable to foreign police practices is understandable since the rule is a punitive measure designed by U.S. Courts to deter unconstitutional acts by U.S. law

GOVERNMENT'S CONSOLIDATED RESPONSE
TO DEFENSE MOTIONS/ ROSENAU- 3
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

enforcement. Applying it would have no effect on foreign actors. *Brulay v. United States*, 383 F. 2d 345, 348 (9th Cir. 1967).

The only two instances in which the Fourth Amendment may apply to foreign police searches are (1) if the conduct shocks the conscience, or (2) if U.S. law enforcement officials participated in the foreign search or if the foreign authorities actually conducting the search were acting as agents for U.S. law enforcement. *Peterson, supra*, 489-90, citing *Rose*, *supra*, at 1362, and *Birdsell v. United States*, 346 F. 2d 775, 782 n. 10 (5th Cir.), *United States v. Morrow*, 537 F.2d 120, 139 (5th Cir. 1976). Even then, however, there is a high threshold for applying the rule.

The participation of the U.S. officials must be so substantial and so intertwined with the foreign personnel as "to convert" the actions "into joint ventures between the United States and the foreign officials." *United States v. Stonehill,* 405 F. 2d 738, 743 (1968). A reviewing court is to consider the actions of the U. S. personnel "with the totality of the acts done in the search" to determine whether the action was a joint venture. *Stonehill*, at 744. Courts look at facts, not at casual phrases or inexact comments of agents when making the determination. If the U.S. agents' involvement in the search is not substantial or if it is subordinate to that of the foreign agents, there is no joint venture.

Courts have *not* found routine cooperation and significant information sharing between U.S. and foreign law enforcement sufficient to constitute a joint venture. For instance, the fact that U.S. officials provided information leading to a search, *Rose,* at 1362; accompanied foreign officials during a search, *Stonehill* at 741-42, *United States v. Benedict*, 647 F. 2d 928, 930-931 (9th Cir.) 1981; assisted in interpreting during the questioning of suspects, *United States v. Trenary*, 473 F. 2d 680, 681-82 (9th Cir. 1973); or copied seized records, *Stonehill*, at 742, has not led to the conclusion that a "joint venture" existed. This commonsense approach is mandated by the necessary, appropriate sharing of intelligence among countries and, especially, between countries sharing a border. Coordination and communication between law enforcement responsible for securing a common border does not

GOVERNMENT'S CONSOLIDATED RESPONSE
TO DEFENSE MOTIONS/ ROSENAU- 4
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

render their actions a "joint venture. Rather, it is a prudent and welcome step in ongoing cross-border investigations.

Lastly, if the Court finds that U. S. participation in a search is "so substantial that the actions is a joint venture between the United State and foreign official," then the Court must determine whether the action was reasonable. A search lawful under the foreign country's law renders the evidence admissible in U.S. courts, *Peterson*, at 490-91. If a search did not comply with the foreign laws, then "the good faith analysis exception to the exclusionary rule becomes part of the analysis." *Id.* At 491-92, citing *United States v. Leon*, 468 U.S. 897 (1984). If the U.S. agents reasonably relied on the foreign officers' representation regarding the legality of the search, the evidence is admissible in American courts. *Peterson,* at 491-2.

The search of the helicopter and property was not a joint venture but was conducted as part of a Canadian investigation. *See Attachments A-C, Affidavit of Peter Ostrovsky, ICE ROIs of September 21, 2005, RCMP "will say" Report.* Neither the routine information sharing done between agencies nor the independent actions of law enforcement converted this into a joint investigation. *See Attachment G, Webpage.* As such, the discovery of the evidence and the statements made by the defendant are not subject to review by U.S. courts.

**3. No Bill of Particulars is Appropriate or Necessary in this Case.**

Federal Rule of Criminal Procedure 7(f) allows a court to direct the government to file a bill of particulars and further notes that a bill of particulars may be amended by the government "subject to such conditions as justice requires" in situations in which the defendant is unclear as to the case against him. See, Rule 7(f). As frequently noted in case law, the intent of a bill is threefold:

> [T]o inform the defendant of the nature of the charge against him
> with sufficient precision to enable him to prepare for trial, to
> avoid or minimize the danger of surprise at the time of trial, and
> to enable him to plead his acquittal or conviction in bar of
> another prosecution for the same offense when the indictment
> itself is too vague, and indefinite for such purposes.

GOVERNMENT'S CONSOLIDATED RESPONSE
TO DEFENSE MOTIONS/ ROSENAU- 5
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

*United States v. Ayers,* 924 F.2d 1468, 1483 (9th Cir. 1990), *multiple cites omitted.* It is not designed to be a defense tool used to limit or curtail evidence presented in the government's case.

Ayers' motion for a bill of particulars was denied and the denial was affirmed on appeal. Charged with conspiracy to evade taxes and with counts of tax evasion for three specific years, the defendant claimed the conspiracy language was vague and failed to give him fair notice of the charges against him. Ayers noted the indictment charged him with conspiracy "to impede, impair, obstruct and defeat the Department of the Treasury in the *collection* of revenue, but not in the ascertainment, evaluation, and assessment of income" and because it was not clear *whose* taxes he impeded. *supra*, at 1484.

Affirming the denial, the Ninth Circuit looked beyond the language of the indictment to assess whether (1) the defendant had adequately been informed of the case so he could prepare for trial, (2) whether it was likely he would be "surprised" at trial, and (3) whether he later could claim double jeopardy based on the prosecution.

Crucial to the trial court's denial was the fact that "the government provided ... a significant amount of discovery, " both allowing him to prepare his defense and alleviating surprising evidence or testimony at trial. *Ayers,* at 1484. Additionally, the conspiracy language in the indictment was "definite enough" to bar future proceedings for conspiracy to defraud the government during the same period of time.

In Mr. Rosenau's case, the government has provided substantial discovery in the defendant's specific case, in the discrete conduct charged in Count 3, and in cases related to the defendant's case. The government publicly filed a list of related cases and has supplied defense with discovery in those cases. The government submitted an extradition packet which included a list of specific events in which the defendant participated as well as the anticipated testimony of several witnesses. *See Attachment F, Excerpts of Extradition Packet.* The government has continued to work to locate additional witnesses in the United States and has timely notified Mr. Rosenau and turned over the additional witness statements as received. Further, the government has met several times with defense counsel, generally

GOVERNMENT'S CONSOLIDATED RESPONSE
TO DEFENSE MOTIONS/ ROSENAU- 6
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

outlining its case in chief, and has reviewed the physical evidence in person with defense counsel.

The government strongly objects to the bill of particulars in this case as completely unnecessary. In fact, the defendant has been provided with so many specifics -- from the extradition pleadings to the discovery meetings to the notification of which witnesses are now unavailable to government because of the passage of time -- that the motion appears to be an attempt either to simply create burdensome work for the government as a time-wasting device or to attempt to set up a specious claim to limit the government's evidence in its case in chief. No bill of particulars should be ordered.

**4. No Order Compelling Discovery or Extending a Motion Deadline is Necessary at this Time.**

Discovery has been provided and any additional discovery continues to be provided as it is received. The government does not have, and does not have a legal basis to demand, "all RCMP reports" in Canadian investigations. The government has requested reports relevant to this prosecution and has turned over all that it has received.

The government has turned over a new disc with photographs. Absent a complaint from the defendant, it will assume this is fully viewable.

The government has requested and is expecting logs prepared by SA Anne Minden in conjunction with this investigation. SA Minden reports Officer Graves prepared reports, which have been turned over, while she took photographs. Those are the photographs referred to above.

There were no "Joint Operating Agreements" relating to the ICE investigation other than the MOU referenced in the Affidavit of Peter Ostrovsky and the notes on the RCMP website.

The government will file its witness list for trial in a timely manner.

//

//

GOVERNMENT'S CONSOLIDATED RESPONSE
TO DEFENSE MOTIONS/ ROSENAU- 7
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

*Conclusion*

The motions should be denied in their entirety.  No evidentiary hearing is necessary.

DATED this 20th day of September, 2011.

           Respectfully submitted,

           JENNY A. DURKAN
           United States Attorney

           *s/Susan M. Roe*
           SUSAN M. ROE
           Assistant United States Attorney
           United States Attorney's Office
           700 Stewart Street, Suite 5220
           Seattle, WA 98101-1271
           Telephone:   (206) 553-1077
           Fax:         (206) 553-0755
           E-mail:      susan.roe@usdoj.gov

GOVERNMENT'S CONSOLIDATED RESPONSE
TO DEFENSE MOTIONS/ ROSENAU- 8
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the attorney(s) of record for the defendant(s). I hereby certify that I have served the attorney(s) of record for the defendant(s) that are non CM/ECF participants via telefax.

*s/ Lissette Duran-Leutz*
Lissette Duran-Leutz
Legal Assistant
United States Attorney's Office
Western District of Washington
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Telephone: (206) 553-7234
Fax: (206) 553-2502
E-mail: Lissette.I.Duran-Leutz@usdoj.gov