Magistrate Judge Brian Tsuchida

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| UNITED STATES OF AMERICA, | ) | NO. CR06-157MJP |
|---|---|---|
| Plaintiff, | ) | GOVERNMENT'S PLEADING RE: REVOCATION OF PRE-TRIAL RELEASE |
| v. | ) | |
| HENRY CARL ROSENAU, | ) | Hearing on October 28, 2011 at 1:30 p.m. |
| Defendant. | ) | |

The United States of America, by and through Jenny A. Durkan, United States Attorney for the Western District of Washington, and Susan M. Roe and Marc A. Perez, Assistant United States Attorneys for said District, files this pleading to assist the Court at the scheduled revocation hearing. The government urges that the defendant's pretrial release be revoked and that he be detained pending trial.  Trial before Chief Judge Marsha J. Pechman is scheduled to begin on November 7, 2011.

***STATUS***

The law is clear -- it presumes this defendant should be detained.  18 U.S.C. § 3142(f)(1)(C).  He is charged with Conspiracy to Import more than 1,000 kilograms of Marijuana, Conspiracy to Distribute More than 1,000 kilograms of Marijuana, and Possession with the Intent to Distribute More than 100 kilograms of Marijuana, and each

offense carries a maximum term of more than ten years.  Counts 1 and 2 carry minimum mandatory terms of ten years and maximum of life in prison; Count 3 carries a five year minimum mandatory term and a maximum term of forty years in prison.  The defendant carries the burden of overcoming the presumption of detention.

In May 2011, the defendant was released to his home in Quesnal[1], Canada, subject to certain conditions.  He had a prior violation, when it was discovered he was living at a medical marijuana grow.  This Court warned him but continued his release on conditions. He is now before the Court on a new, more serious violation of his terms of his Release, that is, that he have no direct or indirect contact with witnesses.  Such contact is prohibited, of course, because it quickly leads to obstructing justice, as it has in this case.

Clearly, the defendant has violated the Court's conditions of release.  As such, the Court is directed to apply a more stringent standard than it applied during the initial detention hearing.  *See* 18 U.S.C. § 3148.  Having given the defendant a significant benefit by releasing him initially, at this hearing the Court "shall" order him detained if it finds either (A) probable cause that the defendant has committed a crime, or (B) clear and convincing evidence that the defendant violated a term of release, and either that (A) his presence or the safety of the community cannot be assured, or (B) he is unlikely to abide by his conditions of release.  The government need only show (1)(B) and (2)(B) by a preponderance of the evidence.  See, *U.S. v. Gotti*, 794 F. 2d 773 (2nd Cir. 1986), *U.S. v. Aron*, 904 F. 2d 221 (5th Cir. 1990).  Threats to witnesses justifies revocation of release. *U.S. v. Ruggerio*, 796 F. 2d 35 (2nd Cir. 1986).

A finding of probable cause that the defendant committed a state, local or federal crime gives rise to a rebuttal presumption that he be detained.   Because the defendant has violated his conditions of release, he should be detained pending trial.

### *BACKGROUND FACTS RELEVANT TO THE HEARING*

---

[1] Quesnal is located in the Cariboo region of the B.C. Interior.  It is 400+ miles north of Vancouver, B.C. and has a population of 10, 500, according to B.C. Tourism information.

GOVERNMENT'S PLEADING RE: REVOCATION
OF PRETRIAL RELEASE/ ROSENAU- 2
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

In 2004 and 2005, a group of helicopter pilots in Canada facilitated the cross-border marijuana traffic into the United States.  The pilots, hired by larger organizations or marijuana brokers who owned or sold the marijuana, flew the helicopters across the international border in a manner designed to hide their activities.  The pilots often flew at low altitudes, did not file flight plans, camouflaged the tail identification markers, landed at make-shift and undesignated sites, and failed to report their country entries or exits to the authorities.  They did so because they were violating the law by ferrying contraband, including marijuana, people, firearms and currency internationally.  The main goal was to smuggle marijuana for distribution in the United States; people, firearms and currency were moved as needed to facilitate the marijuana smuggling activities.  The defendant, Henry Rosenau, was one of these pilots.

In the summer of 2004, Mr. Rosenau personally delivered loads of marijuana to civilian witness Kip Whelpley.  Mr. Rosenau also visited the U.S. with Whelpley to scout loading spots, held Whelpley's earnings (in cash) during the 2004 summer, and flew another Canadian helicopter pilot into the U.S. to facilitate more helicopter smuggling.  Mr. Whelpley worked a second summer, in 2005, with Mr. Rosenau off-loading marijuana shipments here in the U.S. until he was stopped by surveilling ICE agents on June 9, 2005, and his load of  485 pounds of marijuana was seized.  ICE did not reveal the ongoing investigation but released Whelpley who returned to Canada.  He continued to participate in the smuggling of drugs from the Canadian side of the border.  Specifically, on August 4, 2005, both Whelpley and Defendant Rosenau were involved in smuggling 500 pounds of marijuana, which was seized.  Mr. Whelpley's involvement in the conspiracy ended after this second seizure.  The Government intends to call Mr. Whelpley as a witness at trial.

On September 21, 2005, Rosenau flew a 1,100 pound load of marijuana into the United States.  This third load, delivered to the Miraback brothers, was intercepted and seized.  RCMP had surveilled Rosenau before and during this flight.  Other helicopters -- identified via tail designations, brand and color -- which had been seen smuggling were co-located with Rosenau's helicopter and/or parked at his home.  A few of the helicopters,

GOVERNMENT'S PLEADING RE: REVOCATION
OF PRETRIAL RELEASE/ ROSENAU- 3
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1   including Mr. Rosenau's, had tape over the tail identifiers to disguise the letters.  On

2   September 21, 2005,  RCMP contacted Rosenau immediately after he landed helicopter C-

3   FRKM (but, as photographed by the RCMP, with a piece of tape placed so that the R appear

4   to be a B; that is, C-RBKM).  Defendant Rosenau identified himself, acknowledged a loaded

5   handgun in the helicopter, denied flying across the border, but had a GPS with the

6   coordinates of the U.S. off-load site.  This contact occurred on land owned by Canadian

7   civilian Glen Stewart.  The Government intends to call Mr. Stewart and the RCMP members

8   who surveilled the defendant, who surveilled and photographed the helicopters, and who

9   contacted him as he landed.

10   *FACTS RELATING TO THE VIOLATIONS OF CONTACTING WITNESSES*

11          *(1) Witness Kip Whelpley*

12          Beginning on January 17, 2011, the defendant through his "agent" filed what appears

13   to be a vexatious civil claim, *Rosenau v. Whelpley*, in Quesnal.  Rosenau's agent first

14   emailed Whelpley, asking for an address in order to serve civil papers, but quickly introduced

15   a  threat,  " [A]s far as I can tell, no one intends to do you any harm and that is more so now

16   that I have let it be known that you have said you do not intend to return to the US.  I stress

17   the words "as far as I can tell ...."  *See* Gov't Ex. 1 (*Emails of January 17, 2011to February*

18   *7, 2011*).  Defendant Rosenau is included as one of the actors from the start and was the

19   beneficiary of the frivolous suit.

20          On February 7, 2011, Whelpley received a lengthy email in which the agent

21   acknowledged he was assisting Rosenau in this matter and that he had drafted the Notice of

22   Civil Claim.  See Gov't Ex 1 (*Emails of January 17, 2011to February 7, 2011*).  The author

23   explained that people use agents to avoid the extraordinary expense of lawyers.  He offered

24   to hear, without prejudice, Whelpley's facts regarding the marijuana loads he received from

25   Rosenau flying helicopter C-FRKM and asked whether Whelpley was coerced and threatened

26   by U.S. authorities to make up such stories.  He made an allusion about cooperators and

27   referenced a phrase used by members of the Irish Republican Army.

28

GOVERNMENT'S PLEADING RE: REVOCATION
OF PRETRIAL RELEASE/ ROSENAU- 4
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1    When Whelpley turned to help from legal counsel, Robert Moffat, the tone of the next

2    email was menacing.  *See* Gov't Exs 2 and 3 (*Letters of Robert Moffat, Email of March 9,*

3    *2011*).  The author said that Mr. Rosenau had obtained a default Order against Whelpley, that

4    Whelpley was prohibited from entering the United States, that Mr. Rosenau could apply *ex*

5    *parte* for monetary damages from Whelpley, but that Mr. Rosenau and his attorney would

6    delay that application until "Mr Rosenau and his counsel are satisfied that you no longer will

7    be part of the false prosecution of Mr. Rosenau," and that he intended to obtain an Order

8    compelling Whelpley to answer questions as to "the degree and method of coercion" used by

9    the United States.  He further reminded Whelpley that continuing to stand by his testimony

10   could cause Whelpley "unfortunate financial hardship," that Rosenau's extradition was of

11   great political importance, that he viewed Whelpley's use of legal counsel as a

12   "demonstration of a lack of remorse," and, closed with personal statements about Whelpley,

13   Whelpley's family and that he hoped the "terrible picture" will soon be gone.  He attached a

14   copy of the Order with the email.  There apparently was no further communication after

15   March 9, 2001, until Whelpley received an email last week.

16   On October 12, 2011, Rosenau and his counsel met with the Assistant United States

17   Attorneys assigned to the instant case.  The purpose of the meeting, encouraged by the

18   defense counsel, was an informal "show and tell"of the government's case in an effort to

19   resolve it short of trial.  During the meeting, the defense specifically inquired whether the

20   government anticipated Canadian civilian witnesses Whelpley and Glen Stewart would

21   appear for trial.  The government responded in the affirmative.

22   On October 18, 2011, Chief Judge Pechman ruled on several pending pretrial motions,

23   generally denying the defense motions.

24   On October 20, 2011, Whelpley received a new email asking to confirm his home

25   address "for service for documents in the civil matter between yourself and Mr. Henry

26   Rosenau in the Supreme Court of British Columbia," and saying that he had information

27   "originating in the United States to that effect that you may be considering . . . travelling to

28   the United States . . . " and that he understood the information may have been "provided

GOVERNMENT'S PLEADING RE: REVOCATION
OF PRETRIAL RELEASE/ ROSENAU- 5
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

falsely and maliciously by the US government." *See* Gov't Ex.4 *(Email of October 20, 2011)*. The author wrote that "I, as Mr. Rosenau's agent in this matter" need to confirm receipt of the Order so that "Mr. Rosenau may have legal recourse in the event you violate the terms of the Order." He attached another copy of the Order and indicated that it would be personally serviced unless the email was acknowledged. The above conduct constitutes contact with the witness, attempted intimidation and threats to the witness, and an attempt to obstruct justice.[2]

### (2) Witness Glen Stewart

Mr. Stewart was the owner of the land where, on September 21, 2005, Rosenau landed his helicopter with a disguised tail identifier. RCMP Members approached Rosenau as he left the helicopter, blades still rotating. They talked to Rosenau as well as to Mr. Stewart who was present and identified himself as the property owner. Mr. Stewart gave RCMP permission to look in a shed/shop on the site. In the shop, RCMP found another of Rosenau's helicopters, a trailer, aviation fuel and Mr. Rosenau's car.

Between  Mr. Rosenau's initial appearance in this District and this week, law enforcement had been in contact with Mr. Stewart regarding testifying at trial. He indicated his willingness to do so and to come to the United States. Accordingly, the Government did not move to depose him. Through the RCMP, Mr. Stewart was scheduled to meet with the

---

[2]  Also of concern is the apparent lack of candor with the U.S. Court during the pendency of this case. On August 11, 2001, the government moved for an Order allowing a Deposition of Whelpley based on his status as a Canadian, that he was excludable from the U.S., and that he had expressed a reluctance to physically return to the U.S.  He was willing to be deposed. The Government was unaware of either the *Rosenau v. Whelpley* matter or the default Order.

On August 18, 2011, defense counsel filed an opposition to the motion for a deposition, saying "No exceptional circumstances exist to justify the deposition of Whelpley pursuant to Federal Rule of Criminal Procedure 15. Countervailing factors exist that render a deposition unjust." The defendant argued that the Court had "a constitutional justification to deny the Government's motion for authorization of witness deposition" and attacked the Government's claim that Whelpley had no legal standing in, or interest in returning to the United States. It is difficult to fathom how the vexatious civil suit and "Order" prohibiting Whelpley from entering the United States could not constitute an exceptional circumstance under Rule 15.

GOVERNMENT'S PLEADING RE: REVOCATION
OF PRETRIAL RELEASE/ ROSENAU- 6
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1    prosecutors on the morning of  Wednesday, October 26, 2011.  Late Tuesday afternoon, Mr.

2    Stewart called the RCMP and said his lawyer advised him not to appear.  When asked for the

3    name of his attorney, he could not recall the name; he said he would not testify.  A copy of

4    the relevant summary emailed from the RCMP member who had been dealing with Mr.

5    Stewart is attached.  *See* Gov't Ex 5 ( *Summary of RCMP Contacts with Stewart*).

6    Obviously, someone advised Mr. Stewart not to testify, which suggests that the defendant, or

7    someone acting on the defendant's behalf, had direct or indirect contact with a trial witness.

8    Defendant Rosenau's direct, or indirect, contact with Glen Stewart violates this Court

9    conditions of release.  Moreover, the defendant's contact amounts to obstruction of justice

10   and witness intimidation.

11      *(3) RCMP Witnesses and Evidence*

12        Several RCMP Members are necessary witnesses and the evidence they seized in

13   Canada from Rosenau are both highly probative and necessary in the instant criminal

14   prosecution.  On October 25, 2011, a Notice of Application entitled *Henry Carl Rosenau v.*

15   *Regina*, was filed in Vancouver, B.C.  *See* Gov't Ex. 6 (*Notice of Application*).  The two page

16   Notice, ***filed six years after the event***, alleges that Rosenau will apply for a return of the

17   seized evidence, a prohibition on RCMP disclosing Rosenau's statements made to them, a

18   prohibition on the RCMP members leaving Canada for the purposes of testifying in the

19   United States, and a prohibition on sending the physical evidence out of Canada.  The Notice

20   says it will be supported by Affidavits but those have not been filed.  This Application is

21   noted for  presentation at 10:00 a.m. on November 2, 2011, which is the date and

22   approximate time of the defendant's PreTrial Conference in Seattle, Washington.

23        Les Rose, Legal Counsel for the RCMP, has been consulted regarding the effect of the

24   Application on the anticipated use of the evidence and testimony of the witnesses at trial.

25   Without opining on the legal validity of the Notice of Application, Mr. Rose wrote that he is

26   advising the RCMP not to testify in the United States or to produce the evidence until the

27   Application is resolved.  He expects that it will not be resolved by the trial date of

28

GOVERNMENT'S PLEADING RE: REVOCATION
OF PRETRIAL RELEASE/ ROSENAU- 7
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1    November 7, 2011.  Therefore, absent a resolution, the RCMP witnesses and evidence are

2    unavailable for the instant prosecution. *See*.Gov't Ex 7 (*Email Regarding RCMP*

3    *Availability*).

4         The defendant violated his Pretrial Release by having contact with the witnesses in

5    this case.  Laundering inappropriate contact through counsel or through an "agent" does not

6    absolve the defendant or vitiate the violation of the Court's order.  Moreover, the conduct

7    borders on obstruction of justice as well as embraces threats and intimidation to the

8    witnesses.  The defendant has shown that he does not abide by the terms of the Court's prior

9    ruling and that there is no set of conditions that this Court can impose on him, living in

10   Quesnal, British Columbia, which can be enforced or adequately monitored.

11        The defendant should be detained.

12        DATED this 28th day of October, 2011.

13                                         Respectfully submitted,

14                                         JENNY A. DURKAN
15                                         United States Attorney

16                                         *s/Susan M. Roe*
17                                         SUSAN M. ROE
                                           Assistant United States Attorney
18                                         United States Attorney's Office
                                           700 Stewart Street, Suite 5220
19                                         Seattle, WA 98101-1271
                                           Telephone:   (206) 553-1077
20                                         Fax:          (206) 553-0755
21                                         E-mail:       susan.roe@usdoj.gov

22                                          *s/Marc A. Perez*
                                           Marc A. Perez
23                                         United States Attorney's Office
                                           1201 Pacific Avenue
24                                         Suite 700
25                                         Tacoma, Washington 98402
                                           Telephone: (253) 428-3822
26                                         Fax: (253) 428-3826
27                                         Email: Marc.Perez@usdoj.gov

28

GOVERNMENT'S PLEADING RE: REVOCATION
OF PRETRIAL RELEASE/ ROSENAU- 8
CR06-157MJP

CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the attorney(s) of record for the defendant(s).

s/Tove Rogers
Tove Rogers
Legal Assistant
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101
Phone: (206) 553-4214
FAX:   (206) 553-0755
E-mail:  Tove.Rogers@usdoj.gov

GOVERNMENT'S PLEADING RE: REVOCATION
OF PRETRIAL RELEASE/ ROSENAU- 9
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970