Chief Judge Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | NO. CR06-157MJP |
| | ) | |
| Plaintiff, | ) | EMERGENCY MOTION |
| | ) | TO CONTINUE TRIAL |
| v. | ) | PURSUANT TO CrR 12(c)(9) |
| | ) | |
| HENRY CARL ROSENAU, | ) | **ORAL ARGUMENT** |
| | ) | **REQUESTED** |
| Defendant. | ) | |
| | | NOTED FOR WEDNESDAY, |
| | | NOVEMBER 2, 2011 at 9:30 a.m. |

The United States of America, by and through Jenny A. Durkan, United States

Attorney for the Western District of Washington, and Susan M. Roe and Marc A. Perez,

Assistant United States Attorneys for said District, files this Motion to Continue the Trial in

the above-entitled matter.  Trial is scheduled to begin on November 7, 2011.

*INTRODUCTION*

Within the past two weeks, based on acts of the defendant and solely designed to

obstruct his prosecution, several of the government's necessary witnesses have become

unavailable and unable to attend the November trial.  Their unavailability may be cured

through use of the Mutual Legal Assistance Treaty (MLAT).  The government moves for a

continuance of sufficient length to obtain evidence held in Canada and, possibly, to depose

Government's Emergency Motion to Continue Trail
United States v. Rosenau - 1
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

Canadian witnesses pursuant to an MLAT.  A necessary witness, Kip Whelpley, is legally prohibited from coming into the United States at this time, and the government, by separate motion, renews its Motion for Deposition which the Court previously denied.  Additionally, legal counsel for the RCMP advises that its members may neither give testimony nor turnover evidence it holds absent the formal MLAT process.

Until October 25, 2011, the RCMP did not require the formal MLAT request and, in fact, had produced photographs and reports of the evidence, and had made its members available for trial preparation meetings with the U.S. prosecutors.  RCMP members had made their travel arrangements to testify in the *Unites States v. Rosenau*.

### OUTLINE OF CASE FACTS RELEVANT TO THE MOTION

In 2004 and 2005, a group of helicopter pilots in Canada facilitated the cross-border smuggle of thousands of pounds of  marijuana into the United States.  The pilots, hired by larger organizations or marijuana brokers who owned or sold the marijuana, flew the helicopters across the international border in a manner designed to hide their activities.  The pilots often flew at low altitudes, did not file flight plans, camouflaged the tail identification markers of their aircraft, landed at make-shift and undesignated sites, and failed to report their country entries or exits to the authorities. They did so because they were violating the law by ferrying contraband, including marijuana, people, firearms and currency, internationally.  The conspirators' main goal was to smuggle marijuana for distribution in the United States; people, firearms and currency were moved as needed to facilitate the marijuana smuggling activities.  The defendant, Henry Rosenau, was one of the pilots.

In the summer of 2004, Rosenau personally delivered loads of marijuana to Canadian witness Kip Whelpley.  Rosenau also visited the U.S. with Whelpley to scout and identify landing zones, held Whelpley's earnings (in cash) during the 2004 summer, and smuggled another Canadian helicopter pilot into the U.S. to facilitate ongoing helicopter smuggling.  Winter weather soon ended that year's helicopter smuggling but Rosenau, Whelpley and others resumed the scheme in 2005.

Government's Emergency Motion to Continue Trail
United States v. Rosenau - 2
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

**June 9, 2005 Load.**  Mr. Whelpley worked a second summer with Rosenau, off-loading marijuana shipments in the U.S. until he was stopped by surveilling ICE agents on June 9, 2005.  His load of  485 pounds of marijuana was seized.  ICE did not reveal the ongoing investigation but rather released Whelpley who returned to Canada.  He continued to participate in the smuggling from the Canadian side of the border.

In mid-July 2005, agents installed motion-activated cameras at an off-loading site in Washington State. On two occasions between July 21 and July 28, helicopters, which appear to be one of Rosenau's based on later investigation, are shown delivering hockey bags of marijuana.  Off-loaders and their vehicles are also on the videotape and the men have been identified as David Mendoza and Jonathan Senecal.

**August 4, 2005 Load.**  On August 4, 2005, both Whelpley and defendant Rosenau were involved in smuggling 500 pounds of marijuana into the United States.  Whelpley worked loading the helicopter on the Canadian side of the border and Rosenau flew it into the Methow Valley area.  The three men receiving the load, David Mendoza, Dan Zylstra and Jonathan Senecal, had a bit of back luck that morning, having driven a truck into a ravine when attempted to meet the helicopter.  Once they received the load, the men hid the nine hockey bags of marijuana in the woods and went to Winthrop to hire a tow truck.  Surveilling ICE agents located the hidden load and seized it with no notice to the smugglers.  Canadian Jonathan Senecal had worked with Whelpley on the June 9th load and both Senecal and Whelpley's involvement in the conspiracy ended involuntarily after this second seizure.  Senecal is in Canada; Zylstra is a fugitive; and Mendoza who does not wish to cooperate is serving a 14 year prison term.

**August 12, 2005 Load**.  On August 12, 2005, another marijuana load was flown across the border by helicopter, tail identifier C-FNMM.  A young Canadian, Alexander Swanson,  met the load and was surveilled as he drove towards Seattle.  As was typical,  a second vehicle was seen parked nearby the off-load site, but down the mountain near the closest intersecting road.  The second  vehicle is often referred to as the "blocker car" because its driver could block citizens or law enforcement from approaching the landing site.

Government's Emergency Motion to Continue Trail
United States v. Rosenau - 3
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  From their air and ground surveillance that summer, law enforcement saw that blocker cars
2  and off-loader cars usually drove in tandem through the Methow Valley, onto the freeways,
3  and into Western Washington. On August 12th, the blocker car was a red Toyota Tundra with
4  a Colorado license plate.  Swanson, who had the marijuana, was stopped and 500 pounds of
5  marijuana was seized.  The driver of the blocker car was not arrested.  Swanson was
6  prosecuted in this District, served his prison term and is back in Canada.

7  **September 21, 2005 Load.**  On September 21, 2005, Rosenau flew a 1,100 pound
8  load of marijuana into the U.S.  This load, received by Zachary and Braydon Miraback, was
9  intercepted and seized after they arrived at a Puyallup residence.  The off-load vehicle held
10  the marijuana; the blocker car was the same red Toyota Tundra, Colorado license plate, seen
11  during the August 12th load.  The Miraback brothers were arrested, prosecuted, have served
12  their prison terms and are back in Canada.  They are no longer cooperative.

13  RCMP surveilled Rosenau and his helicopters - identified via tail designations, brand
14  and color - during this time period.  On September 21st, RMCP members met Rosenau
15  immediately after he completed the smuggle and landed helicopter C-FRKM in Canada.
16  Rosenau identified himself, acknowledged a loaded handgun in the helicopter, denied flying
17  across the border and said he had been flying nearby.  RCMP seized several items from the
18  helicopter including a GPS device which had the coordinates of the U.S. off-load sites.
19  RCMP also saw that the helicopter had a taped variation to tail identifier to disguise the
20  letters.  Helicopter C-F**R**KM had tape applied in such a manner that the R appeared to be a B,
21  that is, C-F**B**KM.  RCMP photographed this.

22  On the property where the defendant landed, inside a workshop, RCMP found a
23  second helicopter, a trailer with fuel containers, a large cache of aviation fuel, and Rosenau's
24  car.  The helicopter in the shed, a red and white Bell Jet Ranger, tail identifier C-FA_Q, was
25  seen and photographed by the RCMP.  The aircraft matched a red and white Bell Jet Ranger
26  helicopter, tail identifier C-FA**L**Q, previously seen and videotaped flying marijuana loads.
27  The land and shop are on land owned by Canadian Glen Stewart.

28

Government's Emergency Motion to Continue Trail
United States v. Rosenau - 4
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1    In September, including on September 21, RCMP surveilled Rosenau at his home.

2    They saw and photographed helicopters parked at his home, including those with tail

3    identifiers C-FRKM (Sept 21st load) and C-FNMM (August 12th load).

4    The government intends to call Mr. Whelpley as a witness at trial and he is a

5    significant witness.  The government intended to call Mr. Stewart and the several RCMP

6    members who surveilled the defendant in August and September 2005, those who surveilled,

7    videotaped and photographed the helicopters, and those who contacted him as he was by the

8    helicopter.

9    ***FACTS RELATING TO THE NEW UNAVAILABILITY OF THE WITNESSES***

10   ***(1) Substance of Necessary RCMP Witnesses and their Evidence***

11   Several RCMP members are necessary witnesses to the government's prosecution.

12   The evidence they seized on September 21, 2005, from Rosenau is both highly probative and

13   necessary for this prosecution.  It is through their testimony that Rosenau is seen in or with

14   three helicopters used in smuggling in 2004 and 2005.  It is through RCMP testimony that

15   Rosenau is identified as the pilot of the helicopter at the end of the September 21st marijuana

16   smuggling trip. RCMP members are the necessary witnesses who can testify about their

17   surveillance of Rosenau and his home.  They can introduce and explain the photographs they

18   took in Canada of his helicopters loaded with hockey bags, as well as those of the helicopters

19   at Rosenau's residence.  RCMP members are the only witnesses who saw and photographed

20   the disguised tail identifiers on Rosenau's helicopters and they are the only witnesses who

21   talked to Rosenau on September 21st.  They are also the necessary witnesses to offer

22   evidence found in the helicopter on September 21.  The evidence includes his GPS device,

23   satellite phone, night vision goggles, loaded firearm and extra rounds.  The GPS device held

24   his nicknames and coordinates for the U.S. sites where the marijuana off-loading occurred

25   and corresponds with the GPS coordinates found in notes and GPS devices of the off-loaders.

26   No one in the U.S. can testify the foundational requirements for this evidence.

27   ***(2) Recent Activity Rendering RCMP Unavailable***

28

Government's Emergency Motion to Continue Trail
United States v. Rosenau - 5
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

Lat week, on October 25, 2011, a Notice of Application entitled *Henry Carl Rosenau v. Regina*, was filed in Vancouver, B.C. by Rosenau's Canadian attorney Gary Botting.  *See Exh 1, Notice of Application Rosenau v. Regina, No. 25902*.  The two page Notice, filed six years after the event, states that Rosenau will apply for a return of the seized evidence, a prohibition on RCMP disclosing Rosenau's statements made to them, a prohibition on the RCMP members leaving Canada for the purposes of testifying in the United States, and a prohibition on sending the physical evidence out of Canada.  The Notice says it will be supported by Affidavits although those have not been filed.  This matter is noted for first presentation at 10:00 a.m. on November 2, 2011.

Les Rose, Legal Counsel for the RCMP, has been consulted regarding the effect of the Notice of Application on the anticipated use of the evidence and testimony of the witnesses.  Without opining on the legal validity of the Notice of Application, Mr. Rose informed the government that he has advised the RCMP not to testify in the United States or to produce the evidence in the United States until the Application is resolved.  He expects that it will not be resolved by the trial date of November 7, 2011, thus RCMP witnesses and evidence will not be available to the U.S. Court for the currently scheduled trial.

Moreover and more importantly, in light of the Notice of Application, Mr. Rose advises the United States must now use the formal legal process of an MLAT in order to obtain RCMP evidence and witnesses.  A formal MLAT, if approved by the Canadian government, is the avenue which may allow RCMP testimony and production of evidence without regard to the pending Application or other legal maneuvers which may be filed.  *See, Exh 2, Correspondence of Les Rose, Counsel, RCMP.*

### (3) Substance of Necessary Fact Witness Kip Whelpley

Many of the essential facts of Mr. Whelpley's testimony have been set out above.  Of significance is that Mr. Whelpley is one of the few co-conspirators who has continued to honor his cooperation agreement with the U.S. government.  He can testify as to a more accurate number of smuggling trips made by the conspirators in 2004 and 2005, the location of the on-load sites in Canada, the timing and methods used in Canada to prepare the

Government's Emergency Motion to Continue Trail
United States v. Rosenau - 6
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  helicopters and their loads for smuggling trips, the financial arrangements per trip, the source

2  of cash and of false documents, the use of and nicknames use on the Blackberry devises

3  among the coconspirators, the relationship of the off-loaders and the coconspirators members

4  in Canada, and the events surrounding his exit from the conspiracy in June 2005.

5          Nearly all members of the off-loader crews were young Canadian men, lured by easy

6  money, who were sent to the U.S. to work the smuggles.  Some are fugitives, such as Dan

7  Zylstra and Brian Fews (*Fews was referenced in Dkt #43, Notice of Intent to use 404(b)*

8  *Evidence );* Others, such as Alexander Swanson, Zachary and Braydon Miraback, were

9  arrested and prosecuted in the United States.  The smuggling loads were never less than 400

10 hundred pounds of marijuana.  In light of the off-loaders relative youth and role in the

11 conspiracy, they were given opportunities to cooperate and receive prison sentences less than

12 the minimum mandatory terms.  Some of them worked with and identified pilot Rosenau,

13 calling him the "old man" of the group. The Mirabacks were expected to be government

14 witnesses in the case against Henry Rosenau, as set forth in the first Record of the Case for

15 Extradition.  As is his legal right, Rosenau contested his extradition for several years.

16 During that time, cooperating witnesses served their prison terms and returned to Canada.

17 They are no longer cooperating, with the exception of Kip Whelpley.  He is the only

18 coconspirator who continues to honor his plea agreement and he and his attorney, Bruce

19 Erickson, continues to express his readiness to testify.

20          ***(4) Recently Discovered Activity Rendering Whelpley Unavailable***

21          Unknown to Bruce Erickson or to U.S. authorities, beginning last January 17, 2011,

22 the defendant through his "agent" Paddy Roberts filed what appears to be a vexatious civil

23 claim, *Rosenau v. Whelpley*, in Quesnal, B.C., Canada.   Gary Botting, a Canadian attorney

24 who handled Rosenau's unsuccessful appeal to the Canadian Supreme Court of the

25

26

27

28

Government's Emergency Motion to Continue Trail
United States v. Rosenau - 7
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

Extradition Order, testified at the October 28th revocation hearing that Roberts works as a "paralegal" for him.  Roberts is a pilot previously indicted for drug trafficking. [1]

As Rosenau's agent, Roberts, using the Gaelic version of his name Pardriag Mac Roibeaird, first emailed Whelpley, asking for an address in order to serve civil papers.  He quickly introduced a threat into the correspondence ,  " ...as far as I can tell, no one intends to do you any harm and that is more so now that I have let it be known that you have said you do not intend to return to the US.  I stress the words 'as far as I can tell..'[.]"   On February 7, 2011, Whelpley received a lengthy email in which Paddy Roberts acknowledged that he was assisting Rosenau in the civil claim and that he had drafted the Notice of Civil Claim.  Roberts explained that people use agents to avoid the extraordinary expense of lawyers and he offered to hear, "without prejudice," Whelpley's facts regarding the marijuana loads he received from Rosenau flying helicopter C-FRKM.  Roberts asked Whelpley if the U.S. authorities had coerced and threatened him to make up such stories.  Paddy Roberts concluded with an allusion to an Irish Republican Army saying about cooperators. *See Exh 3, Email Exchange between Roberts and Whelpley*.

Whelpley turned to legal counsel, Robert Moffat, who sent letters on his behalf.  Botting sent a wordy reply to Moffat and Roberts's next email was menacing. *See Exh 4, Letters of Moffat; Letter of Botting; Email of March* 9.  Roberts said that Rosenau had obtained a default Judgment against Whelpley, that Whelpley was prohibited from entering the United States, that Mr. Rosenau could apply *ex parte* for monetary damages from Whelpley, but that Mr. Rosenau and his attorney would delay that application until "Mr Rosenau and his counsel are satisfied that you [Whelpley] no longer will be part of the false prosecution of Mr. Rosenau."  Not content with oppressing witness testimony, Roberts

---

[1]  Paddy Roberts is well-known in Canada, both as an  advocate for legalization of marijuana and as an opponent of extradition.  See, http://www.cbc.ca/news/canada/british-columbia/story/2010/05/14/bc-marijuana-extradition-marc-emery.html; http://www.hempology.ca/2006/06/19/roberts-case-denied-by-judge; http://www.cannabisculture.com/v2/search/node/paddy+roberts; http://www.cannabisculture.com/articles/2778.html

Government's Emergency Motion to Continue Trail
United States v. Rosenau - 8
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1 continued, saying that he intended to obtain an Order compelling Whelpley to answer

2 questions as to "the degree and method of coercion" used by the United States.  Roberts

3 reminded Whelpley that continuing to stand by his testimony could cause Whelpley

4 "unfortunate financial hardship," that Rosenau's extradition was of great political

5 importance, that Roberts viewed Whelpley's use of legal counsel as a "demonstration of a

6 lack of remorse," and, closed with personal statements about Whelpley, Whelpley's family

7 and expressed a hope that the "terrible picture" [apparently referring to Whelpley's

8 willingness to testify] would soon be gone.  Roberts attached a copy of the Order with the

9 email.  There apparently was no further communication after March 9, 2001, until Whelpley

10 received an email on October 20, 2011.

11 **(5) Recent Activity Designed to Render Whelpley Unavailable**

12 Recent pretrial activity evidently spurred new action by Rosenau and his agent.  On

13 October 12, 2011, Rosenau and his counsel met with the Assistant United States Attorneys

14 assigned to the instant case.  The purpose of the meeting was an informal "show and tell" of

15 the Government's case in an effort to resolve it short of trial; this occurred on the day of the

16 scheduled settlement conference.   During the meeting, the defense specifically inquired

17 whether the Government anticipated Canadian civilian witnesses Whelpley and Glen Stewart

18 would appear for trial. The Government responded in the affirmative.

19 On October 18, 2011, this Court issued pretrial rulings, denying several defense

20 motions including the motion to suppress based on a claim of a "joint investigation."  This

21 particular ruling may have triggered more contact with Whelpley and the Notice of

22 Application in *Rosenau v. Regina*. [2]

23

24 _____

25 [2] If the Court had held that the U.S. and Canada conducted a "joint investigation," Canada
would either (1) comply with and be bound by U.S. laws regarding the investigation and

26 discovery in this case, or (2) withdraw its testimony and evidence from use in the United States.
It is highly unlikely any foreign country willingly would bind itself to U.S. laws and procedures

27 as that implies a lack of sovereignty.  The more likely outcome - if the court had held the
investigation was "joint" - was that Canada would not allow crucial evidence and witnesses

28 come to the United States for trial.

1    On October 20, 2011, Whelpley received a new email from Paddy Roberts asking

2 Whelpley to confirm his home address "for service for documents in the civil matter between

3 yourself and Mr. Henry Rosenau in the Supreme Court of British Columbia."  Roberts wrote

4 that he had information "originating in the United States to that effect that you may be

5 considering . . .travelling to the United States. . . "and that he understood the information

6 may have been "provided falsely and maliciously by the US government."  *[This may refer to*

7 *the October 12 meeting with defendant, defense counsel and federal prosecutors].*  Roberts

8 wrote that "I, as Mr. Rosenau's agent  in this matter" need to confirm receipt of the Order so

9 that "Mr. Rosenau may have legal recourse in the event you violate the terms of the Order."

10 Roberts attached another copy of the Order and indicated that it would be personally served

11 unless the email was acknowledged.  *See Exh 5, Email of October 20, 2011.*

12    Although this default Order appears vexatious and to be against public policy, it

13 apparently stands.  In response to defense questioning at the October 28, 2011 revocation

14 hearing, Canadian attorney Gary Botting testified that it was a valid and enforceable court

15 order.

16    Neither can the U.S. government ask or encourage Mr. Whelpley to violate a court

17 order nor can the U.S. government hold him harmless for any "damages" which may be

18 assessed if he does so. Therefore, he is unavailable to testify at the Seattle trial on November

19 7, 2011, however his testimony can be obtained through a Rule 15 Deposition taken in

20 Canada.

21    *(6) Witness Glen Stewart*

22    Mr. Stewart was the owner of the land where, on September 21, 2005, Rosenau landed

23 his helicopter with a disguised tail identifier.  RCMP Members approached Rosenau as he

24 left the helicopter, blades still rotating.  They talked to Rosenau as well as to Mr. Stewart

25 who was present and identified himself as the property owner.  Mr. Stewart gave RCMP

26 permission to look in a shed/shop on the site.  In the shop, RCMP found another of

27 Rosenau's helicopters, a trailer, aviation fuel and Mr. Rosenau's car.

28

Between  Mr. Rosenau's initial appearance in this District and this week, law enforcement had been in contact with Mr. Stewart regarding testifying at trial.   Just recently, he indicated his willingness to do so and to come to the United States.  Accord, the government did not move to depose him.  Through the RCMP, Mr. Stewart was scheduled to meet with the AUSAS on the morning of  Wednesday, October 26th.  Late Tuesday afternoon, Mr. Stewart called the RCMP, said he lawyer advised him not to, when pressed said he couldn't remember the name of his lawyer, and concluded with his statement that he wouldn't testify.  A copy of the relevant email from the RCMP member who had been dealing with Mr. Stewart is attached.  It appears that someone else's lawyer has advised Mr. Stewart not to testify.  It may be that Mr. Stewart remains unavailable to testify, however it is in the interests of justice to allow the government to determine whether he is being coerced or intimidated.  *See Exh 6, RCMP Summary.*

### LAW RELEVANT TO THE MOTION

The Speedy Trial Act, 18 U.S.C. § 3161, provides that a trial shall commence within seventy days from the filing date of an indictment or from the date the defendant has appeared before the Court, whichever date last occurs.  *See* 18 U.S.C. §§ 3161(c)(1).   The Speedy Trial Act also provides that certain periods of delay are excludable time for purposes of the Speedy Trial Act.  *See* 18 U.S.C. § 3161(h).

Section 3161(h) outlines periods of excludable time, including:

> (3)(A) Any period of delay  resulting from the absence of unavailability of The defendant or an essential witness.
>
> .        .        .
>
> (7)(A) Any period of delay resulting from a continuance granted by any judge on his own motion . . .  or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.  No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of

Government's Emergency Motion to Continue Trail
United States v. Rosenau - 11
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

Subsection (7)(B), lists non-exclusive factors which the Court may consider when determining whether the grant the continuance.  Some of those non-exclusive factors are:

> (i)  Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.
>     .       .       .
> (iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii),  .   .   . would deny . . . the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

Another period of time appropriately excluded is:

> (8) Any period of delay, not to exceed one year, ordered by a district court upon an application of a party and a finding by a preponderance of the evidence that an official request, as defined by section 3292 of this title, has been made for evidence of any such offense and that it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country.

See, 18 U.S.C. § 3161(h)(9).

Section 3292 of Title 18 provides in pertinent part that an "'official request' means a letter rogatory, a request under a treaty or convention, or any other request for evidence made by a court of the United States or an authority of the United States having criminal law enforcement responsibility, to a court or authority of a foreign country." *See* 18 U.S.C. § 3292.

Until October 26, 2011, the United States government through (1) the Office of International Affairs, Department of Justice (OIA); (2) the United States Attorneys Office, Western District of Washington; (3)  ICE Special Agents, Department of Homeland Security, Bellingham, Washington; and (4) the Attache, Homeland Security Investigations, United States Consulate, Vancouver, British Columbia, Canada, had requested and been granted official visits, witness interviews, and evidence production and had served trial subpoenas by

Government's Emergency Motion to Continue Trail
United States v. Rosenau - 12
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

working through (1) the Justice Ministry, Ottawa, Canada; (2) the Royal Canadian Mounted Police and Border Integrity Unit, British Columbia, and (3) Transport Canada, all Canadian governmental authorities. These semi-formal and official requests were undertaken in good faith and appeared to be sufficient until defendant Rosenau filed the Notice of Application civil matter in Vancouver, B.C. Court on October 25, 2011. With the legal filing and on advice of counsel, RCMP ceased its cooperation with the U.S. requests until and unless it receives the more formal application for assistance, pursuant to an MLAT.

The government had identified and located foreign evidence and witnesses ready to testify, however, it now appears that the necessary foreign witnesses and evidence will not be available for some months. The government is preparing a MLAT request simultaneously with the preparation of this Motion. However, all MLAT requests must be handled through the central governments in Washington, D.C. and Ottawa, Canada, and this office can not control the length of time it may take to process this MLAT. It does seem reasonable that the time necessary may be shorter than other MLATS since the witnesses are identified and prepared and the evidence is known.

As this Court knows, there is clear legal precedent for a trial continuance of up to one year when the prosecuting authority is obtaining foreign evidence. Courts grant requests to continue when the government has filed an MLAT request with a foreign country. See, e.g., *United States v. Schlei*, 122 F.3d 944, 984-86 (11th Cir. 1997) (where government sought to depose witnesses in Japan, speedy trial clock was tolled pursuant to 18 U.S.C § 3161(h)(9)); *United States v. Wardrick,* 141 F.3d 1161, 1998 WL 169223, at *7-8 (4th Cir. Apr. 13, 1998) (unpublished) (affirming five-month continuance of trial date pursuant to 18 U.S.C. § 3161(h)(9) where government had sought to obtain evidence from Pakistan); *United States v. Maksimenko,* No. Crim. 05-80187, 2005 WL 1038784, at *1 (E.D. Mich. April 26, 2005) (granting a five-month continuance of the trial date pursuant to 18 U.S.C. § 3161(h)(9) due to government's MLAT request to the Ukraine); *United States v. Serna*, 630 F. Supp. 779, 783-84 (S.D.N.Y. 1986) (government was entitled to exclusion of time up to one year pursuant to 18 U.S.C. § 3161(h)(9) to obtain wiretap evidence from Spain)*; cf. United States v. Messner*,

Government's Emergency Motion to Continue Trail
United States v. Rosenau - 13
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

197 F.3d 330 (9th Cir. 1999) (delay was unreasonable under the circumstances where trial was continued five times, resulting in a delay of 21 months, of which a year was due to a continuance granted pursuant to 18 U.S.C. § 3161(h)(7); in ruling, Court focused on delay attributable to § 3161(h)(7) and did not consider other portion of delay attributable, in part, from a request made pursuant to 18 U.S.C. § 3161(h)(9)).

## *CONCLUSION*

Unusual and unforeseen events, all set in motion by the defendant, have taken place in Canada within the two past weeks. Solely as a result of the defendant's deliberate actions in Canada to thwart his prosecution, the government's case against the defendant cannot go forward at this time. The government, therefore, asks for a continuance of the trial so that the necessary witnesses and evidence may be secured for the trial and that the time between the current trial date and the new one be excludable.

This motion is brought both pursuant to 18 USC § 3292 and to 18 USC § 3161 but the government wishes to emphasize that at bedrock the basis for this motion is to serve the ends of justice, as approved in 18 USC § 3161. Denying the motion would allow defendant Rosenau to circumvent our criminal justice system by using abusive legal process, by bullying and intimidating witnesses, and by running a statutory time clock designed to be a protective shield, not a sword, for defendants. No justice would be served.

Based on the above, the government respectfully request that the Court find that the interests of the public and the ends of justice are served by continuing the trial date for up to one year to allow for the production of the foreign evidence and testimony. These strong and central interests of our justice system outweigh the interests of this defendants to a speedy trial. Therefore, the government further requests that the Court find, for the purpose of computing the time limitations imposed by law, that the period of delay until a new trial date is excludable pursuant to 18 U.S.C. Sections 3161(h)(3A), (7)(A), (B)(i) and (B)(iv), (8) and 18 USC § 3292.

//

//

Government's Emergency Motion to Continue Trail
United States v. Rosenau - 14
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1      The government does not yet have an estimate of when the foreign evidence will be

2  available.  Perhaps the Court can set a status hearing out three months at which time a new

3  trial date can be assigned.

4      DATED this 31st day of October, 2011.

5                      Respectfully submitted,

6                      JENNY A. DURKAN

7                      United States Attorney

8

9                      *s/Susan M. Roe*

10                    SUSAN M. ROE

                      Assistant United States Attorney

11                   United States Attorney's Office

                      700 Stewart Street, Suite 5220

12                   Seattle, WA 98101-1271

                      Telephone:  (206) 553-1077

13                   Fax:       (206) 553-0755

14                   E-mail:     susan.roe@usdoj.gov

15                   *s/Marc A. Perez*

16                   Marc A. Perez

                      United States Attorney's Office

17                   1201 Pacific Avenue

                      Suite 700

18                   Tacoma, Washington 98402

                      Telephone: (253) 428-3822

19                   Fax: (253) 428-3826

20                   Email: Marc.Perez@usdoj.gov

21

22

23

24

25

26

27

28

Government's Emergency Motion to Continue Trail
United States v. Rosenau - 15
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

CERTIFICATE OF SERVICE

I hereby certify that on 10/31/11 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorney(s) of record for the defendant(s).

s/Tove Rogers
TOVE ROGERS
Legal Assistant
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: (206) 553-4214
FAX:   (206) 553-0755
E-mail: Tove.Rogers@usdoj.gov

Government's Emergency Motion to Continue Trail
United States v. Rosenau - 16
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970