Chief Judge Marsha J. Pechman

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10
11

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | NO. CR06-157MJP |
| | ) | |
| Plaintiff, | ) | GOVERNMENT'S RESPONSE |
| | ) | TO DEFENDANT'S MOTION FOR |
| v. | ) | REVOCATION OF DETENTION |
| | ) | ORDER |
| HENRY CARL ROSENAU, | ) | |
| | ) | Hearing: Wednesday, November 9, |
| Defendant. | ) | 2011, at 9:00 A.M. |

The United States of America, by and through Jenny A. Durkan, United States
Attorney for the Western District of Washington, and Susan M. Roe and Marc A. Perez,
Assistant United States Attorneys for said District, files this response to the defendant's
motion for revocation of detention order.

## I.  INTRODUCTION

On September 17, 2011, a grand jury returned a Superseding Indictment charging
Defendant Henry C. Rosenau with one count of conspiracy to import 1000 kilograms or more
of marijuana, in violation of 21 U.S.C. §§ 960(a)(1), 960(b)(1)(G) and 963, one count of
conspiracy to distribute 1000 kilograms or more of marijuana, in violation of 21 U.S.C. §§
841(a)(1), 841(b)(1)(A) and 846, and one count of possession with intent to distribute 100
kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 18
U.S.C. § 2.  Each of these offenses are punishable by a maximum term in excess of 10 years

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
FOR REVOCATION OF DETENTION ORDER- 1
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1   of imprisonment, and therefore raises a presumption of detention pursuant to 18 U.S.C. §

2   3142(e).[1]

3          After several years of legal wrangling, Defendant Rosenau was extradited from

4   Canada to the United States and arrested on April 28, 2011.  Despite the presumption of

5   detention, he was released to his home in Quesnel, Canada, subject to certain conditions.[2]  In

6   July, he violated those conditions by possessing marijuana; however, he was released to

7   Canada after his conditions of release were modified to include drug and alcohol testing.

8   Last month, the defendant appeared before the court on a new, more serious violation of his

9   conditions of release.  He violated his appearance bond by having indirect contact with at

10  least one government witness in this case.  Such contact is prohibited, of course, because it

11  quickly leads to obstruction of justice, as it has in this case.

12         The Magistrate Judge concluded that the defendant's indirect contact with a witness

13  violated his conditions of release and revoked the defendant's appearance bond.  Given the

14  nature of the underlying offense and bond violation, the court ordered the defendant detained

15  pending trial.  Defendant now seeks review of that revocation and detention order.  Based on

16  the nature of the offense, the presumption against release, the defendant's role in the

17  underlying offenses, his ties to larger criminal enterprises and other jurisdictions, and the

18  nature of the violation of his conditions of release, Defendant Rosenau should be detained

19  pending trial.

20

21

22

23

24

---

25   [1] The statutory penalties for a violation of 21 U.S.C. §§ 960(b)(1)(G) and 841(b)(1)(A) include imprisonment for a mandatory minimum term of 10 years and maximum term of life imprisonment.

26

27   [2] Quesnel is located in the Cariboo region of the British Columbia Interior.  According to B.C. Tourism information, Quesnel is 400 plus miles north of Vancouver, B.C., and has a population of 10, 500.

28

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
FOR REVOCATION OF DETENTION ORDER- 2
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

## II.  BACKGROUND OF THE CASE

### A.     Statement of Facts.

In 2004 and 2005, a group of helicopter pilots in Canada facilitated the cross-border marijuana traffic into the United States.  The pilots, hired by larger criminal organizations or marijuana brokers who owned or sold the marijuana, flew the helicopters across the international border in a manner designed to hide their activities.  The pilots often flew at low altitudes, did not file flight plans, camouflaged the tail identification markers, landed at make-shift and undesignated sites, and failed to report their entries or exits to Canadian or American authorities.  They did so because they were violating the law by ferrying contraband, including marijuana, people, firearms, and currency across the international boarder.  The main goal was to smuggle marijuana for distribution in the United States; people, firearms and currency were moved as needed to facilitate the marijuana smuggling activities.  The defendant, Henry Rosenau, was one of the pilots.

In the summer of 2004, Rosenau personally delivered marijuana loads to Kip Whelpley, a cooperating government witness, in the United States.  Defendant Rosenau also visited the United States with Whelpley to identify landing zones.  Defendant Rosenau even held Whelpley's earnings (in cash) during the 2004 summer.  Additionally, Defendant Rosenau flew another Canadian helicopter pilot into the U.S. to facilitate more helicopter smuggling.  In the summer of 2005, Kip Whelpley continued to work with Rosenau off-loading marijuana shipments in the U.S.  On June 9, however, Whelpley was stopped by surveilling ICE agents; his load of  485 pounds of marijuana was seized.  Whelpley was released from custody because ICE did not want to reveal an ongoing investigation against Canadian smugglers.  Whelpley returned to Canada but continued to participate in smuggling drugs into the United States from the Canadian side of the border.  Both Whelpley and Rosenau participated in an August 4, 2005, smuggle of 500 pounds of marijuana, which was also seized.  Whelpley's involvement in the conspiracy ended after the second seizure.  Eventually, Whelpley was convicted and sentenced for his involvement in importing

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
FOR REVOCATION OF DETENTION ORDER- 3
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1   marijuana into the United States.  He agreed to cooperate with the government, and the

2   government intends to call Whelpley as a witness at trial.

3           On September 21, 2005, Rosenau flew a 1,100 pound load of marijuana into the

4   United States.  Defendant Rosenau delivered this load to the Miraback brothers; however, it

5   too was intercepted and seized by ICE agents.  Unbeknownst to Rosenau, RCMP members

6   had observed him before and during his flight into the United States.  Additionally, other

7   helicopters -- identified via tail designations, brand, and color -- which had been seen

8   smuggling contraband were co-located with Rosenau's helicopter or stationary at his home.

9   A few of the helicopters, including the one that Rosenau had been flying on that day, had

10  tape over the tail identifiers in an effort to disguise the letters.  On September 21, 2005,

11  RCMP contacted Rosenau immediately after he landed helicopter C-FRKM (with a piece of

12  tape on the tail so that the R appeared to be a B, that is, C-R**B**KM).  Defendant Rosenau

13  identified himself, acknowledged a loaded handgun in his helicopter, denied flying across the

14  border, but had a GPS with the coordinates of the U.S. off-load site.  This encounter with

15  RCMP members occurred on land owned by Canadian civilian Glen Stewart.  The

16  government intends to call Glen Stewart and the RCMP members who surveilled the

17  defendant, who observed and photographed the helicopters, and who contacted the defendant

18  after he landed his helicopter.

19  **B.      Anticipated Trial Witnesses**.

20          **(1) Witness Kip Whelpley.**

21          In January 2011, the defendant filed what appears to be a vexatious civil claim,

22  *Rosenau v. Whelpley*, in Quesnal, Canada.  *See* Gov't Ex. 1 (Notice of Civil Claim).

23  Defendant Rosenau signed the civil action.  *Id.*  Shortly before the filing of the suit, the

24  defendant's agent, Padraig Mac Roibeaird (also known as Paddy Roberts), emailed Whelpley

25  and asked for an address to serve civil papers.[3]  *See* Gov't Ex. 3 (Notice of Intention to Act

26

27          [3] Paddy Roberts is well known in Canada, both as an advocate for legalization of marijuana and
28  as an opponent of extradition.  He also has a criminal record.  He has been convicted of forgery, false
    pretenses, possession of stolen property, and importing narcotics.  *See* Gov't Ex. 2 (Criminal history).

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
FOR REVOCATION OF DETENTION ORDER- 4
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

by Agent); Ex. 4 (Emails of January 17 to February 7, 2011).  The defendant's agent quickly
introduced a  threat: " [A]s far as I can tell, no one intends to do you any harm and that is
more so now that I have let it be known that you have said you do not intend to return to the
US.  I stress the words 'as far as I can tell[.]'"  *See* Gov't Ex. 4 (Emails of January 17 to
February 7, 2011).

On February 7, 2011, Whelpley received a lengthy email in which the defendant's
agent acknowledged that he was assisting Rosenau in the civil matter and that he had drafted
the Notice of Civil Claim.  *Id.*  The defendant's agent explained that people use agents to
avoid the extraordinary expense of lawyers.  He offered to hear "without prejudice"
Whelpley's facts regarding the marijuana loads he received from Rosenau flying helicopter
C-FRKM.  He asked whether Whelpley was threatened or coerced by American authorities to
invent stories about the defendant; he then commented about cooperators and referenced a
phrase used by members of the Irish Republican Army.

When Whelpley turned to help from legal counsel in February, the tone of the next
email from the defendant's agent was menacing.  *See* Gov't Ex. 5 (Letters from Robert
Moffat); Ex. 6 (Email from Padraig Mac Roibeaird).  In an email dated March 9, 2011,
Padraig Mac Roibeaird (also known as Paddy Roberts) claimed that Rosenau had obtained a
default judgment against Whelpley, that Rosenau could apply *ex parte* for monetary damages
from Whelpley, and that Whelpley was prohibited from entering the United States.  *See*
Gov't Ex. 5.  The defendant's agent claimed that Rosenau and his attorney would delay
application for damages until they were "satisfied that [Whelpley] . . . no longer will be part
of the false prosecution of Mr. Rosenau."  *Id.*  He made his intentions clear: he intended to
obtain a court order compelling Whelpley to answer questions as to "the degree and method
of coercion" used by the United States.  *Id.*  He further reminded Whelpley that continuing to
stand by his testimony could cause Whelpley "unfortunate financial hardship," that
Rosenau's extradition was of great political importance, and that he viewed Whelpley's use
of legal counsel as a "demonstration of a lack of remorse."  *Id.*  He concluded with personal
statements about Whelpley, Whelpley's family and that he hoped the "terrible picture" will

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
FOR REVOCATION OF DETENTION ORDER- 5
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1   soon be gone.  *Id.*  He attached a copy of the default judgment.  *Id.*  The defendant's agent
2   had no further communication with Whelpley until he sent Whelpley another email on
3   October 20, 2011.

4        Shortly thereafter, on March 31, 2011, Rosenau signed and filed with the Supreme
5   Court of British Columbia a "Notice of Intent to Act by Agent."  *See* Gov't Ex. 3 (Notice of
6   Intent to Act by Agent).  In the court filing, Rosenau announced that he intended to act by
7   "Agent in all further matters before the Court . . . and appoints Padraig Mac Roibeaird as his
8   Agent."  *Id.*  Defendant Rosenau further stated that he "grants to Padraig Mac Roibeaird the
9   right to do all those things [he] could himself do in person or by counsel in respect of this
10  matter [the civil suit against Whelpley], and by leave of the Court, where such leave is
11  required."  *Id.*

12       On October 12, 2011, Rosenau and his counsel met with the Assistant United States
13  Attorneys assigned to the instant case.  The purpose of the meeting, encouraged by the
14  defense counsel, was an informal "show and tell"of the government's case in an effort to
15  resolve it short of trial.  During the meeting, the defense specifically inquired whether the
16  government expected Canadian civilian witnesses Whelpley and Glen Stewart to appear for
17  trial.  The government responded in the affirmative.  A week later, on October 18, 2011, this
18  Court ruled on several pending pretrial motions, generally denying the defense motions.

19       Two days later, on October 20, 2011, Whelpley received an email from the
20  defendant's agent asking to confirm his home address "for service for documents in the civil
21  matter between yourself and Mr. Henry Rosenau in the Supreme Court of British Columbia."
22  *See* Gov't Ex. 7 (Email from Padraig Mac Roibeaird; October 20, 2011).  The defendant's
23  agent admitted that he had information "originating in the United States to that effect that
24  [Whelpley] may be considering defying [a court order] . . . and traveling to the United States
25  in contravention of the . . . [court order]."  *Id.*  The defendant's agent claimed that he
26  understood the information may have been "provided falsely and maliciously by the US
27  government," and therefore, "as Mr. Rosenau's agent in this matter," he needed to confirm
28  receipt of the default judgment and court orders so that ""Mr. Rosenau may have legal

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
FOR REVOCATION OF DETENTION ORDER- 6
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  recourse in the event you violate the terms of the Order." *Id.*  He attached another copy of

2  the court order prohibiting Whelpley from leaving Canada and stated that Whelpley would be

3  personally serviced unless the email was acknowledged.  *Id.*

4  **(2) Witness Glen Stewart.**

5  Glen Stewart was the owner of the land where, on September 21, 2005, Rosenau

6  landed his helicopter with a disguised tail identifier.  After landing and walking away from

7  his helicopter, with the blades still rotating, Rosenau was approached by RCMP members.

8  The RCMP members spoke with Rosenau and Glen Stewart, who identified himself as the

9  property owner.  Glen Stewart gave RCMP permission to look in a shed/shop on the

10  property.  In the shop, RCMP found another helicopter belonging to the defendant, a trailer,

11  aviation fuel, and the defendant's car.

12  Between Defendant Rosenau's initial appearance in this District and the week of

13  October 20, 2011, law enforcement had been in contact with Glen Stewart about testifying at

14  trial.  He indicated his willingness to travel to the United States and testify.  Through the

15  RCMP, Glen Stewart was scheduled to meet with the federal prosecutors on October 26,

16  2011.  On the day prior to the scheduled meeting, however, Glen Stewart called the RCMP

17  and said that his lawyer had advised him not to meet with the prosecutors.  When asked, he

18  said he could not remember the name of his lawyer; he said he would not testify at Rosenau's

19  trial.  A copy of a report from an RCMP member who had been dealing with Glen Stewart is

20  attached.  *See* Gov't Ex. 8 (Report from RCMP Corporal Therese Cochlin).

21  **(3) RCMP Witnesses and Evidence.**

22  Several RCMP members are critical trial witnesses and the evidence they obtained and

23  seized from Rosenau are both highly probative and necessary in the instant criminal

24  prosecution.  On October 25, 2011, a Notice of Application entitled *Henry Carl Rosenau v.*

25  *Regina*, was filed in Vancouver, B.C.  *See* Gov't Ex. 9 (Notice of Application).  The two

26  page Notice of Application, filed six years after the event, claims that Rosenau will apply for

27  a return of the seized evidence, a prohibition on RCMP disclosing Rosenau's statements

28  made to them, a prohibition on the RCMP members leaving Canada for the purpose of

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
FOR REVOCATION OF DETENTION ORDER- 7
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1   testifying in the United States, and a prohibition on sending the physical evidence out of

2   Canada.  The Notice of Application says it will be supported by affidavits from Rosenau and

3   Glen Stewart.  The government has sought but not received copies of the affidavits from

4   Canada.  On November 2, 2011, the Notice of Application was heard and dismissed.  Last

5   Friday, on November 4, 2011, Defendant Rosenau appealed.  *See* Gov't Ex. 10 (Notice of

6   Appeal).

7           Les Rose, Legal Counsel for the RCMP, has been consulted regarding the effect of the

8   dismissed Notice of Application and pending Notice of Appeal on the evidence and

9   testimony expected at trial.  Without opining on the likelihood of success of the Notice of

10  Appeal, Mr. Rose wrote that he is advising the RCMP not to testify in the United States or to

11  produce the evidence until the Notice of Application is resolved.  Initially, he believed the

12  Notice of Application would not be resolved by the trial date of November 7, 2011.  Now

13  that the defendant has appealed the dismissal of the Notice of Application, it is unclear when

14  the Canadian witnesses and evidence will be available for the trial.

15  **C.      Statement of Relevant Proceedings.**

16          On April 28, 2011, the defendant appeared for his arraignment and initial appearance

17  on one count of conspiracy to import marijuana, one count of conspiracy to distribute

18  marijuana, and one count of possession of marijuana with intent to distribute as charged in

19  the superseding indictment.  At this hearing, the government moved to detain Rosenau, citing

20  the rebuttable presumption that no conditions could reasonably assure his appearance at trial

21  and the safety of the community.

22          **1.      Detention Hearing**.

23          The detention hearing took place on May 4, 2011.  Prior to this hearing, Pretrial

24  Services interviewed Rosenau and prepared a report recommending that the defendant be

25  released pending trial.  Despite the presumption of detention, the defendant was released to

26  his home in Quesnel, Canada, subject to certain conditions.  *See* Gov't Ex. 11 (Appearance

27  Bond); Ex. 12 (Conditions of Supervision).

28

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
FOR REVOCATION OF DETENTION ORDER- 8
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1      **2.      First Revocation Hearing.**

2          On July 21, 2011, Rosenau violated his conditions of release by possessing marijuana.

3  At his bond revocation hearing, he admitted the violations.  He was once again released on an

4  appearance bond but his conditions of release were modified to include drug and alcohol

5  testing.  In addition, he was ordered to live in a home free of any controlled substances,

6  which meant that he could no longer live at his residence with a marijuana grow.  To date, he

7  has not moved to a new residence.  *See* Gov't Ex. 13 (Bond Revocation Hearing Transcript at

8  10).

9      **3.      Second Revocation Hearing.**

10         On October 28, 2011, Rosenau appeared for another revocation hearing.  Prior to this

11 hearing, Pretrial Services prepared a report recommending that the defendant be detained

12 pending trial.

13             **a.      Government's arguments for detention**

14         At the revocation hearing, the government renewed its argument for detention based

15 on the presumption against release and argued that Rosenau had indirect contact with a

16 critical government witness.  As a result of that improper contact, the government contended

17 that Rosenau should be detained pending trial.

18         In support of its argument, the government elicited testimony from Pretrial Services

19 Officer Julie Busic.  Officer Busic testified that she explained the conditions of release to the

20 defendant, including the special condition that he not have direct or indirect contact with any

21 potential witnesses in the underlying criminal matter.  *Id.*  According to Officer Busic, on

22 May 25, 2011, she was contacted by defense counsel about "third parties" who "may need to

23 be served regarding *extradition*."  *Id.*, at 11 (emphasis added).  At the time of defense

24 counsel's inquiry, Officer Busic had not received a list of possible witnesses; she therefore

25 responded to defense counsel that "as long as it was a legal matter served by legal counsel,"

26 she would not object to the contact.  *Id.*  Officer Busic understood that defense counsel's

27 question related to extradition matters only.  *Id.*

28

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
FOR REVOCATION OF DETENTION ORDER- 9
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1    A few weeks later, on June 14, 2011, Officer Busic sent the defendant and defense

2    counsel a list of possible government witnesses, including Kip Whelpley. *Id.*, at 12; *see also*

3    Gov't Ex. 14 (Gov't witness list).  Two days later, Officer Busic spoke with the defendant

4    about the witness list. *Id.*, at 12.  Officer Busic recalled that Defendant Rosenau disavowed

5    any knowledge of the people identified on the witness list. *Id.*, at 12-13 ("He's worried

6    because he didn't know any of the names of the list of prohibited parties.").

7    At the revocation hearing, the government established that, through his agent Padraig

8    Mac Roibeaird (aka Paddy Roberts), the defendant had indirect contact with Kip Whelpley, a

9    cooperating government witness, and therefore violated his conditions of release.  The

10    government made clear that Defendant Rosenau was advised by Pretrial Services not to have

11    direct or indirect contact with any witnesses, including Whelpley.  The government also

12    showed that Rosenau lied to Pretrial Services when he claimed he did not recognize any of

13    the names on the witness list and that he violated his conditions of release when he allowed

14    his agent to directly contact a witness and "remind" Whelpley of the default judgment and

15    court order, both of which Rosenau had vigorously pursued as part of his civil claim against

16    Whelpley.  The government made clear that Rosenau's indirect contact with a witness had

17    nothing to do with extradition proceedings.  Rather, the indirect contact was designed to do

18    one thing: prevent a critical witness from testifying at trial.

19    Finally, the government reiterated that, given the remoteness of the defendant's

20    location and his blatant disregard for the court's conditions of release, no condition or

21    combination of conditions existed which would reasonably assure the safety of the

22    community.

23    **b.    Magistrate Judge Tsuchida's decision**.

24    After listening to the arguments of counsel, Magistrate Judge Tsuchida ordered

25    Defendant Rosenau detained pending trial.  Following the hearing, Judge Tsuchida issued a

26    written Detention Order finding that there were no conditions or combination of conditions

27    that would reasonably assure the appearance of the defendant as required and the safety of

28    the community.  *See* Gov't Ex. 15 (Detention Order).

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
FOR REVOCATION OF DETENTION ORDER- 10
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1    In support of findings, Judge Tsuchida first acknowledged that neither the defendant's

2    American or Canadian counsel were involved in the civil suit against Kip Whelpley.  Rather,

3    the civil lawsuit was initiated by the defendant, who, as the plaintiff, is the sole beneficiary of

4    the suit.  Judge Tsuchida was unpersuaded by defendant's argument that the civil suit was the

5    product of an out-of-control paralegal employed by the defendant's extradition attorney.

6    Judge Tsuchida found that the defendant had done nothing to distance himself from the civil

7    suit.  To the contrary, the court concluded that Rosenau had succeeded in obtaining a court

8    order which directed Whelpley to pay money damages and prohibited Whelpley from

9    traveling outside of Canada.

10    Judge Tsuchida also determined that the defendant had been untruthful when asked by

11    Pretrial Services Officer Julie Busic whether he knew any of the people on the trial witness

12    list.  Judge Tsuchida found that the defendant knew Whelpley because, six months earlier, he

13    had filed a civil lawsuit against Whelpley and, in March 2011, he had obtained a default

14    judgment and court order against Whelpley.

15                                    **III.  LAW AND ARGUMENT**

16    **A.    Applicable Law**.

17    The Bail Reform Act provides a defendant should be detained pending trial if "no

18    condition or combination of conditions . . .  will reasonably assure the appearance of the

19    person as required and the safety of any other person and the community."  18 U.S.C. §

20    3142(f).  The government bears the burden of showing both that a defendant poses a danger

21    to the community by clear and convincing evidence, and that a defendant poses a flight risk

22    by a preponderance of the evidence.  *United States v. Gebro*, 948 F.2d 1118, 1120 (9th Cir.

23    1991).  The Act identifies four factors a court should consider in analyzing detention issues:

24    "(1)  The nature and circumstances of the offense charged, including whether the offense . . .

25    involves a narcotic drug; (2) the weight of the evidence . . . ; (3) the history and

26    characteristics of the person, including . . . family ties, employment, financial resources,

27    length of residence in the community, community ties, past conduct, history relating to drug

28    or alcohol abuse, criminal history, . . . ; and (4) the nature and seriousness of the danger to

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
FOR REVOCATION OF DETENTION ORDER- 11
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1   any person or the community that would be posed by the person's release . . . ."  18 U.S.C. §

2   3142(g).  Of these factors, weight of evidence is least important and the statute neither

3   requires nor permits pretrial determination of guilt.  18 U.S.C. §3142(g).

4          Nonetheless, the Bail Reform Act expressly provides that:

5          [s]ubject to rebuttal by the person, it shall be presumed that no condition or
           combination of conditions will reasonably assure the appearance of the person
6          as required and the safety of the community if the judicial officer finds that
           there is probable cause to believe that the person committed an offense for
7          which a maximum term of imprisonment of ten years or more is prescribed in
           the Controlled Substances Act (21 U.S.C. 801 et seq.) . . . or an offense under
8          section 924(c) . . . of title 18 of the United States Code. . . .

9   18 U.S.C. § 3142(e).  The return of an indictment is sufficient to support a finding of

10  probable cause triggering this rebuttable presumption.  *See, e.g.*, *United States v. Hazime*,

11  762 F.2d 34, 37 (6th Cir.1985); *United States v. Stricklin*, 932 F.2d 1353, 1354 (10th Cir.

12  1991).  Here, the superseding indictment charging Rosenau was returned prior to the

13  detention hearing.  Thus, the presumption in 18 U.S.C. 3142(e) applies.

14         While this Court has not addressed the burdens associated in its application, other

15  Courts have found that where a § 3142(e) presumption applies, the defendant bears the

16  burden of producing evidence that he does not pose a danger to the community or risk of

17  flight in order to rebut the presumption.  *See, e.g.*, *United States v. Abad*, 350 F.3d 793, 797

18  (8th Cir. 2003) and *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir.2001).  The

19  government retains the burden of persuasion.  *Mercedes*, 254 F.3d at 436.

20         Even if a defendant meets his burden of production, the presumption favoring

21  detention does not disappear.  Rather, it remains a factor to be considered among those

22  weighed by the court.  *See Mercedes*, 254 F.3d at 436.  If the presumption vanished once a

23  defendant produced some evidence, courts would not be giving adequate deference to the

24  fact that Congress has determined "that drug offenders pose a special risk of flight and

25  dangerousness to society."  *United States v. Hare*, 873 F.2d 796, 798-99 (5th Cir.1989).  *See*

26  *also United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir.1986).

27         Applying these principles here, this Court should detain Rosenau pending trial.

28

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
FOR REVOCATION OF DETENTION ORDER- 12
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  Even if the Court assumes that Rosenau has overcome the presumption of detention,

2  he should be detained because he clearly violated a term of his release, he poses a danger to

3  another person and the community, and he is unlikely to abide by any condition or

4  combination of conditions of release.  18 U.S.C. § 3148(b)(1).  Threats to witnesses justifies

5  revocation of release.  *See U.S. v. Ruggerio*, 796 F.2d 35 (2d Cir. 1986).

6  **B.      Rosenau failed to rebut the presumption for detention.**

7  Defendant Rosenau has failed to present facts sufficient to rebut the presumption for

8  detention.  Rosenau faces a mandatory minimum term of 10 years imprisonment and

9  maximum term of life imprisonment for importing thousands of pounds of marijuana into the

10  United States.  This exposure gives Rosenau ample incentive to flee rather than face the

11  charges.  Because of his ties to drug dealers and gang members in Canada, he has a place to

12  flee and hide.  Moreover, Rosenau had (and may still have) access to substantial amount of

13  money, which could help him flee this District and stay hidden for a protracted period.  In

14  fact, Rosenau has spent years fighting the extradition process and he continues his timely and

15  costly legal wrangling in Canada.

16  **C.      The government has met its burden of persuasion.**

17  The treatment of drug offenses in the Bail Reform Act establishes that Congress

18  considered these offenses to present specific risks of nonappearance and danger to the

19  community.  Thus, the nature of the charges weighs heavily in favor of detention irrespective

20  of the presumption.

21  While the weight of the evidence is the least persuasive factor, nonetheless it is to be

22  considered.  Rosenau, a helicopter pilot, smuggled thousands of pounds of marijuana into the

23  United States between 2004 and 2005.  He also smuggled people and money into the United

24  States.  By any measure, this is substantial evidence of the defendant's drug trafficking

25  activity.  This factor weighs in favor of detention particularly where the imprisonment

26  consequences of a conviction include a mandatory minimum term of 10 years in prison.

27  While Rosenau has no criminal history, he is associated with the UN Gang in British

28  Columbia.  He has ties to enforcers in Canada, some of whom threatened participants in the

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
FOR REVOCATION OF DETENTION ORDER- 13
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

instant drug smuggling conspiracy after two large loads of marijuana were seized. Rosenau was also armed with a firearm when he smuggled drugs into the United States. For example, when he was approached by RCMP members on September 21, 2005, he possessed a firearm and extra ammunition.

Clearly, Rosenau has demonstrated that he has no regard for the rule of law and cannot be trusted to abide by any pre-trial release conditions imposed by the court. To date, he has had indirect contact with at least one important government witness. To distance himself from the civil claim against Whelpley is disingenuous. In January 2011, Rosenau signed and filed the civil lawsuit naming Whelpley as a defendant. He's the named plaintiff and sole beneficiary of the suit. He obtained a default judgment against Whelpley, a key witness, and a court order directing Whelpley to pay money damages and prohibiting Whelpley from traveling to the United States.

To distance himself from Padraig Mac Roibeaird (aka Paddy Roberts) is also spurious. In March 2011, Rosenau made Paddy Roberts his agent for "all further matters before" the Supreme Court of British Columbia. *See* Gov't 2 (Notice of Intent to Act by Agent). In a court filing, which he signed, Rosenau granted "Padraig Mac Roibeaird the right to do all those things [he] could himself do in person or by counsel in respect of this matter [the civil suit against Whelpley], and by leave of the Court, where such leave is required." *Id.*

Rosenau's recent claim that he had nothing to do with contacting a witness is not believable. First, Rosenau's own credibility is suspect after he lied to Pretrial Services about not knowing any of the people on the prospective witness list, including Whelpley. At the time he reviewed the witness list with Officer Busic, Rosenau had been pursuing his civil claim against Whelpley for more than six months. Second, despite an insinuation to the contrary by defense counsel, it is clear that Rosenau has had frequent contact with his agent, Padraig Mac Roibeaird (aka Paddy Roberts). In fact, within a week of learning that the government intended to call Whelpley as a trial witness, the defendant's agent had contacted Whelpley. Third, Rosenau has a habit of using a someone else to contact or influence potential witnesses. Obviously, someone advised Glen Stewart not to meet with the federal

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
FOR REVOCATION OF DETENTION ORDER- 14
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

prosecutors or testify at the defendant's trial, all of which suggests that the defendant or, or someone acting on the defendant's behalf, had direct or indirect contact with yet another trial witness. Fourth, Rosenau's indirect contact with Whelpley is similar to the obstructionist tactics he has employed against the RCMP.

Finally, Rosenau has abused the unique privilege afforded certain foreign defendants in this District. In this District, defendants who are Canadian citizens may be released to their homeland while being supervised from afar by Pretrial Services. The unusual program cannot function properly unless the defendant is honest and cooperative with Pretrial Services. In turn, the Pretrial Services Officer must be assured that the defendant is abiding by the terms of his conditions of release because enforcement is limited. Therefore, trust between the defendant and the Pretrial Services Officer is imperative. Here, Rosenau has violated that trust and thereby forfeited his right to participate in this District's unique program.

All of these facts combine to establish that there simply is no combination of conditions that will assure that Rosenau will not flee or otherwise present a danger to another person or the community.

//

//

//

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
FOR REVOCATION OF DETENTION ORDER- 15
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

## IV.  CONCLUSION

Defendant Rosenau faces serious drug trafficking charges, which raise the presumption of detention.  Even if the Court concludes that Rosenau has overcome the presumption of detention, he should be detained pending trial because he violated his pretrial release conditions by having indirect contact with trial witnesses.  Laundering inappropriate contact through counsel or through an "agent" does not absolve the defendant or vitiate the violation of the court's conditions of release.  Moreover, the conduct borders on obstruction of justice as well as embraces threats and intimidation toward possible trial witnesses.  The defendant has shown that he does not abide by the terms of the court's ruling and that there is no set of conditions that this Court can impose upon Rosenau, living in Quesnal, British Columbia, which can be enforced or adequately monitored.

The defendant should be detained.

DATED this 8th day of November, 2011.

Respectfully submitted,

JENNY A. DURKAN
United States Attorney

*s/Susan M. Roe*
SUSAN M. ROE
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, WA 98101-1271
Telephone:    (206) 553-1077
Fax:               (206) 553-0755
E-mail: susan.roe@usdoj.gov

 *s/Marc A. Perez*
Marc A. Perez
United States Attorney's Office
1201 Pacific Avenue
Suite 700
Tacoma, Washington 98402
Telephone: (253) 428-3822
Fax: (253) 428-3826
Email: Marc.Perez@usdoj.gov

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
FOR REVOCATION OF DETENTION ORDER- 16
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

CERTIFICATE OF SERVICE

I hereby certify that on 11/8/11 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorney(s) of record for the defendant(s).

*s/Karen Wolgamuth*
KAREN WOLGAMUTH
Paralegal
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: (206) 553-5050
FAX:   (206) 553-4440
E-mail: karen.wolgamuth@usdoj.gov

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
FOR REVOCATION OF DETENTION ORDER- 17
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970