1                  UNITED STATES DISTRICT COURT

2                  WESTERN DISTRICT OF WASHINGTON

3   THE UNITED STATES OF AMERICA, )
                                  ) No. CR 06-157 MJP
4        Plaintiff,               )
                                  )
5            vs.                  )
                                  )
6   HENRY C. ROSENAU,             )
                                  )
7        Defendant.               )
    _____)

8

9              VERBATIM TRANSCRIPT OF PROCEEDINGS

10                            OF

11                   A DETENTION HEARING

12   BEFORE THE HONORABLE BRIAN A. TSUCHIDA, MAGISTRATE JUDGE

13                         5/4/2011

14                       APPEARANCES

15              For Plaintiff: Ye-Ting Woo

16              For Defendant:  Craig Platt

17

18

19

20

21         Transcribed from electronic sound recording

22        Transcript produced by transcription service

23

24            Transcribed by Brian Killgore

25

1          (Proceedings of 5/4/2011)

2          THE CLERK:  Your Honor, we are back on the record.

3     The next matter is scheduled as a detention hearing in the

4     United States of America v. Henry Rosenau.  The cause number

5     is CR 6-157, a matter assigned to Judge Pechman.

6          Will counsel please make their appearance for the

7     record?

8          MS. WOO:  Good afternoon, Your Honor, Ye-Ting Woo.

9     I am standing in for Susan Roe with the United States

10    Attorney's Office.

11         THE COURT:  And Ms. Woo, good afternoon.

12         MR. PLATT:  Good afternoon, Your Honor, Craig

13    Platt for Mr. Rosenau who is seated to my left.  He

14         THE COURT:  And Mr. Platt, good afternoon, and Mr.

15    Rosenau, good afternoon.

16         We are here for your detention hearing, and I did

17    receive an updated US Pretrial Services report, and Ms. Woo,

18    is the government still seeking detention in this case?

19         MS. WOO:  Yes, we are, Your Honor.  Would you like

20    me to approach?

21         THE COURT:  Sure.

22         And one of the things I am very curious about is this

23    case, I think in a week or so, will literally be five years

24    old?  And --

25         MS. WOO:  Yes, approximately.  It was -- the

2

**ACE Reporting Services, Inc. (206) 467-6188**

1    original indictment was returned in May of 2006.  The arrest

2    by the defendant occurred on September 21, 2005.  This was

3    the arrest by Canadian authorities back in September 2005.

4         Because I am not the attorney of record on the case, it

5    is my understanding that the extradition has been pending

6    for several years -- because of the fact that the defendant

7    having contesting extradition, and it wasn't until recently

8    when the British Columbia courts, Canada courts issued an

9    order of surrender that he was then escorted by Canadian law

10   enforcement to the border this morning and transferred over

11   to the marshals' custody for transportation to court --

12   well, not this morning, I'm sorry, on the day of his initial

13   appearance.

14        So we are seeking that the defendant be detained

15   pending trial.  There are a number of reasons that are

16   related to the facts in the case, as well as due to the

17   efforts to extradite him, the many years it has taken for

18   the government to seek his appearance in court in the United

19   States.  That has been pending for several years.

20        I understand that Pretrial Services is recommending

21   release.  The one distinction that I would point out to the

22   Court is that this is a rebuttable presumption case.  The

23   defendant is seeking a 10 year mandatory minimum on at least

24   count 2 in the indictment; the fact that it is a rebuttable

25   presumption case is not considered by Pretrial Services.  It

3

1    is part of their policy not to take that into consideration,

2    so that is one distinction I would point out to the Court.

3           In this situation, the defendant is a Canadian citizen.

4    The allegations here are -- that come from the underlying

5    extradition record that was discussed before the Court in

6    Canada indicates that during the years 2004 and 2005, that

7    this defendant was involved in flying 29 loads of marijuana

8    from Canada to the United States, totaling between 11,000

9    and 13,000 pounds of marijuana.

10          He was the pilot for a helicopter, and he was

11   responsible for those loads, working with co-conspirators

12   whose cases, as I understand it, have now been resolved.

13          On September 21, 2005, he was arrested by Canadian

14   authorities after he had dropped off a load of 1128 pounds

15   of marijuana, which had been seized on the US side, along

16   with his codefendants were arrested at that time.

17          When he was arrested by Canadian authorities on

18   September 21, 2005, he had a loaded gun underneath the

19   pilot's seat of his helicopter.  He had night vision

20   goggles, satellite phones.  He had also taped over one of

21   the letters that are on the helicopter in order to change

22   the letter from an F to a B, as I understand it, in order to

23   prevent identification of that helicopter.

24          A couple of years ago, as well, he had been interviewed

25   by the previous primary ICE agent in this case, Jesse

4

1    Miller, and he had made a statement to Mr. Miller that he

2    would not make himself available to face charges in the

3    United States, and of course that was I think at the

4    beginning of the extradition proceedings.

5         He does -- is working, but I also would note that he

6    has access to funds and to assets that if he were to flee or

7    to make himself unavailable in the United States, he has the

8    ability to do that.

9         He had recent -- well, I suppose it is not recent, but

10    he has had international travel since this case was filed.

11    I believe he indicated that he went to Costa Rica in 2006 or

12    2007.

13         It is interesting to note that his -- I believe it is

14    his girlfriend Veronica Schwartz, had stated that the

15    defendant does not travel internationally, but as this court

16    is aware, this case does involve the defendant traveling

17    internationally on a regular basis, using a helicopter in

18    which he was able to avoid, on a number of instances, any

19    detection by border patrol authorities or transportation

20    authorities.

21         So for all of those reasons, we would ask the Court to

22    find that there are no factors or combination of factors

23    that would assure his appearance in the United States to

24    face these charges if he were allowed to be released on bond

25    and to return to Canada.

5

 1          The other risk that we face, of course, is that if the

 2     defendant chooses not to return to the United States for any

 3     of the future court appearances, we then have to initiate

 4     yet another extradition proceeding, which would likely take

 5     a lengthy period of time so that the defendant may assert

 6     whatever rights he is afforded to in Canada to oppose any

 7     warrant that is issued by this court for his arrest for

 8     failure to appear on that bond.

 9          So for those reasons, we would ask the Court to

10     permanently detain the defendant pending trial.

11               THE COURT:  Just one point of clarification.

12               MS. WOO:  Yes?

13               THE COURT:  You had indicated there had been prior

14     law enforcement contact, US law enforcement contact with Mr.

15     Rosenau, and there was some kind of conversation about, "I

16     am not going to make myself available."  Is this some kind

17     of discussion about him coming back?

18               MS. WOO:  It was -- my understanding is that it

19     was a discussion about him essentially self surrendering --

20     submitting on the extradition and to come to the United

21     States to face the charges, and that this conversation

22     occurred a couple of years ago, and the defendant indicated

23     to the agent at that time that he did not believe the US had

24     the ability to extradite him, and that he would not

25     voluntarily face the charges in the United States.  Thank

6

1    you.

2              THE COURT:  And Mr. Platt, go ahead, please.

3              MR. PLATT:  Thank you, Your Honor.

4        Your Honor, before I begin, I would like to address a

5    few facts here, and I still don't have discovery, so to

6    begin with, I would orally renew our request for discovery

7    in this matter.  However, I have been in touch with some of

8    the attorneys up in Canada, and with respect to the timeline

9    here, it is my understanding that there was initial contact

10   around the time of the events alleged in 2005.

11        It is unclear whether or not that was actually a formal

12   arrest or merely an interrogation at that time.  What is

13   clear is that there was a superseding indictment issued in

14   2008 on 9/17.

15        I have talked to his attorney up there, Gary Botting,

16   who informs me that they were not notified of the charges

17   here, and that actually he was simply arrested without any

18   notice at that time, and that relates to the supervision

19   that has already occurred on this matter as part of the

20   extradition, which I would like to address.

21        He is maintaining his innocence as far as the

22   allegations made by the government in this case, and we

23   think that is very important here, because the government is

24   saying that under 3142, there is this rebuttable

25   presumption.  We feel that we can rebut that presumption

7

1    with the information that is contained in the Pretrial

2    Services report, the information I have for the Court now.

3         Our request is for personal recognizance under

4    3142(a)(1), and our position is that this is sufficient for

5    the reasons that we will indicate, and that it is not

6    necessary to have additional conditions, although we have

7    reviewed the conditions proposed by Pretrial Services; they

8    do seem appropriate:  Employment, travel restrictions, no

9    contact with witnesses.

10        Supervision by Pretrial Services is available, which I

11   have confirmed with their office.  There is this special

12   program where they can supervise individuals who are

13   residing in Canada, and they have confirmed that they are

14   willing and able to do that.

15        There is no problem with weapons.  He has no weapons at

16   this time.  There is no issue whatsoever with drugs or

17   alcohol, all of which is contained in the report, and we

18   would not oppose any other conditions the Court may feel are

19   appropriate.

20        There are a lot of factors that point to the fact that

21   Mr. Rosenau is not a flight risk, and that he will appear

22   and that these conditions will be sufficient to assure his

23   appearance.

24        There is no showing that he has ever obstructed

25   justice, that he has ever been violent, that he has

8

1    interfered with witnesses.  There is no showing of

2    dangerousness, and there is no showing of failure to comply.

3         About the only real support for the government's

4    position here is that Mr. Rosenau elected to contest the

5    extradition.  That is his legal right to do and that in and

6    of itself is not sufficient as a ground to hold him.

7         Now Mr. Rosenau has no criminal history whatsoever.  He

8    is 60 years old, and he has absolutely nothing in his record

9    to indicate that he would be a flight risk.  In fact he is

10   in the unusual position as someone with no prior criminal

11   history -- of having a track record of supervision because

12   of the extradition proceedings, and that track record is

13   100% positive.

14        He has lived in -- and I will get back to that at the

15   end here, but he has lived in British Columbia for his

16   entire life, except for one year in Alberta.  He attended

17   high school in a town with the name 100 Mile House, where he

18   married his childhood sweetheart at the age of 18.  They

19   were married for a lengthy period of time and have separated

20   since, but they remain on good terms, which again speaks to

21   his character.

22        He has a significant other at this time of almost 10

23   years, Ms. Veronica Schwartz, referred to by the government

24   as his girlfriend.  She is 60 years old and another

25   compelling reason for him not to take off here is that she

1    has stage III cervical cancer, and he is assisting with her

2    care.

3            With respect to employment, he has two different jobs.

4    He works in heavy equipment, which he has done since he was

5    a young man.  He is a commercial truck driver.  He works for

6    Lomack in the mining business, driving these large trucks up

7    in the outback of British Columbia.

8            He also works for Mac Track Roadbuilding.  His

9    supervisor there, Don McDonald, is actually going to provide

10   a letter of recommendation for him, and he has that job

11   waiting, if he is released.

12           He has no history whatsoever of involvement with drugs.

13   He is tested by his employer, and so there is verification

14   of that.  He has not had any alcohol for nine years.  He had

15   quit drinking, not because he had a problem, but as part of

16   an agreement with his significant other so that she would

17   quit smoking and he said he would stop drinking -- but he

18   has no history of alcoholism, no history of counseling, no

19   history of mental health issues.

20           He has no weapons in his possession, no history of

21   gambling, no domestic violence.

22           With respect to residence, he would reside at 4605

23   Highway 97 South -- that is in Quesnel, Q-U-E-S-N-E-L,

24   British Columbia.  He has strong family ties in British

25   Columbia.  He has a daughter 29 years old, Jacqueline

**ACE Reporting Services, Inc. (206) 467-6188**

1    Gagnon.  I have been in touch with Jacqueline and she does

2    verify that she will support her father if he is released.

3         He also has a 94-year-old mother, Bessie Higgins, and

4    her husband, John Higgins, who is also basically dying of

5    cancer.  He is 84 years old, I think.

6         As far as financial resources, they are somewhat

7    limited, but our position is that that makes him even less

8    of a flight risk.  He doesn't have the means to be able to

9    leave what he has.  He does have a residence there that he

10   owns and is in a positive state with the mortgage.

11        He does have some tools and old vehicles, which again

12   would indicate that he would want to stay there because that

13   is part of his livelihood.

14        Now back to the supervision.  As I said before, this

15   event occurred in 2005.  He was arrested on a warrant in

16   2008.  He did have representation recently by Gary Botting,

17   who is an extradition attorney in Canada I have talked with

18   quite a bit.

19        Mr. Botting confirmed that there was no prior notice of

20   the charges -- and he first found out when he was arrested;

21   however, when he was arrested he obtained counsel and he was

22   advised to contest the extradition, although he was told

23   that there would probably be a minimal chance that he would

24   prevail on that.

25        He did pursue his remedies, and although he was told

11

**ACE Reporting Services, Inc. (206) 467-6188**

1    that he had no real chance, it is not necessarily a flight

2    risk if you avail yourself of legal process.  And that is

3    the whole point; he didn't take off.  He has had three years

4    to take off and he didn't do it.  He stayed around and he

5    availed himself of appropriate legal process with

6    representation.

7           THE COURT:  So just to make clear in my mind, you

8    are saying that in Canada, although there was this arrest

9    warrant and extradition process, that he was actually in the

10   community?

11          MR. PLATT:  That is correct.  He was released

12   shortly after the arrest in, I believe, mid-2008, and he was

13   supervised through the RCMP in the Quesnel office.  I have

14   contacted them personally; Pretrial Services has also been

15   in contact with them.

16       I was able to get confirmation of the supervision,

17   although we couldn't get all of the specifics because the

18   person, the staff sergeant responsible is off this week.

19   However, it is clear that he did not take off; that he had

20   to report twice a week for the first year-and-a-half

21   following that arrest; that he had no violations of pretrial

22   or pre-extradition supervision.  He also had a curfew from

23   11:00 until 7:00 in the morning, and was not allowed to stay

24   over anywhere other than his residence unless he gave two

25   days' notice, and that only could be if it was in

12

1      conjunction with his work duties.

2           So he had a perfect track record of supervision, which

3      is highly unusual for someone with no criminal history, but

4      he has had three years to prove himself.

5           Eventually, these conditions were reduced, because he

6      was doing so well.  His adjustment was excellent.

7           So again, even when the conditions were reduced, he

8      didn't take off.  He stuck around, availed himself of legal

9      process.

10          As the extradition progressed, however, it was pursued

11     through the courts in Canada, as is his right, and

12     ultimately it became clear that he was probably not going to

13     prevail on that.

14          Now at that point he, instead of taking off, or waiting

15     to be arrested, he made arrangements through counsel to turn

16     himself in to the authorities.  I have confirmed that with

17     Mr. Botting.

18          In addition, I spoke with an attorney from the Canadian

19     Department of Justice, a Mr. Nazub (phonetic), and he was

20     responsible for their end of the extradition proceedings.

21     He personally confirmed to me in a telephone conversation

22     that Mr. Rosenau did in fact turn himself in early; that he

23     was under an order to turn himself in once the extradition

24     remedy was exhausted, and he didn't even wait until the

25     final order; he turned himself in the day before, because he

13

1    didn't want there to be a problem, and Mr. Botting tells me

2    that that involved him driving four-and-a-half hours from

3    his residence down to Vancouver to turn himself in so that

4    he finds himself here today.

5        So there has been no indication whatsoever of a flight

6    risk.

7        I know the Court knows this, but our position is that

8    he is innocent.  Section 3142 talks about the presumption of

9    innocence.  A lot of lawyers are going to say, "If you

10   contest extradition, you are not going to be able to get

11   released afterwards."  Our position is that's not right.

12       The government has indicated it would be difficult,

13   from their point of view, if there were a problem, because

14   they would have to extradite.

15       And at the risk of going a little far afield, I have to

16   say, under separation of powers, we have three branches -- I

17   have heard commentators talk about three branches being the

18   House of Representatives, the Senate and the White House.

19   That is not the case.

20       It doesn't matter whether the government is concerned

21   about having to pursue extradition.  What matters is whether

22   he is a flight risk.  He is not.  We ask the Court to

23   release him and follow the recommendation of Pretrial

24   Services.  Thank you.

25           THE COURT:  All right, and Ms. Woo, any rebuttal

                                                              14

**ACE Reporting Services, Inc. (206) 467-6188**

1    or comments in response?

2         MS. WOO:  Your Honor, I would only comment with

3    respect to the claim of innocence, of course, the defendant

4    is entitled to assert that presumption of innocence.  There

5    is, at least with respect to the events on September 21,

6    2005, there was surveillance of his helicopter arriving in

7    the United States, removal and then seizure of the

8    marijuana, and then immediately after he arrives back in

9    Canada.  He is the person who is arrested on that same day

10   in the same helicopter with the items that I have already

11   mentioned, so at least with respect to that, I think that

12   the Court can weigh the evidence in terms of the nature of

13   the offense, and certainly the government considers this to

14   be a very serious offense, which is why we have a mandatory

15   minimum.

16        With respect to the extradition proceedings, in

17   reviewing the file documents that I have, it appears that

18   the government initiated extradition shortly after the

19   indictment was returned in May of 2006, so as the Court has

20   noted, this has been a matter that has been pending for many

21   years, and we are of course not contesting that the

22   defendant has a right to assert his -- the legal process up

23   in Canada, but we are concerned about the fact that he does

24   have the ability, the access and the training to be able to

25   keep himself away from the United States, if he chose to.

1    And I am not contesting that he was in compliance in Canada;

2    what I am concerned about is whether or not he will

3    voluntarily make himself available in the United States, and

4    that based on all of the factors that we have taken into

5    consideration, we are not confident that he will do that in

6    the future.

7         THE COURT:  All right, anything to add from US

8    Pretrial Services?

9         MR. McTIGHE:  No, Your Honor.

10        THE COURT:  So Mr. Rosenau, difficult case but I

11   am going to fashion an appearance bond.  I am not going to

12   ding you for exercising your right to contest extradition --

13   it is your legal right -- and I do think that to your favor,

14   while you were facing the extradition proceeding, and

15   knowing that you could be sent back to this country, as your

16   lawyer says, knowing that the boom was lowering and

17   lowering, you didn't run away.  You turned yourself in, and

18   here you are before this court.

19        So I will order that you be released on supervision.

20   You are working and living in British Columbia; is that

21   correct?

22        THE DEFENDANT:  Yes.

23        THE COURT:  So I am going to restrict your travel

24   to that province, where you live, and to this federal

25   district, here to Seattle, but only for the purpose of

16

1    court.  I mean you shouldn't be coming here for other

2    purposes, like a vacation or just for fun.

3              THE DEFENDANT:  I understand.

4              THE COURT:  You obviously will have court

5    appearances to make, and you will have to limit it only to

6    that.

7         While you are out, you have to maintain good conduct --

8    whether it is Canadian laws or our laws, state, local,

9    federal, national laws, you should maintain good conduct.

10        Is there a travel document that was already confiscated

11   when he turned himself in?

12             MR. PLATT:  No, Your Honor, it is an expired --

13   expired passport, and I think the arrangement with Pretrial

14   Services is that will be surrendered if he is released.

15             THE COURT:  All right.

16             MR. PLATT:  We can make those arrangements.

17             THE COURT:  Do you have it already or do you know?

18             MR. PLATT:  It would be -- I don't have the

19   authority.  It would be in his house up in Canada and when I

20   talked to Pretrial Services this morning, they indicated

21   that it would be acceptable to them if he were directed to

22   return that -- or turn that into them.  We could help with

23   those arrangements.

24             THE COURT:  All right.

25        Okay, so and in terms of a surrender date, we should

17

1    have a date no later than, because I don't want that just to

2    be open-ended.

3         There is, of course, one sort of potential glitch in

4    that, because you are not a US citizen, we will -- Mr. Platt

5    and Ms. Woo, I don't know if you already know the situation,

6    will he have to process through immigration before actually

7    being released?

8         I know in the past there have been some defendants who

9    the Court releases, but it might take five days, it might

10   take 10 days, it might take three weeks to actually process

11   through ICE before they are actually returned to their home

12   country.  I don't know if either of you are aware of the

13   situation?

14         MS. WOO:  My understanding is if he has the

15   Court's appearance bond -- I don't know what form of ID he

16   has; generally, when Canadians report to court, they do

17   bring their passport, whether expired or not, so I am

18   surprised he didn't have that with him, but for his return

19   to Canada, he needs to have a form of identification.  If he

20   does not have that, then he will need to make arrangements

21   to have that before he can get through the border.

22         THE COURT:  He probably has his driver's license

23   or some kind of local --

24         MS. WOO:  Okay.

25         THE COURT:  But I guess my question was in terms

18

1    of setting a date by which he has to turn in his expired

2    passport, is that when I enter an order of release on this

3    criminal matter, that will release him on the criminal

4    matter.  But because he is not a US citizen, I don't even

5    know whether -- or whether anyone knows whether there is

6    some other kind of immigration hold, because if there is, it

7    could delay his return to his own country.

8              MS. WOO:  I am not aware of any ICE detainer.

9              THE COURT:  Okay, well why don't we do this:  I

10   will set a date, and how much time would be a reasonable

11   timeframe to submit his passport?

12             MR. PLATT:  I am trying to recall the dates.

13             (Brief pause in proceedings)

14             THE COURT:  All right, so that would be no later

15   than May 18.

16             MR. PLATT:  I'm sorry, Your Honor, I was

17   looking --

18             THE COURT:  Okay, so what we will do is we will

19   surrender your expired passport no later than May 18 to the

20   US Pretrial Services.  If we need to change that date

21   because there is some kind of immigration hold up, I am sure

22   the parties will let me know and we can make that

23   adjustment.

24             MR. PLATT:  Your Honor, there is one wrinkle here,

25   and this was actually raised in the interview with Pretrial

                                                              19

**ACE Reporting Services, Inc. (206) 467-6188**

1   Services this morning where I was present.

2        Mr. Rosenau indicated that his passport was expired and

3   told Mr. Dotson that.  If he had it, it is at his house, but

4   he is not totally sure that he still even has it, so that

5   does present a little bit of a problem.

6        I would have no fashioning the order that he be ordered

7   to turn his passport in if he has one, and notify the

8   authorities if he is unable to locate that.  It is expired;

9   he doesn't travel much.

10        THE COURT:  All right, why don't we do it this

11   way:  If you have a passport, expired or otherwise, you need

12   to turn it in.  If you don't -- if you can't find it, then

13   submit an affidavit to Ms. Busic saying, "I don't have my

14   passport; I cannot find it, or it is lost, or is gone."

15        MR. PLATT:  I can arrange that through his counsel

16   up there.

17        MS. WOO:  Your Honor, I do have an additional

18   request related to travel, because clearly he -- in our case

19   he was traveling to the United States and was not using a

20   passport, was avoiding the customs ports of entry, so

21   regardless of whether he has a passport or not, he has the

22   ability, he had the ability to travel freely

23   internationally.

24        It is not clear to me if he has a pilot's license.  If

25   he does, I would ask that he surrender that; that he not be

20

1      allowed to fly any aircraft, any helicopters, anything like

2      that as part of his condition of his bond.

3              THE COURT:  All right.

4              MS. WOO:  Of his bond condition, as well.

5              THE COURT:  Mr. Platt, do you have any objection

6      to that, no flying restriction?

7              MR. PLATT:  Your Honor, Mr. Rosenau has explained

8      to me that he does not have a pilot's license at this time,

9      and our position is simply ordering him not to leave --

10             THE COURT:  Well, if you don't have a license,

11     there is none to surrender, but I will include that as a

12     condition:  No operation of aircraft of any kind.

13             MR. PLATT:  No objection.

14             MS. WOO:  Thank you.

15             THE COURT:  Mr. Rosenau, you also will have to

16     maintain your residence; not change without preapproval of

17     your supervising officer.  And you also shall not possess

18     any dangerous weapons, you know, firearms, explosives,

19     bullets, anything like that.  Maintain your employment.  And

20     if you become unemployed, you know, actively look for

21     employment.

22         If you are financially able to contribute to the costs

23     of your supervision, you will be asked to do so, and

24     obviously if you don't, you won't have to.

25         Within 24 hours of your release, you need to contact

**ACE Reporting Services, Inc. (206) 467-6188**

1   the pretrial office and you will get information today as to

2   how to do that, and if you don't, that will be a violation.

3   Do you understand that?

4        And as I understand it, the pretrial office has an

5   office up at the border, and from time to time, at the

6   direction of your officer, you will be meeting at the border

7   with your US pretrial officer.

8        Do you understand that?

9              THE DEFENDANT:  Yes.

10             THE COURT:  You shall not have any contact with

11  people connected to your case, involved in your case -- even

12  if their case is over and if they have pled guilty or been

13  convicted, you're not going to be able to call them up and

14  say, "Gee, what happened in your case?"  All right?

15       You have a good lawyer.  You let your lawyer do his

16  job, do all the work, do all the investigation, but you need

17  to stay clear.  No direct or indirect contact.  Do you

18  understand that?

19             THE DEFENDANT:  Yes.

20             THE COURT:  And also any witnesses.  All right?

21  If there are any witnesses involved, you are to have no

22  contact whatsoever with them.

23       All right.  And Mr. McTighe, did I miss any of the

24  recommended conditions?

25             MR. McTIGHE:  I don't believe so, Your Honor.

22

**ACE Reporting Services, Inc. (206) 467-6188**

USA v.  Henry C. Rosenau - CR 06-157 MJP - (5/4/2011)- P. 23

1          (Brief pause in proceedings)

2          MR. PLATT:  Thank you, Your Honor.

3          THE COURT:  So Mr. Rosenau, did you have enough

4     time to go over your appearance bond with your lawyer?

5          THE DEFENDANT:  Well everything that is written

6     here, I am going to comply with.

7          THE COURT:  All right.  And you can see the very

8     first condition is you must make all of your court

9     appearances, and your bond says that there is a hearing on

10    June 27 at nine o'clock in courtroom 12B, and it is

11    important because if you willfully fail to make your court

12    appearances, the government has the power not only to say,

13    "Gee, you should be arrested immediately," but the

14    government could add additional charges for willfully

15    failing to make your court appearances you could face

16    additional imprisonment, 10 more years on top of whatever

17    you already face.  It is a very serious thing.

18         Do you understand that?

19              THE DEFENDANT:  Yes.

20              THE COURT:  Do you have any questions about any of

21    these conditions?

22              THE DEFENDANT:  No, Your Honor.

23              THE COURT:  And you promise you will follow these

24    conditions?

25              THE DEFENDANT:  Yes, Your Honor.

23

**ACE Reporting Services, Inc. (206) 467-6188**

1          THE COURT:  It seems you have good legal counsel,
2     both in this country and in Canada.  You know that if there
3     is a question, you call your lawyers immediately.  You need
4     to look before you leap.  If you have a question about
5     supervision, you will have a good supervising officer.  Just
6     call them up.  Just clear things up rather than getting into
7     trouble, all right?
8          THE DEFENDANT:  Yes.
9          THE COURT:  All right.
10     So Mr. Rosenau, I will sign the order of release and
11     this should hopefully get you on your way back home.
12     You know that -- you have gone through the extradition;
13     that is done, and when you have court, you are going to need
14     to show up.
15          THE DEFENDANT:  Don't worry.
16          THE COURT:  All right.
17     Anything further, Ms. Woo?
18          MS. WOO:  No, Your Honor.
19          MR. PLATT:  No, Your Honor.
20          THE COURT:  And Mr. Platt?  All right.  Mr.
21     Rosenau, good luck.
22          THE CLERK:  Your Honor, we are off record.
23          (End of proceedings for 5/4/2011)
24
25

CERTIFICATE

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

/Brian J. Killgore/                 November 9, 2011

AAERT Certified Electronic Court Reporter & Transcriber
License CERT*D-498

ACE Reporting Services, Inc.
720 Queen Anne Ave. N. #311
Seattle, WA 98109
(206) 467-6188