# EXHIBIT 1

| 100TH CONGRESS 1d Session | SENATE | TREATY DOC. 100-14 |
| --- | --- | --- |

# TREATY WITH CANADA ON MUTUAL LEGAL ASSISTANCE IN CRIMINAL MATTERS

## MESSAGE

FROM

# THE PRESIDENT OF THE UNITED STATES

TRANSMITTING

THE TREATY BETWEEN THE GOVERNMENT OF THE UNITED STATES OF AMERICA AND THE GOVERNMENT OF CANADA ON MUTUAL LEGAL ASSISTANCE IN CRIMINAL MATTERS, WITH ANNEX, SIGNED AT QUEBEC CITY ON MARCH 18, 1985



FEBRUARY 22, 1988.—Treaty was read the first time, and together with the accompanying papers, referred to the Committee on Foreign Relations and ordered to be printed for the use of the Senate

U.S. GOVERNMENT PRINTING OFFICE
WASHINGTON : 1988

19-118

Cited:  Senate Executive Report 100-14
        (100th Congress; 2d Session)

## LETTER OF TRANSMITTAL

THE WHITE HOUSE, *February 22, 1988.*

*To the Senate of the United States:*

With a view to receiving the advice and consent of the Senate to ratification, I transmit herewith the Treaty between the Government of the United States of America and the Government of Canada on Mutual Legal Assistance in Criminal Matters, with Annex, signed at Quebec City on March 18, 1985. I transmit also, for the information of the Senate, the report of the Department of State with respect to the Treaty.

The Treaty is one of a series of modern mutual legal assistance treaties being negotiated by the United States in order to counter more effectively criminal activities. The Treaty should be an effective tool to prosecute a wide variety of modern criminals including members of drug cartels, "white-collar criminals," and terrorists. The Treaty is self-executing and utilizes existing statutory authority.

The Treaty provides for a broad range of cooperation in criminal matters. Mutual assistance available under the treaty includes: (1) the taking of testimony or statements of witnesses; (2) the provision of documents, records and evidence; (3) the execution of requests for searches and seizures; (4) the serving of documents; and (5) the provision of assistance in proceedings relating to the forfeiture of the proceeds of crime, restitution to the victims of crime, and the collection of fines imposed as a sentence in a criminal prosecution.

I recommend that the Senate give early and favorable consideration to the Treaty and give its advice and consent to ratification.

RONALD REAGAN.

(III)

TREATY BETWEEN THE GOVERNMENT OF THE UNITED STATES OF AMERICA AND THE GOVERNMENT OF CANADA ON MUTUAL LEGAL ASSISTANCE IN CRIMINAL MATTERS

The Government of the United States of America and the Government of Canada,

Desiring to improve the effectiveness of both countries in the investigation, prosecution and suppression of crime through cooperation and mutual assistance in law enforcement matters,

Have agreed as follows:

## ARTICLE I

### *Definitions*

For the purposes of this Treaty:

"Central Authority" means—

(a) for Canada, the Minister of Justice or officials designated by him;

(b) for the United States of America, the Attorney General or officials designated by him;

"Competent Authority" means any law enforcement authority with responsibility for matters related to the investigation or prosecution of offenses;

"Offence" means—

(a) for Canada, an offense created by a law of Parliament that may be prosecuted upon indictment, or an offence created by the Legislature of a Province specified in the Annex;

(b) for the United States, an offence for which the statutory penalty is a term of imprisonment of one year or more, or an offence specified in the Annex;

"Public Interest" means any substantial interest related to national security or other essential public policy;

"Request" means a request made under this Treaty.

## ARTICLE II

### *Scope of Application*

1. The Parties shall provide, in accordance with the provisions of this Treaty, mutual legal assistance in all matters relating to the investigation, prosecution and suppression of offences.

2. Assistance shall include:

(a) examining objects and sites;

(b) exchanging information and objects;

(c) locating or identifying persons;

(d) serving documents;

(e) taking the evidence of persons;

(f) providing documents and records;

(1)

2

(g) transferring persons in custody;
(h) executing requests for searches and seizures.
3. Assistance shall be provided without regard to whether the conduct under investigation or prosecution in the Requesting State constitutes an offence or may be prosecuted by the Requested State.
4. This Treaty is intended solely for mutual legal assistance between the Parties. The provisions of this Treaty shall not give rise to a right on the part of a private party to obtain, suppress or exclude any evidence or to impede the execution of a request.

## ARTICLE III

### Other Assistance

1. The Parties, including their competent authorities, may provide assistance pursuant to other agreements, arrangements or practices.
2. The Central Authorities may agree, in exceptional circumstances, to provide assistance pursuant to this Treaty in respect of illegal acts that do not constitute an offence within the definition of offence in Article I.

## ARTICLE IV

### Obligation To Request Assistance

1. A Party seeking to obtain documents, records or other articles known to be located in the territory of the other Party shall request assistance pursuant to the provisions of this Treaty, except as otherwise agreed pursuant to Article III(1).
2. Where denial of a request or delay in its execution may jeopardize successful completion of an investigation or prosecution, the Parties shall promptly consult, at the instance of either Party, to consider alternative means of assistance.
3. Unless the Parties otherwise agree, the consultations shall be considered terminated 30 days after they have been requested, and the Parties' obligations under this Article shall then be deemed to have been fulfilled.

## ARTICLE V

### Limitations on Compliance

1. The Requested State may deny assistance to the extent that—
(a) the request is not made in conformity with the provisions of this Treaty; or
(b) execution of the request is contrary to its public interest, as determined by its Central Authority.
2. The Requested State may postpone assistance if execution of the request would interfere with an ongoing investigation or prosecution in the Requested State.
3. Before denying or postponing assistance pursuant to this Article, the Requested State, through its Central Authority—
(a) shall promptly inform the Requesting State of the reason for considering denial or postponement; and

3

(b) shall consult with the Requesting State to determine whether assistance may be given subject to such terms and conditions as the Requested State deems necessary.

4. If the Requesting State accepts assistance subject to the terms and conditions referred to in paragraph 3(b), it shall comply with said terms and conditions.

## ARTICLE VI

### Requests

1. Requests shall be made by the Central Authority of the Requesting State directly to the Central Authority of the Requested State.

2. Requests shall be made in writing where compulsory process is required in the Requested State or where otherwise required by the Requested State. In urgent circumstances, such requests may be made orally, but shall be confirmed in writing forthwith.

3. A request shall contain such information as the Requested State requires to execute the request, including—

(a) the name of the competent authority conducting the investigation or proceeding to which the request relates;

(b) the subject matter and nature of the investigation or proceeding to which the request relates;

(c) a description of the evidence, information or other assistance sought;

(d) the purpose for which the evidence, information or other assistance is sought, and any time limitations relevant thereto; and

(e) requirements for confidentiality.

4. The Courts of the Requesting State shall be authorized to order lawful disclosure of such information as is necessary to enable the Requested State to execute the request.

5. The Requested State shall use its best efforts to keep confidential a request and its contents except when otherwise authorized by the Requesting State.

## ARTICLE VII

### Execution of Requests

1. The Central Authority of the Requested State shall promptly execute the request or, when appropriate, transmit it to the competent authorities, who shall make best efforts to execute the request. The Courts of the Requested State shall have jurisdiction to issue subpoenas, search warrants or other orders necessary to execute the request.

2. A request shall be executed in accordance with the law of the Requested State and, to the extent not prohibited by the law of the Requested State, in accordance with the directions stated in the request.

## ARTICLE VIII

*Costs*

1. The Requested State shall assume all ordinary expenses of executing a request within its boundaries, except—
    (a) fees of experts;
    (b) expenses of translation and transcription; and
    (c) travel and incidental expenses of persons travelling to the Requested State to attend the execution of a request.

2. The Requesting State shall assume all ordinary expenses required to present evidence from the Requested State in the Requesting State, including—
    (a) travel and incidental expenses of witnesses travelling to the Requesting State, including those of accompanying officials; and
    (b) fees of experts.

3. If during the execution of the request it becomes apparent that expenses of an extraordinary nature are required to fulfill the request, the Parties shall consult to determine the terms and conditions under which the execution of the request may continue.

4. The Parties shall agree, pursuant to Article XVIII, on practical measures as appropriate for the reporting and payment of costs in conformity with this Article.

## ARTICLE IX

*Limitations of Use*

1. The Central Authority of the Requested State may require, after consultation with the Central Authority of the Requesting State, that information or evidence furnished be kept confidential or be disclosed or used only subject to terms and conditions it may specify.

2. The Requesting State shall not disclose or use information or evidence furnished for purposes other than those stated in the request without the prior consent of the Central Authority of the Requested State.

3. Information or evidence made public in the Requesting State in accordance with paragraph 2 may be used for any purpose.

## ARTICLE X

*Location or Identity of Persons*

The competent authorities of the Requested State shall make best efforts to ascertain the location and identity of persons specified in the request.

## ARTICLE XI

*Service of Documents*

1. The Requested State shall serve any document transmitted to it for the purpose of service.

2. The Requesting State shall transmit a request for the service of a document pertaining to a response or appearance in the Re-

5

questing State within a reasonable time before the scheduled response or appearance.

3. A request for the service of a document pertaining to an appearance in the Requesting State shall include such notice as the Central Authority of the Requesting State is reasonably able to provide of outstanding warrants or other judicial orders in criminal matters against the person to be served.

4. The Requested State shall return a proof of service in the manner required by the Requesting State or in any manner agreed upon pursuant to Article XVIII.

ARTICLE XII

*Taking of Evidence in the Requested State*

1. A person requested to testify and produce documents, records or other articles in the Requested State may be compelled by subpoena or order to appear and testify and produce such documents, records and other articles, in accordance with the requirements of the law of the Requested State.

2. Every person whose attendance is required for the purpose of giving testimony under this Article is entitled to such fees and allowances as may be provided for by the law of the Requested State.

ARTICLE XIII

*Government Documents and Records*

1. The Requested State shall provide copies of publicly available documents and records of government departments and agencies.

2. The Requested State may provide copies of any document, record or information in the possession of a government department or agency, but not publicly available, to the same extent and under the same conditions as would be available to its own law enforcement and judicial authorities.

ARTICLE XIV

*Certification and Authentication*

1. Copies of documents and records provided under Article XII or Article XIII shall be certified or authenticated in the manner required by the Requesting State or in any manner agreed upon pursuant to Article XVIII.

2. No document or record otherwise admissible in evidence in the Requesting State, certified or authenticated under paragraph 1, shall require further certification or authentication.

ARTICLE XV

*Transfer of Persons in Custody*

1. A person in custody in the Requested State whose presence is requested in the Requesting State for the purposes of this Treaty shall be transferred from the Requested State to the Requesting State for that purpose, provided the person in custody consents and the Requested State has no reasonable basis to deny the request.

6

2. The Requesting State shall have the authority and duty to keep the person in custody at all times and return the person to the custody of the Requested State immediately after the execution of the request.

## ARTICLE XVI

### Search and Seizure

1. A request for search and seizure shall be executed in accordance with the requirements of the law of the Requested State.

2. The competent authority that has executed a request for search and seizure shall provide such certifications as may be required by the Requesting State concerning, but not limited to, the circumstances of the seizure, identity of the item seized and integrity of its condition, and continuity of possession thereof.

3. Such certifications may be admissible in evidence in a judicial proceeding in the Requesting State as proof of the truth of the matters certified therein, in accordance with the law of the Requesting State.

4. No item seized shall be provided to the Requesting State until that State has agreed to such terms and conditions as may be required by the Requested State to protect third party interests in the item to be transferred.

## ARTICLE XVII

### Proceeds of Crime

1. The Central Authority of either Party shall notify the Central Authority of the other Party of proceeds of crime believed to be located in the territory of the other Party.

2. The Parties shall assist each other to the extent permitted by their respective laws in proceedings related to the forfeiture of the proceeds of crime, restitution to the victims of crime, and the collection of fines imposed as a sentence in a criminal prosecution.

## ARTICLE XVIII

### Improvement of Assistance

1. The Parties agree to consult as appropriate to develop other specific agreements or arrangements, formal or informal, on mutual legal assistance.

2. The Parties may agree on such practical measures as may be necessary to facilitate the implementation of this Treaty.

## ARTICLE XIX

### Ratification and Entry Into Force

1. This Treaty shall be ratified, and the instruments of ratification shall be exchanged at Washington, D.C., as soon as possible.

2. This Treaty shall enter into force upon the exchange of instruments of ratification.

7

## Article XX

### *Termination*

Either Party may terminate this Treaty by giving written notice to the other Party at any time. Termination shall become effective six months after receipt of such notice.

### *Annex*

The definition of offence includes offences created by the Legislature of a Province of Canada or offences under the law of the United States in the following categories:

(1) securities;

(2) wildlife protection;

(3) environmental protection; and

(4) consumer protection.

IN WITNESS WHEREOF the undersigned, being duly authorized thereto by their respective Governments, have signed this Treaty.

DONE in duplicate, in the English and French languages, each language version being equally authentic, at Quebec City, this 18th day of March, 1985.

RONALD REAGAN,

For the Government of the United States of America.

BRIAN MULRONEY,

For the Government of Canada.