EXHIBIT 1



Department of Justice        Ministère de la Justice
Canada                      Canada

International Assistance Group/Service d'entraide internationale        Telephone: 613-948-3018
284 rue Wellington Street                                                Facsimile: 613-957-8412
Ottawa, Ontario  K1A 0H8                                    Email: carol.belisle@justice.gc.ca

February 24, 2012

**BY EMAIL**

Office of International Affairs
U.S. Department of Justice
Bond Building, 8th Floor
1301 New York Ave:, N.W.
Washington, D.C.
U.S.A.  20005

**Attention:    Roman Chaban**

Dear Sir:

**Re:        URGENT Request for Assistance to Canada from the United States in the
             Matter of Henry Carl ROSENAU
             Your Reference:  182-38867
             Our Reference:  8550-R44**

We are in receipt of your request for assistance dated February 9, 2012, which is made pursuant
to *The Treaty between the Government of Canada and the Government of the United States of
America on Mutual Legal Assistance in Criminal Matters.*

The request relates to allegations of manufacture, distribution, dispensing, or possessing with
intent to manufacture, distribute, or dispense a controlled substance; importation of controlled
substances; and attempt and conspiracy.

The American authorities are requesting:
- The testimony of fifteen (15) Royal Canadian Mounted Police ("RCMP") officers at the
  trial in this matter in the US;
- The testimony of a Canada Border Services Agency ("CBSA") officer at the trial;
- Records from CBSA;
- The testimony of a Transport Canada ("TC") officer at the trial;
- Records from TC;
- The compelled depositions of two witnesses; and
- Permission for the prosecutors, the investigator, the defendant's lawyer and the defendant
  to attend the deposition in Canada.

For reasons of public interest we cannot accede to your request to have the defendant personally
attend the witness depositions in Canada.  It is however possible, pursuant to Canadian law, for
Mr. **ROSENAU** to participate via video link. At your earliest convenience, kindly indicate
whether the US authorities may be interested in pursuing this possibility.

# Canadä

- 2 -

Another alternative would be for the witnesses to provide testimony at trial by videolink from a location in Canada, thereby eliminating the need for the US authorities to travel to Canada. Kindly indicate whether the US authorities would be interested in pursuing this possibility.

Further, upon review of your request, some questions have arisen. It would be helpful if you could provide answers to the following:

1. Could you confirm that the US authorities are not seeking the testimony of RCMP Sergeant Rob Jones? He is mentioned on page 4 as having information material to the case, however, his name is not included in the list of names of officers from whom testimony is requested in the request portion (nor is there a subpoena attached in his name).

2. The request states on page 5 that RCMP member Robert Young has information material to the case. Could you tell us what specific information he is expected to be able to provide? It does not appear to have been specified in the request.

3. Could you confirm the spelling for RCMP member Rick Poulson/Paulson? It is spelled in those two different variations in the request. Please confirm the spelling and that the references are all in relation to one individual.

4. Your request asks that two witnesses be required to attend depositions in Canada. However, it also states that one of the witnesses, Kip Whelpley, is a cooperating witness and is willing to testify. Could you confirm that it is necessary for him to be compelled to attend the deposition?

5. Further, the US authorities request that Canada allow the depositions to be video recorded. Could you confirm whether the US authorities will bring the necessary equipment with them to videotape the depositions?

6. The request states that RCMP Corporal Dennis Piper reviewed and saved surveillance videotape which is relevant to this matter. Please confirm that you are not seeking the surveillance videotape, but simply Cpl. Piper's testimony, notes, and papers in relation to his review of it. Should the videotape itself be sought, kindly indicate the certification requirements for this evidence.

7. Could you confirm what information Cpl. Piper is expected to have information in relation to the events that occurred on September 21, 2005? Although he is not mentioned in the factual description for that date, at the bottom of the section, it is indicated that he has information material to the case.

8. Further, we understand that Cpl. Piper had some role in relation to the GPS device that was seized from aircraft C-FBKM (C-FRKM) on September 21, 2005. Please confirm that you are not seeking the GPS device, but simply Cpl. Piper's testimony, notes, and papers in relation to his review of the data obtained from the GPS device.

9. Regarding the information sought in relation to the aircraft, two of the helicopters are only mentioned in the request portion (C-GTAK and C-GZAR). Could you indicate the

basis for belief that records in the possession of TC with respect to the aircraft C-GTAK and C-GZAR will afford evidence of the commission of the alleged offences in the US?

10. We note that although aircraft C-GAIA is referenced in the request (page 6), the US authorities do not appear to be seeking records in relation to that aircraft. Could you confirm that this is correct? As the US authorities are seeking the testimony of an officer who observed the flight of the aircraft on August 23, 2005 (RCMP Constable Brent Brooks), is it believed to have been used in the commission of the alleged offences?

11. Do the US authorities request that the witnesses bring the requested records with them when they attend to testify in the US?

Please be advised that we have requested that the RCMP locate the RCMP members whose testimony is sought to confirm the upcoming trial date. Further, we are sending the request to CBSA, TC, and to the appropriate authorities in Alberta and British Columbia for review, subject to the questions above.

We look forward to receiving your response and trust this will be satisfactory. If you have any questions, please do not hesitate to contact me.

Yours truly,

Carol Bélisle
A/Senior Counsel
International Assistance Group, Litigation Branch

Encl.

CB/td

# EXHIBIT 2

SUPERVISORS CHECKLIST FOR THE REPORT TO PROSECUTOR
--------------------------------------------------------

```
Accused:  LY, BILL                              Case No: 09112050
Primary Investigator:  DET KD CARRIERE          Reg#:  3281
                       TARGETED ENFORCEMENT UNIT       403-428-8390
Inspector: INSP C O'BRIEN          Reg#: 3124
```
--------------------------------------------------------

|  | Attache | |
|---|---|---|
| Report to Prosecutor (printout from CASE) | Y | N |
| All Witness Statements (always required) | Y | N |
| Statements of Other Persons with Information | Y | N |
| Police Notes and Will State (always required) | Y | N |
| Prisoner Observation Log (always required) | Y | N |

--------------------------------------------------------

| Accused Statement:  Written ___    Copy (always required) | Y | N |
|---|---|---|
| Oral ___    Copy of Notes (always required) | Y | N |
| Copy of Tape | Y | N |
| Summary of Taped Statement (always required) | Y | N |

--------------------------------------------------------

Photographs or Videos (describe: e.g. line-up, scene, surveillance)

| 1. _____ | Y | N |
|---|---|---|
| 2. _____ | Y | N |
| 3. _____ | Y | N |

--------------------------------------------------------

| Y.O.A. | Y | N |
|---|---|---|
| If Yes    Notice to Parent | Y | N |
| Waiver | Y | N |

--------------------------------------------------------

| Driving Offence | Y | N |
|---|---|---|
| If Required: Suspended Driver (MOVES printout) | Y | N |
| Breath/Blood Certificates (incl. check sheet) | Y | N |
| Second Offender Notice | Y | N |
| Accident Reports | Y | N |
| Event Chronology (Criminal Driving Offences Only) | Y | N |

--------------------------------------------------------

| Other Describe: (probation order, release documentation, affidavit) | Y | N |
|---|---|---|
| 1. _____ | Y | N |
| 2. _____ | Y | N |
| 3. _____ | Y | N |

--------------------------------------------------------

| CPIC/Criminal Record (attach even if negative) | Y | N |
|---|---|---|

--------------------------------------------------------

Explain any Missing Documentation/Remarks:_____

_____

_____

```
Supervisors Signature:          Reg#:              Date:
```

```
POL3281
Mail Code: 0730                          2012/03/13 06:30 Page:  1
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
                REPORT TO PROSECUTOR COVER SHEET      Complaint#: 09112050
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~


Complaint#:      09112050


Accused:         LY, BILL

Charges:         POSSESSION OF RESTRICTED/PROHIBITED WEAPON WITH AMMUNITION
                 POSSESSION OF RESTRICTED/PROHIBITED WEAPON WITH AMMUNITION
                 POSSESSION OF RESTRICTED/PROHIBITED WEAPON WITH AMMUNITION
                 POSSESSION OF WEAPON OR IMITATION FOR A DANGEROUS PURPOSE
                 POSSESSION OF WEAPON OR IMITATION FOR A DANGEROUS PURPOSE
                 POSSESSION OF WEAPON OR IMITATION FOR A DANGEROUS PURPOSE
                 POSSESSION OF WEAPON OR IMITATION FOR A DANGEROUS PURPOSE
                 POSSESSION OF WEAPON OR IMITATION FOR A DANGEROUS PURPOSE
                 UNAUTHORIZED POSSESSION OF FIREARM/WEAPON/AMMUNITION IN MOTOR
                 UNAUTHORIZED POSSESSION OF FIREARM/WEAPON/AMMUNITION IN MOTOR
                 UNAUTHORIZED POSSESSION OF FIREARM/WEAPON/AMMUNITION IN MOTOR
                 UNAUTHORIZED POSSESSION OF FIREARM/WEAPON/AMMUNITION IN MOTOR
                 CONTRAVENTION OF FIREARMS ACT RE: STORAGE, HANDLING, TRANSPOR
                 CONTRAVENTION OF FIREARMS ACT RE: STORAGE, HANDLING, TRANSPOR
                 CONTRAVENTION OF FIREARMS ACT RE: STORAGE, HANDLING, TRANSPOR
                 CONTRAVENTION OF FIREARMS ACT RE: STORAGE, HANDLING, TRANSPOR
                 CONTRAVENTION OF FIREARMS ACT RE: STORAGE, HANDLING, TRANSPOR
                 POSSESS FIREARM KNOWING SERIAL NUMBER ALTERED, DEFACED OR REM
                 KNOWING POSSESSION OF PROHIBITED/RESTRICTED WEAPON OTHER THAN
                 KNOWING POSSESSION OF PROHIBITED/RESTRICTED WEAPON OTHER THAN
                 KNOWING POSSESSION OF PROHIBITED/RESTRICTED WEAPON OTHER THAN
                 UNAUTHORIZED POSSESSION OF FIREARM
                 UNAUTHORIZED POSSESSION OF FIREARM
                 UNAUTHORIZED POSSESSION OF FIREARM
                 UNAUTHORIZED POSSESSION OF FIREARM
                 POSSESSION OF RESTRICTED/PROHIBITED WEAPON WITH AMMUNITION
                 UNAUTHORIZED POSSESSION OF FIREARM

Accused:         HA, WAYNE

Charges:         POSSESSION OF RESTRICTED/PROHIBITED WEAPON WITH AMMUNITION
                 POSSESSION OF RESTRICTED/PROHIBITED WEAPON WITH AMMUNITION
                 POSSESSION OF RESTRICTED/PROHIBITED WEAPON WITH AMMUNITION
                 POSSESSION OF RESTRICTED/PROHIBITED WEAPON WITH AMMUNITION
                 POSSESSION OF WEAPON OR IMITATION FOR A DANGEROUS PURPOSE
                 POSSESSION OF WEAPON OR IMITATION FOR A DANGEROUS PURPOSE
                 POSSESSION OF WEAPON OR IMITATION FOR A DANGEROUS PURPOSE
                 POSSESSION OF WEAPON OR IMITATION FOR A DANGEROUS PURPOSE
                 POSSESSION OF WEAPON OR IMITATION FOR A DANGEROUS PURPOSE
                 UNAUTHORIZED POSSESSION OF FIREARM/WEAPON/AMMUNITION IN MOTOR
                 UNAUTHORIZED POSSESSION OF FIREARM/WEAPON/AMMUNITION IN MOTOR
                 UNAUTHORIZED POSSESSION OF FIREARM/WEAPON/AMMUNITION IN MOTOR
                 UNAUTHORIZED POSSESSION OF FIREARM/WEAPON/AMMUNITION IN MOTOR
                 CONTRAVENTION OF FIREARMS ACT RE: STORAGE, HANDLING, TRANSPOR
                 CONTRAVENTION OF FIREARMS ACT RE: STORAGE, HANDLING, TRANSPOR
                 CONTRAVENTION OF FIREARMS ACT RE: STORAGE, HANDLING, TRANSPOR
```

```
POL3281
Mail Code: 0730                              2012/03/13 06:30 Page:  2
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
            REPORT TO PROSECUTOR COVER SHEET      Complaint#: 09112050
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
            CONTRAVENTION OF FIREARMS ACT RE: STORAGE, HANDLING, TRANSPOR
            CONTRAVENTION OF FIREARMS ACT RE: STORAGE, HANDLING, TRANSPOR
            POSSESS FIREARM KNOWING SERIAL NUMBER ALTERED, DEFACED OR REM
            KNOWING POSSESSION OF PROHIBITED/RESTRICTED WEAPON OTHER THAN
            KNOWING POSSESSION OF PROHIBITED/RESTRICTED WEAPON OTHER THAN
            KNOWING POSSESSION OF PROHIBITED/RESTRICTED WEAPON OTHER THAN
            UNAUTHORIZED POSSESSION OF FIREARM
            UNAUTHORIZED POSSESSION OF FIREARM
            UNAUTHORIZED POSSESSION OF FIREARM
            UNAUTHORIZED POSSESSION OF FIREARM
            UNAUTHORIZED POSSESSION OF FIREARM
            UNAUTHORIZED POSSESSION OF FIREARM/WEAPON/AMMUNITION IN MOTOR

Accused:    MIRABACK, ZACHARY MEGID

Charges:    POSSESSION OF RESTRICTED/PROHIBITED WEAPON WITH AMMUNITION
            POSSESSION OF RESTRICTED/PROHIBITED WEAPON WITH AMMUNITION
            POSSESSION OF RESTRICTED/PROHIBITED WEAPON WITH AMMUNITION
            POSSESSION OF RESTRICTED/PROHIBITED WEAPON WITH AMMUNITION
            POSSESSION OF WEAPON OR IMITATION FOR A DANGEROUS PURPOSE
            POSSESSION OF WEAPON OR IMITATION FOR A DANGEROUS PURPOSE
            POSSESSION OF WEAPON OR IMITATION FOR A DANGEROUS PURPOSE
            POSSESSION OF WEAPON OR IMITATION FOR A DANGEROUS PURPOSE
            POSSESSION OF WEAPON OR IMITATION FOR A DANGEROUS PURPOSE
            POSSESS FIREARM KNOWING SERIAL NUMBER ALTERED, DEFACED OR REM
            UNAUTHORIZED POSSESSION OF FIREARM/WEAPON/AMMUNITION IN MOTOR
            UNAUTHORIZED POSSESSION OF FIREARM/WEAPON/AMMUNITION IN MOTOR
            UNAUTHORIZED POSSESSION OF FIREARM/WEAPON/AMMUNITION IN MOTOR
            CONTRAVENTION OF FIREARMS ACT RE: STORAGE, HANDLING, TRANSPOR
            CONTRAVENTION OF FIREARMS ACT RE: STORAGE, HANDLING, TRANSPOR
            CONTRAVENTION OF FIREARMS ACT RE: STORAGE, HANDLING, TRANSPOR
            CONTRAVENTION OF FIREARMS ACT RE: STORAGE, HANDLING, TRANSPOR
            CONTRAVENTION OF FIREARMS ACT RE: STORAGE, HANDLING, TRANSPOR
            KNOWING POSSESSION OF PROHIBITED/RESTRICTED WEAPON OTHER THAN
            KNOWING POSSESSION OF PROHIBITED/RESTRICTED WEAPON OTHER THAN
            KNOWING POSSESSION OF PROHIBITED/RESTRICTED WEAPON OTHER THAN
            POSSESSION OF WEAPON CONTRARY TO PROHIBITION ORDER
            POSSESSION OF WEAPON CONTRARY TO PROHIBITION ORDER
            POSSESSION OF WEAPON CONTRARY TO PROHIBITION ORDER
            POSSESSION OF WEAPON CONTRARY TO PROHIBITION ORDER
            POSSESSION OF WEAPON CONTRARY TO PROHIBITION ORDER
            UNAUTHORIZED POSSESSION OF FIREARM
            UNAUTHORIZED POSSESSION OF FIREARM
            UNAUTHORIZED POSSESSION OF FIREARM
            UNAUTHORIZED POSSESSION OF FIREARM
            UNAUTHORIZED POSSESSION OF FIREARM
            UNAUTHORIZED POSSESSION OF FIREARM/WEAPON/AMMUNITION IN MOTOR
            UNAUTHORIZED POSSESSION OF FIREARM/WEAPON/AMMUNITION IN MOTOR

Accused:    NAVOS, CHRISTIAN JON

Charges:    POSSESSION OF RESTRICTED/PROHIBITED WEAPON WITH AMMUNITION
```

POL3281
Mail Code: 0730                                    2012/03/13 06:30 Page:  3
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
            REPORT TO PROSECUTOR COVER SHEET     Complaint#: 09112050
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
            POSSESSION OF RESTRICTED/PROHIBITED WEAPON WITH AMMUNITION
            POSSESSION OF RESTRICTED/PROHIBITED WEAPON WITH AMMUNITION
            POSSESSION OF RESTRICTED/PROHIBITED WEAPON WITH AMMUNITION
            POSSESSION OF WEAPON OR IMITATION FOR A DANGEROUS PURPOSE
            POSSESSION OF WEAPON OR IMITATION FOR A DANGEROUS PURPOSE
            POSSESSION OF WEAPON OR IMITATION FOR A DANGEROUS PURPOSE
            POSSESSION OF WEAPON OR IMITATION FOR A DANGEROUS PURPOSE
            POSSESSION OF WEAPON OR IMITATION FOR A DANGEROUS PURPOSE
            UNAUTHORIZED POSSESSION OF FIREARM/WEAPON/AMMUNITION IN MOTOR
            UNAUTHORIZED POSSESSION OF FIREARM/WEAPON/AMMUNITION IN MOTOR
            UNAUTHORIZED POSSESSION OF FIREARM/WEAPON/AMMUNITION IN MOTOR
            UNAUTHORIZED POSSESSION OF FIREARM/WEAPON/AMMUNITION IN MOTOR
            CONTRAVENTION OF FIREARMS ACT RE: STORAGE, HANDLING, TRANSPOR
            CONTRAVENTION OF FIREARMS ACT RE: STORAGE, HANDLING, TRANSPOR
            CONTRAVENTION OF FIREARMS ACT RE: STORAGE, HANDLING, TRANSPOR
            CONTRAVENTION OF FIREARMS ACT RE: STORAGE, HANDLING, TRANSPOR
            CONTRAVENTION OF FIREARMS ACT RE: STORAGE, HANDLING, TRANSPOR
            POSSESS FIREARM KNOWING SERIAL NUMBER ALTERED, DEFACED OR REM
            KNOWING POSSESSION OF PROHIBITED/RESTRICTED WEAPON OTHER THAN
            KNOWING POSSESSION OF PROHIBITED/RESTRICTED WEAPON OTHER THAN
            KNOWING POSSESSION OF PROHIBITED/RESTRICTED WEAPON OTHER THAN
            UNAUTHORIZED POSSESSION OF FIREARM
            UNAUTHORIZED POSSESSION OF FIREARM
            UNAUTHORIZED POSSESSION OF FIREARM
            UNAUTHORIZED POSSESSION OF FIREARM
            UNAUTHORIZED POSSESSION OF FIREARM
            UNAUTHORIZED POSSESSION OF FIREARM/WEAPON/AMMUNITION IN MOTOR

Accused:    NGUYEN, DANG NGOC

Charges:    POSSESSION OF RESTRICTED/PROHIBITED WEAPON WITH AMMUNITION
            POSSESSION OF RESTRICTED/PROHIBITED WEAPON WITH AMMUNITION
            POSSESSION OF RESTRICTED/PROHIBITED WEAPON WITH AMMUNITION
            POSSESSION OF WEAPON OR IMITATION FOR A DANGEROUS PURPOSE
            POSSESSION OF WEAPON OR IMITATION FOR A DANGEROUS PURPOSE
            POSSESSION OF WEAPON OR IMITATION FOR A DANGEROUS PURPOSE
            POSSESSION OF WEAPON OR IMITATION FOR A DANGEROUS PURPOSE
            POSSESSION OF WEAPON OR IMITATION FOR A DANGEROUS PURPOSE
            UNAUTHORIZED POSSESSION OF FIREARM/WEAPON/AMMUNITION IN MOTOR
            UNAUTHORIZED POSSESSION OF FIREARM/WEAPON/AMMUNITION IN MOTOR
            UNAUTHORIZED POSSESSION OF FIREARM/WEAPON/AMMUNITION IN MOTOR
            UNAUTHORIZED POSSESSION OF FIREARM/WEAPON/AMMUNITION IN MOTOR
            CONTRAVENTION OF FIREARMS ACT RE: STORAGE, HANDLING, TRANSPOR
            CONTRAVENTION OF FIREARMS ACT RE: STORAGE, HANDLING, TRANSPOR
            CONTRAVENTION OF FIREARMS ACT RE: STORAGE, HANDLING, TRANSPOR
            CONTRAVENTION OF FIREARMS ACT RE: STORAGE, HANDLING, TRANSPOR
            CONTRAVENTION OF FIREARMS ACT RE: STORAGE, HANDLING, TRANSPOR
            POSSESS FIREARM KNOWING SERIAL NUMBER ALTERED, DEFACED OR REM
            KNOWING POSSESSION OF PROHIBITED/RESTRICTED WEAPON OTHER THAN
            KNOWING POSSESSION OF PROHIBITED/RESTRICTED WEAPON OTHER THAN
            KNOWING POSSESSION OF PROHIBITED/RESTRICTED WEAPON OTHER THAN
            POSSESSION OF WEAPON CONTRARY TO PROHIBITION ORDER

```
POL3281
Mail Code: 0730                                    2012/03/13 06:30 Page:  4
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
            REPORT TO PROSECUTOR COVER SHEET        Complaint#: 09112050
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
            POSSESSION OF WEAPON CONTRARY TO PROHIBITION ORDER
            POSSESSION OF WEAPON CONTRARY TO PROHIBITION ORDER
            POSSESSION OF WEAPON CONTRARY TO PROHIBITION ORDER
            POSSESSION OF WEAPON CONTRARY TO PROHIBITION ORDER
            KNOWING POSSESSION OF PROHIBITED/RESTRICTED WEAPON OTHER THAN
            KNOWING POSSESSION OF PROHIBITED/RESTRICTED WEAPON OTHER THAN
            KNOWING POSSESSION OF PROHIBITED/RESTRICTED WEAPON OTHER THAN
            KNOWING POSSESSION OF PROHIBITED/RESTRICTED WEAPON OTHER THAN
            KNOWING POSSESSION OF PROHIBITED/RESTRICTED WEAPON OTHER THAN
            POSSESSION OF RESTRICTED/PROHIBITED WEAPON WITH AMMUNITION


Offence Date:   2009/04/01

Primary Investigator:

            DET KD CARRIERE             3281
            HOMICIDE UNIT               403-428-8390
```

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
                         SYNOPSIS                    Complaint#: 09112050
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

        ON 09/04/01 AT APPROX. 1432 HRS, CALGARY POLICE RECEIVED A PHONE
CALL FROM A RESIDENT IN THE RIVERBEND AREA WHO OBSERVED 2 MALES WALKING
TOWARDS CARBURN PARK IN THE AREA NEAR 26 RIVERSIDE WY SE.  THE CALLER
STATED THAT ONE OF THE MALES WAS ATTEMPTING TO CONCEAL A RIFLE IN HIS
JACKET.

        POLICE RESPONDED AND BEGAN TO CIRCULATE THE AREA AND WHILE DOING SO
CST ROBINSON ATTENDED TO THE PARKING LOT AREA OF CARBURN PARK IN THE
8900 BLOCK OF RIVERVIEW DR SE.  A MALE APPROACHED CST ROBINSON AND BEGAN
POINTING TO THE GREEN SPACE BEHIND THE PARKING LOT STATING HE OBSERVED
TWO MALES RUNNING IN THE DIRECTION TOWARDS RIVERSIDE CL SE, ONE MALE WAS
DRESSED IN ALL BLACK CLOTHING AND APPEARED ASIAN WITH SPIKEY HAIR.

        CST SMITH LOCATED A GROUP OF 5 ASIAN MALES RUNNING NORTHBOUND OUT
OF RIVERSIDE CL SE MINUTES LATER AND FOLLOWED THEM DOWN AN ALLEY WHERE
HE APPROACHED THE GROUP BEHIND 27 RIVERSIDE CL SE AS THEY MATCHED THE
DESCRIPTION UPDATED ON THE CALL.

        CST JOHNSTON ARRIVED SHORTLY AFTER TO BACK UP CST SMITH AND BEGAN
TO QUESTION THE GROUP AS TO WHAT THEY WERE DOING IN THE AREA.  CST SMITH
DETAINED A MALE, LATER IDENTIFIED AS DANNY (DANG) NGUYEN AND PLACED HIM
IN HIS POLICE VEHICLE AS IT WAS DISCOVERED THAT A WARRANT WAS
OUTSTANDING FOR NGUYEN'S ARREST ON A TRAFFIC OFFENCE.

        CST JOHNSTON BEGAN TO CONDUCT CPIC CHECKS ON THE REMAINING FOUR (4)
MALES AND NOTICED THAT ONE OF THE MALES WAS A KNOWN GANG MEMBER, BILL
LY.  AT THIS POINT BACKUP UNITS WERE REQUESTED AS THE MALES HAD NOT BEEN
SEARCHED AND EARLIER INDICATION ON THE CALL WAS THAT A FIREARM WAS
POSSIBLY INVOLVED.  LY WAS ARRESTED ON AN UNRELATED TRAFFIC OFFENCE
WARRANT BY CST HARWOOD AND CST CHUDY AND TRANSPORTED TO THE ARREST
PROCESSING UNIT.

        WHILE DEALING WITH THE MALES, OTHER CPS MEMBERS HAD LOCATED THE
ACTUAL CULPRITS WITH A PELLET RIFLE IN CARBURN PARK.  THESE MALES WERE
FOUND NOT TO BE ASSOCIATED TO THE GROUP BEING CHECKED.

        AT THIS POINT NOTHING FURTHER COULD BE DONE WITH THE REMAINING 3 OF
THE 5 MALES AND THE FOLLOWING MALES WERE RELEASED AT THE SCENE:

        WAYNE HA          DOB:
        CHRISTIAN NAVOS   DOB:
        ZACHARY MIRABACK  DOB:

        SHORTLY AFTER CLEARING THE SCENE, CST JOHNSTON SPOKE TO CST SMITH
WHO HAD INITIALLY DETAINED NGUYEN AND TRANSPORTED HIM TO 6 DISTRICT
OFFICE TO DEAL WITH HIS WARRANTS.

        CST SMITH STATED THAT HE HAD CONVERSATION WITH DET. PROCEE AND IT
WAS DETERMINED THAT AN AREA SEARCH SHOULD BE CONDUCTED WHERE THE FIVE
(5) MALES WERE DETAINED AS THEY MAY BE RESPONSIBLE FOR WEAPONS OFFENCES
AND/OR HAVE A VEHICLE DUMPED IN THE AREA DUE TO THE FACT THEY WERE SEEN

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
                         SYNOPSIS                 Complaint#: 09112050
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
FLEEING THE AREA OF CARBURN PARK ON FOOT.

     CST JOHNSTON RETURNED TO THE ALLEY BEHIND 27 RIVERSIDE CL SE AND AN
AREA SEARCH WAS CONDUCTED UTILIZING FIVE CPS MEMBERS AND A K9 MEMBER.
A TRACK LED TO THE DISCOVERY OF A PAIR OF BLACK WOOL GLOVES FOUND IN THE
DIRECT VICINITY OF WHERE THE MALES HAD INITIALLY BEEN LOCATED BY CST
SMITH.  SOUTH OF THAT LOCATION BEHIND 7 RIVERSIDE CL SE WAS A PAIR OF
MENS EXTRA LARGE BLACK TRACK PANTS WITH A WHITE STRIPE DOWN THE SIDES
NEAR A GARBAGE CONTAINER. ALSO OBSERVED NEAR THE GARBAGE CONTAINER WERE
FOOTPRINTS IN THE SNOW WHICH APPEARED TO BE OF NIKE SHOX FOOTWEAR  WHICH
HAVE A DISTINCTIVE SET OF FOUR (4) SHOCK ABSORBERS ON THE HEEL OF THE
SHOE.

     DURING THE ENTIRE TRACK THIS DISTINCTIVE PRINT ALONG WITH SEVERAL
OTHER FOOTWEAR PRINTS WERE OBSERVED IN THE SNOW BY K-9 CST WILLIAMS AND
OTHER MEMBERS PRESENT. CST DENTANDT OBSERVED WAYNE HA TO BE WEARING NIKE
SHOX FOOTWEAR UPON HIS INITIAL DEALINGS WITH THE GROUP BEHIND 27
RIVERSIDE CL SE. AT #3 RIVERSIDE CL SE ON THE SOUTHEAST SIDE OF THE LAWN
A PAIR OF GARDEN STYLE WOOL GLOVES, WHITE IN COLOUR WITH A YELLOW STRIPE
AROUND THE WRIST OPENING WERE FOUND.

     THE TRACK CONTINUED TO THE OPENING OF CARBURN PARK AND THROUGH THE
GREEN SPACE LEADING TO THE PARKING LOT IN A SOUTHEAST DIRECTION.  NEAR
THE PARKING LOT NEAR IN THE NORTHEAST CORNER BEHIND A SILVER MINI VAN
WHICH WAS BACKED INTO A STALL WAS A BLACK BALACLAVA LAYING IN THE GRASS.
ALL THESE ITEMS WERE SEIZED BY CST DENTANDT AND HIS PARTNER.

     THE SILVER MINI VAN WAS BEARING AB PLATE M17537 AND SHOWED
REGISTERED TO A BUSINESS, HOWEVER NO VEHICLE PARTICULARS WERE ASSOCIATED
TO THE PLATE.  A CPIC QUERY WAS CONDUCTED ON THE VIN NUMBER AND THE VAN
SHOWED AS A 2000 GMC SAFARI VAN, SILVER IN COLOUR.  UPON LOOKING INSIDE
THE VAN THROUGH THE PASSENGER SIDE WINDOWS A PIECE OF CARPET WAS FOLDED
OVER IN THE MIDDLE AND THE BARREL OF A LONG RIFLE COULD BE SEEN IN PLAIN
VIEW.  OTHER MEMBERS PRESENT OBSERVED BODY ARMOUR IN THE REAR PART OF
THEVAN, ALSO IN PLAIN VIEW.  ON THE BACK SEAT A PAIR OF WHITE GARDEN
STYLE GLOVES WITH A YELLOW RING AROUND THE WRIST AREA COULD BE SEEN.

     IT ALSO APPEARED BEHIND THE DRIVER'S SEAT OF THIS VEHICLE THAT A
BOX OF AMMUNITION WAS PLACED AT THE BASE OF THE SEAT.

     GIVEN THE FACT THAT SOME OF THE MALES HAD BEEN OBSERVED RUNNING
FROM THE PARKING LOT AREA EARLIER AND THE CLOTHING ITEMS LOCATED ALONG
THE K-9 TRACK, AS WELL AS THE SIMILAR ITEMS LOCATED IN THE VAN AS WELL
AS THE BODY ARMOR AND FIREARM THE VEHICLE WAS SEIZED AND CONTINUITY
MAINTAINED FROM 1725 HRS UNTIL BEING TAKEN TO 75 HERITAGE RO SW FOR
CRIME SCENES UNIT, CONTINUITY COMPLETED AT 1911 HRS BY CST VOTH AND
VELLA.

     ON 2009/04/02 A SEARCH WARRANT WAS EXECUTED ON THE SAFARI VAN AND A
NUMBER OF FIREARMS WERE LOCATED INSIDE INCLUDING A REMINGTON MODEL 29
SHOTGUN (SAWED OFF), A REMINGTON 870 EXPRESS SHOTGUN, AN HK93 ASSAULT
RIFLE, A SMITH & WESSON 40 CALIBRE HANDGUN (SERIAL NUMBER REMOVED), AND

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
                          SYNOPSIS                    Complaint#: 09112050
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
A GLOCK 17 9 MM HANDGUN.  ALSO FOUND IN THE VEHICLE WERE FOUR PIECES OF
BODY ARMOUR, SEVERAL BANDANAS, RECENTLY PURCHASED CLOTHING FROM WALMART
(TAGS STILL PRESENT IN THE VAN), AND RUNNING SHOES.

     UPON EXAMINING THE FIREARMS IT WAS DETERMINED THE TWO HANDGUNS AND
THE ASSAULT RIFLE HAD EXTENDED MAGAZINES MAKING THEM A PROHIBITED
DEVICE. THE SMITH & WESSON HANDGUN WAS SHORTER THAN THE MINIMUM REQUIRED
LENGTH AND IS, THEREFORE, ALSO CONSIDERED A PROHIBITED FIREARM. THE
SAWED OFF SHOTGUN IS CONSIDERED A PROHIBITED FIREARM.

     BASED ON THE TRACK CONDUCTED BY CANINE THE SUSPICIOUS ACTIVITY OF
THE CULPRITS, THEIR RELATED GANG ASSOCIATION, IT IS BELIEVED THAT THE
FIVE CULPRITS PARKED THE VAN AND DEPARTED FROM IT A SHORT TIME PRIOR TO
CPS RESPONDING TO THE UNRELATED INCIDENT. IT IS BELIEVED ALL FIVE WERE
IN THE MOTOR VEHICLE, AND AS THERE WAS NO REAR BENCH SEAT, THE CULPRITS
LITERALLY WOULD HAVE BEEN STANDING OR SITTING ON OR NEXT TO THE ASSAULT
RIFLE AND THE TWO SHOTGUNS. THE CHEAP NEWLY PURCHASED CLOTHING AND SHOES
INDICATE TO POLICE THAT THESE GARMENTS WOULD BE USED AS THROW AWAY
CLOTHING IF THEY WERE INVOLVED IN A VIOLENT ACT USING THE FIREARMS.

     DANG NGUYEN AND ZACHARY MIRABACK ARE BOTH PROHIBITED FROM
POSSESSING ANY FIREARM IN RESPONSE TO CONVICTIONS UNDER THE CDSA AND
CRIMINAL CODE RESPECTIVELY. ALL OTHER OCCUPANTS DID NOT POSSESS A
FIREARMS LICENSE.

     THE CRIME SCENES UNIT PROCESSED THE VAN AND HAS LOCATED SEVERAL
FINGERPRINTS. THESE PRINTS HAVE BEEN FORENSICALLY COMPARED TO THE
ACCUSED. DNA SWABS HAVE BEEN COLLECTED AND THE RESULTS ARE PENDING.

     2009/04/30 DET CARRIERE #3281/TARGET:        (11139)

     A FINGERPRINT ANALYSIS CONDUCTED ON THE PLASTIC WAL-MART BAGS FOUND
WITHIN THE VAN HAS DETERMINED THAT DANG NGUYEN WAS IN POSSESSION OF
THOSE BAGS.  CLOTHING TAGS WITHIN THE VAN HAVE BEEN IDENTIFIED AS COMING
FROM WAL-MART AND DANG NGUYEN WAS CONFIRMED TO BE WEARING A SET OF SHOES
CONSISTENT WITH THE MAKE AND SIZE OF THOSE SOLD BY WAL-MART.

     A FOOTPRINT ALSO LOCATED ON THE WAL-MART BAG IS CONSISTENT WITH THE
TREAD PATTERN OF THE FOOTWEAR WORN BY NGUYEN AT THE TIME OF HIS ARREST.

     2009/09/29 - DET CARRIERE 3281 / TEU            (8322)

     ON 2009/05/08 FORENSIC ANALYSIS REPORTS THAT THE DNA OF DANG NGUYEN
WAS PRESENT ON AN ARMOURED VEST, HOODIE AND BANDANA FOUND WITHIN THE
SAFARI VAN.  THE BLOOD ON THE LOWER PORTION OF THE SAME BALISTIC VEST
WAS DETERMINED TO MATCH THE CAST OFF SAMPLE OF DNA OBTAINED FROM DARLENE
BONTOGON, THE GIRLFRIEND OF DANG NGUYEN.  IT IS BELIEVED THIS BLOOD WAS
TRANSFERRED TO THE VEST WHEN BONTOGON WAS SHOT IN THE WINTER OF 2008
WHILE DRIVING WITH DANG ON DEERFOOT TR. (CROSS REFERENCE CASE #
08427769).

     ADDITIONAL FORENSIC ITEMS SENT TO THE CRIME LAB INCLUDES WHITE

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
                          SYNOPSIS                    Complaint#: 09112050
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
GLOVES, A BLACK BALACLAVA, AND FIREARM SWABS.  DNA PROFILES OBTAINED
FROM THE GLOVES MATCHED THAT OF BOTH CHRISTIAN NAVOS, WAYNE HA, AND
ZACHARY MIRABACK. THE BLACK BALACLAVA WHICH WAS FOUND IMMEDIATELY
OUTSIDE THE REAR OF THE SAFARI VAN WAS DEEMED TO BE CONSISTENT WITH THAT
OF MIRABACK.  ANALYSIS OF THE BLACKBERRY WITHIN THE SAFARI VAN APPEARS
THAT THE BLACKBERRY WAS REPORTED STOLEN TO ROGERS IN 2007.  PRODUCTION
ORDERS ON BOTH THE BLACKBERRYS AND THE CELL PHONE ARE STILL PENDING.

   2009/10/22 DET CARRIERE #3281/TEU: (11139)

      ON 2009/10/22 BOTH ZACHARY MIRABACK AND WAYNE HA WERE ARRESTED AT
THEIR RESIDENCE AND TRANSPORTED TO THE ANDREW DAVISON BUILDING.  ONCE
INTERVIEWED THEY WERE TRANSPORTED TO THE ARREST PROCESSING SECTION AND
CHARGED.

      WARRANTS WILL BE ISSUED FOR CHRISTIAN NAVOS.

POL3281
Mail Code: 0730                                2012/03/13 06:30 Page:  9
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
                    INVESTIGATIVE DETAILS        Complaint#: 09112050
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

BSING A COMMERCIAL TAPE MEASURE AND ISSUED MEASURING ROD FROM THE
CANADIAN FIREARMS CENTRE THE FOLLOWING FIREARMS WERE EXAMINED AND
COMPARED TO THE RCMP REFERENCE TABLE (FRT). THE RCMP FIREARMS REFERENCE
TABLE IS A COMPUTER DATABASE THAT IS A REFERENCE TOOL USED BY LAW
ENFORCEMENT AGENCIES FOR FIREARMS DESCRIPTIONS AND LEGAL CLASSIFICATIONS
WITHIN CANADA TO ASSIST IN IDENTIFYING FIREARMS.

UPON EXAMINING THE SMITH & WESSON MODEL SW40VE SIGMA SEMI AUTOMATIC
HANDGUN IT WAS DETERMINED THAT THE HANDGUN WAS CAPABLE OF FIRING 40
CALIBRE AMMUNITION.  UPON FIELD STRIPPING THE FIREARM, THE INDIVIDUAL
BARREL WAS EXAMINED AND MEASURED USING A COMMERCIAL TAPE MEASURE AND ITS
LENGTH WAS DETERMINED TO BE APPROXIMATELY 105MM IN LENGTH.  AN FRT QUERY
REVEALED THAT FIREARM IS ONLY MANUFACTURED TO HAVE A 102MM BARREL AND IS
CLASSIFIED AS A PROHIBITED FIREARM IN CANADA AS DEFINED IN SECTION 84 OF

THE CRIMINAL CODE WHICH STATES:
"PROHIBITED FIREARM" MEANS
(A)        A HANDGUN THAT
(I)        HAS A BARREL LENGTH EQUAL TO OR LESS THAN 105MM IN LENGTH

IT WAS ALSO OBSERVED THAT THE SERIAL NUMBER HAD BEEN REMOVED FROM THE
FIREARM.

UPON EXAMINING THE GLOCK MODEL 17 SEMI AUTOMATIC HANDGUN IT WAS
DETERMINED THAT THE HANDGUN WAS CAPABLE OF FIRING 9MM AMMUNITION. UPON
FIELD STRIPPING THE FIREARM, THE INDIVIDUAL BARREL WAS EXAMINED AND
MEASURED USING A COMMERCIAL TAPE MEASURE AND ITS LENGTH WAS DETERMINED
TO BE APPROXIMATELY 115MM IN LENGTH.  THIS FIREARM IS CLASSIFIED AS A
RESTRICTED FIREARM UNDER SECTION 84 OF THE CRIMINAL CODE WHICH STATES:

"RESTRICTED FIREARM" MEANS
(A)        A HANDGUN THAT IS NOT A PROHIBITED FIREARM

THE SERIAL NUMBER WAS OBSERVED TO BE BLM285US.  A CPIC/CFRO INQUIRY
REVEALED THAT THIS FIREARM IS NOT CURRENTLY REGISTERED IN CANADA.

AN EXAMINATION OF THE REMINGTON MODEL 29 PUMP ACTION SHOTGUN REVEALED
THAT THE BARREL APPEARED TO HAVE BEEN ALTERED. CUT MARKS AND AN UNEVEN
BARREL WOULD SUGGEST THAT IT HAD BEEN ALTERED BY A CUTTING TOOL.  USING
A COMMERCIAL TAPE MEASURE AND ISSUED MEASURING ROD THE BARREL WAS
MEASURED TO BE APPROXIMATELY 446MM IN LENGTH.  THE OVERALL LENGTH WAS
DETERMINED TO BE APPROXIMATELY 734MM IN LENGTH.  THIS FIREARM WAS
CLASSIFIED AS PROHIBITED AS DEFINED IN SECTION 84 OF THE CRIMINAL CODE
WHICH STATES:

"PROHIBITED FIREARM" MEANS
B) A FIREARM THAT IS ADAPTED FROM A RIFLE OR SHOTGUN, WHETHER BY SAWING,
CUTTING OR ANY OTHER ALTERATION, AND THAT, AS SO ADAPTED,
 (II) IS 660MM OR GREATER IN LENGTH AND HAS A BARREL LESS THAN 457MM IN
LENGTH,

POL3281
Mail Code: 0730                                    2012/03/13 06:30 Page: 10
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
                       INVESTIGATIVE DETAILS        Complaint#: 09112050
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
THIS SHOTGUN IS CAPABLE OF FIRING 12 GAUGE AMMUNITION AS MARKED ON THE
FIREARM.  THE SERIAL NUMBER WAS OBSERVED TO BE 5143.  A CPIC/CFRO
INQUIRY REVEALED THAT THIS FIREARM IS NOT CURRENTLY REGISTERED IN
CANADA.

AN EXAMINATION OF THE HECKLER & KOCH MODEL HK93 SEMIAUTOMATIC RIFLE
REVEALED THAT THIS FIREARM WAS CAPABLE OF FIRING 5.56MM AMMUNITION.
USING A COMMERCIAL TAPE MEASURE AND ISSUED MEASURING ROD IT WAS
DETERMINED THAT THE BARREL LENGTH WAS APPROXIMATELY 393MM IN LENGTH
WITHOUT THE FLASH SUPPRESSOR.  THE OVERALL LENGTH WAS DETERMINED TO BE
APPROXIMATELY 765MM IN LENGTH.  AN FRT QUERY REVEALED THAT THIS
PARTICULAR FIREARM IS CLASSIFIED AS A PROHIBITED FIREARM.  SECTION 84 OF
THE CRIMINAL CODE STATES:

"PROHIBITED FIREARM" MEANS
(D) ANY FIREARM THAT IS PRESCRIBED TO BE A PROHIBITED FIREARM·

THE SERIAL NUMBER WAS OBSERVED TO BE A120105.  A CPIC/CFRO INQUIRY
REVEALED THAT THIS FIREARM IS NOT CURRENTLY REGISTERED IN CANADA.

AN EXAMINATION OF THE REMINGTON MODEL 870 EXPRESS MAGNUM PUMP ACTION
SHOTGUN REVEALED THAT IT WAS CAPABLE OF FIRING 12 GAUGE AMMUNITION.
USING A COMMERCIAL TAPE MEASURE AND ISSUED MEASURING ROD  IT WAS
DETERMINED THAT THE BARREL LENGTH WAS APPROXIMATELY 478MM IN LENGTH.
THE OVERALL LENGTH WAS APPROXIMATELY 765MM IN LENGTH.  THIS FIREARM IS
CLASSIFIED AS A NON RESTRICTED FIREARM AS PER THE RCMP FIREARMS
REFERENCE TABLE.

THE SERIAL NUMBER WAS REVEALED TO BE A341491M.  A CPIC/CFRO INQUIRY
REVEALED THAT THIS FIREARM IS NOT CURRENTLY REGISTERED IN CANADA.


THE MAGAZINES FOUND WITH THE TWO HANDGUNS WERE EXAMINED BY SGT. JIM
EDWARDS OF THE CALGARY POLICE SERVICE IDENTIFICATION SECTION.  HE
REMOVED AND COUNTED THE ROUNDS FROM EACH MAGAZINE AND IT WAS DETERMINED
THAT THE MAGAZINES EXCEEDED THE LEGAL CAPACITY AS DEFINED IN SECTION 84
OF THE CRIMINAL CODE WHICH STATES:

PART 4 - PROHIBITED DEVICES

ANY CARTRIDGE MAGAZINE THAT IS CAPABLE OF CONTAINING MORE THAN 10
CARTRIDGE OF THE TYPE FOR WHICH THE MAGAZINE WAS ORIGINALLY DESIGNED AND
THAT IS DESIGNED OR MANUFACTURED FOR THE USE IN A SEMI-AUTOMATIC HANDGUN
THAT IS COMMONLY AVAILABLE IN CANADA.

THE MAGAZINE FROM THE RIFLE WAS REMOVED FROM SGT. JIM EDWARDS OF THE
CALGARY POLICE SERVICE IDENTIFICATION SECTION.  HE REMOVED AND COUNTED
THE ROUNDS FROM EACH MAGAZINE AND IT WAS DETERMINED THAT THE MAGAZINES
EXCEEDED THE LEGAL CAPACITY AS DEFINED IN SECTION 84 OF THE CRIMINAL
CODE WHICH STATES:

PART 4

PROHIBITED DEVICES

3.(1) ANY CARTRIDGE MAGAZINE
(A) THAT IS CAPABLE OF CONTAINING MORE THAN FIVE CARTRIDGES OF THE TYPE
FOR WHICH THE MAGAZINE WAS ORIGINALLY DESIGNED AND THAT IS DESIGNED OR
MANUFACTURED FOR USE IN
(II) A SEMI-AUTOMATIC FIREARM OTHER THAN A SEMI -AUTOMATIC HANDGUN.

CST. JEFF VAN CAEYZEELE 3466        2009 APRIL 2


    2009/04/06 DET LOTZER #3485:

    ON 2009/04/06, DET LOTZER AND CARRIERE #3281 ATTENDED CORRAL AUTO
MART, LOCATED AT 1827 36 ST NE, AND SPOKE TO ███████. ██████ INDICATED
THAT HE SOLD A 2000 GMC SAFARI, GREY IN COLOR, ON 2009/03/28. ██████
INDICATED THAT IT WAS A CASH SALE FOR $2485 AND HE SOLD THE VEHICLE TO
AN UNKNOWN ASIAN MALE, APPROXIMATELY 5'6" TALL AND IN HIS LATE 20'S.
██████ INDICATED THAT HE ATTEMPTED TO OBTAIN A DRIVER'S LICENSE FROM THE
PURCHASER; HOWEVER, HE DID NOT HAVE A DRIVER'S LICENSE WITH HIM.

    DETS LOTZER AND CARRIERE CHECKED THE ADDRESS AND NAME PROVIDED BY
THE UNKNOWN PURCHASER AND HAVE SINCE DETERMINED THAT ALL ARE FALSE.
THE PHONE NUMBER PROVIDED BY THE SUSPECT, KEN WONG, OF 305-4207, IS
BELIEVED BY INVESTIGATORS TO BE A THROW-AWAY PHONE, AS WONG DID NOT EVEN
KNOW ITS PHONE NUMBER AND HAD TO TELEPHONE THE DEALERSHIP TO GET ██████
TO RETRIEVE THE PHONE NUMBER FROM CALL DISPLAY.  ARRANGEMENTS HAVE BEEN
MADE WITH ████ TO VIEW PHOTOS OF POTENTIAL SUSPECTS AT A LATER DATE.


    2009/04/06 DET. FREDERIKSEN #3285 / TARGETED ENFORCEMENT UNIT
    (#3285).

    ON 09-04-06 DET. FREDERIKSEN AND DET. PROCEE WERE TASKED TO
DETERMINE AT WHICH WALMART THE CLOTHING TAGS LOCATED WITHIN THE GMC
SAFARI WERE PURCHASED AT AND TO FURTHER IDENTIFY THE DAY AND TIME OF THE
PURCHASE IN-ORDER TO OBTAIN SURVEILLANCE VIDEO OF THE PURCHASER(S).

    DET. FREDERIKSEN AND DET. PROCEE INITIALLY ATTENDED TO MARLBOROUGH
WALMART AND SPOKE WITH THE STORE MANAGER ███████. ████████████
ARRANGED FOR ASSISTANCE BY THE ASSISTANT MANAGER ████████████. █████████
██████████ EXAMINED THE PHOTOGRAPHS OF THE CLOTHING TAGS AND WAS ABLE TO
CONDUCT A SEARCH OF THE MARLBOROUGH MALL DATA BASE FOR ALL PURCHASES OF
THOSE ITEMS OVER A 5 WEEK PERIOD.  ALTHOUGH SOME OF THE ITEMS HAD BEEN
PURCHASED AT THE MARLBOROUGH MALL STORE, NOT ENOUGH ITEMS WERE MADE IN
ANY SINGLE PURCHASE TO SUGGEST THAT THE ITEMS HAD INDEED BEEN PURCHASED
AT THAT SPECIFIC OUTLET.

    TO FACILITATE A CITY WIDE SEARCH OF ALL WALMARTS, DET. FREDERIKSEN
AND DET. PROCEE WERE PLACED IN CONTACT WITH THE DISTRICT LOSS PREVENTION
MANAGER ███████████. ████████████████ ATTENDED TO THE MARLBOUROUGH MALL
LOCATION TO MEET WITH DET. FREDERIKSEN AND DET. PROCEE.

[REDACTED] WAS ABLE TO CONDUCT A CHECK OF ALL WALMARTS FOR THE ASSOCIATED CLOTHING TAGS. [REDACTED] DISCOVERED THAT ON APRIL 1ST 2009 AT APPROXIMATELY 12:53 A.M. A SINGLE PURCHASE WAS MADE WHICH CONSISTED OF NEARLY ALL OF THE CLOTHING ITEMS RELATED TO THIS INVESTIGATION.

DET. FREDERIKSEN AND DET. PROCEE ATTENDED TO WESTBROOK MALL AND SPOKE WITH LOSS PREVENTION OFFICER [REDACTED]. [REDACTED] PROVIDED A COPY OF THE SALES RECEIPT FOR THE ITEMS PURCHASED ON APRIL 1, 2009. THOSE ITEMS ARE SUMMARIZED AS FOLLOWS:

1. 2 BASEBALL CAPS

2. 1 PACKAGE OF 2 UNDERSHIRTS

3. 4 BANDANAS

4. 4 PAIRS OF WORK GLOVES

5. 3 HOODIES

6. 3 POLYESTER PANTS

7. 3 PAIRS OF SHOES.

THE TOTAL PURCHASE PRICE FOR THE ABOVE ITEMS WAS $127.81. THE PURCHASER PROVIDED $140.00 IN CASH AND RECEIVED $12.19 BACK. ALL THE PURCHASES WERE MADE AT TILL 2.

EACH ITEM LISTED ON THE RECEIPT HAD AN ASSOCIATED SKU NUMBER WHICH ENABLED DET. FREDERIKSEN AND DET. PROCEE TO LOCATE EACH EXACT ITEM WITHIN THE WESTBROOK MALL WAL MART AND PHOTOGRAPH IT. IT IS IMPORTANT TO NOTE THAT SOME OF THE ITEMS HAD, SINCE APRIL 1, EITHER SOLD OUT OR WERE NO LONGER BEING SOLD. IN THOSE INSTANCES, PHOTOGRAPHS OF THE SAME PRODUCT BUT IN A DIFFERENT SIZE WERE TAKEN. ONLY THE UNDERSHIRTS WERE NO LONGER BEING SOLD, BUT AN OPEN PACKAGE WAS STILL AVAILABLE IN STORAGE AND WAS SUBSEQUENTLY PHOTOGRAPHED.

[REDACTED] WAS ABLE TO FURTHER PROVIDE THE SURVEILLANCE VIDEO FROM ALL RELATED CAMERAS ON APRIL 1. THE CAMERA ANGLES WERE:

1. OUTSIDE THE MAIN ENTRANCE FACING NORTH

2. INSIDE POINTING AT THE MAIN ENTRANCE

3. INSIDE POINTING OVER TOP OF TILL 2 OUT INTO THE STORE. THE TILL ITSELF IS NOT VISIBLE, BUT THE LINE TO GET TO IT IS.

DET. FREDERIKSEN AND DET. PROCEE REVIEWED THE SURVEILLANCE VIDEO WHILE AT THE STORE. THE FOLLOWING SUMMARIZES THEIR OBSERVATIONS:

1. DET. FREDERIKSEN COMPARED THE TIMES ON THE VIDEO SURVEILLANCE

POL3281
Mail Code: 0730                                    2012/03/13 06:30 Page: 13
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
                        INVESTIGATIVE DETAILS          Complaint#: 09112050
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
SYSTEM TO HIS WATCH.  HIS WATCH READ 13:02:32 AND THE SURVEILLANCE READ
13:06:16, CONFIRMING THAT THE SURVEILLANCE SYSTEM WAS APPROXIMATELY 3.5
MINUTES FAST.

     2. ALL OUTSIDE VIDEO WAS A FURTHER APPROXIMATELY 58.5 MINUTE FAST.

     3. AT APPROX. 00:28 (01:29:38 VIDEO TIME), A 4 DOOR SEDAN STYLE
VEHICLE IS OBSERVED DRIVING SOUTHBOUND IN THE PARKING LOT AND PARKING
DIRECTLY EAST OF THE MAIN ENTRANCE.

     4.  AT APPROX. 00:29 (01:30:22 VIDEO TIME) TWO MALES CAN BE SEEN
WALKING FROM THE DIRECTION THE VEHICLE WENT, TOWARDS THE MAIN DOORS.
PERSON #1 WEARING DARK PANTS, LIGHT GREY HOODIE, WHITE SHIRT UNDERNEATH,
WHITE BASEBALL CAP AND WHITE SHOES.  PERSON #2 WEARING BLACK HAD WITH
WHITE WRITING ON FRONT AND A WHITE BACK, DARK JACKET, DARK PANTS AND
BLACK RUNNERS WITH WHITE ON THE SIDES OF THE TOE AREA.

     5. AT APPROX. 00:31:42, BOTH MALES ENTER THE WALMART

     6. AT APPROX 00:51:19, PERSON #1 WALKS FROM THE COSMETIC AREA OF
WALMART TOWARDS TILL #2.  HE APPEARS TO BE CARRYING SHOES.

     7. AT APPROX. 00:51:52, PERSON #2 ENTERS THE FRAME FROM THE SIDE
APPEARING TO CARRY CLOTHING.  HE APPEARS TO JOIN PERSON #1 IN THE LINE.

     8. AT APPROX. 00:53:32, PERSON #2 EXITS THE WALMART WITHOUT ANY
PRODUCT. AND WALKS THE SAME DIRECTION HE CAME FROM IN THE PARKING LOT.

     9. AT APPROX. 00:57:48, PERSON #1 EXITS THE WALMART CARRYING
SHOPPING BAGS IN EACH HAND.  HE WALKS THE SAME DIRECTION HE CAME FROM IN
THE PARKING LOT.

     THE CLOTHING ITEMS AND PACKAGING MATERIAL/SKU CLOTHING TAGS LOCATED
WITHIN THE CRIME VEHICLE GMC SAFARI WERE THEN COMPARED AGAINST THE SALES
RECEIPT DATED APRIL 1, 2009.  THE FOLLOWING IS A LIST OF THE CLOTHING
ITEMS AND PACKAGING/SKU MATERIALS WHEN COMPARED AGAINST THE SALES
RECEIPT:

     1. LG-65 BANDANA - MATCHES SALES RECEIPT (SKU 077028302685)

     2. LG-32 BANDANA AND LG-59 BANDANA TAG - MATCHES SALES RECEIPT (SKU
077028301798). 2 PURCHASES MADE OF THIS MAKE OF BANDANA.

     3. LG36 BASEBALL CAP TAG - MATCHES SALES RECEIPT (SKU 077045395708)
TAN BASEBALL CAP

     4. LG36 HOODED TOP TAG - MATCHES SALES RECEIPT (SKU
077211201009) CHARCOAL GREY LARGE

     5. LG36, LG56, LG43 FISHERMEN'S GLOVE TAG - MATCHES SALES RECEIPT
(SKU 006293002308) FOR 4 WORK GLOVES.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
                      INVESTIGATIVE DETAILS        Complaint#: 09112050
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
    6. LG38 BANDANA TAG - MATCHES SALES RECEIPT (SKU 077028301766)

    7. LG38, LG60 PANTS TAG- MATCHES SALES RECEIPT (SKU 005651306643)
43 PAIRS BLACK PANTS WITH WHITE STRIPE DOWN SIDE.

    8. LG55 BANDANA TAG - MATCHES SALES RECEIPT (SKU 077028302685)

    9. LG62 RUPERT SHOE TAG - NOT ON SALES RECEIPT

    10. LG30 LEWIS SIZE 11 SHOE TAG - MATCHES SALES RECEIPT (SKU
000251660962)

    11. LG30 LEWIS SIZE 10 SHOE TAG - MATCHES SALES RECEIPT (SKU
000251660955)

    12. LG46 TAG - MATCHES SALES RECEIPT (SKU 077211209058) BLUE
BASEBALL CAP

    13. LG61 HOODED TOP TAG - MATCHES SALES RECEIPT (SKU 077211201011)
2XL CHARCOAL HOODIE

    2009/05/07 - DET HOKO 3003 TARGET:   (11251)

    ON 2009/05/04 DET HOKO OF THE TARGETED ENFORCEMENT UNIT PLACED TWO
SIP HITS WITH CPIC.  THE FOLLOWING NAMES: VINH TRUONG AND CHRISTIAN
NAVOS WERE PLACED ON THE FILE RESPECTIVELY.  SEE DETAILS FOR THE
ATTACHED VEHICLES.

    2009-08-26, JEFF VAN CAEYZEELE (NWEST) 3466:          (3466)

A TRACE STUDY WAS SUBMITTED BY CST. VAN CAEYZEELE CONDUCTED ON THE
SEIZED FIREARMS FROM THIS FILE.  BELOW ARE THE TRACE RESULTS FROM THE
RCMP TRACING CENTRE AND FUTURE ACTION THAT WILL BE TAKEN IN REGARDS TO
FOLLOW UP.
2009-08-26 TRACE RESULTS

1.) GLOCK 9MM PISTOL, MODEL 17, SERIAL NUMBER BLM285US

CPIC AND NCIC QUERIES WERE BOTH NEGATIVE. RWRS FIREARMS AND CFIS
FIREARMS REGISTRATION AND APPLICATION QUERIES WERE ALL NEGATIVE.
THE BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, (ATF), FIREARMS
TRACE SUMMARY REPORT(FTS) T20090103226, DATED 2009-04-16, INDICATES THAT
THIS FIREARM WAS TRANSFERRED/SHIPPED TO SIMMONS SPORTING GOODS CO INC,
2001 2ND AVE, BESSEMER, AL 35020, USA ON 2006-11-14. ON 2007-05-14, THIS
FIREARM WAS PURCHASED BY                  (
                              USA. THIS WAS PART OF A MULTIPLE SALE.
THIS WILL BE FOLLOWED UP BY THE ATF.

2.) REMINGTON 12 GAUGE SAWED OFF SHOTGUN, MODEL 29, SERIAL NUMBER 5143;

CPIC AND NCIC QUERIES WERE BOTH NEGATIVE. RWRS FIREARMS AND CFIS
FIREARMS REGISTRATION AND APPLICATION QUERIES WERE ALL NEGATIVE.  THE

POL3281
Mail Code: 0730                                    2012/03/13 06:30 Page: 15
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
                    INVESTIGATIVE DETAILS          Complaint#: 09112050
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
FRT # 35579 INDICATES THAT THIS FIREARM WAS MANUFACTURED FROM 1929 TO
1933. THE BLUE BOOK OF GUN VALUES ALSO INDICATES THE SAME ON PAGE 1433.
THIS SHOTGUN IS TOO OLD TO TRACE.

3.) H&K 5.56 CALIBRE RIFLE, MODEL HK93, SERIAL NUMBER A120105

CPIC QUERY OF THIS FIREARM INDICATES THAT IT WAS PUT ON AS STOLEN FROM
CALGARY PD WHEN THEY SEIZED IT 2009-04-02., FILE NUMBER 09112050. NCIC
QUERY WAS NEGATIVE.

THE BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, (ATF) FIREARMS
TRACE SUMMARY REPORT(FTS)T20090103217, DATED 2009-04-16, INDICATES THAT
THIS FIREARM WAS TRASFERRED/SHIPPED TO CENTURY ARMS, 5340 FERRIER ST,
MONTREAL, PQ, CANADA, ON 1976-03-09.

RWRS FIREARMS REGISTRATION QUERIES INDICATE THAT THIS FIREAM WAS
REGISTERED TO _____
_____ BC. CERTIFICATE NUMBER K-105180 WAS ISSUED ON
1983-08-30. THE FIREARM IS SHOWING ON CFIS AS IN PROTECTIVE CUSTODY
SEIZED BY CALGARY PD FROM THIS FILE.  THIS WILL BE FOLLOWED UP BY THE
RCMP IN THAT AREA.

4.) REMINGTON 12 GAUGE SHOTGUN, MODEL 870 EXPRESS MAGNUM, SERIAL NUMBER
A341491M.

CPIC QUERY SHOWS THAT CALGARY PD HAS ADDED THE FIREARM ONTO CPIC AS
RECOVERED, THEIR FILE 09112050. NCIC QUERY WAS NEGATIVE. CFIS QUERIES
INDICATE THAT THIS FIREARM IS IN PROTECTED  CUSTODY..CALGARY FILE.

THE BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES (ATF), FIREARMS
TRACE SUMMARY REPORT (FTS) T20090103231, DATED 2009-04-16 INDICATES THAT
THIS FIREARM WAS TRANSFERRED/SHIPPED TO CALDWELL INDUSTRIES CO, 384 LYNN
AVE, NORTH VANCOUVER, BC, CANADA, F7J2C5 ON 1992-02-24. ON 1992--04-24,
CALDWELL INDUSTRIES IN NORTH VANCOUVER SOLD THE FIREARM TO C&M SPORTS IN
SURREY, BC. C&M SPORTS IS INACTIVE AND OUT OF BUSINESS AND NONE OF THEIR
RECORDS ARE AVAILABLE.

     2009/09/29 - DET CARRIERE 3281 / TEU            (8322)

     EVIDENCE LINKING FOR BILL LY WHO WAS INITIALLY CHARGED IN THIS
INVESTIGATION THOUGH HAD HIS CHARGES STAYED BY THE CROWN PROSECUTOR.

     ACCUSED #1:  BILL LY
     SEC 95(1) C.C. (X 4) - PROHIBITED OR RESTRICTED FIREARM WITH
     AMMUNITION

     - THE ACCUSED WAS TRACKED FROM HIS POINT OF CONTACT WITH POLICE
BACK TO THE UNREGISTERED SAFARI VAN BEARING ALBERTA LICENSE PLATE
M17537.

     - THE ACCUSED'S IDENTITY WAS CONFIRMED AS HE IS KNOWN TO POLICE AND
WAS ARRESTED ON AN OUTSTANDING WARRANT.

    - FIVE FIREARMS WERE FOUND WITHIN THE MOTOR VEHICLE THAT CONTAINED
ONLY TWO SEATS.

    - A SMITH & WESSON HANDGUN WAS SMALLER THAN THE DESIGNATED LENGTH
AS REQUIRED BY THE CRIMINAL CODE AND IS, THEREFORE, CONSIDERED A
PROHIBITED FIREARM.

    - THE GLOCK MODEL 17 HANDGUN WAS LOCATED WITHIN THE MOTOR VEHICLE
AND IS CONSIDERED A RESTRICTED FIREARM.

    - THE ASSAULT RIFLE HK93 IS CONSIDERED A RESTRICTED FIREARM.

    - THE REMINGTON MODEL 29 SHOTGUN WAS SAWED OFF, THEREFORE, MAKING
IT A PROHIBITED FIREARM.

    SEC 88(1) C.C. (X 5) - POSSESSION OF A WEAPON DANGEROUS TO THE
PUBLIC PEACE

    - THE ACCUSED LY IS KNOWN TO CPS AS AN FK/UN GANG MEMBER.

    - LY'S TRACKS BACK TO THE MOTOR VEHICLE WAS LITTERED WITH DISCARDED
GLOVES AND CLOTHING INDICATING HE OR HIS ASSOCIATES WERE TRYING TO
CHANGE THEIR APPEARANCE ON ARRIVAL BY POLICE.

    - WITHIN THE SAFARI VAN NEWLY PURCHASED CLOTHING FROM WALMART WAS
LOCATED, AS WELL AS RUNNING SHOES INDICATING A CHANGE OF CLOTHING
READILY ACCESSIBLE IN CASE THE OCCUPANTS WERE INVOLVED IN A VIOLENT ACT.

    - SEVERAL BANDANA/SCARVES WERE LOCATED KNOWN BY POLICE TO BE USED
AS A MASK TO ASSIST IN CONCEALING THE IDENTITY OF CULPRITS INVOLVED IN
CRIMINAL ACTIVITY.

    SEC 94(1) C.C. (X 4) - FIREARM IN A MOTOR VEHICLE

    - THE ACCUSED LY WAS TRACKED BACK TO THE SAFARI VAN CONTAINING FIVE
FIREARMS. AS THE ONLY SEATS PRESENT WERE THE FRONT DRIVER AND PASSENGER
SEATS, ALL OTHER OCCUPANTS HAD TO REMAIN IN THE REAR STORAGE AREA OF THE
VAN.

    - THE FIREARMS WERE VISIBLE IN THE REAR AND WERE STICKING OUT OF A
PIECE OF CARPET WHEN OBSERVED BY POLICE.

    - ALL OF THESE WEAPONS WERE LOADED.

    - THE REMINGTON 870 SHOTGUN IS A CONTROLLED FIREARM AND, THEREFORE,
IS NOT APPLICABLE UNDER THIS SECTION OF THE CRIMINAL CODE.

    SEC 86(2) C.C. (X 5) - HAZARDOUS STORAGE OF FIREARM

    - ALL FIVE FIREARMS LOCATED WITHIN THE (UNLOCKED) MOTOR VEHICLE
WERE LOADED AND DID NOT HAVE ANY SAFETY MECHANISMS WHATSOEVER ON THEM.

POL3281
Mail Code: 0730                                    2012/03/13 06:30 Page: 17
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
                        INVESTIGATIVE DETAILS        Complaint#: 09112050
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

     - TO DATE NONE OF THESE FIREARMS APPEAR TO BE REGISTERED, AND ONE
IS MISSING A SERIAL NUMBER.

     SEC 108(1)(A) C.C. (X 1) - TAMPERING WITH SERIAL NUMBER

     - THE SMITH & WESSON HANDGUN HAD ITS SERIAL NUMBER OBLITERATED.

     SEC 92(2) C.C. (X 3) - POSSESS PROHIBITED DEVICE

     - THE GLOCK 17 HANDGUN, THE SMITH & WESSON HANDGUN, AND THE HK93
ASSAULT RIFLE ALL CONTAINED EXTENDED MAGAZINES MAKING THEM A PROHIBITED
DEVICE AS DEFINED BY THE CRIMINAL CODE.

     SEC 91(1) C.C. (X 5) - UNAUTHORIZED POSSESSION

     - BILL LY IS NOT THE HOLDER OF A LICENSE FOR WHICH HE MAY POSSESS A
FIREARM.

ACCUSED #2:  DANG NGOC NGUYEN
SEC 95(1) C.C. (X 4) - PROHIBITED OR RESTRICTED FIREARM WITH
AMMUNITION

- THE ACCUSED WAS TRACKED FROM HIS POINT OF CONTACT WITH POLICE
BACK TO THE UNREGISTERED SAFARI VAN BEARING ALBERTA LICENSE PLATE
M17537.

- THE ACCUSED'S IDENTITY WAS CONFIRMED AS HE IS KNOWN TO POLICE AND
WAS ARRESTED ON AN OUTSTANDING WARRANT.

- FIVE FIREARMS WERE FOUND WITHIN THE MOTOR VEHICLE THAT CONTAINED
ONLY TWO SEATS.

- A SMITH & WESSON HANDGUN WAS SMALLER THAN THE DESIGNATED LENGTH
AS REQUIRED BY THE CRIMINAL CODE AND IS, THEREFORE, CONSIDERED A
PROHIBITED FIREARM.

- THE GLOCK MODEL 17 HANDGUN WAS LOCATED WITHIN THE MOTOR VEHICLE
AND IS CONSIDERED A RESTRICTED FIREARM.

- THE ASSAULT RIFLE HK93 IS CONSIDERED A RESTRICTED FIREARM.

- THE REMINGTON MODEL 29 SHOTGUN WAS SAWED OFF, THEREFORE, MAKING
IT A PROHIBITED FIREARM.

SEC 88(1) C.C. (X 5) - POSSESSION OF A WEAPON DANGEROUS TO THE
PUBLIC PEACE

- THE ACCUSED NGUYEN IS KNOWN TO CPS AS AN FK GANG MEMBER.

- NGUYEN'S TRACKS BACK TO THE MOTOR VEHICLE WAS LITTERED WITH
DISCARDED GLOVES AND CLOTHING INDICATING HE OR HIS ASSOCIATES WERE
TRYING TO CHANGE THEIR APPEARANCE ON ARRIVAL BY POLICE.

- WITHIN THE SAFARI VAN NEWLY PURCHASED CLOTHING FROM WALMART WAS
LOCATED, AS WELL AS RUNNING SHOES INDICATING A CHANGE OF CLOTHING
READILY ACCESSIBLE IN CASE THE OCCUPANTS WERE INVOLVED IN A VIOLENT ACT.

- SEVERAL BANDANA/SCARVES WERE LOCATED KNOWN BY POLICE TO BE USED
AS A MASK TO ASSIST IN CONCEALING THE IDENTITY OF CULPRITS INVOLVED IN
CRIMINAL ACTIVITY.

SEC 94(1) C.C. (X 4) - FIREARM IN A MOTOR VEHICLE

- THE ACCUSED NGUYEN WAS TRACKED BACK TO THE SAFARI VAN CONTAINING
FIVE FIREARMS. AS THE ONLY SEATS PRESENT WERE THE FRONT DRIVER AND
PASSENGER SEATS, ALL OTHER OCCUPANTS HAD TO REMAIN IN THE REAR STORAGE
AREA OF THE VAN.

- THE FIREARMS WERE VISIBLE IN THE REAR AND WERE STICKING OUT OF A

POL3281
Mail Code: 0730                                    2012/03/13 06:30 Page: 19
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
                     EVIDENCE LINKING ACCUSED        Complaint#: 09112050
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
PIECE OF CARPET WHEN OBSERVED BY POLICE.

     - ALL OF THESE WEAPONS WERE LOADED.

     - THE REMINGTON 870 SHOTGUN IS A CONTROLLED FIREARM AND, THEREFORE,
IS NOT APPLICABLE UNDER THIS SECTION OF THE CRIMINAL CODE.

     SEC 86(2) C.C. (X 5) - HAZARDOUS STORAGE OF FIREARM

     - ALL FIVE FIREARMS LOCATED WITHIN THE (UNLOCKED) MOTOR VEHICLE
WERE LOADED AND DID NOT HAVE ANY SAFETY MECHANISMS WHATSOEVER ON THEM.

     - TO DATE NONE OF THESE FIREARMS APPEAR TO BE REGISTERED, AND ONE
IS MISSING A SERIAL NUMBER.

     SEC 108(1)(A) C.C. (X 1) - TAMPERING WITH SERIAL NUMBER

     - THE SMITH & WESSON HANDGUN HAD ITS SERIAL NUMBER OBLITERATED.

     SEC 92(2) C.C. (X 3) - POSSESS PROHIBITED DEVICE

     - THE GLOCK 17 HANDGUN, THE SMITH & WESSON HANDGUN, AND THE HK93
ASSAULT RIFLE ALL CONTAINED EXTENDED MAGAZINES MAKING THEM A PROHIBITED
DEVICE AS DEFINED BY THE CRIMINAL CODE.

     SEC 91(2) C.C. (X 5) - KNOWINGLY POSSESS FIREARM WHILE UNAUTHORIZED

     - DANG NGUYEN IS NOT THE HOLDER OF A LICENSE FOR WHICH HE MAY
POSSESS A FIREARM.

     SEC 117(01)(1) C.C. (X 5) - POSSESS FIREARMS CONTRARY TO
     PROHIBITION ORDER

     - DANG NGUYEN WAS CONVICTED OF POSSESSION FOR THE PURPOSES OF
TRAFFICKING ON APRIL 15, 2004, AND GIVEN A LIFETIME PROHIBITION OF
FIREARMS.

     - FIVE FIREARMS WERE LOCATED WITHIN THE SILVER SAFARI VAN.

     SEC 92(1) C.C. (X 5) - KNOWLEDGE OF UNAUTHORIZED POSSESSION

     - THE FIVE FIREARMS SEIZED WERE IN CONTRAVENTION OF THE ORDER
SIGNED BY DANG NGUYEN INDICATING THAT HE HAD KNOWLEDGE THAT HE WAS
PROHIBITED AND COULD NOT LAWFULLY POSSESS THE ASSAULT RIFLE AND OTHER
FIREARMS.


     ACCUSED:  ZACHARY MIRABACK
     SEC 95(1) C.C. (X 4) - PROHIBITED OR RESTRICTED FIREARM WITH
     AMMUNITION

     - THE ACCUSED WAS TRACKED FROM HIS POINT OF CONTACT WITH POLICE

POL3281
Mail Code: 0730                                    2012/03/13 06:30 Page: 20
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
                    EVIDENCE LINKING ACCUSED         Complaint#: 09112050
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
BACK TO THE UNREGISTERED SAFARI VAN BEARING ALBERTA LICENSE PLATE
M17537.

     - THE ACCUSED'S IDENTITY WAS CONFIRMED AS HE IS KNOWN TO POLICE AND
WAS ARRESTED ON AN OUTSTANDING WARRANT.

     - FIVE FIREARMS WERE FOUND WITHIN THE MOTOR VEHICLE THAT CONTAINED
ONLY TWO SEATS.

     - A SMITH & WESSON HANDGUN WAS SMALLER THAN THE DESIGNATED LENGTH
AS REQUIRED BY THE CRIMINAL CODE AND IS, THEREFORE, CONSIDERED A
PROHIBITED FIREARM.

     - THE GLOCK MODEL 17 HANDGUN WAS LOCATED WITHIN THE MOTOR VEHICLE
AND IS CONSIDERED A RESTRICTED FIREARM.

     - THE ASSAULT RIFLE HK93 IS CONSIDERED A RESTRICTED FIREARM.

     - THE REMINGTON MODEL 29 SHOTGUN WAS SAWED OFF, THEREFORE, MAKING
IT A PROHIBITED FIREARM.

     SEC 88(1) C.C. (X 5) - POSSESSION OF A WEAPON DANGEROUS TO THE
PUBLIC PEACE

     - THE ACCUSED MIRABACK IS KNOWN TO CPS AS AN FK GANG MEMBER.

     - WITHIN THE SAFARI VAN NEWLY PURCHASED CLOTHING FROM WALMART WAS
LOCATED, AS WELL AS RUNNING SHOES INDICATING A CHANGE OF CLOTHING
READILY ACCESSIBLE IN CASE THE OCCUPANTS WERE INVOLVED IN A VIOLENT ACT.

     - SEVERAL BANDANA/SCARVES WERE LOCATED KNOWN BY POLICE TO BE USED
AS A MASK TO ASSIST IN CONCEALING THE IDENTITY OF CULPRITS INVOLVED IN
CRIMINAL ACTIVITY.

     SEC 94(1) C.C. (X 5) - FIREARM IN A MOTOR VEHICLE

     - THE FIREARMS WERE VISIBLE IN THE REAR AND WERE STICKING OUT OF A
PIECE OF CARPET WHEN OBSERVED BY POLICE.

     - ALL OF THESE WEAPONS WERE LOADED.

     - THE REMINGTON 870 SHOTGUN IS A CONTROLLED FIREARM AND, THEREFORE,
IS NOT APPLICABLE UNDER THIS SECTION OF THE CRIMINAL CODE.

     SEC 86(2) C.C. (X 5) - HAZARDOUS STORAGE OF FIREARM

     - ALL FIVE FIREARMS LOCATED WITHIN THE (UNLOCKED) MOTOR VEHICLE
WERE LOADED AND DID NOT HAVE ANY SAFETY MECHANISMS WHATSOEVER ON THEM.

     - TO DATE NONE OF THESE FIREARMS APPEAR TO BE REGISTERED, AND ONE
IS MISSING A SERIAL NUMBER.

POL3281
Mail Code: 0730                                    2012/03/13 06:30 Page: 21
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
                     EVIDENCE LINKING ACCUSED      Complaint#: 09112050
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
     SEC 108(1)(A) C.C. (X 1) - TAMPERING WITH SERIAL NUMBER

     - THE SMITH & WESSON HANDGUN HAD ITS SERIAL NUMBER OBLITERATED.

     SEC 92(2) C.C. (X 3) - POSSESS PROHIBITED DEVICE

     - THE GLOCK 17 HANDGUN, THE SMITH & WESSON HANDGUN, AND THE HK93
ASSAULT RIFLE ALL CONTAINED EXTENDED MAGAZINES MAKING THEM A PROHIBITED
DEVICE AS DEFINED BY THE CRIMINAL CODE.

     SEC 91(1) C.C. (X 5) - UNAUTHORIZED POSSESSION

     - MIRABACK IS NOT THE HOLDER OF A LICENSE FOR WHICH HE MAY
POSSESS A FIREARM.
     SEC 117.01 (1) CC X 5 - POSSESS FIREARM CONTRARY TO PROHIBITION
ORDER

     - ON 2007/09/24 MIRABACK WAS CONVICTED OF SEC 88(1) POSSESS WEAPON
DANGEROUS TO PUBLIC PEACE AND GIVEN A 5 YEAR PROHIBITION ORDER.
UNDER SEC 110.

     ACCUSED:  CHRISTIAN NAVOS
     SEC 95(1) C.C. (X 4) - PROHIBITED OR RESTRICTED FIREARM WITH
AMMUNITION

     - THE ACCUSED WAS TRACKED FROM HIS POINT OF CONTACT WITH POLICE
BACK TO THE UNREGISTERED SAFARI VAN BEARING ALBERTA LICENSE PLATE
M17537.

     - THE ACCUSED'S IDENTITY WAS CONFIRMED AS HE IS KNOWN TO POLICE AND
WAS ARRESTED ON AN OUTSTANDING WARRANT.

     - FIVE FIREARMS WERE FOUND WITHIN THE MOTOR VEHICLE THAT CONTAINED
ONLY TWO SEATS.

     - A SMITH & WESSON HANDGUN WAS SMALLER THAN THE DESIGNATED LENGTH
AS REQUIRED BY THE CRIMINAL CODE AND IS, THEREFORE, CONSIDERED A
PROHIBITED FIREARM.

     - THE GLOCK MODEL 17 HANDGUN WAS LOCATED WITHIN THE MOTOR VEHICLE
AND IS CONSIDERED A RESTRICTED FIREARM.

     - THE ASSAULT RIFLE HK93 IS CONSIDERED A RESTRICTED FIREARM.

     - THE REMINGTON MODEL 29 SHOTGUN WAS SAWED OFF, THEREFORE, MAKING
IT A PROHIBITED FIREARM.

     SEC 88(1) C.C. (X 5) - POSSESSION OF A WEAPON DANGEROUS TO THE
PUBLIC PEACE

     - THE ACCUSED NAVOS IS KNOWN TO CPS AS AN FK GANG MEMBER.

POL3281
Mail Code: 0730                              2012/03/13 06:30 Page: 22
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
                    EVIDENCE LINKING ACCUSED       Complaint#: 09112050
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
     - WITHIN THE SAFARI VAN NEWLY PURCHASED CLOTHING FROM WALMART WAS
LOCATED, AS WELL AS RUNNING SHOES INDICATING A CHANGE OF CLOTHING
READILY ACCESSIBLE IN CASE THE OCCUPANTS WERE INVOLVED IN A VIOLENT ACT.

     - SEVERAL BANDANA/SCARVES WERE LOCATED KNOWN BY POLICE TO BE USED
AS A MASK TO ASSIST IN CONCEALING THE IDENTITY OF CULPRITS INVOLVED IN
CRIMINAL ACTIVITY.

     SEC 94(1) C.C. (X 5) - FIREARM IN A MOTOR VEHICLE

     - THE FIREARMS WERE VISIBLE IN THE REAR AND WERE STICKING OUT OF A
PIECE OF CARPET WHEN OBSERVED BY POLICE.

     - ALL OF THESE WEAPONS WERE LOADED.

     - THE REMINGTON 870 SHOTGUN IS A CONTROLLED FIREARM AND, THEREFORE,
IS NOT APPLICABLE UNDER THIS SECTION OF THE CRIMINAL CODE.

     SEC 86(2) C.C. (X 5) - HAZARDOUS STORAGE OF FIREARM

     - ALL FIVE FIREARMS LOCATED WITHIN THE (UNLOCKED) MOTOR VEHICLE
WERE LOADED AND DID NOT HAVE ANY SAFETY MECHANISMS WHATSOEVER ON THEM.

     - TO DATE NONE OF THESE FIREARMS APPEAR TO BE REGISTERED, AND ONE
IS MISSING A SERIAL NUMBER.

     SEC 108(1)(A) C.C. (X 1) - TAMPERING WITH SERIAL NUMBER

     - THE SMITH & WESSON HANDGUN HAD ITS SERIAL NUMBER OBLITERATED.

     SEC 92(2) C.C. (X 3) - POSSESS PROHIBITED DEVICE

     - THE GLOCK 17 HANDGUN, THE SMITH & WESSON HANDGUN, AND THE HK93
ASSAULT RIFLE ALL CONTAINED EXTENDED MAGAZINES MAKING THEM A PROHIBITED
DEVICE AS DEFINED BY THE CRIMINAL CODE.

     SEC 91(1) C.C. (X 5) - UNAUTHORIZED POSSESSION

     - NAVOS IS NOT THE HOLDER OF A LICENSE FOR WHICH HE MAY
POSSESS A FIREARM.


     ACCUSED:  WAYNE HA
     SEC 95(1) C.C. (X 4) - PROHIBITED OR RESTRICTED FIREARM WITH
     AMMUNITION

     - THE ACCUSED WAS TRACKED FROM HIS POINT OF CONTACT WITH POLICE
BACK TO THE UNREGISTERED SAFARI VAN BEARING ALBERTA LICENSE PLATE
M17537.

     - THE ACCUSED'S IDENTITY WAS CONFIRMED AS HE IS KNOWN TO POLICE AND
WAS ARRESTED ON AN OUTSTANDING WARRANT.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
                    EVIDENCE LINKING ACCUSED        Complaint#: 09112050
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

- FIVE FIREARMS WERE FOUND WITHIN THE MOTOR VEHICLE THAT CONTAINED ONLY TWO SEATS.

- A SMITH & WESSON HANDGUN WAS SMALLER THAN THE DESIGNATED LENGTH AS REQUIRED BY THE CRIMINAL CODE AND IS, THEREFORE, CONSIDERED A PROHIBITED FIREARM.

- THE GLOCK MODEL 17 HANDGUN WAS LOCATED WITHIN THE MOTOR VEHICLE AND IS CONSIDERED A RESTRICTED FIREARM.

- THE ASSAULT RIFLE HK93 IS CONSIDERED A RESTRICTED FIREARM.

- THE REMINGTON MODEL 29 SHOTGUN WAS SAWED OFF, THEREFORE, MAKING IT A PROHIBITED FIREARM.

SEC 88(1) C.C. (X 5) - POSSESSION OF A WEAPON DANGEROUS TO THE PUBLIC PEACE

- THE ACCUSED HA IS KNOWN TO CPS AS AN FK GANG MEMBER.

- WITHIN THE SAFARI VAN NEWLY PURCHASED CLOTHING FROM WALMART WAS LOCATED, AS WELL AS RUNNING SHOES INDICATING A CHANGE OF CLOTHING READILY ACCESSIBLE IN CASE THE OCCUPANTS WERE INVOLVED IN A VIOLENT ACT.

- SEVERAL BANDANA/SCARVES WERE LOCATED KNOWN BY POLICE TO BE USED AS A MASK TO ASSIST IN CONCEALING THE IDENTITY OF CULPRITS INVOLVED IN CRIMINAL ACTIVITY.

SEC 94(1) C.C. (X 5) - FIREARM IN A MOTOR VEHICLE

- THE FIREARMS WERE VISIBLE IN THE REAR AND WERE STICKING OUT OF A PIECE OF CARPET WHEN OBSERVED BY POLICE.

- ALL OF THESE WEAPONS WERE LOADED.

- THE REMINGTON 870 SHOTGUN IS A CONTROLLED FIREARM AND, THEREFORE, IS NOT APPLICABLE UNDER THIS SECTION OF THE CRIMINAL CODE.

SEC 86(2) C.C. (X 5) - HAZARDOUS STORAGE OF FIREARM

- ALL FIVE FIREARMS LOCATED WITHIN THE (UNLOCKED) MOTOR VEHICLE WERE LOADED AND DID NOT HAVE ANY SAFETY MECHANISMS WHATSOEVER ON THEM.

- TO DATE NONE OF THESE FIREARMS APPEAR TO BE REGISTERED, AND ONE IS MISSING A SERIAL NUMBER.

SEC 108(1)(A) C.C. (X 1) - TAMPERING WITH SERIAL NUMBER

- THE SMITH & WESSON HANDGUN HAD ITS SERIAL NUMBER OBLITERATED.

SEC 92(2) C.C. (X 3) - POSSESS PROHIBITED DEVICE

```
POL3281
Mail Code: 0730                            2012/03/13 06:30 Page: 24
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
                   EVIDENCE LINKING ACCUSED       Complaint#: 09112050
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
```

- THE GLOCK 17 HANDGUN, THE SMITH & WESSON HANDGUN, AND THE HK93 ASSAULT RIFLE ALL CONTAINED EXTENDED MAGAZINES MAKING THEM A PROHIBITED DEVICE AS DEFINED BY THE CRIMINAL CODE.

SEC 91(1) C.C. (X 5) - UNAUTHORIZED POSSESSION

- HA IS NOT THE HOLDER OF A LICENSE FOR WHICH HE MAY POSSESS A FIREARM.

```
POL3281
Mail Code: 0730                                2012/03/13 06:30 Page: 25
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
                     DISCLOSURE CONCERNS            Complaint#: 09112050
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
```

    DO NOT RELEASE ANY PERSONAL INFORMATION OF THE WITNESSES TO THE
ACCUSED OR THEIR COUNSEL.

CST. JOHNSTON #3587 WILL STATE:

ON 2009/04/01 AT APPROXIMATELY 1445 HOURS I RESPONDED TO A SUSPICIOUS
PERSON CALL OF TWO MALES IN THE AREA OF 26 RIVERSIDE WAY SE. REPORTS TO
POLICE DISPATCH WERE THAT ONE OF THE MALES WAS OBSERVED CARRYING WHAT
APPEARED TO A RIFLE OF SOME SORT, AND ATTEMPTING TO CONCEAL IT IN HIS
JACKET. THE CALL ORIGINATED AT 1432 HOURS, FROM A COMPLAINANT CALLING
FROM THE AREA, WHO SAW THE MALES HEADING INTO CARBURN PARK, WHICH IS TO
THE SOUTH AND EAST OF HIS LOCATION.

WHILE CIRCULATING THE AREA FOR THESE MALES, I HEARD AN UPDATE FROM UNIT
1643, CST. ROBINSON, THAT THERE WAS AN ASIAN MALE WITH ANOTHER WHITE
MALE LEAVING THE AREA OF CARBURN PARK, OBSERVED RUNNING JUST PRIOR TO
CST. ROBINSON PULLING INTO THE PARKING LOT. THE ASIAN MALE WAS DRESSED
ALL IN BLACK. AS I WAS HEADING IN THAT DIRECTION, I HEARD CST. SMITH IN
UNIT 1613, STATE THAT HE HAD OBSERVED A GROUP OF MALES RUNNING TO THE
NORTHWEST OF CARBURN PARK NEAR RIVERSIDE CLOSE SE. I THEN HEARD CST.
SMITH STATE THAT HE HAD LOCATED THAT GROUP BEHIND A RESIDENCE IN THE
ALLEY NEAR 27 RIVERSIDE CLOSE SE, AND I ARRIVED WITHIN MOMENTS TO FIND
THE GROUP WITH CST. SMITH.

CST. SMITH HAD ONE ASIAN MALE DETAINED, LATER IDENTIFIED AS DANNY
NGUYEN, AND AFTER A CPIC CHECK WAS CONDUCTED, REVEALING AN OUTSTANDING
WARRANT, CST. SMITH ARRESTED NGUYEN, PLACING HIM IN HIS MARKED POLICE
VEHICLE. I IMMEDIATELY BEGAN TO QUESTION THE OTHER FOUR MALES, 3 OF WHOM
WERE ASIAN IN APPEARANCE, AND THE OTHER A MIXED RACE ARABIC MALE. ALL
WERE WEARING BLACK, LOOSE FITTING CLOTHING, AND APPEARED TO BE OUT OF
BREATH. UPON DEALING WITH THIS GROUP OF FOUR, I RECOGNIZED BILL LY AS A
PERSON KNOWN TO BE INVOLVED IN GANG ACTIVITY. AT THIS TIME I REQUESTED
BACK UP UNITS, GIVEN THE NATURE OF THE CALL, AND THE FACT THAT THESE
FOUR MALES HAD NOT BEEN SEARCHED.

ADDITIONAL POLICE UNITS RESPONDED AND CSTS. HARWOOD AND CHUDY IN UNIT
1619 TOOK CUSTODY OF LY AS A CPIC CHECK REVEALED AN OUTSTANDING WARRANT
FOR HIS ARREST FOR A MOTOR VEHICLE RELATED OFFENCE. WHILE CHECKING THE
OTHER 3 MALES, I NOTICED THAT ONE ASIAN MALE, LATER IDENTIFIED AS WAYNE
HA HAD ALL BLACK CLOTHING WITH A BLACK BASEBALL CAP. THE OTHER MALES
WITH HA WERE ZACHARY MIRABACK, WHO APPEARS CAUCASIAN, WITH BLUE EYES AND
BROWN HAIR, AND CHRISTIAN NAVOS, WHO IS ALSO ASIAN. THESE MALES WERE
CHECKED AND LATER RELEASED FROM THE ALLEY BEHIND 27 RIVERSIDE CLOSE SE,
AS I HAD NO REASON TO FURTHER DETAIN THEM. I HAD ALSO HEARD THAT OTHER
POLICE UNITS HAD LOCATED AND DEALT WITH THE MALES RESPONSIBLE FOR
CARRYING A RIFLE, WHICH TURNED OUT TO BE A PELLET GUN.

UPON CLEARING THE SCENE, I WAS LEAVING THE AREA OF RIVERBEND WHEN I
RECEIVED A CALL FROM CST. SMITH WHO HAD BEEN IN TOUCH WITH DET. PROCEE
OF THE CPS TARGETED ENFORCEMENT UNIT. DET. PROCEE WAS INTERESTED IN THE
INDIVIDUALS WE HAD INITIALLY DETAINED AND STATED THE GROUP MAY HAVE BEEN
RELATED TO WEAPONS OFFENCES AND MAY HAVE LEFT A VEHICLE NEARBY. AS SUCH,
I RETURNED TO THE AREA IN THE ALLEY BEHIND 27 RIVERSIDE CLOSE SE AT 1650

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
                        STATEMENTS & WITNESS EVIDENCE    Complaint#: 09112050
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
HOURS TO CONDUCT AN AREA SEARCH, AND LOOK FOR FOOTPRINTS FROM THE
DIRECTION THE GROUP HAD BEEN OBSERVED RUNNING BY CST. SMITH.
MYSELF, AND 2 OTHER POLICE UNITS ARRIVED, ALONG WITH A K-9 UNIT K935,
CST. WILLIAMS TO ASSIST WITH A TRACK. AT THE PLACE WHERE THE GROUP WAS
INITIALLY DETAINED, A PAIR OF BLACK WOOL GLOVES WERE LOCATED, WHICH WERE
SEIZED BY OTHER MEMBERS. ALONG THE TRACK WHICH RAN TO THE SOUTH, A PAIR
OF MENS XL SIZE TRACK PANTS, BLACK IN COLOR WITH WHITE STRIPES WERE
SEIZED NEAR A GARBAGE CAN BEHIND 7 RIVERSIDE CLOSE SE. NEXT DOOR, ON THE
SE SIDE OF THE LAWN AT 3 RIVERSIDE CLOSE, A PAIR OF WOOL GARDENING TYPE
GLOVES WERE FOUND, WHICH WERE WHITE IN COLOR AND HAD A YELLOW STRIPE
AROUND THE WRIST OPENING.

WE CONTINUED WITH THE K-9 TRACK DOWN ALONG RIVERSIDE CLOSE AND THROUGH
AN OPENING TO A GREEN SPACE WHICH LEADS DOWN TO THE PARKING LOT OF
CARBURN PARK AT 8925 RIVERVIEW DR. SE. ALL ALONG THE TRACK A DISTINCT
FOOTPRINT COULD BE OBSERVED IN THE SNOW ON THE GROUND, RESEMBLING THAT
OF NIKE SHOX FOOTWEAR, WHICH HAVE FOUR "SHOCK ABSORBERS" ON THE HEEL.
THE TRACK LED TO THE PARKING LOT AT CARBURN PARK, AND LOCATED NEAR A
SILVER MINI VAN, WAS A BLACK BALACLAVA WHICH WAS DISCARDED NEAR THE BACK
END OF THIS VAN.

THE VAN, BEARING ALBERTA PLATE M17537 SHOWED REGISTERED TO RICHVIEW FINE
CARS, BUT NO SPECIFIC VEHICLE DETAILS AS IT IS A DEALER PLATE. AS I
LOOKED INSIDE THE RIGHT PASSENGER SIDE OF THE VEHICLE THROUGH THE
SLIDING DOOR WINDOWS, I COULD SEE THE BARREL OF WHAT APPEARED TO BE A
LONG RIFLE. I ALSO OBSERVED WHAT LOOKED LIKE AN AMMUNITION BOX BEHIND
THE DRIVER SEAT OF THAT VEHICLE. I COULD ALSO SEE A PAIR OF GARDENING
GLOVES WHICH WERE AN EXACT MATCH TO THE ONES FOUND ALONG THE TRACK,
WHITE IN COLOR WITH YELLOW LINE AROUND THE WRIST. THE VIN# OF THE
VEHICLE WAS RAN ON CPIC AND SHOWED IT TO BE A 2000 SILVER COLOR GMC
SAFARI VAN. OTHER MEMBERS COULD OBSERVE BODY ARMOR AND A RIFLE CASE
THROUGH THE BACK WINDOW. THE VEHICLE WAS LEFT AND CONTINUITY MAINTAINED
FROM 1725 HOURS ON, UNTIL TAKEN TO A SECURE POLICE FACILITY FOR
INVESTIGATORS BY UNIT 1649, CSTS. VELLA AND VOTH.

I LATER RETURNED TO 6 DISTRICT OFFICE AND TURNED OVER MY NOTES AND
STATEMENT TO 6 GIU DETECTIVE RAHN. I ALSO ENTERED AN INITIAL REPORT ON
THE PIMS SYSTEM FOR REVIEW.


CST. HARWOOD 3730 WILL STATE:

ON 2009/04/01 AT APPROXIMATELY 15:10HRS I ATTENDED THE BACK ALLEY OF 26
RIVERSIDE WAY SE CALGARY, ALBERTA TO ASSIST UNIFORM MEMBERS WITH
NUMEROUS SUSPICIOUS PERSONS THEY HAD LOCATED.

I WAS INFORMED BY CST. JOHNSTON THAT BILL LY HAD AN OUTSTANDING WARRANT
FOR HIS ARREST FOR FAILING TO CHANGE HIS ADDRESS ON HIS DRIVERS LICENCE.
I PLACED LY UNDER ARREST FOR THE WARRANT.  I CHARTERED AND CAUTIONED LY
AND TRANSPORTED HIM TO THE ARREST PROCESSING UNIT.

I PHOTOCOPIED THE LY'S SHOES (TREDWEAR) AND PLACED THEM IN SIX DISTRICT

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
                    STATEMENTS & WITNESS EVIDENCE    Complaint#: 09112050
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
PROPERTY AS AN EXHIBIT    SH1  &  SH2


CST. J. CHUDY WILL STATE: ON 2009/04/01 AT APPROX. 14:57 I RESPONDED TO
BACK ALLEY OF 26 RIVERSIDE WY SE, WHERE COMPLAINANT STATED TO OBSERVE
FIVE YOUNG MALES WALKING DOWN THE STREET WITH A RIFLE. UPON ARRIVAL CPS
LOCATED FIVE MALES AT ABOVE LOCATION AND I DID CPIC/PIMS ENQUIRY ON ONE
OF THE SUBJECTS, BILL LY DOB:⬛⬛⬛⬛⬛⬛⬛WHICH REVEALED OUTSTANDING
WARRANT FOR 20(2) OLVCR. SUBJECT ARRESTED, CHARTERED AND CAUTIONED BY
CST. HARWOOD #3730. I TRANSPORTED THE SUBJECT TO APU AT 15:28 ARRIVED AT
15:51 AND BOOKED SUBJECT IN.


CST. BUDD 3778 WILL STATE:

ON APRIL 1, 2009, I LEARNED OF A VEHICLE BEING LOCATED IN THE CARBURN
PARK PARKING LOT AND THAT THERE WERE PEOPLE ASSOCIATED TO THE VEHICLE
WHO WERE LOCATED BY CPS.  I WAS ASKED TO ATTEND THE CARBURN PARKING LOT
BY A/SGT. ROGERS.

I ARRIVED AT THE CARBURN PARKING LOT AT APPROXIMATELY 1910 HOURS AND MET
WITH CST. WILLIAMS OF K9 AT APPROXIMATELY 1920 HOURS.  UPON MEETING WITH
CST. WILLIAMS, I ATTENDED A TRACK OF WHERE HE HAD GONE FROM WHERE THE
INDIVIDUALS WERE LOCATED TO THE GMC SAFARI WHICH WAS PREVIOUSLY IN THE
PARKING LOT.

THE TRACK THAT I ATTENDED FOR WENT FROM THE NORTH SIDE OF THE PARKING
LOT, UP A HILL TO RIVERSIDE CLOSE SE, NE FROM THE HILL TO N ALONG
RIVERSIDE CL SE TO NE ACROSS THE JUNCTION FROM RIVERBEND DR SE TO THE
ENTRANCE OF THE ALLEY BETWEEN RIVERBEND DR SE AND RIVERSIDE CL SE.

IN THIS TRACK, I SAW A FOOTPRINT SIMILAR TO A NIKE SHOX SHOE ON TWO
OCCASIONS, ONCE AT THE MOUTH OF THE ALLEY AND AT THAT JUNCTION.  I KNOW
WHAT NIKE SHOX PRINTS LOOK LIKE, AS I HAVE A PAIR AND THEY ARE DISTINCT
WITH THE HEEL PATTERN (FOUR CIRCLES).

I CONDUCTED NEIGHBORHOOD INQUIRIES ALONG THE PATH THAT I WAS SHOWN.

IN SPEAKING WITH CST. WILLIAMS UPON ARRIVING AT CARBURN PARK, I LEARNED
OF A PERSON WHO MAY HAVE SEEN THE PEOPLE RUNNING FROM THE SAFARI AND
THAT THIS OR THESE PEOPLE APPEARED TO BE CITY WORKERS.  I ALSO LEARNED
THAT CST. ROBINSON MAY HAVE TALKED WITH THESE PEOPLE.

I CALLED CST. ROBINSON OVER THE TELEPHONE AND LEARNED THAT ⬛⬛⬛⬛⬛⬛⬛⬛
WAS THE FOREMAN OF THE CARBURN MECHANICAL STATION.  CST. ROBINSON
PROVIDED ME WITH THE CONTACT INFORMATION OF ⬛⬛⬛⬛⬛⬛AND I CALLED HIM.  I
SPOKE WITH ⬛⬛⬛⬛⬛ OVER THE TELEPHONE AND LEARNED THAT ⬛⬛⬛⬛⬛⬛⬛⬛ WAS
THE CARBURN MECHANICAL STATION AT THE TIME OF INTEREST.  I FORWARDED
WHAT ⬛⬛⬛⬛⬛⬛⬛TOLD ME TO DET. RAHN OF 6 GIU OVER THE TELEPHONE.

AT APPROXIMATELY 2143 HOURS, I ATTENDED DISTRICT 6 IN EFFORT TO ASSIST
WITH THE CONDUCTING CHECKS IN RELATION TO THE FOLLOWING PEOPLE VIA CPIC.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
                  STATEMENTS & WITNESS EVIDENCE     Complaint#: 09112050
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

BILL LY;
DANG NGUYEN;
CHRISTIAN NAVROS;
WAYNE HA;
ZAC MIRABACK.


IN RELATION TO CRIMINAL HISTORY:

LY HAD A CRIMINAL HISTORY FOR THE FOLLOWING:

TRAFFICKING IN A SCHEDULED SUBSTANCE FROM 2001;
CARRYING A CONCEALED WEAPON, ASSAULT AND POSSESSION OF WEAPON ALL OF
WHICH WERE SEPARATE ENTRIES FROM 2003;
AGGRAVATED ASSAULT FROM 2005;
RESIST ARREST FROM 2007.

NGUYEN HAD A CRIMINAL HISTORY FOR THE FOLLOWING:

POSSESSION OF A SCHEDULE I SUBSTANCE FOR THE PURPOSE OF TRAFFICKING FROM
APRIL 2004;
POSSESSION OF A SCHEDULE I SUBSTANCE FOR THE PURPOSE OF TRAFFICKING,
POSSESSION OF PROPERTY OBTAINED BY CRIME AND POSSESSION OF A WEAPON FROM
OCTOBER 2005.

NAVROS HAD NO CRIMINAL HISTORY;

HA HAD A CRIMINAL HISTORY FOR THE FOLLOWING:

UNAUTHORIZED POSSESSION OF A PROHIBITED OR RESTRICTED WEAPON FROM 2002;
POSSESSION OF A SCHEDULE I SUBSTANCE FOR THE PURPOSE OF TRAFFICKING FROM
2003;

MIRABACK HAD A CRIMINAL HISTORY FOR THE FOLLOWING:

POSSESSION OF A SCHEDULED SUBSTANCE FROM 2001;
POSSESSION OF A SCHEDULED SUBSTANCE AND ASSAULT FROM 2003;
POSSESSION OF A WEAPON AND CARRYING A CONCEALED WEAPON ON SEPARATE
OCCASIONS FROM 2007.

IN RELATION TO POSSESSION ACQUISITION LICENCE (PAL) WHICH WOULD ALLOW
THE SAID PERSON TO BE IN POSSESSION OF A FIREARM AND WEAPONS
PROHIBITIONS:

LY WAS NOT ISSUED A VALID PAL;

NGUYEN WAS NOT ISSUED A VALID PAL AND NGUYEN HAD AN ORDER OF PROHIBITION
OF POSSESSION OF FIREARM, AMMUNITION OR EXPLOSIVE SUBSTANCE DATED
OCTOBER 5, 2004, WHICH WAS IN EFFECT FOR AN INDEFINITE TIME PERIOD (CPS
CASE 04248333 REFERS);

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
                    STATEMENTS & WITNESS EVIDENCE    Complaint#: 09112050
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
NAVROS WAS NOT ISSUED A VALID PAL;

HA WAS NOT ISSUED A VALID PAL;

MIRABACK WAS NOT ISSUED A VALID PAL AND MIRABACK HAD AN ORDER OF
PROHIBITION OF POSSESSION OF FIREARM, AMMUNITION OR EXPLOSIVE SUBSTANCE
DATED SEPTEMBER 24, 2007, WHICH WAS IN EFFECT UNTIL SEPTEMBER 23, 2012
(CPS CASE 07237535 REFERS).

I ALSO REVIEWED AND SUMMARIZED THE NOTES OF CST. WILLIAMS.


                    WILL STATE:

I WAS CONTACTED BY THE POLICE AND ASKED ABOUT WHAT I SAW EARLIER IN THE
DAY AT CARBURN PARK.  I TOLD CST BUDD THAT I WAS OUTSIDE WHEN I SAW A
YOUNG PERSON RUNNING NORTHBOUND ON THE RIDGE WEARING A BLACK HAT, BLACK
SHIRT AND DARK PANTS.  HE WAS RUNNING LIKE HELL AND HAD TO BE RUNNING
FROM SOMETHING.  THEN I SAW THE POLICE CAR AND THOUGHT HE WAS RUNNING
FROM THEM.  I DIDN'T SEE ANYONE IN THE PARKING LOT BEFORE THAT THOUGH.
I SPOKE WITH A WOMAN WHO WAS WALKING HER DOG AND SHE TOLD ME THAT SHE
SAW ANOTHER PERSON RUNNING, BUT THAT THE SECOND PERSON WAS WEARING A
WHITE SHIRT AND RAN IN TOWARDS CARBURN PARK IN ADDITION TO THE PERSON
THAT I SAW.


DET. GUICHON/2945 WILL STATE:

AT 2115 HOURS ON 09/04/01 DET. RAHN/3096 ASKED ME TO ARRANGE FOR THE
RELOCATION OF A VEHICLE WHICH WAS THE SUBJECT OF A SEARCH WARRANT
APPLICATION IN RELATION TO THIS FILE.  THE VEHICLE IN QUESTION IS A
SILVER 2000 GMC SAFARI VAN BEARING ALBERTA LICENSE PLATE #M17537 AND VIN
#1GKEL19W1YB501834.  UPON BEING SEIZED BY CPS MEMBERS EARLIER IN THE DAY
THE VEHICLE HAD ORIGINALLY BEEN TAKEN TO THE TURNER SIDING BUILDING
LOCATED AT 75 HERITAGE ROW S.W. HOWEVER NEEDED TO BE RELOCATED TO THE
HUSKY BUILDING LOCATED AT 431 - 6 AVE. S.E.  I ATTENDED AT HERITAGE ROW
AT 2151 HOURS 09/04/01 AND WAS MET THERE BY CITY WIDE TOWING DRIVER
        #8527, WHO ARRIVED AT 2200 HOURS.  AT 2217 HOURS WE DEPARTED
HERITAGE ROW WITH ME FOLLOWING            AND THE SUBJECT VEHICLE.  WE
ARRIVED AT THE HUSKY BUILDING AT 2240 HOURS.  THE VEHICLE WAS SECURED IN
BAY #6 AND WE DEPARTED THE HUSKY BUILDING AT 2255 HOURS.


    CST WENINGER 4146 WILL STATE:  ON 09/04/01 AT 1948 HRS, I ASSISTED
DET PROCEE 2907 AND ATTENDED TO 722 16 AV NE.  I WAS BRIEFED AND SHORTLY
THEREAFTER I ARRESTED DANNY NGUYEN AT 2003 HRS. I TRANSPORTED HIM TO THE
ANDREW DAVIDSON BUILDING WHERE HE WAS PLACED IN A SECURE ROOM.

    AT 2100 HRS I TURNED OVER NGUYEN TO DET PROCEE.


    CST WHITEHEAD 4583 WILL STATE:  ON 09/04/01 AT 1948 HRS, I ASSISTED

DET PROCEE 2907 AND ATTENDED TO 722 16 AV NE.  I WAS BRIEFED AND
MY PARTNER CST WIENINGER.  WE TRANSPORTED HIM TO THE ANDREW DAVIDSON
BUILDING WHERE HE WAS PLACED IN A SECURE ROOM.


     DET PROCEE 2907 WILL STATE:  ON 09/04/01 AT 1640 HRS I ATTENDED 6
D.O. AND MET WITH CST SMITH 3867. I WAS ADVISED OF THE ARREST OF DANG
NGUYEN.  I PHOTOGRAPHED NGUYEN'S RUNNERS, BASEBALL CAP AND BELT.

     AT 1725 HRS NGUYEN WAS RELEASED FROM 6 D.O. ON A PROMISE TO APPEAR.
NGUYEN WAS OBSERVED ENTERING CHECKER CAB #701.  NGUYEN PROCEEDED TO
DEERFOOT MEADOWS WHERE HE ENTERED THE PHO RESTAURANT AT 1733 HRS AND
EXITED 3 MINUTES LATER CARRYING A MULTI COLOURED CELL PHONE UP TO HIS
EAR.

     I WAS ADVISED BY CST SMITH THAT A SAFARI GMC VAN WAS LOCATED A
SHORT DISTANCE AWAY FROM THE LOCATION NGUYEN WAS ARRESTED AND INSIDE THE
VAN WERE NUMEROUS FIREARMS AND BODY ARMOR.

     NGUYEN WAS THEN FOLLOWED TO 722 16 AV NE, THE CAREWEST
INNOVATIVE HEALTH CARE CENTRE.  THE CAB LEFT THE CENTRE AND A SHORT TIME
LATER I LEARNED THAT NGUYEN EXITED THE CAB AND ENTERED THE CENTRE.  I
LATER RE-ATTENDED TO THE CENTRE AND SPOKE TO DIRECTOR, ▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓ WAS ADVISED THAT NGUYEN HAD ENTERED HIS BUSINESS, ▓▓▓▓▓▓▓▓▓▓
SUGGESTED THAT HE COULD TAKE US TO THE DIFFERENT POD AREAS TO SEARCH FOR
NGUYEN. LATER NGUYEN WAS LOCATED IN ROOM W345 WITH HIS FRIEND AND
PATIENT, ▓▓▓▓▓▓▓▓▓▓▓▓▓ AS WELL AS THREE GIRLS. NGUYEN WAS SUBSEQUENTLY
ARRESTED WITH THE ASSISTANCE OF CSTS WENINGER AND WHITEHEAD.  NGUYEN WAS
TRANSPORTED TO THE ANDREW DAVIDSON BUILDING WHERE I ATTENDED SHORTLY
THEREAFTER AND TOOK CONTINUITY OF HIM.

     I ENSURED NGUYEN WAS GIVEN THE OPPORTUNITY FOR HIS FREE LEGAL AID
PHONE CALLS.

     AT 2347 HRS NGUYEN WAS TRANSPORTED TO APU WHERE AT THAT TIME I
SEIZED HIS RUNNING SHOES.  NGUYEN WAS PROCESSED AS THE APPROPRIATE
PAPERWORK WAS COMPLETED.

     I ALSO ADVISED BILL LY OF ADDITIONAL CHARGES OF WEAPONS OFFENCES
AND DRUG OFFENCES.  I ENSURED THAT APU STAFF WERE AWARE SO THAT BILL LY
COULD MAKE HIS LEGAL AID PHONE CALLS.


     DET. LOTZER 3485 WILL STATE:  ON 09/04/01 I ASSISTED WITH THIS
COMPLAINT, I OBSERVED DANG NGUYEN AS HE LEFT 6 D.O. MADE HIS WAY TO THE
PHO RESTAURANT, AND THEN TO THE CAREWEST INNOVATIVE HEALTH CARE CENTRE
AT 722 16 AV NE.  I WAS IN ATTENDANCE WHEN NGUYEN WAS LOCATED AND
ARRESTED. I ASSISTED TRANSPORTING NGUYEN TO APU AND PROCESSED HIM AT
THAT LOCATION.

     I THEN ASSISTED COMPLETING SHOW CAUSE DOCUMENTATION FOR NGUYEN AND
BILL LY.

[REDACTED] WILL STATE: ON APRIL 1, 2009, I WAS SITTING IN MY
RESIDENCE WHICH FACES CARBURN PARK.  I SAW TWO YOUNG MEN RUNNING UP OVER
THE HILL FROM THE PARKING LOT, THEY RAN VERY FAST AND THREW THE PARK AT
THE END OF OUR COURT AND OUT OF SIGHT.

ONE MALE DRESSED ALL IN BLACK WITH A HAT, MALE NUMBER 2 UNKNOWN
DESCRIPTION.


[REDACTED] WILL STATE:  ON APRIL 1, 2009, APPROX. 1430 HRS, I WAS
STANDING ON THE SIDEWALK IN FRONT OF MY HOUSE TALKING TO MY NEIGHBOUR
WHEN 5 YOUTHS (4 ASIAN, 1 CAUCASIAN) APPEARED FROM AROUND THE BEND IN
THE ROAD TO THE SOUTH OF MY HOUSE, THEY WERE SLIGHTLY SEPARATED IN
PACING (FROM START TO END) ABOUT 20 FEET.  THE FRONT 2 WERE BREATHING
LIKE THEY HAD BEEN RUNNING, THEY WERE ALL WALKING AT A FAST PACE.  I DID
NOT HEAR ANY CONVERSATION AMONGST THEM EXCEPT FROM THE CAUCASIAN MALE
WHO SPOKE TO ONE OF MY DOGS.  THEY CONTINUED PAST MY HOUSE AND TURNED
RIGHT AT THE CORNER OF MY STREET.  I GOT ON THE PHONE TO CPS AND PARTWAY
INTO MY CONVERSATION A POLICE UNIT PULLED INTO THE STREET.  I OBSERVED
THE SAME YOUTHS WITH TWO POLICE CSTS NORTH DOWN THE LANE AS YOU LEAVE MY
STREET. THEY KEPT LOOKING OVER THEIR SHOULDER AS THEY WENT DOWN THE
STREET.

DESCRIPTIONS:

1) ASIAN MALE
   5'4"
   DARK CLOTHES

2) ASIAN MALE
   5'7"
   DARK CLOTHES

3) CAUCASIAN MALE
   6'1"
   LIGHT SHIRT
   DARK JEANS
   MAY HAVE HAD SOME KIND OF HEAD GEAR

4) ASIAN MALE
   5'6"
   DARK PANTS

5) ASIAN MALE
   5'7"
   DARK CLOTHES


ONE MAY HAVE HAD SOMETHING ON HIS ARM, ONE WAS CARRYING EITHER A
TOQUE OR A SWEATER.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
                    STATEMENTS & WITNESS EVIDENCE    Complaint#: 09112050
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

     [        ] WILL STATE:  ON APRIL 1, 2009, AT APPROX. 2:30P.M. I
WAS AT MY NEIGHBOURS HOUSE WHEN 5 MALES WALKED BY.  FOUR MALES WERE IN A
LEADING GROUP AND ONE FOLLOWING BEHIND.  I DID NOT SEE THE LEADING 4 AS
I HAD MY ACK TO THEM.   I DID TURN TO SEE THE 5TH MALE, HE WAS WHITE AND
HAD HIS ARM IN A SLING AND POSSIBLY A LIMP, THEY WERE ON THE CORNER OF
RIVERSIDE CL TOWARDS RIVERSIDE DR.

     [        ] AND MYSELF GOT INTO [    ]S CAR AND FOLLOWED THE GROUP,
[        ] SPOTTED THE GROUP BEING DETAINED BY THE POLICE IN THE ALLEY BEHIND
RIVERSIDE DR.  WE DROVE FAST ON RIVERSIDE DR, TURNED LEFT ONTO RIVERSIDE
CI WHERE WE SAW THE GROUP AGAIN IN THE ALLEY TALKING TO THE POLICE.  AT
THIS POINT WE RETURNED HOME.

     DESCRIPTION:

     5TH MALE: 18 - 23 YEARS, CAUCASION, ARM IN SLING, 5'10", WHITE
T-SHIRT, DARK HAIR, SHORT, DARK PANTS, CARRYING A BLACK JACKET.


     [        ] WILL STATE:  I WAS COMING HOME FROM WORK TODAY AND
SAW 4 BOYS RUNNING DOWN THE BACK ALLEYWAY, THEY WERE OLDER BOYS,
TEENAGERS, TALL, ONE BOY HAD A WHITE T-SHIRT AND JEANS.  THEY ALL HAD
T-SHIRTS, NOT JACKETS.  I THOUGHT THIS WAS ODD SINCE IT REALLY WASN'T
THAT WARM TO BE OUT WITHOUT A JACKET.  I FELT THAT WAS STRANGE BECAUSE
IT WAS UNUSUAL TO SEE BOYS RUNNING AS IF THEY WERE RUNNING FROM
SOMETHING.

     THE BOY THAT WAS RUNNING LAST HAD DARK WELL GROOMED HAIR TO THE MID
NECK.

     THERE WAS A POLICE VEHICLE AHEAD OF ME WHO TURNED ONTO RIVERSIDE CL
SE AND TURNED AROUND ON THE STREET.


STATEMENT OF: CST DARCY WILLIAMS #3324
ON APRIL 1, 2009 AT APPROXIMATELY 1621 HOURS I WAS REQUESTED BY CST
JOHNSTON #3587 TO ATTEND THE RIVERBEND AREA TO ASSIST IN AN AREA SEARCH
FOR ITEMS THAT MAY HAVE BEEN DISCARDED BY A GROUP OF FIVE MALES THAT HAD
EARLIER BEEN LOCATED. ON ARRIVAL AT 1637 HOURS I ARRIVED IN THE ALLEY
BEHIND 27 RIVERSIDE CLOSE SE. I BEGAN AN AREA SEARCH OF THE AREA THE
MALES HAD LAST BEEN SEEN. I OBSERVED THREE DIFFERENT SETS OF FOOTPRINTS
IN THE SNOW ALONG THE WEST SIDE OF THE ALLEY. ONE WAS A SIZE 9-10 NIKE
SHOX TYPE WITH FOUR DISTINCT CIRCLES THE SIZE OF A LOONIE IN THE HEEL
AREA, THE SECOND WAS AN APPROXIMATE SIZE 9 NARROW SHOE WITH THIN
HORIZONTAL LINES IN BOTH THE HEEL AND FRONT FOOT AREA, THE THIRD WAS AN
APPROXIMATE SIZE 11 RUNNING SHOE WITH A DISTINCT RIBBON TYPE DESIGN IN
THE HEEL AREA. I FOLLOWED THESE PRINTS SOUTH IN THE ALLEY AT WHICH POINT
I NOTICED A PAIR OF BLACK TRACK PANTS HANGING ON THE EDGE OF A GREEN
GARBAGE CAN IN THE GARBAGE CHUTE AT #7 RIVERSIDE CIRCLE SE. THIS ITEM
WAS SEIZED BY MY BACKUP.

POL3281
Mail Code: 0730                                    2012/03/13 06:30 Page: 34
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
                 STATEMENTS & WITNESS EVIDENCE    Complaint#: 09112050
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

I CONTINUED FOLLOWING THE FOOTPRINTS SOUTH TO THE MOUTH OF THE ALLEY
ONTO RIVERSIDE CLOSE SE. ON THE SOUTH SIDE OF #3 RIVERSIDE CLOSE SE, I
OBSERVED A PAIR OF WHITE GLOVES WITH A YELLOW STRIPE ON THE CUFF. I WAS
NOTIFIED BY MY BACKUP THAT THEY HAD LOCATED A SIMILAR PAIR WHERE THE 5
MALES HAD EARLIER BEEN HIDING. THESE GLOVES WERE AGAIN SEIZED BY MY BACK
UP. I WAS INFORMED THAT A WITNESS HAD OBSERVED THE FIVE MALES HEADING
SOUTH TO NORTH ON RIVERSIDE CLOSE SE. I PROJECTED IN A SOUTH DIRECTION
AND LOCATED A PARTIAL PRINT OF ONE OF THE FOOTWEAR IMPRESSIONS (NIKE
SHOXRUNNING SHOE). I CONTINUED WEST AT THE NATURAL BEND OF THE STREET
CHECKING BOTH THE NORTH AND SOUTH PROPERTIES FOR ANY SIGN OF THE
PREVIOUS NOTED FOOTPRINTS, THIS WAS NEGATIVE.

THE FOOTPRINTS WERE RE-ACQUIRED IN A GREEN SPACE BETWEEN 183 & 191
RIVERSIDE CLOSE SE. ALL THREE OF THE FOOTPRINTS FOUND IN THE ALLEY WERE
ALSO LOCATED IN THE GREEN SPACE. I CONTINUED TO FOLLOW ARE THREE OF THE
PRINTS TOWARDS THE PARKING LOT OF CARBURN PARK. THE PRINTS WERE
TEMPORARILY LOST AS THERE WAS NO SNOW ON THE SLOPE LEADING TO THE
PARKING LOT. ONE OF THE FOOTPRINTS WAS RE-ACQUIRED AT THE BOTTOM OF THE
HILL LEADING TOWARDS THE NORTHWEST CORNER OF THE LOT. UPON REACHING THE
PARKING LOT A BLACK BALACLAVA WAS LOCATED ON THE GROUND APPROXIMATELY 3
FEET FROM A SILVER GMC SAFARI WITH ALBERTA LICENSE M17537 (VEHICLE
BACKED IN TO STALL). MY BACKUP SEIZED THE BALACLAVA. I NOTED ONE OF THE
THREE FOOTPRINTS NEAR THE REAR OF THE SAFARI BETWEEN TWO OF THE
PERIMETER WOODEN PARKING PEGS. I FOUND THE SAFARI VEHICLE TO BE
UNLOCKED. UPON OPENING THE PASSENGER SIDE SLIDING DOOR TO SEE IF ANYONE
WAS INSIDE I SAW A DUFFEL BAG CONTAINING VARIOUS ITEMS OF CLOTHING
CONSISTING OF BANDANAS, DARK HEAD GEAR, AND A SIMILAR PAIR OF WHITE
GLOVES WITH YELLOW TRIM ON THE CUFF. UNDER THE BENCH SEAT I OBSERVED A
SET OF BODY ARMOUR. A LARGE PIECE OF CARPET WAS FOLDED UP AND BUNCHED ON
THE FLOOR BETWEEN THE FRONT SEAT AND THE BENCH.

I LOOKED INTO THE AREA OF THE FOLDS AND SAW A BLACK MUZZLE BELONGING TO
A RIFLE AS WELL AS A BLACK HANDGUN. BOTH OF THE BARRELS WERE POINTED IN
THE DIRECTION OF THE SLIDING DOOR. ON THE GROUND NEAR THE OPENING TO THE
SLIDING DOOR I SAW TWO SMALL CLEAR BAGS WHICH LOOKED TO CONTAIN A POWDER
LIKE SUBSTANCE. UPON DETERMINING THERE WAS NO ONE IN THE VEHICLE I
CLOSED THE SLIDING DOOR AND NOTIFIED CST JOHNSTON #3587. I WAS THEN
INFORMED THAT A SET OF WHITE BODY ARMOUR COULD BE SEEN THROUGH THE
WINDOW AT THE REAR OF THE VAN. I CONTACTED DET LOTZER #3485 AND NOTIFIED
HIM OF THE VEHICLE AND WHAT I HAD SEEN. I CONTACTED DISPATCH AND ASKED
THAT AN IDENT UNIT MEMBER ATTEND TO PHOTOGRAPH THE FOOTPRINTS IN THE
SNOW I HAD FOLLOWED. I CONDUCTED A PERIMETER SEARCH OF THE ENTIRE
PARKING LOT HOWEVER I WAS UNABLE TO FIND ANY ONE OF THE THREE SETS OF
FOOTPRINTS I HAD FOLLOWED INTO THE PARK. I ALSO CHECKED THE AREA TO THE
NORTH OF THE PARKING LOT UP TO THE PROPERTIES BACKING ONTO IT AND AGAIN
WAS UNABLE TO SEE ANY OF THE THREE FOOTPRINTS.  CST AEBIG #2888 OF THE
IDENT UNIT ARRIVED ON SCENE AND I POINTED OUT THE FOOTPRINTS I HAD
FOLLOWED FROM BEHIND 27 RIVERSIDE CLOSE SE TO THE CARBURN PARK PARKING
LOT. I WAS REQUESTED TO ATTEND THE ARREST PROCESSING UNIT TO VIEW THE
FOOTWEAR THAT BELONGED TO BILL LY, ONE OF THE FIVE MALES THAT HAD BEEN
ARRESTED. UPON VIEWING THE FOOTWEAR I WAS SATISFIED IT WAS VERY SIMILAR

POL3281
Mail Code: 0730                                    2012/03/13 06:30 Page: 35
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
                      STATEMENTS & WITNESS EVIDENCE    Complaint#: 09112050
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
TO THE FOOTPRINTS PRESENT IN THE ALLEY AND THE GREEN SPACE LEADING TO
THE CARBURN PARK PARKING LOT. I LATER RETURNED TO THE CARBURN PARK
PARKING LOT AND ASSISTED CST DAN ROGERS #3560 IN SHOWING HIM THE
FOOTPRINTS AND THE DIRECTION OF THE TRACK.


     DET CARRIERE 3281 WILL STATE:  ON 09/04/01 I ASSISTED ON THIS
COMPLAINT. I COMPLETED A SEARCH WARRANT AND ASSISTED WITH THE COMPLETION
OF THIS REPORT AND ENSURED THAT THE APPROPRIATE CHARGES WERE LAID.

     I WAS ADVISED OF THE ARREST DANG NGUYEN AND BILL LY AND ASSISTED IN
THIS INVESTIGATION. I BECAME THE AFFIANT ON THE SEARCH WARRANT ON THE
SAFARI VAN AND UPON OBTAINING JUDICIAL AUTHORIZATION I ADVISED CRIME
SCENES UNIT MEMBER SGT EDWARDS WHO SUBSEQUENTLY ASSIGNED A CSU MEMBER TO
ASSIST.


CST DENTANDT #3923 WILL STATE:   ON 1 APRIL 2009 I WAS WORKING UNIFORMED
PATROL WITH MY PARTNER, CST MACARTHUR #4628. I HEARD OVER THE RADIO THAT
ANOTHER UNIT WANTED US TO CHECK OUT AN ADDRESS 240 RIVERBEND CLOSE SE TO
SPEAK WITH A COUPLE MALES WHO MIGHT HAVE INFORMATION FOR US ABOUT A
GROUP OF ASIAN MALES SEEN RUNNING IN THE AREA.

I ATTENDED AND SPOKE WITH THE MALES WHO SAID THAT A GROUP OF ASIAN MALES
AND ONE CAUCASIAN MALE WERE SEEN RUNNING DOWN THE STREET AND SEEMED OUT
OF BREATH. THE MALES LIVE IN THE NEIGHBORHOOD AND SAID THAT THIS GROUP
OF MALES DON'T.

I THEN WENT TO THE LOCATION WHERE THE MALES WERE STOPPED BY OTHER
OFFICERS. CST JOHNSON #3587 WAS DEALING WITH THE GROUP OF MALES. WHILE
SPEAKING WITH THE MALES I NOTICED THAT ONE OF THEM, WAYNE HA, WAS
WEARING A PAIR OF NIKE SPRING SHOES. THE SOLES OF THESE SHOES WERE VERY
DISTINCTIVE. THEY HAD FOUR ROUND SPRING-LIKE CUSHIONS ON EACH HEAL. ONCE
JOHNSON WAS DONE WITH THE MALES THEY LEFT THE AREA ON FOOT.

A SHORT TIME LATER I RETURNED TO THE AREA TO ASSIST IN CONDUCTING A MAN
TRACK AND ITEM SEARCH. I LOCATED A PAIR OF BLACK COTTON GLOVES UNDER A
DUMP TRUCK. THE GLOVES WERE FOLDED TOGETHER AND COMPLETELY DRY, LYING ON
TOP OF SOME SNOW. WE STARTED THE MAN TRACK SOUTHBOUND IN THE ALLEY
BEHIND #7 RIVERBEND CLOSE. WE FOLLOWED THE FOOTPRINTS SOUTH AND ALONG
THE WAY FOUND A PAIR OF DRY BLACK SHINY TRACK PANTS WITH A WHITE STRIPE
DOWN THE SIDES IN A GARBAGE BAG BEHIND #7 RIVERBEND CLOSE.

WE CONTINUED SOUTH BOUND FOLLOWING THE TRACKS IN THE SNOW AND FOUND A
PAIR OF WHITE COTTON GLOVES WITH YELLOW TRIM ON THE SOUTH YARD BEHIND #3
RIVERBEND CLOSE, CLOSE TO THE ENTRY OF THE ALLEYWAY.

WE CONTINUED THE MAN TRACK SOUTHBOUND ON RIVERBEND CLOSE FOLLOWING THE
PATH THAT THE MALES HAD MADE, ACCORDING TO THE INFORMATION GIVEN BY THE
TWO PREVIOUSLY MENTIONED MALES.

THERE WAS A GREEN SPACE LOCATED AT THE FAR SOUTHWEST CORNER OF RIVERBEND

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
               STATEMENTS & WITNESS EVIDENCE     Complaint#: 09112050
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
CLOSE WHERE WE LOCATED THE SAME NIKE SHOCK SHOES FOOTPRINTS IN THE SNOW.
WE FOLLOWED THE TRACKS IN THE SNOW SOUTH AND WEST TO THE PARKING LOT OF
CARBURN PARK. THERE WAS A BLACK BALACLAVA FOUND NEAR THE REAR OF A
SILVER GMC SAFARI BEARING ALBERTA MARKER M17537. I LOOKED INTO THE
WINDOWS OF THE VAN AND COULD SEE IN PLAIN VIEW A PAIR OF WHITE COTTON
GLOVES WITH YELLOW TRIM THAT MATCHED THE ONE PAIR ALREADY FOUND SITTING
ON THE BACK BENCH. I COULD ALSO SEE THE MUZZLE/FLASH SUPPRESSER OF AN
ASSAULT RIFLE STICKING OUT THE END OF SOME ROLLED UP CARPET IN THE
MIDDLE OF THE VAN. THERE WAS SOME WHITE BODY ARMOR UNDERNEATH THE REAR
BENCH SEAT. THERE WAS A BLACK DUFFLE BAG FULL OF WHAT APPEARED TO BE
BLACK CLOTHING SITTING NEXT TO THE ROLLED UP CARPET.

I TOOK CONTINUITY OF THE CLOTHING FOUND ALONG THE WAY AND LATER TURNED
OVER THE CONTINUITY TO CST VOTH #4135 AT 1825 HOURS.


CST. RYAN MACARTHUR 4527 WILL STATE:

ON APRIL 1, 2009, MY PARTNER, CST. DENTANDT #3923, AND I RESPONDED TO A
REQUEST TO ASSIST WITH A SUSPICIOUS PERSON CALL.  WE WERE REQUESTED TO
SPEAK WITH TWO GENTLEMEN WHO APPEARED TO BE FLAGGING ANOTHER UNIT DOWN
WHILE THEY WERE BUSY PURSUING INDIVIDUALS.  WHILE TALKING TO THE
INDIVIDUAL HE INDICATED THAT A GROUP OF MALES RAN NORTHBOUND ON
RIVERSIDE CLOSE SE.

WE THEN WENT TO BACK UP CST. JOHNSTON #3587 IN AN ALLEY BEHIND 304
RIVERBEND DRIVE.  JOHNSTON HAD 3 MALES STANDING IN THE ALLEY BY HIS CAR.
THE MALES HAD PREVIOUSLY IDENTIFIED THEMSELVES TO CST. JOHNSTON.  TWO
OTHER INDIVIDUALS WERE ALREADY IN THE BACK OF TWO POLICE CARS.

THE FIRST MALE, WAS CAUCASIAN WITH BROWN HAIR, STANDING APPROXIMATELY
5'8" TO 5'10" TALL.  HE WORE BLACK TRACK PANTS, A BLACK ZIP-UP HOODIE, A
BLACK HAT, AND WHITE PUMA SHOES.

THE SECOND MALE, HAD BROWN-COLOURED SKIN, WITH BLACK HAIR, STANDING
APPROXIMATELY 5'6" TO 5'8" TALL.  HE WORE BLACK TRACK PANTS, A BLACK
HUGO BOSS HOODIE, A BLACK HUGO BOSS HAT, AND BLACK RUNNING SHOES.

THE THIRD MALE, WAS ASIAN, WITH BLACK HAIR, STANDING APPROXIMATELY 5'6"
TO 5'10" TALL.  HE WORE DARK BLUE JEANS, A BLACK JACKET, A BLACK HAT,
AND BLACK AND WHITE RUNNING SHOES WITH 4 "SHOCKS" ON THE HEELS.

SPEAKING WITH THE THREE MALES, IT WAS INDICATED THAT THEY HAD BEEN AT A
FRIEND'S HOUSE, WHO THEY WOULD NOT IDENTIFY.  THEY STATED THEY WERE
HAVING A RACE TO SEE WHO WAS FASTEST.  THEY INDICATED THEY WERE GOING TO
GET SOMETHING TO EAT AT THE RIVERBEND STATION.

THE THREE MALES WERE RELEASED.  WE LEFT THE LOCATION, BUT WERE CALLED
BACK TO THE SCENE TO SEARCH FOR POSSIBLE WEAPONS.  CST. DENTANDT #3923
SEIZED A PAIR OF BLACK COTTON GLOVES LOCATED AT THE SCENE.  WE AWAITED
K9 AND ADDITIONAL OFFICERS.  WE BEGAN A 6-OFFICER MAN-TRACK DOWN THE
WESTWARD FACING ALLEY FROM THE POINT OF THE INITIAL INTERACTION.  WE

POL3281
Mail Code: 0730                              2012/03/13 06:30 Page: 37
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
                    STATEMENTS & WITNESS EVIDENCE    Complaint#: 09112050
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
FOUND NO FOOTPRINTS OR OTHER EVIDENCE.

WE THEN BEGAN A SEARCH SOUTHBOUND FROM THE INITIAL INTERACTION.  WE
FOUND SHOE PRINTS HEADING NORTHBOUND IN THE ALLEY WITH A DISTINCTIVE
SHOE PRINT WITH 4 ROUND CIRCLES IN THE HEEL, SIMILAR TO THE HEELS ON
HA'S SHOES. IN A GARBAGE CAN BEHIND #7 RIVERSIDE CLOSE, WE LOCATED A
PAIR OF BLACK TRACK PANTS WITH SINGLE WHITE STRIPES RUNNING DOWN THE
SIDES. CST. DENTANDT SEIZED THESE PANTS.  A PAIR OF WHITE COTTON GLOVES
WITH A YELLOW BAND AROUND THE WRIST WAS LOCATED ON THE SOUTH LAWN OF #3
RIVERSIDE CLOSE.  I SEIZED THESE GLOVES.

WE THEN HEADED TO THE AREA WHERE THE ORIGINAL INDIVIDUAL WE SPOKE TO
INDICATED THE INDIVIDUALS RAN FROM.  WE WERE ABLE TO FIND FOOTPRINTS
SIMILAR TO THOSE FOUND IN THE ALLEY COMING OUT OF A GREENSPACE.  WE
TRACKED THE FOOTPRINTS TO THE PARKING LOT OF CARBURN PARK.  WE FOUND A
BLACK BALACLAVA LOCATED NEAR THE NORTHWEST CORNER OF THE PARKING LOT
BEHIND A SILVER GMS SAFARI VAN WITH LICENSE PLATE M17537.  THE BALACLAVA
WAS SEIZED BY CST. DENTANDT.  LOOKING INTO THE VAN, THERE WERE, IN PLAIN
VIEW, A CELL PHONE, SEVERAL BANDANAS, A BLACK DUFFEL BAG WITH DARK
CLOTHING IN IT, A BULLET-PROOF VEST, A PAIR OF WHITE COTTON GLOVES
SIMILAR TO THOSE FOUND PREVIOUSLY, AND WHAT APPEARED TO BE THE MUZZLE OF
A GUN.

THE EVIDENCE I SEIZED WAS TURNED OVER TO CST. SHAWNA VOTH #4135

CST. VAN CAEYZEELE 3466 (NWEST) WILL STATE: ON 2009-04-02 I WAS
CONTACTED BY THE INVESTIGATORS TO ASSIST IN THIS FILE AND TO EXAMINE AND
CLASSIFY THE SEIZED FIREARMS.  I ATTENDED THE CALGARY POLICE SERVICE
CRIME SCENES UNIT AND BEGAN TO EXAMINE THE 5 SEIZED FIREARMS.  USING A
COMMERCIAL TAPE MEASURE AND ISSUED MEASURING RODS FROM THE CANADIAN
FIREARMS CENTRE I EXAMINED THE TWO SEIZED SHOTGUNS AND FOUND THAT ONE
SHOTGUN HAD ITS BARREL LENGTH ALTERED BY AN UNKNOWN CUTTING TOOL AND ITS
BARREL LENGTH WAS LESS THAN 457MM IN LENGTH, CLASSIFYING IT AS A
PROHIBITED FIREARM.

THE REMAINING SHOTGUN APPEARED TO HAVE HAD AN UNALTERED BARREL LENGTH
AND WAS CLASSIFIED AS A NON RESTRICTED FIREARM ACCORDING TO THE RCMP
FIREARMS REFERENCE TABLE (FRT).


I EXAMINED BOTH HANDGUNS AND FOUND ONE HANDGUN TO HAVE A BARREL LENGTH
OF APPROXIMATELY 105MM IN LENGTH.  A FRT QUERY REVEALED THAT PARTICULAR
MAKE AND MODEL OF FIREARM IS CLASSIFIED AS A PROHIBITED FIREARM IN
CANADA. THE REMAINING FIREARM WAS CLASSIFIED AS A RESTRICTED FIREARM.
THE ASSAULT RIFLE STYLE FIREARM WAS EXAMINED AND AN FRT QUERY REVEALED
THAT PARTICULAR FIREARM IS A PROHIBITED FIREARM IN CANADA.  I EXAMINED
THE MAGAZINES AND RELATED AMMUNITION FROM EACH MAGAZINE, AS SEIZED BY
THE CRIME SCENES UNIT, AND FOUND 3 OF THE MAGAZINES EXCEEDED THE LEGAL
CAPACITY CLASSIFYING THEM AS PROHIBITED DEVICES.  I SPOKE WITH THE
PRIMARY INVESTIGATOR AND RECOMMENDED THE APPROPRIATE CHARGES BASED ON
HIS EVIDENCE TO SUPPORT EACH CHARGE.

POL3281
Mail Code: 0730                            2012/03/13 06:30 Page: 38
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
                  STATEMENTS & WITNESS EVIDENCE    Complaint#: 09112050
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
CSU Member CST PC AEBIG Reg# 2888
Notebook #              Page(s)#
WILL STATE: "ON 2009/04/01 AT 1807 HOURS, I PHOTOGRAPHED THREE DIFFERENT
FOOTWEAR IMPRESSIONS IN THE SNOW NEAR THE NORTH EXIT FROM CARBURN PARK
ONTO RIVERSIDE CLOSE. ALL THREE IMPRESSIONS WERE LEADING AWAY FROM THE
PARKING LOT AND TOWARDS THE CLOSE. I ALSO PHOTOGRAPHED TWO FOOTWEAR
IMPRESSIONS IN THE SNOW NEAR THE CARBURN PARK PARKING LOT. THEY WERE AT
THE REAR OF A GREY GMC SAFARI VAN BEARING ALBERTA PLATE M17537 AND WERE
HEADING IN THE GENERAL DIRECTION OF THE EXIT TO RIVERSIDE CLOSE. THE
IMPRESSIONS APPEARRED TO BE THE SAME AS TWO OF THREE IMPRESSIONS UP
CLOSER TO THE NORTH EXIT.


    DET FULTON 2381 WILL STATE:  ON APRIL 7, 2009 DET. FULTON 2381
ATTENDED THE CPS INDOOR RANGE TO TEST FIRE 5 FIREARMS SEIZED UNDER CASE
NUMBER 09112050.

    EXHIBIT LG-47 IS A SMITH & WESSON MODEL SW40VE, .40 CAL. SEMI AUTO
PISTOL.  SERIAL NUMBER WAS GROUND OFF.  TWO ROUNDS OF .40 CAL. AMMO WERE
USED IN THE TEST FIRE.  THESE ROUNDS WERE LOCATED IN THE MAGAZINE OF THE
PISTOL WHEN IT WAS SEIZED.  PISTOL FIRED IN A SEMI AUTO MODE.   FIRED
CASES WERE STORED WITH THE EXHIBIT.

    EXHIBIT LG-49 IS A GLOCK MODEL 17, 9 MM SEMI AUTO PISTOL, SER.
NUMBER BLM-285 US.  TWO ROUNDS OF 9MM AMMO WERE USED FOR THE TEST FIRE.
THESE ROUNDS WERE LOCATED IN THE MAGAZINE OF THE PISTOL WHEN IT WAS
SEIZED.  PISTOL FUNCTIONED IN A SEMI AUTO MODE.  FIRED CASES STORED WITH
THE EXHIBIT.

    EXHIBIT LG-44 IS A HECKLER & KOCH MODEL 93, .223 SEMI AUTO RIFLE.
SER. NUMBER A120105.   TWO ROUNDS OF .223 AMMO WERE USED FOR THE FIRST
TEST FIRE.  THESE ROUNDS WERE LOCATED IN THE MAGAZINE THAT WAS IN THE
RIFLE WHEN IT WAS SEIZED.  AN ADDITIONAL 10 ROUNDS OF .223 FROM THE
RANGE AMMO STORAGE WAS USED TO CONDUCT A SECOND TEST FIRE.   THE RIFLE IS
SUPPOSED TO OPERATE IN A SEMI AUTO ONLY.   THE SAFETY SETTING WORKED,
WHEN THE SELECTOR SWITCH WAS PUT TO SEMI AUTO FIRE THIS ALSO FUNCTIONED
IN SEMI AUTO FIRE MODE.  HOWEVER THE SELECTOR SWITCH CAN BE MOVED TO A 3
RD POSITION.  WHEN THIS IS DONE THE RIFLE FIRED IN A FULL AUTOMATIC
MODE.  UPON INSPECTION OF THE TRIGGER GROUP IT IS APPARENT THAT A
MODIFICATION HAD BEEN DONE.  THIS ENABLED THE RIFLE TO BE FIRED EITHER
IN SEMI AUTO OR FULL AUTO MODE.   ALL SHELL CASINGS WERE STORED WITHIN
THE EXHIBIT.

    EXHIBIT LG-48 IS A REMINGTON MODEL 870 12 GAUGE PUMP SHOTGUN, SER.
NUMBER A341491M.  ONE ROUND OF 12 GA. AMMO THAT WAS LOCATED IN THE
SHOTGUN WHEN IT WAS SEIZED WAS USED TO TEST FIRE.   WEAPON FUNCTION WAS
FINE.  FIRED SHELL CASING STORED WITH THE EXHIBIT.

    EXHIBIT LG-45 IS A REMINGTON MODEL 29 12 GAUGE PUMP SHOTGUN, SER.
NUMBER 5143.  THIS PARTICULAR SHOTGUN HAD A PORTION OF THE STOCK AND
BARREL SAWED OFF.  ONE ROUND OF 12 GA. AMMO THAT WAS IN THE SHOTGUN WHEN
IT WAS SEIZED WAS USED TO TEST FIRE THE WEAPON.   SHOTGUN FUNCTIONS

POL3281
Mail Code: 0730                                        2012/03/13 06:30 Page: 39
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
                    STATEMENTS & WITNESS EVIDENCE    Complaint#: 09112050
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
PROPERLY.   FIRED SHELL CASING STORED WITH EXHIBIT.

     ALL EXHIBITS WERE RETURNED TO THE LOCKER OF CST. GALLEN #3020 OF
CRIME SCENES UNIT, ON APRIL 7, 2009 AT 2:28 PM.   THIS LOCKER IS LOCATED
IN THE CPS HUSKY BUILDING.


     A/DET. J. HANDS #3238 WILL STATE:   ON APRIL 28, 2009 I ATTENDED 121
CORAL SANDS PL. N.E. WITH DET. T. HOKO #3003 WITH THE INTENT OF SPEAKING
TO IRENE ▉▉▉▉, THE REGISTERED OWNER OF A GREY 2006 HONDA ACCORD,
LICENCE OF INTEREST IN THIS INCIDENT.

     ARRIVING @ 1135H, WE MET A MALE (BELIEVED TO BE VICTOR ▉▉▉) @ THE
DOOR AND LEFT WITH HIM HOKO'S BUSINESS CARD WITH A REQUEST TO HAVE IRENE
CALL HIM WITH REGARDS TO HER VEHICLE.

     SHE SUBSEQUENTLY CALLED BACK AND ARRANGEMENTS WERE MADE FOR US TO
RETURN TO THE RESIDENCE.


     ARRIVING @ 1330H, WE IDENTIFIED OURSELVES AGAIN TO VICTOR AND IRENE
▉▉▉▉ @ THE DOORSTEP, WHO INITIALLY DECLINED TO LET US INTO THE
RESIDENCE.  THEY STATED THAT THEY HAD CALLED THEIR LAWYER AND THEY WOULD
SPEAK TO US THROUGH THE OPEN DOOR.

     AS IT WAS SNOWING OUTSIDE, THEY INVITED US TO STEP INTO THE FRONT
FOYER OF THEIR RESIDENCE; WHERE DET. HOKO ADVISED THEM THAT WE WERE
INVESTIGATING A SERIOUS MATTER, AND THAT SINCE A CAR REGISTERED TO IRENE
WAS SEEN IN CARBURN PARK, WHETHER SHE WAS DRIVING IT ON APRIL 1ST.

     A BRIEF INTERVIEW ENSUED, DURING WHICH IRENE STATED HER SONS
CHRISTIAN AND NICK AND NICK DRIVE IT, AND THAT IT WAS POSSIBLE THAT
CHRISTIAN WAS DRIVING IT THAT DAY.   SHE SAID THAT HE WAS 20 YEARS OLD.
THEY THEN DECLINED TO ANSWER ANY FURTHER QUESTIONS.

     THE INTERVIEW ENDED AND WE LEFT THE RESIDENCE @ 1336H.


     DET CARRIERE #3281 WILL STATE:   I AM THE PRIMARY ON THIS
INVESTIGATION AS WELL AS THE AFFIANT ON THE INITIAL SEARCH WARRANT
EXECUTED ON 2009/04/02 ON THE SAFARI VAN IN QUESTION.   I COORDINATED
RESOURCES AND I REQUESTED FORENSIC TESTING BY CSU ON A NUMBER OF ITEMS
FOUND WITHIN THE MOTOR VEHICLE.

     I MADE INQUIRIES WITH THE CORAL AUTOMART WHO SOLD THE VAN TO AN
UNKNOWN MALE ON 2009/03/28.   IT WAS DETERMINED THAT THIS VEHICLE WAS
PURCHASED BY A MALE WHO HAD NO IDENTIFICATION, PAID CASH, AND GAVE A
FALSE NAME, ADDRESS, AND PHONE NUMBER.   WHEN THE CULPRIT LEFT THE
DEALERSHIP, HE ATTACHED A DEALER PLATE TO THE REAR OF THE VEHICLE.
ON 2009/04/01 A STOLEN DEALER PLATE WAS LOCATED ON THE REAR OF THE
VEHICLE.    DEALER PLATES ARE OFTEN USED IN CRIMINAL ACTIVITY AS THEY ARE
NOT REGISTERED TO SPECIFIC VEHICLES AND THEREFORE LESS DETECTABLE BY

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
                  STATEMENTS & WITNESS EVIDENCE    Complaint#: 09112050
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
POLICE.

     I BELIEVE THIS VAN'S SOLE PURPOSE WAS TO ACT AS AN UNTRACEABLE
VEHICLE TO BE USED IN VIOLENT ACTS.

     I WAS ADVISED BY CST GALLEN #3020 OF THE CRIME SCENES UNIT THAT IT
APPEARED THE OCCUPANTS WORE GLOVES THROUGHOUT THE MOTOR VEHICLE, AS AT
NO POINT DID SHE EVER FIND A FINGERPRINT OR SMUDGE ON ANY COMPONENT OF
THE MOTOR VEHICLE.   THIS IS CONSISTENT WITH MY BELIEF PERTAINING TO THE
PURPOSE OF THE VEHICLE.

     AS PER THE INVESTIGATIVE DETAILS, AN ANALYSIS WAS CONDUCTED OF ALL
THE WAL-MART TAGS FOUND WITHIN THE SAFARI VAN.   THE ACCUSED AND THE 3
SUSPECTS WERE ALL OBSERVED WEARING COMPONENTS OF THIS CLOTHING.   I
BELIEVE THE USE OF CHEAP/TEARAWAY CLOTHING IS THAT THEY CAN DISPOSE ANY
OUTER WEAR USED DURING THE COMMISSION OF AN OFFENCE TO CHANGE THEIR
LOOK, AND TO FORENSICALLY LIMIT POLICE IN THEIR INVESTIGATION.

     TWO CELLULAR DEVICES WERE FOUND WITHIN THE VAN, BOTH OF WHICH
APPEAR (IN PRELIMINARY EXAMINATION) TO BE REGISTERED TO FALSE NAMES AND
ADDRESSES.   THIS AGAIN IS DONE TO PREVENT THE POLICE FROM CONNECTING
CULPRITS TO THE OFFENCE OR THE PHONE.

     I SPOKE WITH CST JOHNSTON #3587 AND DETERMINED THAT WHILE SPEAKING
WITH THE SUSPECTS, HE WAS ADVISED THAT THEY WERE TRAVELLING TO THE
RIVERBEND STATION PUB.   WHEN PLOTTING THE DIRECTION OF THEIR TRAVELS
WHEN LOCATED BY POLICE, IT APPEARS THAT THEIR INITIAL TRAVEL ROUTE WAS
IN THE OPPOSITE DIRECTION OF THE ACTUAL RIVERBEND PUB.

     CST JOHNSTON ALSO OBSERVED THAT ONLY ONE MALE APPEARED TO HAVE A
KEY IN HIS POSSESSION, WHO WAS CHRISTIAN NAVOS.   CST JOHNSTON NOTED THAT
IT WAS A HONDA KEY.   UPON RELEASING THE ADDITIONAL 3 SUSPECTS (HA,
MIRABACH, NAVOS) A BACK TRACK WAS CONDUCTED WITH K-9 AND THE SAFARI VAN
WAS LOCATED.   IN THE SAME PARKING LOT, A MOTOR VEHICLE REGISTERED TO
CHRISTIAN NAVOS' MOTHER WAS LOCATED, LICENCE PLATE HAS162 IS REGISTERED
TO A 2006 HONDA ACCORD.   NAVOS HAS BEEN STOPPED BY THE POLICE IN THIS
VEHICLE BEFORE.
     SURVEILLANCE CONDUCTED ON MIRABACH, HA AND NAVOS AFTER BEING
RELEASED BY CST JOHNSTON LED INVESTIGATORS TO BELIEVE THAT IN FACT THEY
LIED REGARDING THEIR DESTINATION, AS THE CULPRITS WALKED PAST THE
RIVERBEND PUB TO A GRASSY AREA IN THE NEIGHBOURING COMMUNITY.

     SURVEILLANCE IDENTIFIED THAT THE SUSPECTS RAN TO A WAITING VEHICLE,
WERE TRANSPORTED TO A RESTAURANT AND THEN TOOK A TAXI TO THE SUNRIDGE
MALL.   WHEN THE TAXI PULLED UP TO THE DOORS OF THE MALL, ALL 3
OCCUPANTS SPRINTED FROM THE MOTOR VEHICLE AND OUT THE OPPOSITE SIDE OF
THE MALL.   SURVEILLANCE ON THE TARGETS WAS LOST.

     THESE ACTIONS INDICATE COUNTER SURVEILLANCE TACTICS WHICH LEAD ME
TO BELIEVE THE 3 WERE INVOLVED IN CRIMINAL ACTIVITY AND WERE TRYING TO
PREVENT POLICE FROM IDENTIFYING THEIR RESIDENCES OR OBSERVE FURTHER
ACTIONS.

POL3281
Mail Code: 0730                                    2012/03/13 06:30 Page: 41
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
                  STATEMENTS & WITNESS EVIDENCE    Complaint#: 09112050
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

     A COMPLETE FORENSIC EXAMINATION WAS REQUESTED AND I AM AWAITING
RESULTS.


A/DET. J. HANDS #3238, TEU WILL STATE:

ON APRIL 29, 2009 I ATTENDED THE HOLD LOT OF THE  MUNICIPAL IMPOUND LOT
LOCATED @ 400 39 AVE SE WITH DET. SID PROCEE #2907.

THERE I EXAMINED THE GAS CAP AND DOOR OF A LIGHT BROWN GMC SAFARI, THE
RELATED VEHICLE ON THE FILE; IT'S VIN ENDS IN
501834.

I CONDUCTED THIS EXAMINATION BY VIRTUE OF MY 6.5 YEARS' EXPERIENCE IN
THE FCSU.  THERE WERE NO PRINTS FOUND ON THE GAS CAP NOR THE DOOR.


     CST.K.SUDYK 4269 WILL STATE:

     I AM A SEARCH MANAGER WITH THE CALGARY POLICE SERVICE. ON MAY 10,
2009 I ORGANIZED AND MANAGED AN EVIDENCE SEARCH IN THE CARBURN PARK AND
NEIGHBOURING RIVERBEND AREA INVOLVING 50 MEMBERS FROM CALGARY
SEARCH AND RESCUE ASSOCIATION AS WELL AS 4 UNIFORMED MEMBERS FROM
CALGARY POLICE SERVICE.

     2 KITCHEN KNIVES, A MEDICAL CLAMP, A CELL PHONE SCREEN AND A CELL
PHONE WERE LOCATED AND PASSED TO A/DET. J. HANDS FOR FOLLOW UP.

     ON JUNE 10, 2009, I RETURNED TO THE AREA ALONG WITH 7 MEMBERS TO
COMPLETE YARD SEARCHES OF 19 PROPERTIES NOT COMPLETED DURING THE
PREVIOUS SEARCH. I COLLECTED ALL PAPERWORK AND FORWARDED IT TO A/DET.J.
HANDS THRU THE CPS INTERNAL COURRIER.


C.P.O.JAMES MALONE, REG # 7113, WILL STATE:

AT APPROXIMATELY 1520 HRS ON 2010 11 15, I OBTAINED A DNA SAMPLE FROM
NAVOS, CHRISTIAN JON, DOB: ▓▓▓▓▓▓

THE DNA SAMPLE WAS TAKEN PURSUANT TO AN ORDER ISSUED BY A JUDGE IN THE
PROVINCE OF ALBERTA.


C.P.O. EVARISTO CRISTANCHO , REG # 11385, WILL STATE:  AT APPROXIMATELY
11:35 HRS ON 2010-11-19, I OBTAINED A DNA SAMPLE FROM MIRABACK, ZACHARY
MEGID, DOB: ▓▓▓▓▓▓

THE DNA SAMPLE WAS TAKEN PURSUANT TO AN ORDER ISSUED BY A JUDGE IN THE
PROVINCE OF ALBERTA.


     C.P.O. GARRY MCBRIDE, REG #7673, WILL STATE:

POL3281
Mail Code: 0730                                     2012/03/13 06:30 Page: 42
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
                   STATEMENTS & WITNESS EVIDENCE     Complaint#: 09112050
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

AT APPROXIMATELY 1410 HOURS ON NOVEMBER 19, 2010, I COMPLETED THE DNA
ENDORSEMENT PROCESS FOR HA, WAYNE  , DATE OF BIRTH ██████████.

THE ENDORSEMENT WAS COMPLETED PURSUANT TO AN ORDER ISSUED BY A JUDGE IN
THE PROVINCE OF ALBERTA.

CSU Member BS STURGEON Reg# 11545
Notebook #              Page(s)#
WILL STATE:
2011-12-05; SEIZED EXPENDED CARTRIDGE CASES (ECC'S) TEST FIRED FROM
EXHIBITS 457335 & 457337 AT THE CPS RANGE.
2011-11-06; ACQUIRED THE ECC'S INTO CIBIN BEFORE SECURING THEM IN THE
WESTWINDS WEST EPU ROOM.

CSU Member BS STURGEON Reg# 11545
Notebook #              Page(s)#
WILL STATE: "ON 2012/01/02 SEIZED EXPENDED SHOTSHELL CASES (ESC'S) TEST
FIRED (TF) FROM EXHIBIT #457344 AT THE CPS RANGE. ON 2012-01-10 ACQUIRED
THE TF ESC'S INTO CIBIN BEFORE SECURING THEM IN THE WESTWINDS WEST EPU.

```
POL3281
Mail Code: 0730                              2012/03/13 06:30 Page: 43
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
                    ACCUSED STATEMENTS - VOIR DIRE   Complaint#: 09112050
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
```

ON NOVEMBER 1, 2009, CHRISTIAN NAVOS WAS ARRESTED ON OUTSTANDING
WARRANTS AFTER TURNING HIMSELF IN.   CHARGES AGAINST NAVOS CONSIST OF 28
FIREARMS RELATED OFFENCES STEMMING FROM APRIL 1, 2009.

ON NOVEMBER 1, 2009, DET. CARRIERE #3281 AND DET. EIRIKSSON #3259
ATTENDED THE ANDREW DAVISON BUILDING, 10TH FLOOR, TO CONDUCT INTERVIEWS
OF NAVOS IN REGARDS TO THIS OFFENCE.

AT 1552 HOURS, THE RECORDING EQUIPMENT FOR INTERVIEW ROOM A WAS
INITIATED.

THE FOLLOWING IS A SUMMARY OF THE INTERVIEW.

DET. CARRIERE BEGAN AS THE PRIMARY INTERVIEWER.   AFTER OBTAINING NAVOS'
PERSONAL INFORMATION (FULL NAME, DOB), DET. CARRIERE ASKED NAVOS ABOUT
HIS EMPLOYMENT, TO WHICH NAVOS WOULDN'T REPLY.   DET. CARRIERE CHALLENGED
NAVOS REGARDING HIS HOME ADDRESS, HOWEVER NAVOS MAINTAINED THAT HE LIVED
AT HOME WITH HIS PARENTS.   DET. CARRIERE ALSO ASKED NAVOS ABOUT ANY
FAMILY RESPONSIBILITIES, AND NAVOS WOULDN'T RESPOND.

DET. CARRIERE THEN WENT THROUGH THE CHRONOLOGICAL INFORMATION OUTLINING
THE FILE AND THE CASE AGAINST NAVOS.   DURING THIS TIME, AND FOLLOWING
QUESTIONS GIVEN TO HIM, NAVOS WOULD NOT RESPOND AND SHOWED LITTLE
EMOTION.

TOWARDS THE END OF THE INTERVIEW, DET. CARRIERE TURNED THE QUESTIONING
OVER TO DET. EIRIKSSON WHO ASKED NAVOS QUESTIONS REGARDING ANY JEOPARDY
NAVOS MIGHT ANTICIPATE UPON BEING LODGED INTO CELLS AT REMAND AND AGAIN,
NAVOS WOULD NOT RESPOND.

THE INTERVIEW ENDED AT 1715 HOURS.

    SEIZED PAIR OF RUNNING SHOES FROM BILL LY.

    SEIZED PAIR OF RUNNERS FROM DANNY (DANG) NGUYEN


ON NOVEMBER 6, 2009 AT 11:30 HRS CST. D. ALEXANDER #2937 ATTENDED TO THE
CALGARY REMAND CENTER AND OBTAINED BLOOD DNA FROM NGUYEN, DANNY NGOC AS
PER THE JUDGES COURT ORDER.  DNA SUBMITTED TO THE NATIONAL DNA DATA
BANK.

```
POL3281
Mail Code: 0730                                    2012/03/13 06:30 Page: 45
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
                              WITNESS LIST            Complaint#: 09112050
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
        POLICE WITNESSES
Rank  Name                       Reg#  Work Area                   Phone
        STURGEON, BS             11545 FORENSIC CRIME SCENE UNI
CST   CHUDY, J                   4540  DIST 6 TEAM 1
CST   DENTANDT, D                3923  DIST 8 TEAM 4
CST   HARWOOD, S                 3730  DIST 7 SERGEANTS
CST   JOHNSTON, C W              3587  DIST 6 TEAM 2
CST   MACARTHUR, RA              4628  DIST 6 TEAM 4
CST   NORMANDEAU, T              4583  LEAVE OF ABSENCE
CST   ROBINSON, HNR              4196  DIST 6 TEAM 1
CST   SMITH, W.S                 3867  S.H.O. PROGRAM
CST   VAN CAEYZEELE, JR          3466  CALGARY CRIMINAL INTELLI
CST   VELLA, DDR                 4312  SCHOOL RESOURCE TEAM
CST   VOTH, S.R                  4135  DIST 6 TEAM 3
CST   WENINGER, SW               4136  DIST 2 TEAM 4
CST   WILLIAMS, DS               3324  CANINE UNIT
DET   BUDD, C M                  3778  ROBBERY UNIT
DET   CARRIERE, KD               3281  HOMICIDE UNIT
DET   GUICHON, DM                2945  ECONOMIC CRIMES UNIT
DET   HOKO, T                    3003  STRIKE FORCE UNIT
DET   PROCEE, SA                 2907  ALERT
DET   RAHN, M D                  3096  CALGARY CRIMINAL INTELLI
SGT   LOTZER, DD                 3485  DIST 8 SPECIAL DUTIES

        CIVILIAN WITNESSES

                                              Zn Phone          Stmt

                         Bus:
                         Res: C/O CALGARY POLICE SERVIC          WRITTEN

                         Bus:
                         Res: C/O CALGARY POLICE SERVIC          WRITTEN

                         Bus:
                         Res: C/O CALGARY POLICE SERVIC          WRITTEN

                         Bus:
                         Res: C/O CALGARY POLICE SERVIC          WRITTEN
```

# EXHIBIT 3

                      Complaint#: 09112050
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

*****************************************************************************
                                SYNOPSIS
*****************************************************************************
     ON 09/04/01 AT APPROX. 1432 HRS, CALGARY POLICE RECEIVED A PHONE
CALL FROM A RESIDENT IN THE RIVERBEND AREA WHO OBSERVED 2 MALES WALKING
TOWARDS CARBURN PARK IN THE AREA NEAR 26 RIVERSIDE WY SE.  THE CALLER
STATED THAT ONE OF THE MALES WAS ATTEMPTING TO CONCEAL A RIFLE IN HIS
JACKET.

     POLICE RESPONDED AND BEGAN TO CIRCULATE THE AREA AND WHILE DOING SO
CST ROBINSON ATTENDED TO THE PARKING LOT AREA OF CARBURN PARK IN THE
8900 BLOCK OF RIVERVIEW DR SE.  A MALE APPROACHED CST ROBINSON AND BEGAN
POINTING TO THE GREEN SPACE BEHIND THE PARKING LOT STATING HE OBSERVED
TWO MALES RUNNING IN THE DIRECTION TOWARDS RIVERSIDE CL SE, ONE MALE WAS
DRESSED IN ALL BLACK CLOTHING AND APPEARED ASIAN WITH SPIKEY HAIR.

     CST SMITH LOCATED A GROUP OF 5 ASIAN MALES RUNNING NORTHBOUND OUT
OF RIVERSIDE CL SE MINUTES LATER AND FOLLOWED THEM DOWN AN ALLEY WHERE
HE APPROACHED THE GROUP BEHIND 27 RIVERSIDE CL SE AS THEY MATCHED THE
DESCRIPTION UPDATED ON THE CALL.

     CST JOHNSTON ARRIVED SHORTLY AFTER TO BACK UP CST SMITH AND BEGAN
TO QUESTION THE GROUP AS TO WHAT THEY WERE DOING IN THE AREA.  CST SMITH
DETAINED A MALE, LATER IDENTIFIED AS DANNY (DANG) NGUYEN AND PLACED HIM
IN HIS POLICE VEHICLE AS IT WAS DISCOVERED THAT A WARRANT WAS
OUTSTANDING FOR NGUYEN'S ARREST ON A TRAFFIC OFFENCE.

     CST JOHNSTON BEGAN TO CONDUCT CPIC CHECKS ON THE REMAINING FOUR (4)
MALES AND NOTICED THAT ONE OF THE MALES WAS A KNOWN GANG MEMBER, BILL
LY.  AT THIS POINT BACKUP UNITS WERE REQUESTED AS THE MALES HAD NOT BEEN
SEARCHED AND EARLIER INDICATION ON THE CALL WAS THAT A FIREARM WAS
POSSIBLY INVOLVED.  LY WAS ARRESTED ON AN UNRELATED TRAFFIC OFFENCE
WARRANT BY CST HARWOOD AND CST CHUDY AND TRANSPORTED TO THE ARREST
PROCESSING UNIT.

     WHILE DEALING WITH THE MALES, OTHER CPS MEMBERS HAD LOCATED THE
ACTUAL CULPRITS WITH A PELLET RIFLE IN CARBURN PARK.  THESE MALES WERE
FOUND NOT TO BE ASSOCIATED TO THE GROUP BEING CHECKED.

     AT THIS POINT NOTHING FURTHER COULD BE DONE WITH THE REMAINING 3 OF
THE 5 MALES AND THE FOLLOWING MALES WERE RELEASED AT THE SCENE:

        WAYNE HA         DOB:
        CHRISTIAN NAVOS  DOB:
        ZACHARY MIRABACK DOB:

     SHORTLY AFTER CLEARING THE SCENE, CST JOHNSTON SPOKE TO CST SMITH
WHO HAD INITIALLY DETAINED NGUYEN AND TRANSPORTED HIM TO 6 DISTRICT
OFFICE TO DEAL WITH HIS WARRANTS.

     CST SMITH STATED THAT HE HAD CONVERSATION WITH DET. PROCEE AND IT
WAS DETERMINED THAT AN AREA SEARCH SHOULD BE CONDUCTED WHERE THE FIVE
(5) MALES WERE DETAINED AS THEY MAY BE RESPONSIBLE FOR WEAPONS OFFENCES

AND/OR HAVE A VEHICLE DUMPED IN THE AREA DUE TO THE FACT THEY WERE SEEN
FLEEING THE AREA OF CARBURN PARK ON FOOT.

    CST JOHNSTON RETURNED TO THE ALLEY BEHIND 27 RIVERSIDE CL SE AND AN
AREA SEARCH WAS CONDUCTED UTILIZING FIVE CPS MEMBERS AND A K9 MEMBER.
A TRACK LED TO THE DISCOVERY OF A PAIR OF BLACK WOOL GLOVES FOUND IN THE
DIRECT VICINITY OF WHERE THE MALES HAD INITIALLY BEEN LOCATED BY CST
SMITH.  SOUTH OF THAT LOCATION BEHIND 7 RIVERSIDE CL SE WAS A PAIR OF
MENS EXTRA LARGE BLACK TRACK PANTS WITH A WHITE STRIPE DOWN THE SIDES
NEAR A GARBAGE CONTAINER. ALSO OBSERVED NEAR THE GARBAGE CONTAINER WERE
FOOTPRINTS IN THE SNOW WHICH APPEARED TO BE OF NIKE SHOX FOOTWEAR  WHICH
HAVE A DISTINCTIVE SET OF FOUR (4) SHOCK ABSORBERS ON THE HEEL OF THE
SHOE.

    DURING THE ENTIRE TRACK THIS DISTINCTIVE PRINT ALONG WITH SEVERAL
OTHER FOOTWEAR PRINTS WERE OBSERVED IN THE SNOW BY K-9 CST WILLIAMS AND
OTHER MEMBERS PRESENT. CST DENTANDT OBSERVED WAYNE HA TO BE WEARING NIKE
SHOX FOOTWEAR UPON HIS INITIAL DEALINGS WITH THE GROUP BEHIND 27
RIVERSIDE CL SE. AT #3 RIVERSIDE CL SE ON THE SOUTHEAST SIDE OF THE LAWN
A PAIR OF GARDEN STYLE WOOL GLOVES, WHITE IN COLOUR WITH A YELLOW STRIPE
AROUND THE WRIST OPENING WERE FOUND.

    THE TRACK CONTINUED TO THE OPENING OF CARBURN PARK AND THROUGH THE
GREEN SPACE LEADING TO THE PARKING LOT IN A SOUTHEAST DIRECTION.  NEAR
THE PARKING LOT NEAR IN THE NORTHEAST CORNER BEHIND A SILVER MINI VAN
WHICH WAS BACKED INTO A STALL WAS A BLACK BALACLAVA LAYING IN THE GRASS.
ALL THESE ITEMS WERE SEIZED BY CST DENTANDT AND HIS PARTNER.

    THE SILVER MINI VAN WAS BEARING AB PLATE M17537 AND SHOWED
REGISTERED TO A BUSINESS, HOWEVER NO VEHICLE PARTICULARS WERE ASSOCIATED
TO THE PLATE.  A CPIC QUERY WAS CONDUCTED ON THE VIN NUMBER AND THE VAN
SHOWED AS A 2000 GMC SAFARI VAN, SILVER IN COLOUR.  UPON LOOKING INSIDE
THE VAN THROUGH THE PASSENGER SIDE WINDOWS A PIECE OF CARPET WAS FOLDED
OVER IN THE MIDDLE AND THE BARREL OF A LONG RIFLE COULD BE SEEN IN PLAIN
VIEW.  OTHER MEMBERS PRESENT OBSERVED BODY ARMOUR IN THE REAR PART OF
THEVAN, ALSO IN PLAIN VIEW.  ON THE BACK SEAT A PAIR OF WHITE GARDEN
STYLE GLOVES WITH A YELLOW RING AROUND THE WRIST AREA COULD BE SEEN.

    IT ALSO APPEARED BEHIND THE DRIVER'S SEAT OF THIS VEHICLE THAT A
BOX OF AMMUNITION WAS PLACED AT THE BASE OF THE SEAT.

    GIVEN THE FACT THAT SOME OF THE MALES HAD BEEN OBSERVED RUNNING
FROM THE PARKING LOT AREA EARLIER AND THE CLOTHING ITEMS LOCATED ALONG
THE K-9 TRACK, AS WELL AS THE SIMILAR ITEMS LOCATED IN THE VAN AS WELL
AS THE BODY ARMOR AND FIREARM THE VEHICLE WAS SEIZED AND CONTINUITY
MAINTAINED FROM 1725 HRS UNTIL BEING TAKEN TO 75 HERITAGE RO SW FOR
CRIME SCENES UNIT, CONTINUITY COMPLETED AT 1911 HRS BY CST VOTH AND
VELLA.

    ON 2009/04/02 A SEARCH WARRANT WAS EXECUTED ON THE SAFARI VAN AND A
NUMBER OF FIREARMS WERE LOCATED INSIDE INCLUDING A REMINGTON MODEL 29
SHOTGUN (SAWED OFF), A REMINGTON 870 EXPRESS SHOTGUN, AN HK93 ASSAULT
RIFLE, A SMITH & WESSON 40 CALIBRE HANDGUN (SERIAL NUMBER REMOVED), AND

A GLOCK 17 9 MM HANDGUN.  ALSO FOUND IN THE VEHICLE WERE FOUR PIECES OF
BODY ARMOUR, SEVERAL BANDANAS, RECENTLY PURCHASED CLOTHING FROM WALMART
(TAGS STILL PRESENT IN THE VAN), AND RUNNING SHOES.

    UPON EXAMINING THE FIREARMS IT WAS DETERMINED THE TWO HANDGUNS AND
THE ASSAULT RIFLE HAD EXTENDED MAGAZINES MAKING THEM A PROHIBITED
DEVICE. THE SMITH & WESSON HANDGUN WAS SHORTER THAN THE MINIMUM REQUIRED
LENGTH AND IS, THEREFORE, ALSO CONSIDERED A PROHIBITED FIREARM. THE
SAWED OFF SHOTGUN IS CONSIDERED A PROHIBITED FIREARM.

    BASED ON THE TRACK CONDUCTED BY CANINE THE SUSPICIOUS ACTIVITY OF
THE CULPRITS, THEIR RELATED GANG ASSOCIATION, IT IS BELIEVED THAT THE
FIVE CULPRITS PARKED THE VAN AND DEPARTED FROM IT A SHORT TIME PRIOR TO
CPS RESPONDING TO THE UNRELATED INCIDENT. IT IS BELIEVED ALL FIVE WERE
IN THE MOTOR VEHICLE, AND AS THERE WAS NO REAR BENCH SEAT, THE CULPRITS
LITERALLY WOULD HAVE BEEN STANDING OR SITTING ON OR NEXT TO THE ASSAULT
RIFLE AND THE TWO SHOTGUNS. THE CHEAP NEWLY PURCHASED CLOTHING AND SHOES
INDICATE TO POLICE THAT THESE GARMENTS WOULD BE USED AS THROW AWAY
CLOTHING IF THEY WERE INVOLVED IN A VIOLENT ACT USING THE FIREARMS.

    DANG NGUYEN AND ZACHARY MIRABACK ARE BOTH PROHIBITED FROM
POSSESSING ANY FIREARM IN RESPONSE TO CONVICTIONS UNDER THE CDSA AND
CRIMINAL CODE RESPECTIVELY. ALL OTHER OCCUPANTS DID NOT POSSESS A
FIREARMS LICENSE.

    THE CRIME SCENES UNIT PROCESSED THE VAN AND HAS LOCATED SEVERAL
FINGERPRINTS. THESE PRINTS HAVE BEEN FORENSICALLY COMPARED TO THE
ACCUSED. DNA SWABS HAVE BEEN COLLECTED AND THE RESULTS ARE PENDING.

    2009/04/30 DET CARRIERE #3281/TARGET:        (11139)

    A FINGERPRINT ANALYSIS CONDUCTED ON THE PLASTIC WAL-MART BAGS FOUND
WITHIN THE VAN HAS DETERMINED THAT DANG NGUYEN WAS IN POSSESSION OF
THOSE BAGS.  CLOTHING TAGS WITHIN THE VAN HAVE BEEN IDENTIFIED AS COMING
FROM WAL-MART AND DANG NGUYEN WAS CONFIRMED TO BE WEARING A SET OF SHOES
CONSISTENT WITH THE MAKE AND SIZE OF THOSE SOLD BY WAL-MART.

    A FOOTPRINT ALSO LOCATED ON THE WAL-MART BAG IS CONSISTENT WITH THE
TREAD PATTERN OF THE FOOTWEAR WORN BY NGUYEN AT THE TIME OF HIS ARREST.

    2009/09/29 - DET CARRIERE 3281 / TEU            (8322)

    ON 2009/05/08 FORENSIC ANALYSIS REPORTS THAT THE DNA OF DANG NGUYEN
WAS PRESENT ON AN ARMOURED VEST, HOODIE AND BANDANA FOUND WITHIN THE
SAFARI VAN.  THE BLOOD ON THE LOWER PORTION OF THE SAME BALISTIC VEST
WAS DETERMINED TO MATCH THE CAST OFF SAMPLE OF DNA OBTAINED FROM DARLENE
BONTOGON, THE GIRLFRIEND OF DANG NGUYEN.  IT IS BELIEVED THIS BLOOD WAS
TRANSFERRED TO THE VEST WHEN BONTOGON WAS SHOT IN THE WINTER OF 2008
WHILE DRIVING WITH DANG ON DEERFOOT TR. (CROSS REFERENCE CASE #
08427769).

    ADDITIONAL FORENSIC ITEMS SENT TO THE CRIME LAB INCLUDES WHITE
GLOVES, A BLACK BALACLAVA, AND FIREARM SWABS.  DNA PROFILES OBTAINED

                        Complaint#: 09112050
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

FROM THE GLOVES MATCHED THAT OF BOTH CHRISTIAN NAVOS, WAYNE HA, AND
ZACHARY MIRABACK. THE BLACK BALACLAVA WHICH WAS FOUND IMMEDIATELY
OUTSIDE THE REAR OF THE SAFARI VAN WAS DEEMED TO BE CONSISTENT WITH THAT
OF MIRABACK.  ANALYSIS OF THE BLACKBERRY WITHIN THE SAFARI VAN APPEARS
THAT THE BLACKBERRY WAS REPORTED STOLEN TO ROGERS IN 2007.  PRODUCTION
ORDERS ON BOTH THE BLACKBERRYS AND THE CELL PHONE ARE STILL PENDING.

     2009/10/22 DET CARRIERE #3281/TEU: (11139)

     ON 2009/10/22 BOTH ZACHARY MIRABACK AND WAYNE HA WERE ARRESTED AT
THEIR RESIDENCE AND TRANSPORTED TO THE ANDREW DAVISON BUILDING.  ONCE
INTERVIEWED THEY WERE TRANSPORTED TO THE ARREST PROCESSING SECTION AND
CHARGED.

     WARRANTS WILL BE ISSUED FOR CHRISTIAN NAVOS.

# EXHIBIT 4

# AFFIDAVIT

1

2  United States Consulate  }
                              }    §§
3  Vancouver, Canada         }

4

5  Special Agent Jesse Miller, being first duly sworn on oath, deposes and states:

6      I am a Special Agent (SA) with the ICE-Homeland Security Investigations office at
7  the U.S. Consulate in Vancouver, Canada, and that you were formerly in Blaine and the
8  case agent in the investigation into Zachary and Brandon Miraback. As the case agent, I
9  was involved in their arrests, involved in law enforcement questioning of them, and took the
10 statements that the Miraback brothers gave when they cooperated with federal law enforcement. I
11 know that Zachary Miraback testified under oath before a federal grand jury, that he entered a
12 guilty plea, and that he was sentenced in the Western District of Washington in 2006 I also knew
13 that the United States requested the extradition from Canada of Henry Carl Rosenau and that
14 Zachary Miraback was one of the government's significant witnesses in that matter. I make this
15 affidavit to set forth my contacts in Canada with Zachary Miraback after he completed
16 his prison term and returned to Canada.

17     In the spring of 2009, I learned from Canadian law enforcement that Zachary Miraback
18 had been identified as someone of interest in an investigation of illegal firearms in Calgary. I
19 remained in contact with the Calgary Police detectives and learned that the police tests yielded
20 DNA evidence linking Mr. Miraback to the firearms scene and that he was going to be brought
21 into custody.

22     In late 2009 I met with Zachary Miraback in the presence of Calgary Police
23 Service Detective Michael Shute to give him a letter, addressed to his attorney if he had
24 counsel, from the United States Attorney's Office. A copy of the letter is attached to this
25 affidavit. Mr. Miraback was unmoved upon reading the letter from AUSA Susan Roe.
26 Mr. Miraback stated that he would not cooperate with me or Canadian law enforcement.
27 Mr. Miraback explained that the intent of my presence was to intimidate him into
28

talking, and that it was not going to work.  In response to me telling him that the U.S. Government would pursue extradition, Mr. Miraback scoffed at me, and said "Good luck with that, I am in Canada now."  I left Mr. Miraback a copy of the letter to give to his present or future attorney.   Mr. Miraback's actions and words clearly indicated his lack of continued cooperation with the United States.

Since late 2009, I have learned that Zachary Miraback has been arrested or detained by Canadian police. Neither he nor any attorney on his behalf has contacted my office or the United States Attorney's Office to discuss continued or renewed cooperation.

On March 14, 2012, I reviewed my recollection of the meeting with Mr. Miraback, his statements with, and sent a draft of this affidavit to, Detective Michael Shute. He emailed me that, "after reading this Affidavit I can attest to its accuracy and that Mr. Zachary MIRABACK was completely unwilling to provide any assistance to the Canadian or United States Authorities. I agreed with the facts of this Affidavit as I have read it."

JESSE MILLER
Special Agent, ICE- Homeland Security Investigations

```
CANADA                          )
PROVINCE OF BRITISH COLUMBIA    )
CITY OF VANCOUVER,              ) S.S.
CONSULATE GENERAL OF THE        )
UNITED STATES OF AMERICA        )
```

I, Matthew K. Bunt, Consul of the United States of America at Vancouver duly commissioned and qualified, do hereby certify that on this 15th day of **March, 2012** before me personally appeared

### ***JESSE  MILLER***

who acknowledged   himself to be the individual described in, whose name is subscribed to, and who executed the annexed instrument, and being informed by me of the contents of said instrument  he duly acknowledged to me that  he executed the same freely and voluntarily for the uses and purposes therein mentioned.

IN WITNESS WHEREOF I have here unto set my hand and affixed the Seal of the Consulate General at Vancouver this 15th day of  **March,** 2012.

Matthew K. Bunt
Consul of the United States of America

This document consists of " 3 " pages



**U.S. Department of Justice**

United States Attorney
Western District of Washington

| | |
|---|---|
| 700 Stewart Street, Suite 5220 | Tel: (206) 553-7970 |
| Seattle, Washington 98101-1271 | Fax: (206) 553-4440 |
| www.usdoj.gov/usao/waw | |

Please reply to:
Susan M. Roe
Assistant United States Attorney
Direct Line: (206) 553-1077

November 5, 2009

Legal Counsel for
Zachary Miraback
Calgary, Alberta, Canada

   Re: Extradition of Henry Rosenau
      Western District of Washington

Counsel for Mr. Miraback,

   I am an Assistant United States Attorney in Seattle, Washington, handling long term investigations into drug trafficking, money laundering, and related criminal acts which occur in this District and elsewhere, generally involving the US-Canadian border. Your client, Zachary Miraback, was one of those prosecuted from these investigations. Another Canadian, Henry Rosenau, has been indicted and ordered extradited from Canada to face his charges. He currently is appealing that decision but we anticipate Mr. Rosenau's arrival in the United States within the next six months.

   Your client, Zachary Miraback, has significant information about Mr. Rosenau's criminal activities as they smuggled drugs together. In fact, Mr. Miraback testified before a Federal Grand Jury telling about Mr. Rosenau's activities. That testimony was used in the Rosenau Extradition Request

   As part of Mr. Miraback's Plea Agreement in the United States, he agreed to testify truthfully when requested by the United States and to continue cooperating. Mr. Miraback agreed to voluntary extradition to the U.S. and to an additional prison term if he failed to fulfill the terms of the Agreement. Further, he acknowledged that he could face a new federal indictment for Contempt of Court Order.

Counsel for Mr. Miraback
page 2

His case is unusual in that he negotiated his sentence based on his continued cooperation.   He agreed to certain sanctions, including more prison time and a new federal criminal charge (which may form an independent basis for extradition), if he broke the agreement.   Moreover the government can move to withdraw from the agreement and reinstate his original five year minimum mandatory charge.   That, too, is an extraditable offense.

I am asking you, his counsel, for your assistance in insuring that he satisfies the terms of his Plea Agreement.   We can discuss the alternatives and I will be happy to send you copies of his court documents if you do not have those.

I look forward to hearing from you.   Thank you for your attention to this.

Yours truly,

JENNY A. DURKAN
United States Attorney


*/s/Susan M. Roe*
SUSAN M. ROE
Assistant United States Attorney

# EXHIBIT 5

**From:** Ken Carriere [mailto:KCarriere@calgarypolice.ca]
**Sent:** Tuesday, March 13, 2012 5:54 AM
**To:** Roe, Susan (USAWAW); Miller, Jesse; Hinckley, Jennifer E
**Cc:** Tracey Lowey
**Subject:** RE: a few more questions

Good Morning,

I have attached the investigation related to MIRABACK when he was investigated by myself and the Organized Crime Section of the Calgary Police Service.  MIRABACK was spoken to by Spl Agent MILLER and Det. Michael SHUTE in relation to his level of cooperation with this investigation in addition to a homicide investigation (the murder of Matthew CHUBACK on January 13, 2009).  Det. SHUTE has advised me that he did not cooperate with either investigation. MIRABACK remains of person of interest associated to the homicide.

I conducted the accusatory interview of MIRABACK in relation to his involvement in the attached file (possession of firearms).  He refused comment.

I reviewed a recent CPS case where MIRABACK is listed as a known associate of an unknown culprit responsible for stabbing a patron in a Calgary bar.  No charges are pending at this time in relation to MIRABACK. His involvement at this time is outlined below. This investigation is ongoing – CPS case file 12-045662 (report attached).

> CST CARDINAL 3330 WILL STATE: ON 2012/02/05 AT APPROX 0220 HRS I
> RESPONDED TO A DISTURBANCE IN THE 800 BLOCK OF 8 AV SW. UPON ARRIVAL IN
> MY MARKED POLICE VAN, I OBSERVED SEVERAL PEOPLE MILLING ABOUT ON 8 AV. I
> OBSERVED AN ASIAN MALE HELPING A WHITE MALE WALK AWAY FROM THE SCENE
> OF
> WHAT APPEARED TO BE A LARGE GROUP FIGHT. THE MALE BEING ESCORTED HAD A
> LARGE WELT ON HIS FOREHEAD. I IDENTIFIED THIS MALE AS ZACHARY MIRABACK
> DOB: ▓▓▓▓▓ I DETAINED BOTH MALES AND CHARTERED AND CAUTIONED THEM
> FOR ASSAULT.
> I PLACED THEM IN THE BACK OF MY POLICE VAN WHILE I CONDUCTED QUERIES.
> PRIMARY INVESTIGATOR WAS MADE AWARE OF THEIR POSSIBLE INVOLVEMENT AND
> SPOKE TO THEM BRIEFLY IN THE BACK OF MY VAN. AFTER IDENTIFYING TWO MALES
> AND NOT HAVING ANY FURTHER GROUNDS TO DETAIN THEM, BOTH MALES WERE
> RELEASED. I WAS LATER NOTIFIED BY CST FLYNN THAT TWO BOUNCERS INVOLVED
> IN THE FIGHT HAD POSSIBLY BEEN STABBED, HOWEVER IT WAS UNKNOWN AT THAT
> TIME WHO THE SUSPECTS WERE. I ADDED BOTH MALE'S INFORMATION TO THE CALL

AND RELEASED THEM AT THE SCENE.

In 2010 MIRABACK was arrested by CPS for two breaches of his probation Order.

I am unaware of anytime in the last 5 years when MIRABACK has assisted police when questioned.

I am awaiting the arrival of my Analyst who will be able to provide you the disposition of MIRABACK in relation to the Org. Crime charges. I am headed into an interview and will confirm she has obtained the information later this morning.

Thanks.

Det. Ken CARRIERE
Calgary Police Service

```
              SUPERVISORS CHECKLIST FOR THE REPORT TO PROSECUTOR
              ---------------------------------------------------
Accused:                                              Case No: 12045662
Primary Investigator:  DET S.T GRAHAM                 Reg#:  3802
                       1 DISTRICT-GIU                         403-567-6100

Inspector:                            Reg#:
---------------------------------------------------------------------------
                                                            Attache
Report to Prosecutor (printout from CASE)                   Y    N
All Witness Statements (always required)                    Y    N
Statements of Other Persons with Information                Y    N
Police Notes and Will State (always required)               Y    N
Prisoner Observation Log (always required)                  Y    N
---------------------------------------------------------------------------
Accused Statement:    Written  ___    Copy (always required)         Y    N
                      Oral     ___    Copy of Notes (always required) Y    N
                                      Copy of Tape                   Y    N
                                      Summary of Taped Statement     Y    N
                                      (always required)
---------------------------------------------------------------------------
Photographs or Videos (describe: e.g. line-up, scene, surveillance)

        1. _____      Y    N

        2. _____      Y    N

        3. _____      Y    N
---------------------------------------------------------------------------
Y.O.A.                                                      Y    N
        If Yes     Notice to Parent                         Y    N
                   Waiver                                   Y    N
---------------------------------------------------------------------------
Driving Offence                                             Y    N
        If Required: Suspended Driver (MOVES printout)      Y    N
                     Breath/Blood Certificates (incl. check sheet)  Y    N
                     Second Offender Notice                 Y    N
                     Accident Reports                       Y    N
                     Event Chronology (Criminal Driving Offences Only) Y  N
---------------------------------------------------------------------------
Other Describe: (probation order, release documentation, affidavit)  Y  N

        1. _____      Y    N

        2. _____      Y    N

        3. _____      Y    N
---------------------------------------------------------------------------
CPIC/Criminal Record (attach even if negative)             Y    N
---------------------------------------------------------------------------

Explain any Missing Documentation/Remarks:_____

_____

_____


  Supervisors Signature:           Reg#:              Date:
```

```
POL3281
Mail Code: 0730                                    2012/03/13 06:43 Page:  1
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
            REPORT TO PROSECUTOR COVER SHEET        Complaint#: 12045662
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
```

Complaint#:      12045662


Victim:

Offenses:      ASSAULT WITH WEAPON

Victim:

Offenses:      ASSAULT WITH WEAPON


Offence Date:    2012/02/05

Primary Investigator:

              DET S.T GRAHAM              3802
              DIST 1 GIU                  403-567-6100

```
POL3281
Mail Code: 0730                                2012/03/13 06:43 Page:  2
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
                         SYNOPSIS                Complaint#: 12045662
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

ON 2012/02/05 AT APPROXIMATELY 0200 HRS, A FIGHT BROKE OUT NEAR THE
YELLOW NECTARINE (ALSO KNOWN AS TYN LOUNGE) LOCATED AT 815 8 AVE SW.
SEVERAL UNKNOWN MALE OFFENDERS HAD CHASED ANOTHER MALE ACROSS THE STREET
BEFORE JUMPING HIM AND THEN KICKING HIM PROFUSELY WHILE HE WAS ON THE
GROUND (CASE # 12045782 REFERS).

SEVERAL DOOR STAFF FROM THE YELLOW NECTARINE, INCLUDING VICTIMS
                    AND                     RACED TO THE MALE'S AID.  THE GROUP
DISPERSED AND                         PROCEEDED TO RETURN TO THE BAR.
SEVERAL MALES FROM THE GROUP THEN CHASED THE PAIR BACK TOWARDS THE BAR
AND AMBUSHED THE OUTSIDE PATIO TRYING TO GAIN ENTRY TO THE BAR THROUGH
THE PATIO DOORS.  A COUPLE OF THE MALES WERE ABLE TO GAIN ENTRY. ONE OF
THE MALES HAD A KNIFE AND PROCEEDED TO WAVE IT AROUND IN A THREATENING,
STABBING LIKE MOTION, AND BEGAN CHASING PEOPLE INSIDE THE BAR.

THE MALE STABBED          IN THE LEFT UNDERARM AND           IN THE RIGHT
LOWER ABDOMEN.  DOOR STAFF WERE ABLE TO CHASE THE ACCUSED OUT OF THE BAR
BEFORE SECURING THE DOORS.  THE ACCUSED AND HIS ASSOCIATES FLED IN AN
UNKNOWN DIRECTION AND WERE GONE UPON POLICE ARRIVAL.
```

POL3281
Mail Code: 0730                                    2012/03/13 06:43 Page:  3
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
                       INVESTIGATIVE DETAILS        Complaint#: 12045662
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

2012/02/05:

-   WRITTEN STATEMENTS OBTAINED FROM SEVERAL BAR STAFF AND POTENTIAL
WITNESSES WERE CANVASSED

-   CCTV FOOTAGE VIEWED AND SEIZED OF THE INCIDENT. ALL OTHER FOOTAGE
WILL BE KEPT ON THE SERVER FOR 5 DAYS (UNTIL 2012/02/10) AS PER BAR
OWNER MIKE SANTOS

-   DETAILS OF INDIVIDUALS POSSIBLY RELATED TO THE INCIDENT NOTED
(MIRABALK & NHAN)

-   CHECKED AREA FOR POSSIBLE SCENE/EVIDENCE - NEGATIVE RESULTS

-   ATTENDED THE FOOTHILLS HOSPITAL AND LEFT BUSINESS CARDS, WITNESS
STATEMENTS AND CONTACT INFORMATION WITH BOTH VICTIMS, ▮▮▮▮▮▮▮ &
▮▮▮▮▮▮   ADVISING THAT CST HASSEN WOULD BE VISITING THEM LATER IN THE
DAY TO RETRIEVE THEIR WRITTEN STATEMENTS

-   HAD CSU ATTEND THE FOOTHILLS HOSPITAL TO PHOTOGRAPH BOTH VICTIM'S
INJURIES

POL3281
Mail Code: 0730                                    2012/03/13 06:43 Page:  4
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
                      EVIDENCE LINKING ACCUSED        Complaint#: 12045662
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

POL3281
Mail Code: 0730                                    2012/03/13 06:43 Page:  5
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
                         DISCLOSURE CONCERNS           Complaint#: 12045662
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

POL3281
Mail Code: 0730                                    2012/03/13 06:43 Page:  6
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
                    STATEMENTS & WITNESS EVIDENCE    Complaint#: 12045662
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

CST FLYNN 4568 WILL STATE:

ON 2012/02/05 AT APPROXIMATELY 0220 HRS, I RESPONDED TO A DISTURBANCE
COMPLAINT LOCATED AT 815 8 AVE SW. UPON ARRIVAL, I OBSERVED DOZENS OF
INDIVIDUALS FLEEING THE AREA WHILE OTHERS STOOD AROUND AND IGNORED THE
POLICE PRESENCE. I WAS INFORMED THAT A STABBING HAD A OCCURRED, AND THE
VICTIMS WERE INSIDE THE YELLOW TANGERINE BAR. I WENT INSIDE WITH SEVERAL
OTHER OFFICERS AND FOUND THAT TWO DOOR STAFF (
          ) HAD BEEN STABBED AFTER BREAKING UP A FIGHT INVOLVING 6-8
OFFENDERS AGAINST 1 VICTIM ACROSS THE ROAD FROM THE BAR. AFTER SPEAKING
TO NUMEROUS INDIVIDUALS, I LEARNED THAT THE FIGHT AND THE STABBING,
INVOLVED THE SAME GROUP OF MALES, HOWEVER IT WAS UNCLEAR OF WHAT EACH
PERSON'S SPECIFIC INVOLVEMENT WAS.

I PREPARED TO GATHER WITNESS STATEMENTS FROM ANYONE WHO MAY HAVE SEEN
WHAT HAD HAPPENED. WHILE GETTING STATEMENTS FROM MY VEHICLE, A DARK SUV
PULLED UP AND THE DRIVER INDICATED THAT HIS FRIEND HAD BEEN JUMPED
OUTSIDE THE BAR EARLIER. AFTER SPEAKING TO THE DRIVER,          AND TO
THE VICTIM          (CASE #12045782 REFERS), I LEARNED THAT
WAS JUMPED BY 6-8 MALES, MOSTLY OF ASIAN DECENT, AND THAT THE DOORSTAFF
HAD COME OUT TO BREAK UP THE FIGHT.          FLED THE SCENE WITH
HOWEVER RETURNED ONCE POLICE WERE ON SCENE AS          WAS IN NEED OF
MEDICAL ATTENTION. HE WAS BADLY BRUISED AND SWOLLEN WITH NUMEROUS LARGE
BUMPS ON HIS HEAD, CONSISTENT WITH HIS STOREY OF BEING KICKED AND
PUNCHED EXCESSIVELY AND "JUMPED".  ONCE          WAS RECEIVING THE MEDICAL
ATTENTION HE REQUIRED BY EMS, I RETURNED TO GET A STATEMENT FROM HIS
FRIEND AND THE OTHER OCCUPANTS OF THE VEHICLE, HOWEVER THEY HAD LEFT YET
AGAIN.          STARTED HIS STATEMENT, HOWEVER STATED THAT HE COULDN'T
WRITE AS HIS GLASSES WERE DAMAGED IN THE FIGHT AND HE COULDN'T SEE. I
QUESTIONED HIM REGARDING THE INCIDENT, AND LEARNED THAT HE HAD LEFT THE
BAR, WAS SWARMED BY THIS GROUP OF MALES, UNKNOWN TO HIM.  HE ATTEMPTED
TO RUN AWAY FROM THEM, HOWEVER THEY CAUGHT UP TO HIM ACROSS THE ROAD
NEAR THE PARK AREA WHERE THEY PROCEEDED TO BEAT HIM, KICK HIM AND PUNCH
HIM EXCESSIVELY AS A GROUP.

I RETURNED TO THE BAR AND VIEWED THE CCTV FOOTAGE WITH BAR OWNER
          . THE VIDEO SHOWS AN UNKNOWN ASIAN MALE GAINING ENTRY THROUGH THE
PATIO DOORS OF THE BAR, DESPITE STAFF EFFORTS TO KEEP HIM OUT. HE IS
CHASING PEOPLE AND WAVING WHAT APPEARS TO BE A KNIFE AROUND. HE ATTEMPTS
TO ATTACK SEVERAL PEOPLE AND MAKES CONTACT WITH          . HE DISAPPEARS
FROM TIME TO TIME FROM THE FRAME, HOWEVER RETURNS MAKING THE SAME
THREATENING MOTION, RUNNING TOWARDS AND RUSHING INDIVIDUALS IN THE BAR,
BEFORE LEAVING THROUGH THE PATIO DOOR IN AN UNKNOWN DIRECTION. I SEIZED
A COPY OF THE CCTV FOOTAGE AS EVIDENCE.

I ATTENDED THE FOOTHILLS HOSPITAL AND SPOKE TO BOTH VICTIMS, LEAVING
THEM MY BUSINESS CARD AND BLANK WITNESS STATEMENTS. I INDICATED THAT
SOMEONE WOULD BE BY THE FOLLOWING EVENING TO PICK UP THEIR STATEMENTS. I
LEARNED FROM          THAT HE DIDN'T EVEN REALIZE HE HAD BEEN STABBED
UNTIL THE BLOOD HAD SOAKED THROUGH HIS SHIRT, AND THAT HE HAD JUST TRIED
TO KEEP THE GROUP OUT OF THE BAR BUT THE RUSHED THE PATIO, JUMPING OVER

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
                   STATEMENTS & WITNESS EVIDENCE    Complaint#: 12045662
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
THE RAILING AND FORCING THROUGH THE DOOR. I LEARNED FROM ▯▯▯▯▯ THAT
THE GROUP OF MALES WHO HAD JUMPED ▯▯▯▯ WERE MOSTLY OF ASIAN DECENT,
HOWEVER THERE WERE 1 OR 2 WHITE MALES AND A BROWN MALE, POSSIBLY EAST
INDIAN AS WELL. HE INDICATED THAT HE REMEMBERED ONE OF THE WHITE MALES
AND THE BROWN MALE AS THEY HAD BOTH PRESENTED THEIR PAROLE CARDS FROM
DRUMHELLER AS PHOTO ID WHEN ENTERING THE BAR, STATING THEY HAD RECENTLY
"GOTTEN OUT".


CST WARREN #4956 WILL STATE:

ON 2012 FEBRUARY 5 AT APPROXIMATELY 2:10 I ATTENDED 815 8 AVE SW WITH
REGARDS TO A DISTURBANCE. AFTER ARRIVING ON SCENE TO FIND MOST PEOPLE
WERE LEAVING THE SCENE, I WAS APPROACHED BY THE YELLOW NECTARINE BAR
MANAGER ▯▯▯▯▯▯▯ AND INFORMED ME THAT TWO OF HIS BAR MANAGERS
HAD BEEN STABBED. I ENTERED THE BAR AND WAS APPROACHED BY TWO MALES
SUFFERING FROM STAB WOUNDS. ONE OF THE VICTIMS TALKED WITH CO-WORKER
CST. HASSEN, AS I TALKED WITH THE OTHER VICTIM ▯▯▯▯▯. AFTER
TALKING WITH ▯▯▯▯▯ I LEARNED, ▯▯▯▯▯ AND OTHER FELLOW DOOR MAN AT THE
YELLOW NECTARINE HAD RAN OUTSIDE TO BREAK UP A FIGHT IN WHICH A LONE
MALE WAS BEING SWARMED BY A GROUP OF MALES. AFTER ▯▯▯▯ AND FELLOW
DOORMAN WERE BACK INSIDE AND NOTICED  THE PATIO DOOR WAS BEING RUSHED BY
AN UNKNOWN MALE DESCRIBED AS AN ASIAN MALE, 30-35 Y/O, 5'8-5'9, SLIM
BUILD, AT THIS TIME ENTRY WAS GAIN. THE MALE SUSPECT WAS VANISHING A
KNIFE AND AS THE SUSPECT APPROACHED ▯▯▯▯▯ HE TRIED TO KICK HIM AWAY
FROM ATTACKING HIM, BUT WAS SUBSEQUENTLY STABBED IN THE LEFT POSTERIOR
SHOULDER.

I ASSISTED ▯▯▯▯ TO THE AMBULANCE, WHERE HE WAS ASSESSED AND
TRANSPORTED TO FOOTHILLS MEDICAL CENTER. I TALKED WITH THE BAR OWNER
▯▯▯▯▯ AND TRIED TO OBTAIN CCTV OF EVENT AND DESCRIPTION OF THE
SUSPECT, BUT AT THE CURRENT TIME I WAS UNABLE TO GATHER THIS
INFORMATION.  I THEN OBTAIN A WITNESS STATEMENT FROM ▯▯▯▯▯ WITH
REGARDS TO THE INCIDENT.


▯▯▯▯▯▯▯ WITNESS, WILL STATE:

A FIGHT BROKE OUT IN FRONT OF TYN LOUNGE AND THE BOUNCERS WENT OUTSIDE.
THAT'S ALL I SAW OUTSIDE. THERE WAS SCREAMING AND I HEAR "KNIFE!" AND
EVERYONE WAS TRYING TO GET INSIDE. ONE BOUNCER TRIED TO STOP AND THE
ASIAN GUY ABOUT 5'4", BLACK HAIR, SHORT LEATHER JACKET STABBED HIM IN
THE BACK. EVERYONE RAN TO THE BACK AND THAT'S ALL I SAW. AT THAT TIME I
CALLED 911. HE WAS THIN BUILD, EARLY 30'S, CLEAN SHAVEN, NO GLASSES AND
HAD A 4' BLADE THAT LOOKED STRAIGHT EDGE SHAVING KNIFE WITH SILVER
METAL.


▯▯▯▯▯▯▯, WITNESS, WILL STATE:

I CAME FROM THE MEN'S WASHROOM. I HEAR DOOR'S BANGING. THEN CAME TO THE
PATIO DOOR. SAW ONE BOUNCER BEATING BY 3 GUYS SO I TRIED TO STOP THE

POL3281
Mail Code: 0730                                    2012/03/13 06:43 Page:  8
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
               STATEMENTS & WITNESS EVIDENCE    Complaint#: 12045662
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
FIGHT THEN ONE GUY HIT ME ON MY FACE TWICE. JUST SAW HIS FACE. HE'S A
CHINESE GUY.


                              WITNESS & BAR MANAGER, WILL STATE:

I WAS STANDING BY THE PATIO DOORS WHEN THE BOUNCERS JUMPED UP ONTO THE
PATIO TO GET INSIDE THE RESTAURANT BECAUSE THEY WERE BEING CHASED BY AN
ASIAN MALE WITH A KNIFE. WE TRIED TO LOCK THE DOORS BUT THEY KICKED IT
OPEN AND THEY GOT IN. AN ASIAN MALE STARTED CHASING THE BOUNCERS AROUND
WITH A KNIFE.

I RAN IN THE WASHROOM FOR SAFETY. WHEN I GOT OUT, I FOUND OUT TWO OF THE
BOUNCERS GOT STABBED. THAT'S WHEN I CALLED 911 FOR HELP.

FROM WHAT I KNOW, THE FIGHT STARTED ON THE STREET AND THE POOR MEN TRIED
TO STOP IT AND THEY GOT INVOLVED WITH THE SITUATION.


                    , WITNESS & DOOR STAFF, WILL STATE:

I SAW THE WHITE MALE (**WHO WAS TAKEN INTO POLICE CUSTODY UPON
ARRIVAL**), ALONG WITH 6 OTHER PEOPLE BEATING A BLACK MALE. SO MYSELF,
JESSE AND ANOTHER DOORMAN RAN TO BREAK UP THE FIGHT.  AT THAT POINT THE
FIGHT STOPPED.  AS WE WERE WALKING BACK TO THE BAR, ANOTHER FIGHT BROKE
OUT AND 3 ASIAN MALES RUSHED THE PATIO DOOR, BROKE THROUGH AND STARTED
TO ASSAULT THE DOORMEN.  AT THAT POINT I RAN FOR POLICE.


                        WILL STATE:  ON SUNDAY 2012/02/05 AT APPROX 0220
HRS WE WERE CLOSING DOWN TYN LOUNGE WHERE I WORK AS A DOORMAN. SOMEONE
SHOUTED THAT THERE WAS A FIGHT OUTSIDE AND I PROCEEDED OUT THE FRONT
DOOR TO ASSESS THE SITUATION. ONCE OUTSIDE I SAW A LARGE NUMBER OF
PEOPLE ENGAGED IN AN ALTERCATION THAT WAS RAPIDLY RECEDING INTO THE PARK
ACROSS THE STREET. A BYSTANDER ASKED ME ABOUT THE INCIDENT AND WHEN I
TURNED BACK FROM ANSWERING HIM, I SAW A WHITE MALE UNCONSCIOUS IN THE
ROAD AND A NUMBER OF PEOPLE CLIMBING ONTO THE TYN PATIO.

I CLIMBED OVER THE RAILING IN AN ATTEMPT TO PREVENT THEM FROM GAINING
ENTRY TO THE PREMISES OR HARMING OUR STAFF AND PATRONS. I WAS CONFRONTED
WITH 3 OR 4 MALES ARMED WITH CHAIRS. ONE THREW A SIGN WHICH STRUCK ME IN
THE FACE. THEN SOMEONE JUMPED ON MY BACK AND ATTEMPTED TO CHOKE ME OUT.
I WAS KNOCKED TO THE GROUND AND KICKED REPEATEDLY IN THE HEAD.

SOME STAFF MANAGED TO PULL ME FREE AND WHEN I GOT TO MY FEET THE MALES
WERE GONE. SOMEWHERE IN THE ASSAULT ONE OF THE MALES STABBED ME IN THE
ABDOMEN.


CST HASSEN 4944 WILL STATE:  ON 2012/02/05 AT APPROX 0218 HRS I ATTENDED
815 8 AV SW, KNOWN AS THE TYN LOUNGE, FOR A DISTURBANCE. WHEN I ARRIVED
ON SCENE WITH MY PARTNER, THERE WAS A NUMBER OF PEOPLE FLEEING THE SCENE

POL3281
Mail Code: 0730                                      2012/03/13 06:43 Page:  9
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
                STATEMENTS & WITNESS EVIDENCE    Complaint#: 12045662
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
AND A NUMBER OF PEOPLE WHO DID NOT ACKNOWLEDGE POLICE PRESENCE. WHEN I
STARTED TALKING TO PEOPLE ON SCENE, BAR MANAGER CAME OUT AND TOLD ME
THAT TWO OF HIS STAFF HAD BEEN STABBED AND ARE INSIDE THE LOUNGE.

UPON ENTERING THE LOUNGE THE VICTIM _____APPROACHED
ME, STATING HE HAD BEEN STABBED IN THE ABDOMEN. MANAGER OF THE LOUNGE
APPROACHED ME AGAIN AND STATED THAT ANOTHER ONE OF HIS EMPLOYEES HAD
BEEN STABBED AND WAS IN THE BACK OF THE LOUNGE. CST WARREN ON SCENE,
ATTENDED TO THAT STAFF MEMBER.

AT THAT POINT I RADIOED DISPATCH TO SEND TWO EMS UNITS TO OUR LOCATION.
EMS ARRIVED AND I ESCORTED _____ TO THE AMBULANCE WITH PARAMEDICS. AS
THEY ASSESSED HIM I NOTICED HE HAD STAB WOUND INJURY TO HIS RIGHT LOWER
QUADRANT. _____ WAS CONSCIOUS AND ALERT ON DEPARTURE TO THE FOOTHILLS
HOSPITAL. I GAVE HIM A WITNESS STATEMENT FORM AND ASKED HIM TO FILL IT
OUT AND WE WOULD PICK IT UP FROM HIM THE NEXT DAY.


CSU Member CST CB ADOLPH Reg# 3895
NOTEBOOK # ONENOTE           PAGE(S)#
WILL STATE: "ON 2012/02/05 AT 0507 HOURS, I ATTENDED THE FOOTHILLS
HOSPITAL TO PHOTOGRAPH _____ INJURIES.  I
OBSERVED AND PHOTOGRAPHED THE FOLLOWING INJURIES:
_____ - BED 79 @ EMERG
   - LARGE LACERATION BY RIGHT UNDERARM APPROXIMATELY 6 CM IN LENGTH,
     LACERATION WAS STITCHED UP
_____ - UNIT 44 MCCRAIG TOWER
   - BRUISE AND SWELLING AROUND RIGHT EYE AND NOSE
   - LARGE LACERATION TO LOWER RIGHT TORSO COVERED BY MEDICAL TAPE


CST CARDINAL 3330 WILL STATE:  ON 2012/02/05 AT APPROX 0220 HRS I
RESPONDED TO A DISTURBANCE IN THE 800 BLOCK OF 8 AV SW. UPON ARRIVAL IN
MY MARKED POLICE VAN, I OBSERVED SEVERAL PEOPLE MILLING ABOUT ON 8 AV. I
OBSERVED AN ASIAN MALE HELPING A WHITE MALE WALK AWAY FROM THE SCENE OF
WHAT APPEARED TO BE A LARGE GROUP FIGHT. THE MALE BEING ESCORTED HAD A
LARGE WELT ON HIS FOREHEAD. I IDENTIFIED THIS MALE AS ZACHARY MIRABACK
DOB: _____. I DETAINED BOTH MALES AND CHARTERED AND CAUTIONED THEM
FOR ASSAULT.

I PLACED THEM IN THE BACK OF MY POLICE VAN WHILE I CONDUCTED QUERIES.
PRIMARY INVESTIGATOR WAS MADE AWARE OF THEIR POSSIBLE INVOLVEMENT AND
SPOKE TO THEM BRIEFLY IN THE BACK OF MY VAN. AFTER IDENTIFYING TWO MALES
AND NOT HAVING ANY FURTHER GROUNDS TO DETAIN THEM, BOTH MALES WERE
RELEASED. I WAS LATER NOTIFIED BY CST FLYNN THAT TWO BOUNCERS INVOLVED
IN THE FIGHT HAD POSSIBLY BEEN STABBED, HOWEVER IT WAS UNKNOWN AT THAT
TIME WHO THE SUSPECTS WERE. I ADDED BOTH MALE'S INFORMATION TO THE CALL
AND RELEASED THEM AT THE SCENE.

```
POL3281
Mail Code: 0730                              2012/03/13 06:43 Page: 11
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
                          EXHIBITS               Complaint#: 12045662
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
```

-   COPY OF CCTV FOOTAGE ON CD IN RAW FORMAT (X2)

-   "GUEST LIST" FROM THE YELLOW NECTARINE

```
POL3281
Mail Code: 0730                                    2012/03/13 06:43 Page: 12
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
                              WITNESS LIST              Complaint#: 12045662
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
        POLICE WITNESSES
Rank    Name                     Reg#  Work Area                    Phone
CST     BASSETT, SB              4705  DIST 1 TEAM 3
CST     CARDINAL, D              3330  DISTRICT 1 BEAT TEAM
CST     FLYNN, HN                4568  DIST 1 TEAM 5
CST     HASSEN, AL               4944  DIST 1 TEAM 4
CST     JAMES, LK                4802  DIST 1 TEAM 1
CST     NICHOLSON, R             4504  DIST 1 TEAM 5
CST     PHILLIPS, MM             4935  DIST 1 TEAM 2
CST     WARREN, CA               4956  DIST 1 TEAM 4
DET     GRAHAM, S.T              3802  DIST 1 GIU

        CIVILIAN WITNESSES
                                                       Zn Phone          Stmt
                             Bus: 815 8 AV SW          12                WRITTEN
                             Res:

                             Bus: 815 8 AV SW          12
                             Res:                      71               WRITTEN
                             Cel:

                             Bus: 815 8 AV SW          12
                             Res:                      82               WRITTEN

                             Bus:
                             Res:                      82               WRITTEN

                             Bus: 815 8 AV SW          12
                             Res:                      52
                             Cel:

                             Bus:
                             Res:                      72               WRITTEN
```