Chief Judge Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | NO. CR06-157MJP |
| | ) | |
| Plaintiff, | ) | GOVERNMENT'S TRIAL BRIEF |
| | ) | |
| v. | ) | |
| | ) | |
| HENRY CARL ROSENAU, | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America, by and through Jenny A. Durkan, United States Attorney for the Western District of Washington, and Susan M. Roe and Marc A. Perez, Assistant United States Attorneys for said District, files this pleading to assist the Court in the jury trial scheduled to begin Monday, April 23, 3012.

***INTRODUCTION***

In 2004 and 2005, a group of people in Canada and the United States smuggled thousands of pounds of marijuana into the United States by ferrying 50 pound hockey bags attached to and/or inside privately owned helicopters. The group included helicopter pilots, one of whom was the defendant Henry Rosenau. Special Agents from Immigration and Customs Enforcement [now designated Homeland Security Investigations] spent much of the summer of 2005 watching the US-Canada border in the Pasayten National Wilderness and Loomis State Forest near Winthrop, Washington. The agents intercepted and seized several

multi-hundred pound loads of marijuana that summer, by watching for helicopters and following the cars which met the aircraft on this side of the border.  The helicopters often were seen at low altitudes, with a filed flight plan or Customs Inspection, with camouflaged or no tail identification markers, and landed at make-shift and unofficial landing sites.  These actions were taken to circumvent detection by law enforcement because the helicopters were ferrying contraband, including marijuana, people, firearms and currency, internationally.  The agents also set up motion-sensitive "trail" cameras at spots in the national forest which they believed were being used as loading sites.

## OUTLINE OF THE GOVERNMENT'S CASE IN CHIEF

### United States Law Enforcement Activity

The government will offer testimony and evidence of four undisputed marijuana smuggling incidents, marijuana seizures and ICE arrests which occurred in 2005, in addition to testimony about other,  undetected smuggling in 2004 and 2005.  The incidents are:

(1) a June 9, 2005 ICE seizure of 485 pounds of marijuana from Kip J. Whelpley made during a traffic stop.  His co-conspirator that day was Jonathan Senecal.  The smuggle and transport was surveilled and videotaped by personnel from the Air Interdiction Group of Customs and Border Protection.

(2) an August 4, 2005 ICE seizure of 500 pounds of marijuana found hidden off a forest service road.  Co-conspirators David Mendoza, Danny Zlystra and Jonathan Senecal had stashed the marijuana in the woods when their truck went into a ditch.  The smuggle and transport was surveilled and videotaped by personnel from the Air Interdiction Group of Customs and Border Protection pilots.

(3) an August 12, 2005 ICE seizure of 500 pounds from Alexander Swanson in a traffic stop on I-90.  His then-unidentified co-conspirator drove a red Toyota Tundra, Colorado plate 900 JLF.  The smuggle and the helicopter's return to Canada was surveilled and videotaped by RCMP.

(4) a September 21, 2005 ICE seizure of 1,100 pounds of marijuana from Braydon and Zachary Miraback in Puyallup.  One Miraback brother drove a white van; the other drove the

GOVERNMENT'S TRIAL BRIEF/ ROSENAU- 2
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

same red Toyota Tundra, Colorado plate 900 JLF.  ICE personnel filmed the brothers when they stopped to eat at a fast food restaurant and while the marijuana load was in the van.  The helicopter was seen, was photographed and a short segment of its flight was filmed by RCMP.

The government will also show video from two trail cameras.  One clip, filmed at a U.S. landing site between July 21 and July 28, 2005 captured the Jet Ranger landing and delivering marijuana to a person waiting on the ground.  The other, filmed in Canada in August 2005, captured people loading bags of marijuana onto a Robinson R44 which appears to be C-FNMM.

Three helicopters have been seen or otherwise identified in these smuggling incidents: June 9, July 21-28 and August 4 - a red and white Bell Jet Ranger, tail identifier C-FALQ. August 12 - a green and white Robinson, tail identifier C-FNMM. September 21 - a blue and white Robinson, tail identifier C-FRKM.

There appears to be no factual dispute that these incidents occurred and that those named above were identified at the time.

### Summary of Anticipated U.S. Law Enforcement Testimony

Many of the government's witnesses will be ICE and CBP personnel who saw, filmed, followed, arrested, searched and seized.  The government will not call every agent who worked this investigation in 2005 but expects to have the following testify generally as to the investigation and specifically to the following events.

### ICE SPECIAL AGENTS

1.  ICE SA Chad Boucher who was involved in the June 9th/Whelpley surveillance and arrest.  He was also present during the August 4/Mendoza event and identified Senecal's car in the area.  On the August 12/Swanson event, SA Boucher followed the second car (the red Toyota Tundra) into Western Washington where he took photographs of the car and the contents.  During the September 21/Miraback, SA Boucher videotaped the brothers and their cars at the fast food restaurant.  Further, he obtained records from Canadian Border and

GOVERNMENT'S TRIAL BRIEF/ ROSENAU- 3
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1   Security Agency (CBSA) and Washington State Patrol (WSP) relating to Whelpley seizure

2   property.

3       2.  ICE SA Jesse Miller was the agent on the August 4/Mendoza event who found and

4   seized the nine bags of marijuana from the woods. No notice to the co-conspirators of that

5   seizure. He was present at the August 12/Swanson traffic stop and, in the Whelpley/June 9

6   event, followed Senecal to Seattle.  He also monitored the trail camera and will testify about

7   the July 21 - 28 video footage.

8       3.  ICE SA Kevin Martin was the first agent on the mountain in the September

9   21/Miraback event.  He saw and heard the helicopter as it left the area and will testify about

10  the Miraback cars as they drove down the mountain.

11      4.  ICE SA Mark Albedyll was part of the team which surveilled the Mirabacks into

12  Puyallup on September 21.  He assisted with the arrests and seizures

13      5.  Peter Ostrovsky was the supervising special agent of the investigation.  He was

14  active in the August 4/Mendoza seizure, assisted in photographing landing sites, and

15  reviewed evidence from the August 12/Swanson event.

16      ***CBP AIR GROUP WITNESSES***

17      6.  Brian Webb is the Customs and Border Protection (CBP) pilot who flew

18  surveillance during the June 9/Whelpley event.  Captain Webb will testify regarding the

19  video clips of that day, will testify about size, shape and capacity of the identified helicopters

20  and explain Global Positioning System (GPS) coordinates.

21      7.   CBP employee  Darrell Feller was on the August 4/Mendoza air surveillance team

22  who saw Mendoza stash the bags in the woods and who gave the coordinates to SA Miller.

23  He will testify regarding the video clip of that flight.

24      8.  CBP employee Brian Shawler was in a second plane during the August 4/Mendoza

25  event and will testify that he watched the Bell Jet Ranger fly north into Canada and land at a

26  location known as "The Shop."

27

28

GOVERNMENT'S TRIAL BRIEF/ ROSENAU- 4
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

9.  CBP employee Jeffrey Sternberg also was in the air on August 4/Mendoza and he will testify about the two rather grainy photographs he took of the Bell Jet Ranger C-FALQ at "The Shop" in Canada.

### OFFICERS FROM OTHER AGENCIES

10.  Retired WSP Trooper, now Kittitas Police Officer, Dave Anderson assisted the ICE agents that summer.  He conducted two traffic stops, June 9/Whelpley and August 12/Swanson, in his marked patrol car.  He will testify about the arrests, the seizures, and the return of Whelpley's property to Jonathan Senecal several weeks later.

11.  United States Forest Service Office Dave Graves assisted in the August 4/Mendoza event by responding to the ditched truck and chatting up the co-conspirators.  He identified and photographed the men and their vehicle.  Earlier, in March 2005, Officer Graves contacted Whelpley when Whelpley was scouting possible landings sites in the national forest.  Officer Graves will testify that he saw Whelpley on a closed forest service road, spoke with him , and issued a warning citation.

### Canadian Law Enforcement Activity

RCMP also was investigating cross border helicopter smuggling and used air surveillance, trail cameras, ground surveillance, photography and videotaping.  The government intends to call several RCMP members to testify as to they saw, photographed and filmed.

On the final day of the charged conspiracy, September 21, 2005, RCMP members camped in Ashnola Valley (near Manning Park, north of the border) saw a Robinson R44 helicopter, tail identifier C-FBKM make two southbound flights through the valley.[1]  On one flight, the helicopter had hockey bags attached underneath by a long line; on the other flight, the helicopter had hockey bags snugged up close to the helicopter itself.  The helicopter was headed into the Pasayten Wilderness area and RCMP notified ICE.  ICE agents scrambled to known landing sites and so SA Martin heard and saw the helicopter leave the area.

[1]They may testify they also saw a different helicopter, C-FYTG ferrying a marijuana load and flying south through the valley.  It was a good day for flying.

GOVERNMENT'S TRIAL BRIEF/ ROSENAU- 5
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

On the Canadian side, RCMP members checked two or three previously-identified sites where the helicopter might be landing, including The Shop, just south of Yale, B.C. Two RCMP members responded to The Shop, noticed that helicopter C-FBKM appeared to have just landed as its rotors were still turning.  Henry Rosenau, standing next to it, was identified as the pilot.  He presented his [invalid] pilot's license and told the members he had been flying around Hope [B.C.] on a sunny day.

When asked if anything illegal was in the helicopter, he volunteered he had a loaded firearm inside the aircraft.  The members retrieved a loaded Smith & Wesson .44 handgun and extra ammunition, a blackberry, satellite phone, night vision goggles, and a Garmin GPS device.  A shed was nearby and RCMP members asked the landowner, Glen Stewart, for permission to look inside.  Stewart gave permission but said Rosenau had the keys.  Rosenau gave the keys to the member who saw, inside the shed, the red and white Bell Jet Ranger tail marker C-FA Q, jerry [fuel] cans on a trailer, and Rosenau's car.  The members also noted tape on the FRKM's tail marker, placed to alter the letter R to appear as a B.

RCMP members who surveilled Rosenau's home saw him fly C-FA Q on September 20.  After the encounter at The Shop and again on the following day, September 22, RCMP members surveilled Rosenau's house and photographed Rosenau there, along with helicopters C-FNMM and C-FRKM.  Although several RMCP members were involved in the investigation, the government does not intend to call every RCMP member from every incident.

### Summary of Anticipated RCMP Member Testimony

1. Cpl. Kim Bloy was in the Ashnola Valley on September 21/Miraback event and will testify regarding the helicopter loads of marijuana.

2. Cpl. Peter Maw will testify about his multiple surveillances of Rosenau and of seeing the Bell Jet Ranger C-FA Q with a metal rack attached to its skids.

3. Cpl. Robert Jones will testify to visiting The Shop immediately following the August 4/Mendoza seizure, noting the closed doors, and seeing the Robinson R44 C-FRKN parked outside of the building.

4.  Cpl. Dennis Piper was part of the surveillance team in Canada and  monitored a trail camera in August 2005 which recorded the men loading bags of marijuana onto a Robinson R 44 which appears to be C-FNMM.  He downloaded information from the GPS device seized on September 21, 2005.

5.  Cpl. Rick Poulson was at The Shop on September 21, saw and heard Rosenau and saw both helicopters, noted the tape, and took Rosenau's items into evidence

6.  Cpl. Ken Kachur was at The Shop on September 21 with Cpl. Poulson and who spoke with Rosenau.

7.  Dave Miyashita is an RCMP pilot who surveilled the R44 Robinson (C-FNMM) helicopter on its smuggling loads on August 12/Swanson event.

### *Summary of Other Witnesses*

Two cooperating former co-conspirators are expected to testify, Kip Whelpley and Dustin Haugen.  Both Canadians were extradited on related charges, cooperated, entered guilty pleas, been sentenced, served their terms  and have returned to Canada.  They and their attorneys have confirmed their upcoming testimony.

1.  Kip Whelpley's anticipated testimony encompasses nearly all of Mr. Rosenau's charged criminal conduct in that he will testify regarding his work with Rosenau and others involved in smuggling contraband across the British Columbia-Washington State border during 2004 and 2005; that Mr. Rosenau once gave him a helicopter ride, that he accompanied Mr. Rosenau on a scouting trip to Washington State in February 2005, that he received multiple loads of marijuana from Mr. Rosenau, that Mr. Rosenau held his cash earnings in 2004, that he continued to assist Mr. Rosenau in the smuggling operation in Canada even after his June 9, 2005 arrest in the United States.  Additionally he will testify about the role of other, co-conspirators, including David Mendoza and Jonathan Senecal.  Further, he will testify specifically as to some of the helicopters and locations involved in the smuggling.  Lastly he may testify as to the civil lawsuit filed by Rosenau against him in an effort to prevent his testimony.

GOVERNMENT'S TRIAL BRIEF/ ROSENAU- 7
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

2.   Dustin Haugen's anticipated testimony includes that he is a Canadian helicopter pilot who also smuggled marijuana into the United States.  He will testify that he met Rosenau in the summer of 2004, during and as part of the conspiracy, and that Rosenau flew him into the United States to a remote landing area, in or near the United States National Park.  Mr. Haugen will testify that he came to the United States to take delivery of another helicopter which was to be used in the cross-border marijuana smuggling.  He will testify that his flight into the United States was done without inspection so that he could fly the new helicopter back into Canada without law enforcement or border detection.  He will testify that he flew the new helicopter into Canada to a field near Hope, British Columbia, and that he soon flew it into the United States with a load of marijuana.  He will testify that he recognized a picture of the Robinson R44, C-FRKN, as a helicopter Rosenau flew.

3.   Ross Bertram from Transport Canada will testify regarding the business records obtained from Transport Canada, the Canadian equivalent of the Federal Aviation Administration in the United States.  The records include the defendant's pilot licensing file which show that his license was invalid on September 21, 2005[2]; documents related to the Robinson R-44 helicopter with tail identifier C-FRKM, which was owned by the defendant; documents related to a Bell Jet Ranger tail identifier C-FALQ, which was flown by the defendant; documents related to the  Robinson R-44 helicopter with tail identifier C-FNMM, which was seen at the defendant's residence; records related to a Robinson R-22 helicopter with tail identifier C-GZAR, which was sold to the defendant; and a Robinson R-22 helicopter with tail identifier C-GRIA, which was sold to the defendant.  These records will be offered pursuant to 18 U.S.C. § 3505(a) and Federal Rule of Evidence 803(6) although Mr. Bertram may testify, the government also has a Certification pursuant to Federal Rule of Evidence 902.

---

[2] Beginning in 2003, Rosenau's license renewal was subject to a medical review.  On September 15, 2005, Rosenau was notified that his medical certificate was suspended.  That day his pilot's license was suspended and Rosenau was ordered to return it immediately.

4.  Forensic chemists from the DEA Regional Drug Laboratory and one chemist from the Montana State Laboratory (formerly with DEA), Paul Eyerly, John Chappell, William Moriwaki, William Chin and J.W. Robinson will testify as to their analyses of the seized loads and the results that the substances were marijuana.

5.  ICE SA Jennifer Hinckley, who is the trial case agent, is expected to testify as to maps, business and foreign records, including TECS, CBSA (Canadian Border and Security Agency) and WSP records.

### POSSIBLE LEGAL AND EVIDENTIARY ISSUES AT TRIAL

**1.    Law of Conspiracy**

The defendant has been charged with two counts of conspiracy; one to import marijuana and one to distribute marijuana.  The government must prove two elements in order to secure a conviction of conspiracy: (1) that there was an agreement between two or more people to commit the crime, and (2) that the defendant became a member of the agreement knowing of its objects and intending to help accomplish one of the objects;

The United States bears the burden of proving beyond a reasonable doubt that an agreement has been made to accomplish an illegal object.  *See id.; United States v. Delgado*, 357 F.3d 1061, 1066 (9th Cir. 2004).  A conviction for conspiracy does not require direct evidence of that agreement.  Rather, an agreement constituting a conspiracy need not be explicit, but may be inferred from the acts of the parties and circumstantial evidence.  *See United States v. Mesa-Farias*, 53 F.3d 258, 260 (9th Cir. 1995); *United States v. Thomas*, 586 F.2d 123, 127-32 (9th Cir. 1978).  It is sufficient to show that the conspirators came to a mutual understanding to accomplish an unlawful purpose.  *See American Tobacco Co. v. United States*, 328 U.S. 781, 809-810 (1946); *United States v. Kiriki,* 756 F.2d 1449, 1453 (9th Cir. 1985).

One means of proving a conspiracy is evidence that the defendants acted together to achieve a common goal.  Coordination between defendants is strong circumstantial evidence that parties have an agreement.  *See United States v. Fulbright*, 105 F.3d 443, 448 (9th Cir. 1997).  "[O]nce a conspiracy exists, evidence establishing beyond a reasonable doubt a

defendant's connection with the conspiracy, even though the connection is slight, is sufficient to convict the defendant of knowing participation in the conspiracy." *Delgado,* 357 F.3d at 1066 (citing *United States v. Penagos,* 823 F.2d 346, 348 (9th Cir. 1987); *see United States v. Castaneda,* 16 F.3d 1504, 1510 (9th Cir.1994) ("Once a conspiracy has been established, evidence of only a slight connection with it is sufficient to establish a defendant's participation in it.").

The government need not prove that a conspirator knew the identity, location, number, and function of all his or her co-conspirators, or that all worked together consciously to achieve a desired end. *United States v. Kearney*, 560 F.2d 1358, 1362 (9th Cir. 1977), *cert. denied*, 434 F.2d 971 (1977).  The hallmark of a conspiracy is concerted activity.  "The federal courts uniformly hold ... that government agents ... may testify as to the general practices of criminals to establish the defendant's modus operandi" in conspiracy cases. *See United States v. Johnson*, 735 F.2d 1200, 1202 (9th Cir. 1984); *United States v. Patterson*, 819 F.2d 1495, 1507 (9th Cir. 1977); *United States v. Andersson*, 813 F.2d 1450, 1458 (9th Cir. 1987) (testimony regarding trafficking methods and counter-surveillance).

One who joins an ongoing conspiracy is bound by all reasonably foreseeable substantive crimes committed in furtherance of the conspiracy, even if he or she did not participate in or have knowledge of their commission. *See Pinkerton v. United States*, 328 U.S. 640 (1946); *United States v. Hegwood*, 977 F.2d 492, 498 (9th Cir. 1992); *United States v. Petti*, 973 F.2d 1441, 1446 (9th Cir. 1992); *United States v. Reed*, 726 F.2d 570, 580 (9th Cir. 1984).  Thus, the act of one conspirator is the act of all. *See Phillips v. United States*, 356 F.2d 297, 303 (9th Cir. 1965).  The United States also need not prove that each conspirator knew the identity, location, number, and function of all his or her coconspirators, or that all worked together consciously to achieve a desired end. *See United States v. Kearney*, 560 F.2d 1358, 1362 (9th Cir. 1977).

.     Just because there are many conspirators, it does not necessarily follow that there is more than one conspiracy.  "If the plan or scheme has as its purpose a common goal to which the co-conspirators align themselves, then a single conspiracy exists." *United States v. Vigi*,

363 F. Supp. 314, 320 (E.D. Mich 1973) ("multiple conspiracies do not exist merely because the co-conspirators perform varying functions or only knowingly align themselves with the 'hub' of the conspiracy").  The general test for a single conspiracy "contemplates the existence of subagreements or subgroups.  The evidence need not exclude every hypothesis other than a single conspiracy exists."  *United States v. Shabani*, 48 F.3d 401, 403 (9th Cir. 1995) (internal quotation marks omitted).

2.      *Statements of a Party-Opponent.*

Fed. R. of Evid. 801(d)(2)(A) provides that a statement of a "party-opponent" is not hearsay and therefore admissible at trial when, "the statement is offered against a party and is the party's own statement in either an individual or representative capacity."  At trial, the government will seek to admit the statements made by all defendants during the investigation to the UCA and the CS.  Federal Rule of Evidence 801(d)(3) provides an exception to the hearsay rule only where a statement is offered against the party that made the statement, not when it is offered on the declarant's behalf.  *See United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000); *United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988).  The hearsay rule precludes a party from placing his or her exculpatory statements before the jury without being subjected to cross-examination.  *Ortega*, 203 F.3d at 682.  The admission of a party's own statement should not be confused with the admission of statements against interest as outlined in Fed. R. of Evid 804(b)(3).  Unlike a declaration against interest, a party's own statement is admissible even if it was not against interest when made.  *People of Guam v. Ojeda*, 758 F.2d 403, 408 (9th Cir. 1985).

As the Ninth Circuit has repeatedly stated, the rule of completeness does not apply to compel the admission of otherwise inadmissible hearsay.  *See Ortega*, 203 F.3d 682 ("Even if the rule of completeness did apply, exclusion of Ortega's exculpatory statements was proper because these statements would still have constituted inadmissible hearsay.") *United States v. Collicott*, 92 F.3d 973, 983 (9th Cir. 19096) (Rule 106 does not compel the admission of statements that do not otherwise fall within the scope of an exception to the hearsay rule.) *See also United States v. Ramos-Caraballo*, 375 F.3d 797, 803 (8th Cir. 2004) (same).  As

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

such, should the government not admit portions of a defendant's statements, the defendant may not seek to admit these statements as part of cross-examination of the agents, or on direct examination of the defendant.

**3.      Co-conspirators' Statements Made During and in Furtherance of the Conspiracy.**

Fed. R. of Evid. 801(d)(2)(E) provides that a statement is not hearsay and therefore admissible at trial when, "the statement is offered against a party and is. . . (E) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy."  For a statement to be admissible under the co-conspirator exception, the government must establish (1) the existence of a conspiracy, (2) the defendant's connection to the conspiracy, and (3) that the statement was made during and in furtherance of the conspiracy.  *United States v. Crespo de Llano*, 838 F.2d 1006, 1017 (9th Cir.1987) (citation omitted).  A co-conspirator's statement is admissible even if the indictment does not charge a conspiracy count, when there is proof that it was made in furtherance of a conspiracy.  *United States v. Layton*, 855 F.2d 1388, 1398 (9th Cir.1988).  Moreover, it is not necessary that the statement be made to another member of the conspiracy for it to be admissible under the rule.  *See United States v. Zavala-Serra*, 853 F.2d 1512, 1516 (9th Cir.1988) (statements to a government informant admissible); *United States v. Taylor*, 802 F.2d 1108, 1117 (9th Cir. 1986) (statements to undercover FBI agent admissible).

***The burden of proof is a preponderance of the evidence***.

The quantum of evidence needed to establish the existence of the conspiracy, the defendant's connection, and whether the offered statement was made in the course or in furtherance of the conspiracy, is the preponderance standard.  *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1978).  In applying this burden of proof, it should be distinguished from the ultimate burden the government has in a criminal case.

> The inquiry made by a court concerned with these matters is not
> whether the proponent of the evidence wins or loses his case on
> the merits, but whether the evidentiary Rules have been satisfied.
> Thus, the evidentiary standard is unrelated to the burden of proof
> on the substantive issues, be it a criminal case, or a civil case.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

*United States v. Peralta*, 941 F.2d 1003 (9th Cir. 1991). In making this preliminary finding, the statement itself may be used to establish its admissibility. *Bourjaily*, 483 U.S. at 179; *United States v. Schmit*, 881 F.2d 608 (9th Cir. 1989).

### The order of proof is subject to the court's discretion.

Co-conspirator statements may be admitted before all the evidence establishing the existence of the conspiracy has been presented. See *United States v. Loya*, 807 F.2d 1483, 1490 (9th Cir. 1987) ("A district court has the discretion to vary the order of proof in admitting a co-conspirator's statement."). Co-conspirator statements made even before a defendant joins a conspiracy are admissible against him. *United States v. Segura-Gallegos*, 41 F.3d 1266, 1271 (9th Cir. 1994). Furthermore, once a conspiracy is shown, the prosecution need only present slight evidence connecting the defendant to the conspiracy. *United States v. Crespo de Llano*, 838 F.2d 1006, 1017 (9th Cir. 1987); *United States v. Mason*, 658 F.2d 1263, 1269 (9th Cir.1981).

### Statements can be "in furtherance of a conspiracy" in many ways.

Statements are in furtherance of the conspiracy if they are made to keep a person abreast of the conspirators' activities, or to encourage continued participation in the conspiracy, or to allay fears. *United States v. Crespo de Llano*, 838 F.2d 1006, 1017 (9th Cir.1987)(conspirator told undercover agent he provided a safe house for drug deals); *United States v. Eaglin*, 571 F.2d 1069, 1083 (9th Cir.1977) (witness testified that conspirator said defendant had given him false identification and cash). Expressions that 'further the common objectives of the conspiracy or set in motion transactions that are an integral part of the conspiracy' are admissible. *United States v. Bowman*, 215 F.3d 951, 960 (9th Cir. 2000)(statements by co-conspirator to his girlfriend made to keep her informed and enlist her help), citing *United States v. Yarbrough*, 852 F.2d 1522, 1535 (9th Cir.1988).

In *Yarborough*, the Ninth Circuit outlined specific types of statements that are considered to be "in furtherance" of the conspiracy:

1.    Statements made to induce enlistment or further participation in the group's activities.
2.    Statements made to prompt further action on the part of conspirators.

GOVERNMENT'S TRIAL BRIEF/ ROSENAU- 13
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

3.    Statements made to "reassure" members of a conspiracy's continued existence.
4.    Statements made to allay a coconspirator's fears.
5.    Statements made to keep coconspirators informed of an ongoing conspiracy's activities.
6.    Statements made to "higher ups" of the group.

*Id*. at 1535 (citations omitted).

### 4.    *Hearsay Exception of Present Sense Impression*

Fed. R. of Evid. 803(1) provides that a statement describing or explaining an event or condition, made while or immediately after the declarant perceived it, is an exception to the prohibition of hearsay.  The elements are that the declarant must have personally perceived the event described, the declaration must be an explanation or description of the event, and the declaration and the event described must be contemporaneous. *United States v Gil,* 58 F. 3d 1414 (9th Cir. 1995). *United States v. Mitchell*, 145 F. 3d 572, 576-77 (3rd Cir. 1998).

In the present case, the government intends to play several video clips with contemporaneous audio recorded in the surveilling aircraft.  All of the video and audio clips contain voices of the pilots, those viewing the on-ground action, and the relaying of information to the on-ground responding agents.  All is present tense and while the action was being viewed, the transmissions were made to fulfill the investigation and to render the surveillance successful.  These are often known as "fellow officer" statements.  They were not made in anticipation of the criminal trial.

As such the audio tracks do not run afoul of *Crawford v. Washington*,541 U.S. 36, 51-52 (2004).  The *Crawford* Court outlined the types of statements within the "core class" of "testimonial statements:"

> *Ex parte,* in-court testimony or its functional equivalent – that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; [and] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*United State v. Solario,* __ F. 3d __, 2012 WL 161843 (9th Cir. 20120)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1

### 5.    *Statements Not Offered to Prove the Truth of the Matters Asserted*.

"Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).  As such, a statement constitutes hearsay only when it is offered to prove the truth of its contents.  When it is relevant that an out-of-court statement was made, and the statement is offered for a reasons *other than* proving the truth of its contents, it is not hearsay and is therefore admissible.  *See Williams v. United States*, 458 U.S. 279 (1982); *Calmat Company v. United States*, 364 F.3d 1117, 1124 (9th Cir. 2004) ("If the significance of an out-of-court statement lies in the fact that the statement was made and not in the truth of the matter asserted, then the statement is not hearsay").

During the trial, the government may offer out-of-court statements for purposes other than proving the truth of the matters asserted.  These types of statements would not constitute "hearsay" within the definition of Fed. R. Evid. 801.  For example, the government may offer out-of-court statements for the following non-hearsay purposes, among others: (a) to explain

the basis of a person knowledge, belief, or state of mind;[3] (b) to explain a person's subsequent actions;[4] (c) to establish that fact that a statement was uttered;[5] or (d) to explain 6.

### 6.   *Admission of Public Records.*

Evidence Rule 803 outlines exceptions to the general hearsay rule and subsection 803(6) allows the admissibility of records of regularly conducted activity, that is, records of nearly any sort, made "at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, records, or data compilation," unless there is some indicia to doubt the trustworthiness of the records. Evidence Rule 803 references Evidence Rule 902, which sets forth a self-authentication method for records.

Evidence Rule 902 allows for the admissions of certified records of regularly conducted business activities when the record "is accompanied by a written declaration of its custodian or other qualified person, in a manner complying with any ...rule...certifying that the record –

---

[3]   *See United States v. Tille*, 729 F.2d 615, 622 (9th Cir. 1984)(witness' testimony that a third party's statement convinced him that a coconspirator's threats were serious was not hearsay, because the third party's statement was not offered to prove the truth of the matter it asserted); *United States v. Grassi*, 783 F.2d 1572, 1578 (11th Cir. 1986)("The testimony of victims as to what others said to them, and the testimony of others as to what they said to victims is admitted not for the truth of the information in the statements but for the fact that the victim heard them and that they would have tended to produce fear in his mind."); *United States v. Williams*, 993 F.2d 451, 457-58 (5th Cir. 1993)(same); *United States v. Shannon*, 137 F.3d 1112, 1118 (9th Cir. 1998)(letter from third party warning defendant of possible law enforcement investigation was not hearsay; evidence was not offered to prove that there was, in fact, an investigation, but to prove defendant's knowledge of the underlying criminal activity possibly being investigated); *Calmat Company v. United States*, 364 F.3d at 1124 (racially offense remarks made by company's employees were not hearsay because they were introduced to prove that statements were made and were reported to supervisors).

[4]   *See United States v. Lowe*, 767 F.2d 1052 (4th Cir. 1985)(agent's testimony regarding information he received from third party was not hearsay, because it was offered to explain the preparations agents took in anticipation of the accused's arrest); *United States v. Stout*, 599 F.2d 866 (8th Cir. 1979)(police officer's description of a vehicle, as transmitted to him by third party, was admissible to prove why the officer stopped the car, and was not objectionable hearsay).

[5]   *See United States v. Scheele*, 231 F.3d 492, 500 (9th Cir. 2000)(threatening statement admitted to prove that statement was uttered); *United States v. Kostoff*, 585 F.2d 378, 380 (9th Cir. 1978)(same); *United States v. Herrera*, 600 F.2d 502, 504 (5th Cir. 1979)(defendant's threat to victim admitted to show victim's state of mind as a consequence of the threat).

(A) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters;
(B) was kept in the course of regularly conducted activity; and
(C) was made by the regularly conducted activity as a regular practice.
ER 902(11)

The government will offer certified copies of public records such as those from the Washington State Department of Licensing such as drivers license and vehicle registrations and title transfers.

**7.      *Admission of Border Crossing Records as Public Records.***

Treasury Enforcement Communications System (TECS) records listing the recorded crossings for the defendant, his car, and several others will be introduced through an ICE agent.  These records contain the dates and times of declared or reported entries into the United States.  TECS records are public records, admissible against claims of hearsay under Fed. R. Crim. P. 803(8):

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

And, in *United States v. Orozco*, 590 F.2d 789 (9th Cir. 1979), such "TECS" evidence was specifically ruled admissible:

> There was testimony at trial that as the license numbers are entered, they appear on the computer's screen, allowing the inspector to see if a mistake has been made in his entry.  The customs agents have no motive to fabricate entries into the computer and the possibility of an inaccurate entry is no greater here than it would be in any other recording system.  The reliability of computers has been demonstrated in similar contexts.  See *United States v. Scholle*, 553 F.2d 1109, 1124 (8th Cir. 1977), *cert. denied*, 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300 (1977); *United States v. DeGeorgia*, 420 F.2d 889, 893 & n.11 (9th Cir. 1969). Since nothing about this recording procedure indicates a "lack of trustworthiness," we hold that the

GOVERNMENT'S TRIAL BRIEF/ ROSENAU- 17
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

district court did not abuse its discretion in admitting the TECS cards into evidence.

This holding was cited in *United States v. Sepulveda,* 2010 WL 3190627, *1 (9th Cir. 2010).

### 8.   *Admission of Foreign Records*

The government will be offering two foreign records into evidence, (1) the June 2005  records of the Canadian Customs and Border Security Agency of Jonathan Senecal's return to Canada following Whelpley's arrest and (2) the records of Transport Canada relating to the defendant, his pilot's license and the relevant helicopters.  Title18, United States Code, Section 3505 permits introduction of foreign business records under the following circumstances:

> (a)(1)  In a criminal proceeding in a court of the United States, a foreign record of regularly conducted activity, or a copy of such record, shall not be excluded as evidence by the hearsay rule if a foreign certification attests that –
> (A)  such record was made, at or near the time of the occurrence of the matters set forth, by (or from information transmitted by) a person with knowledge of those matters;
> (B)  such record was kept in the course of a regularly conducted business activity;
> (C)  the business activity made such a record as a regular practice; and
> (D) if such record is not the original, such record is a duplicate of the original;
> unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.
> (2) A foreign certification under this section shall authenticate such record or duplicate.

The government has received certifications signed by foreign records custodians and Canadian legal counsel that meet the above requirements.  Accordingly, the government expects that these documents should be prove acceptable to the Court.

The Ninth Circuit has held that documents admitted under this section do not violate the Confrontation Clause, so long as they bear "indicia of reliability."  *United States v. Miller,* 830 F.2d 1073 (9th Cir. 1987).  In *Miller,* the Court upheld the trial court's admission of foreign bank records pursuant to 18 U.S.C. 3505.  The attestation accompanying the records showed that the documents were attested to under "criminal penalty of falsity," were

made in the regular course of business, and were prepared at or around the time the events occurred, by a person familiar with the matters. *Id.*, at 1077. See, *United States v. Hagege*, 437 F. 3d 943, 958 (9th Cir. 2006)

The Canadian Border Security Agency Crossing Records, provided by the Canadian government pursuant to an Mutual Legal Assistance Treaty (MLAT) request, should be admissible under these standards even without a Canadian witness. The records are admissible as public business records which have been authenticated by the Canadian government. As set forth above, Evidence Rule 803(6) addresses the reliability of the content of records of regularly conducted activities, and Evidence Rule 902(3) acknowledges the reliability of the authentication of such foreign record.

### 9.    *Testimony from Experts and Persons with Specialized Knowledge.*

Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Fed.R.Evid. 702.

The United States will offer the testimony of the chemists regarding their analysis of the seized marijuana as well as the testimony of the pilots who have specialized training in types and specifications of certain aircraft and of the GPS system and its relationship to longitude and latitude. The rule permits testimony by experts if the specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue. *ER 702.* The rule continues with an expansive definition of an expert -- "a witness qualified as an expert by knowledge, skill, experience, training, or education." "The decision to admit expert testimony is committed to the discretion of the [trial] court and will not be disturbed [on appeal] unless manifestly erroneous." *United States v. Kinsey*, 843 F.2d 383, 388 (9th Cir. 1988).

Further the government will offer testimony of ICE agents who have specialized training and knowledge in the area of drug trafficking. These witnesses may testify to topics

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

such as the street value of the drugs seized during the investigation.  It is well established that drug agents and officers are permitted to testify concerning the value of narcotics, as such testimony is relevant to the defendant's intent to distribute.  *United States v. Campos*, 217 F.3d 707, 718-19 (9th Cir. 2000); *United States v. Golden*, 532 F.2d 1244 (9th Cir.), *cert. denied*, 429 U.S. 842 (1976).

To the extent that an expert agent's testimony is based upon information obtained other than through personal observation, it is permissible, if it is based upon information of the type reasonably relied upon by experts in forming expert opinions.  For instance, in *United States v. Golden*, 532 F.2d 1244 (9th Cir. 1976), the Ninth Circuit approved admission of a DEA agent's testimony about the market value of heroin, even though the testimony was based in part upon information obtained from other undercover agents.  Such information is of the type reasonably relied upon by experts determining prevailing prices in clandestine markets, and is relevant to the defendant's knowledge of the presence of the marijuana. Other Ninth Circuit cases have approved admission of evidence about the value of drugs.  *United States v. Hernandez-Valenzuela*, 431 F.2d 707 (9th Cir. 1970); *Gaylor v. United States*, 426 F.2d 233, 235 (9th Cir. 1969).  It is also relevant to the defendant's intent to distribute.  *United States v. Gutierrez-Espinosa*, 516 F.2d 249, 250 (9th Cir. 1975).  In *United States v. Campos*, 217 F.3d 707, 718-19 (9th Cir.2000), the appellate court held that the jury properly heard the agent's expert testimony that the marijuana had a street value of $120,000.

Ninth Circuit cases have restricted the government's ability to offer evidence of the structure, organization, and modus operandi of drug trafficking enterprises when the defendant was not charged with conspiracy.  *United States v. Pineda-Torres*, 287 F.3d 860 (9th Cir. 2002); *United States v. Varela-Rivera*, 279 F.3d 1174, 1179 (9th Cir.2002), however this defendant is charged in two conspiracy.

### 10.  Admission of  prior acts pursuant to Evidence Rule 404(b)

Evidence Rule 404(b) prohibits evidence of "other crimes, wrongs, or acts ... to prove the character of a person in order to show action in conformity therewith."  Fed. R. Evid.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

404(b).  However, the rule permits the admission of other acts to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.*  Such evidence shall not be admitted if the probative value is substantially outweighed by the danger of unfair prejudice.  *See* Fed. R. Evid. 403.

The evidence is admissible under ER 404(b) as proof of motive, intent, plan, knowledge, and identity.  In addition to those elements, 'other acts' evidence is also permitted to show the defendant's motive and plan for having the contraband, or the absence of mistake or accident regarding his possession of those items.  *See Old Chief  v. United States*, 519 U.S. 172, 190 (1997) ("if, indeed, there were a justification for receiving evidence of the nature of prior acts on some issue other than status [as a felon], . . . Rule 404(b) guarantees the opportunity to seek its admission").

The Ninth Circuit has held that other acts are admissible if: (1) there is sufficient evidence to allow the jury to conclude that the defendant committed the other act; (2) the act was not too remote in time from the commission of the charged offense; (3) the act is introduced to prove an element of the charged offense that is a material issue in the case; and (4) the act's probative value is not outweighed by its potential prejudice.  *United States v. King,* 200 F.3d 1207, 1214 (9th Cir. 1999).  If the other act is admitted to prove intent, the act must be similar to the charged offense. *See United States v. Beckman*, 298 F.3d 788 (9th Cir. 2002).

Prior acts which may not be classified as  "404(b) other crimes" evidence, but as being "inextricably intertwined" with charged conduct.  *See United States v. Santiago*, 46 F.3d 885, 889 (9th Cir. 1995) ("Evidence is not considered to relate to 'other crimes' if it is 'inextricably intertwined' with, and 'part of the same transaction' as, the crime for which the defendant was charged") (citing *United States v. Mundi, 892* F.2d 817, 820 (9th Cir. 1989); *United States v. Easter*, 66 F.3d 1018, 1021-22 (9th Cir. 1995).  The government's position is that all of the acts related to Mr. King's Canadian firearms business are also "inextricably intertwined" with charged crimes in this case.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

### 11.   *Admission of a Cooperating Defendant's Guilty Plea*

The admissibility of a co-defendant's guilty plea depends upon the purpose for which it is offered. *United States v. Smith*, 790 F.2d 789, 793 (9th Cir. 1986). Evidence of a testifying co-defendant's guilty plea may be elicited on the issue of the witness's credibility, *United States v. Halbert*, 640 F.2d 1000, 1004 (9th Cir. 1981) (per curiam), or "to support the reasonableness of the witness' claim to firsthand knowledge because of admitted participation in the very conduct which is relevant," *United States v. Rewald*, 889 F.2d 836, 865 (9th Cir. 1989). A co-defendant's guilty plea may not be offered as substantive evidence of the defendant's guilt.

Although not charged as co-defendants, Mr. Whelpley and Mr. Haugen are co-conspirators who were charged in separate filings.

### 12.   *Efforts to Obstruct and Impede Witnesses*

Defendant Rosenau has gone to great lengths to obstruct and impede the witnesses testifying at this trial. This Court is familiar with the civil lawsuit, Rosenau v. Whelpley, 14781 Quesnal which by its Order prohibits the witness from leaving Canada and entering the United States. The only reason for the harrassing lawsuit and the threatening correspondence surrounding it was to convince and prevent Whelpley from testifying. The government incorporates the facts set out previously, including in Emergency Motion for Trial Continuance, Docket # 51 and 55.

A previously-cooperative witness, Glen Stewart (owner of The Shop) was willing to meet with U.S. agents until he was approached by a Canadian lawyer and advised not to.

Another attempt was the lawsuit filed against the RCMP shortly before the original trial date although dismissed out of hand at the initial Canadian hearing, the suit was intended to prevent - and did prevent - the RCMP witnesses from testifying in this trial.

The Ninth Circuit held, witness tampering "shows consciousness of guilt,: which the court held was "second only to a confession in terms of probative value." *United States v. Meling*, 47 F. 3d 1546, 1557 (9th Cir. 1995). *See Ortiz-Sandoval v. Gomez*, 81 F. 3d 891 (9th Cir, 1996) ( "Federal case law .. . is uniform in holding that threats are relevant to

GOVERNMENT'S TRIAL BRIEF/ ROSENAU- 22
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

consciousness of guilt.").  Consciousness of guilt is direct evidence of culpability.  See, e.g., *United States v., Guerrero*, 756 F. 2d 1342, 1347 (9th Cir, 1984).  Since is it considered direct evidence of guilt, the government has no burden to meet the threshold rules of ER 404(b).  *See, United States v. Zierke,* 618 F. 3d 755, 759 (8th Cir. 2010).

13.    *Admissibility of Foreign Evidence*

The defense has raised objections to the admissibility of the defendant's statement and the evidence seized from him at the Shop near Yale on September 21, 2005, and appears poised to argue that the Canadian evidence was seized in violation of Canadian law.  Respectfully, this Court is not in a position to judge the validity under Canadian law of the actions of the two RCMP members who approached Rosenau at the clearly-identified helicopter which had been seen flying two loads of marijuana across the international border without permission that morning.  Certainly in the United States a confrontation, search and seizure would be valid as a Border Search.  Neither are U.S. criminal counsel in a position to argue the applicability of Canadian law and the defendant's Charter rights.

Court have generally admitted foreign evidence unless it was obtained in a manner that "shocks the conscience" or fails to "respect certain decencies of civilized conduct." *Rochin v. California,* 342 U.S. 165, 172-73 (1952).  Even if foreign evidence was obtained in violation of a foreign law, that fact does not foreclose the admissibility of the evidence. *United States v. Barona*, 56 F. 3d 1087, 1091 (9th Cir. 1995)

The interview of Rosenau at The Shop on September 21, 2005, the inquiry as to dangerous items on board the helicopter, and the seizure of the loaded firearm and other tools of the smuggling trade are all admissible.  The RCMP actions taken that day neither "shocks the conscience" nor fails to "respect certain decencies of civilized conduct."  It was good police work.

14.     *Summary Testimony and Exhibits.*

The government may seek to admit evidence of wire transfers and email accounts in the form of summary charts.  Such charts will summarize the dates and amounts of wire transfers, and the email accounts used by co-conspirators during the investigation.  Federal

GOVERNMENT'S TRIAL BRIEF/ ROSENAU- 23
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

Rule of Evidence 1006 states that "[t]he contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary or calculation."  The proponent of a summary under Rule 1006 must establish that the underlying materials are admissible at trial as conditions precedent to introduction of the summary into evidence.  *Amarelu v. Connell*, 102 F.3d 1494, 1516 (9th Cir. 1997); *United States v. Meyers*, 847 F.2d 1408, 1412 (9th Cir. 1988); *United States v. Johnson*, 594 F.2d 1253, 1257 (9th Cir. 1979).  The proponent of a summary also must establish that the underlying documents were made available to the opposing party for inspection.  *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1259 (9th Cir. 1984).  Summaries must fairly represent the underlying documents, and their admission into evidence is left to the trial court's discretion.  *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1516 (9th Cir. 1985), *superseded on other grounds by Northrup Corp. v. Triad Intern. Mktg., SA*, 842 F.2d 1154 (9th Cir. 1988).

Rule 1006 does not require that it literally be impossible for the fact finder to examine the underlying records before a summary may be admitted.  *United States v. Stephens*, 779 F.2d 232, 238-39 (5th Cir. 1985); *United States v. Scales*, 594 F.2d 558, 562 (6th Cir. 1979).  Rule 1006 contemplates that summaries may be used without introducing each and every underlying document into evidence.  *Scales*, 594 F.2d at 562.  Furthermore, the fact that some of the underlying documents are already in evidence does not mean that they can be "conveniently examined in court."  *United States v. Stephens*, 779 F.2d at 239; *United States v. Lemire*, 720 F.2d 1327, 1347 (D.C. Cir. 1983).

The Ninth Circuit has affirmed the admission as substantive evidence of a wide variety of summary charts pursuant to Rule 1006 where (as in this case) such charts are based on the sponsoring witness' out-of-court review of evidence.  *See, e.g., United States v. Shirley*, 884 F.2d 1130, 1133 (9th Cir. 1989) (DEA agent presented chart summarizing information about telephone calls made to and from phones associated with defendants, relying on review of phone records, rental records, jail records, and other information); *United States v. Meyers*, 847 F.2d 1408, 1412 (9th Cir. 1988) (chart summarizing phone

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

records and law enforcement surveillance reports); *United States v. Catabran*, 836 F.2d 453, 456-458 (9th Cir. 1988) (charts summarizing computer printouts and inventory records in bankruptcy fraud prosecution); *United States v. Gardner*, 611 F.2d 770, 776 (9th Cir. 1980) (IRS agent presented chart summarizing assets, liabilities, and expenditures of defendant in tax prosecution).

The government requests permission to supplement this Brief as issues arise.

DATED this 18th day of April, 2012.

Respectfully submitted,

JENNY A. DURKAN
United States Attorney

*s/Susan M. Roe*
SUSAN M. ROE
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, WA 98101-1271
Telephone: (206) 553-1077
Fax: (206) 553-0755
E-mail: Susan.Roe@usdoj.gov

*/s/ Marc A. Perez*
MARC A. PEREZ
Assistant United States Attorney
United States Attorney's Office
1201 Pacific Avenue, Suite 700
Tacoma, Washington 98402
Telephone: (253) 428-3800
Fax: (253) 428-3826
E-mail: Marc.Perez@usdoj.gov

GOVERNMENT'S TRIAL BRIEF/ ROSENAU- 25
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorney(s) of record for the defendant(s).  I hereby certify that I have served the attorney(s) of record for the defendant(s) who are non-participants of CM/ECF via telefax.

/s/ Rachel McDowell
RACHEL MCDOWELL
Legal Assistant
United States Attorney's Office
1201 Pacific Avenue, Suite 700
Tacoma, Washington 98402
Telephone: (253) 428-3800
Fax: (253) 428-3826
E-mail: Rachel.McDowell@usdoj.gov

GOVERNMENT'S TRIAL BRIEF/ ROSENAU- 26
CR06-157MJP

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970