UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>HENRY C. ROSENAU,<br><br>Defendant. | CASE NO. CR06-157MJP<br><br>ORDER ON DEFENDANT'S MOTION FOR RECONSIDERATION REGARDING VIDEO TESTIMONY |

This matter comes before the Court on Defendant Henry Rosenau's motion for reconsideration of the Court's decision to admit the live video testimony of witness Kip Whelpley from a Canadian courtroom during Defendant's trial. (Dkt. No. 97.) Having reviewed Defendant's motion and the Government's response (Dkt. No. 115), and having held oral argument April 20, 2012, the Court DENIES the motion for reconsideration. The Court finds that the admission of live video testimony is constitutional in this case because it necessary to further an important public policy and because the reliability of Whelpley's testimony is otherwise assured.

**Background**

Defendant Henry Rosenau, a Canadian citizen, is on trial in the U.S. District Court for the Western District of Washington on charges stemming from his alleged participation in 2004 and 2005 in a conspiracy to smuggle marijuana by helicopter across the Canadian border into the United States. (Dkt. No. 4.) The Government alleges that Rosenau is one of the pilots who flew helicopters with marijuana loads. (Id.) Rosenau contested his extradition and was not brought to the United States until April 2011. (Dkt. No. 17 at 2.)

Kip Whelpley, a Canadian citizen, is alleged to be another member of the conspiracy. (Dkt. No. 79 at 4.) Whelpley is alleged to have accompanied Rosenau on helicopter trips between the United States and Canada, received multiple loads of marijuana from Rosenau, and given money to Rosenau. (Id.) Whelpley was arrested in 2008, pleaded guilty to one count of conspiracy to import marijuana, and was sentenced to 20 months in prison. United States v. Whelpley, Case No. CR05-407-RSM, Dkt. No. 38 (W.D. Wash.). Whelpley has since returned to Canada. (Dkt. No. 27 at 3.) His plea agreement included a promise to return to the United States testify in the case against Rosenau. (Dkt. No. 55 at 4.) Whelpley's anticipated testimony encompasses nearly all criminal conduct charged against Rosenau. (Dkt. No. 79 at 4.)

Through various legal maneuvers in Canada, Defendant Rosenau has effectively made it impossible for Whelpley to testify against him in person at the present trial. Rosenau's Canadian legal activities first came to the Court's attention in October 2011, when the Government presented evidence that Rosenau, through his agents, filed a lawsuit against Whelpley in his hometown in British Columbia, and that he obtained a default judgment preventing Whelpley from coming to the United States. (Dkt. No. 54 at 5-11.) Rosenau also filed similar suits against

the Royal Canadian Mounted Police. (Id.) The Government has stated that it cannot have the Canadian default judgment against Whelpley set aside without Whelpley's participation. (Id.)

The Government has three times sought to obtain the Court's permission to depose Whelpley in Canada, pursuant to Fed. R. Crim. P. 15. (Dkt. Nos. 27, 55, 79.) The Court initially denied the Government's motion for lack of specific information explaining why Whelpley was unavailable to physically testify at trial. (Dkt. No. 34.) On reviewing the Government's later motions, the Court found that "exceptional circumstances" existed to permit the deposition of Whelpley, but not another witness, Zachary Miraback, who simply preferred not to come to the United States. (Dkt. No. 89.) Rather than authorizing Whelpley's deposition, however, the Court reasoned that live video testimony would better preserve the Defendant's right to confrontation. (Id.)

On March 23, 2012, after hearing oral argument on the Government's motion to authorize the deposition of Whelpley, the Court ordered the Government to facilitate Whelpley's live video testimony from a Canadian courtroom. (Dkt. No. 89 at 2.) The Court ordered that the Government arrange the video conference so that the Defendant can see Whelpley, Whelpley can see the Defendant, and the jury can see Whelpley. (Id.) The Court further ordered that Government counsel and Rosenau's court-appointed lawyer travel to Canada to examine and cross-examine Whelpley in person, and that Defendant be provided a direct communication link with his attorney as well as breaks during the proceeding to speak with his attorney. (Id.) The Court also appointed a second attorney to be present with Defendant in the U.S. Courtroom, in order to facilitate his participation. (Id.)

Defendant challenges the live video testimony arrangement on three grounds. First, Defendant argues that the present case fails the test established by the Supreme Court in

Maryland v. Craig, 497 U.S. 836, 850 (1990), because stopping marijuana trafficking is not a sufficiently important public policy to justify impairment of his Confrontation Clause rights. (Dkt. No. 97 at 10-11.) Second, Defendant argues that the Court incorrectly applied the Rule 15 test for depositions to the question of live video testimony. (Dkt. No. 97 at 4.) Finally, Defendant argues that Crawford v. Washington, 541 U.S. 36, 69 (2004), overruled Craig "sub silento," and that the Supreme Court's new Confrontation Clause analysis always requires physical face-to-face confrontation in criminal trials. (Dkt. No. 97 at 9.)

**Findings:**

After holding a hearing on the issue of live video testimony on April 20, 2012, the Court makes the following case-specific findings:

1. Defendant Henry Rosenau has sued witness Kip Whelpley in courts of British Columbia and obtained a default judgment prohibiting Whelpley from entering the United States.
2. Rosenau's legal actions in Canada have created a legal reality whereby Whelpley is unable to cross the border to testify.
3. The Canadian Government will not allow Rosenau to travel to Canada for the purposes of attending the hearing where Whelpley will testify against him.
4. The U.S. Marshals Service is unable to maintain control of a Defendant outside the physical boundaries of the United States.
5. The Canadian Government has agreed to facilitate Whelpley's testimony via live videoconference from a Canadian courtroom. The proceedings would be governed by U.S. law and Whelpley would be administered an oath under U.S. law.
6. There is an important public policy interest in allowing the Government to effectively try cases regarding the breach of international boundaries by smuggling of narcotics by air

1  into the United States. The Government also has a public interest in ensuring that the
2  national forests are not used as staging grounds to facilitate the introduction of
3  contraband into the United States.
4  7. Because Whelpley's truthful testimony against Rosenau in the present case was a
5  condition of his 2008 plea agreement, perjury in the present trial of Rosenau may lead to
6  Whelpley's extradition. The threat of extradition and possible imprisonment for perjury
7  makes the reliability of Kip Whelpley's testimony reasonably assured.

**Discussion**

A. <u>Video Testimony</u>

The present arrangement to permit live video testimony meets or exceeds the requirements established by the Supreme Court in <u>Maryland v. Craig</u>. 497 U.S. at 850. In <u>Craig</u>, the Supreme Court approved a Maryland statute that permitted victims in child sex abuse cases to testify in a separate room where they could not see the defendant, but the defendant could see them on a one-way video monitor. <u>Id.</u> at 851. The Court stated that "the Confrontation Clause reflects a preference for face-to-face confrontation," but that this preference "must occasionally give way to considerations of public policy and the necessities of the case." <u>Id.</u> at 849. The Court held that a defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial where denial of such confrontation is necessary to further an important public policy and where the reliability of the testimony is otherwise assured. <u>Id.</u> at 850.

The procedures in the present case surpass those approved in <u>Craig</u>. First, the video connection in the instant case would be two-way, so the witness can see the Defendant, in addition to the Defendant seeing the witness. Second, dramatic improvements in technology since <u>Craig</u> was decided twenty-two years ago, including clearer video and audio, improve the

jury's ability to observe the demeanor and body language of the witness. Third, appointing a second counsel ensures that one defense lawyer will cross-examine the witness face-to-face in Canada, while the other remains with the Defendant, facilitating his participation. While the witness in Craig was in a different room, not a different country, the arrangements proposed in this Court—including personal video monitors for each juror—make the experience close to that of watching a live witness testify in person.

Next, the public policy interest in allowing the Government to effectively try cases regarding the breach of international boundaries by smuggling of narcotics by air into the United States is sufficiently important to justify permitting live video testimony. Video testimony may overcome the requirement of physical confrontation only when it is "necessary to further an important public policy." 497 U.S. at 850. A wide variety of public policy objectives may satisfy this test, but the Government must make some showing of necessity. In Craig, the Supreme Court held that the state's interest in "protecting the physical and emotional well being of youth" was sufficient. Id. at 852. Interpreting Craig, the Fourth Circuit held that combating international terrorism was a sufficiently important public policy to justify video testimony in a criminal trial. United States v. Ali, 528 F.3d 210, 240 (4th Cir. 2008). In contrast, in United States v. Yates, the Eleventh Circuit held that the public policy interest must be "more than the Government's convenience," and that the Confrontation Clause "requires something more than mere unavailability" to justify introducing video testimony. 438 F.3d 1307, 1316-17 (11th Cir. 2006) (en banc).

The Government's public policy interest in the present case is more similar to that in Ali and Craig than the public policy interest in Yates. Defendant argues that Yates stands for the proposition that prosecuting drug cases is not a sufficiently important public policy to permit

video testimony in a criminal trial. (Dkt. No. 97 at 10-11.) However, a more persuasive reading of <u>Yates</u> is that the Government must show good reason why video testimony is necessary, rather than simply claiming "convenience." <u>Yates</u>, 438 F.3d 1316-17. The Government meets that burden here by showing that Whelpley is prevented from entering the United States by a Canadian court order. (Dkt. No. 79.) In fact, the record in this case shows the Court has declined to approve video testimony of witnesses where the Government has not shown a clear necessity. (<u>See</u> Dkt. No. 89.)

Live video testimony is also appropriate here because other factors "adequately ensure[] that the testimony is both reliable and subject to rigorous adversarial testing in a manner functionally equivalent to that accorded live, in-person testimony." <u>Craig</u>, 497 U.S. at 851. In <u>Craig</u>, the Court found it significant that Maryland's procedure preserved "all other elements of the confrontation right," including requiring the witness to be competent, to testify under oath, to undergo contemporaneous cross examination, and for the judge, jury and defendant to view the demeanor and body, "albeit by video monitor," of the witness as he or she testifies. <u>Id.</u> Those same factors exist in the present case. Defendant's attorney may cross-examine Whelpley, because the two will be in the same courtroom in Canada. Whelpley will take an oath administered by a U.S. District Court Judge, and the jury will be able to observe Whelpley's demeanor, his movements, and his body language as he is examined by both advocates. As in <u>Craig</u>, Whelpley will "give his statements under oath—thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury." <u>Id.</u> at 845-56. Finally, Whelpley's reliability in providing truthful testimony is buttressed by the fact that any perjury may result in Whelpley's extradition and imprisonment in the United States.

B. Rule 15

To the extent that the Defendant argues the court "erred when it applied the Rule 15 exceptional circumstances standard for authorization of video testimony," the Court agrees. (Dkt. No. 97 at 3.) Craig is the proper standard. Through this order, the Court has explained why live video testimony is permissible in this particular case.

However, the Ninth Circuit's analysis of the constitutionality of Rule 15 depositions is relevant here because a videotaped deposition where the defendant is not present is similar in practice to live video testimony. In the context of Rule 15, the Ninth Circuit allows the use of a video deposition in a criminal trial, even when the defendant does not attend the deposition, in situations where the Government (1) "first attempt[s] to secure the defendant's actual, physical presence" at the deposition, and (2) the Government employs "procedures that are adequate to allow the defendant to take an active role in the [] proceedings." United States v. Medjuck, 156 F.3d 916, 920 (9th Cir. 1998). The Government's burden is simply to demonstrate "the impossibility of obtaining [defendant's] physical presence on terms acceptable to the Government." Id; see also United States v. McKeeve, 131 F.3d 1, 7-8 (1st Cir. 1997); United States v. Gifford, 892 F.2d 263, 265 (3d Cir. 1989).

The Court's proposal for live video testimony in the present case surpasses the requirements of the Ninth Circuit in allowing videotaped depositions when the defendant cannot attend. First, the Government adequately shows that it cannot obtain Defendant Rosenau's presence on acceptable terms. In Medjuck, the "Government was unable to secure [defendant's] presence at the Canadian depositions because there was no mechanism in place to allow United States officials to transfer [defendant] over to Canadian authorities at the Canadian border, and secure his return to the United States in a timely fashion after the depositions." 156 F.3d at 920.

ORDER ON DEFENDANT'S MOTION FOR
RECONSIDERATION REGARDING VIDEO
TESTIMONY- 8

1 | The same situation exists here, because Canada will not permit Defendant Rosenau to attend the
2 | hearing where Whelpley will testify.
3 |     Second, the arrangement proposed here allows Defendant Rosenau to take an active role
4 | in the proceedings. In Medjuck, the Ninth Circuit approved an "elaborate system to allow
5 | [defendant] to witness the depositions live by video feed and to participate with his attorneys by
6 | private telephone connection during the depositions taken in Canada." Id. Here, as in Medjuck,
7 | the Government is taking steps to ensure that Defendant Rosenau will be able to take an active
8 | role in the proceedings by establishing a live two-way video link and appointing a second
9 | attorney to assist him while his primary attorney is in Canada. Id. While the Court's proposed
10 | solution in the present case is different from Medjuck, the Court's approach to satisfying the
11 | requirements of the Confrontation Clause is the same.
12 |   C.  Crawford
13 |     Finally, Defendant's argument that Crawford v. Washington "overruled Craig sub
14 | silento" asks the Court to go too far. (Dkt. No. 97 at 9 (citing 541 U.S. 36 (2004)).) While the
15 | Supreme Court may revisit Craig, this Court is bound to follow directly applicable Supreme
16 | Court precedent until it is clearly overruled. Defendant cites no case stating that Crawford
17 | overrules Craig. In fact, the primary case that Defendant cites, Yates, explicitly relies on Craig in
18 | reaching its conclusion. Yates, 438 F.3d at 1316-17.
19 |     A close reading of Crawford reveals that the opportunity for rigorous cross-examination,
20 | rather than mere physical presence of the defendant, is the central tenet of the confrontation
21 | right. 541 U.S. at 51 (endorsing the prior opportunity for cross-examination hearsay exception).
22 | As Crawford explained, "[t]he principal evil at which the Confrontation Clause was directed
23 | was the civil-law mode of criminal procedure, and particularly its use of ex parte examinations as
24 |

evidence against the accused." Id. at 50. By way of illustration, Justice Scalia described the 1603 trial of Sir Walter Raleigh, whose fate was sealed when a letter containing the confessions of his alleged accomplice, Lord Cobham, was read to his jury. Id. (citing 1 D. Jardine, Criminal Trials 435 (1832)).

In contrast to the situation Sir Walter Raleigh faced, the proposal here gives Defendant Henry Rosenau a full opportunity to cross-examine his accuser in front of the jury—albeit by video. It is difficult to imagine what Sir Walter Raleigh's peers would have thought of modern telecommunication technology. It seems at least plausible that a two-way videoconference allowing Raleigh and his jury to look on as Raleigh's representative cross-examined Cobham in person may have alleviated some of the injustice Raleigh faced. Given the technological progress the world has seen in the four centuries since Raleigh's trial, it seems reasonable that the requirements of confrontation could, in special circumstances, be satisfied in other ways.

**Conclusion**

The admission of live video testimony in this case is necessary to further an important public policy and the reliability of the testimony is otherwise assured. Therefore, it is ordered that Kip Whelpley's testimony be taken by live videoconference from Canada pursuant to the methodology described.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 24th day of April, 2012.

Marsha J. Pechman
United States District Judge