# ATTACHMENT 1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

---

| | |
|---|---|
| UNITED STATES OF AMERICA,         ) | |
| ) | |
| Plaintiff,   ) | CASE NO. CR06-157MJP |
| ) | |
| v.                                ) | SEATTLE, WASHINGTON |
| ) | April 25, 2012 |
| HENRY CARL ROSENAU,                ) | |
| ) | COLLOQUY OUTSIDE THE |
| Defendant.  ) | PRESENCE OF THE JURY |
| ) | RE: LAWSUIT AGAINST |
| ) | MS. ROE |

---

VERBATIM REPORT OF PROCEEDINGS
BEFORE THE HONORABLE MARSHA J. PECHMAN
UNITED STATES DISTRICT JUDGE

---

APPEARANCES:

For the Plaintiff:     SUSAN M. ROE
                       MARC A. PEREZ


For the Defendant:     CRAIG PLATT


Reported by:           NANCY L. BAUER, CCR, RPR
                       Federal Court Reporter
                       700 Stewart Street, Suite 17205
                       Seattle, WA 98101
                       (206) 370-8506
                       nancy_bauer@wawd.uscourts.gov

```
 1  April 25, 2012                                          1:30 p.m.
                              PROCEEDINGS
 2  ─────────────────────────────────────────────────────────────────

 3            THE FOLLOWING PROCEEDINGS WERE HELD
              OUTSIDE THE PRESENCE OF THE JURY:
 4

 5            MS. ROE:  Your Honor, before the jury comes out,

 6  Mr. Rosenau has sued me, Your Honor, so I think that raises

 7  an issue of conflict.

 8            MR. PLATT:  Your Honor, I didn't hear a word of what

 9  Ms. Roe has said.

10            THE COURT:  Mr. Rosenau, have you shared this with

11  Mr. Platt?

12            MS. ROE:  I believe Mr. Platt knows about this, Your

13  Honor.  Mr. Roberts has inquired up in the court the last few

14  days up in Canada as to the whereabouts of the exact location

15  and the timing of Mr. Whelpley's testimony.

16       Then today during lunch, I received from this Crown

17  Counsel in Canada that Mr. Rosenau filed a lawsuit against me

18  as well as a few other people.

19       In addition, Mr. Erickson indicated that Mr. Platt talked

20  to him today and inquired whether he counseled Kip Whelpley

21  about Fifth Amendment rights and whether Kip could be

22  prosecuted in Canada if he testified in this court.  But I

23  think it's kind of a concerted effort to stop the trial right

24  now.

25       The issue my office is concerned about is the conflict,
```

1  and they are working on that. They're contacting the EOUSA.
2  But at this point, there appears to be a conflict of interest
3  for me to continue right now.
4        THE COURT: How did you receive service?
5        MS. ROE: I haven't been served. It's been filed.
6  It's been apparently served and filed in Canada, so I
7  personally haven't been served yet. I got this from Crown
8  Counsel in Canada. They emailed it to me.
9        THE COURT: So what are you asking me for?
10       MS. ROE: Whether this notice of lawsuit, which our
11 office believes it is a conflict at this time, whether we can
12 recess at this time until we can sort out this conflict and
13 whether there's a conflict of interest, or whether I can
14 continue and what it means for the process of the trial.
15       THE COURT: Well, Mr. Platt?
16       MR. PLATT: Thank you, Your Honor.
17    Your Honor, let me just say, first, that I completely
18 disagree with any assertion that I am involved in any of
19 this. I have taken the same position with respect to
20 Mr. Roberts since October, which is that I want nothing to do
21 with him, that he's a loose cannon, that he has caused --
22       THE COURT: Is Mr. Roberts even a lawyer?
23       MR. PLATT: I have no idea, but I don't think so.
24       MS. ROE: He's not. He, in prior lawsuits, has
25 Mr. Rosenau's written permission to act as his agent.

MR. PLATT: He describes himself as an agent. I think that's probably in an affidavit -- a redacted affidavit that he prepared at the detention hearing in October.

MS. ROE: It's also in a court file --

THE COURT: Just a minute, Ms. Roe. Please let Mr. Platt finish. I'll come back to you. Okay? I promise everybody is going to get a chance to speak, but I can't follow the dialogue unless I finish up the conversation here.

MR. PLATT: We should probably go all the way back. Mr. Roberts has represented himself at various times, various ways as acting on behalf of Mr. Rosenau. I did go to Canada at one point and met with counsel there, Gary Botting, who is an attorney. You know, I met him several times. He's written a bunch of books. He's a very distinguished barrister.

Much to my surprise at the meeting, Mr. Roberts was there. Now, I knew of Mr. Roberts, and at that point I thought he was sort of a paralegal.

THE COURT: I remember you telling me --

MR. PLATT: Right. So we had some emails and he had information, so I'm doing my job trying to get information.

In late October -- well, one of the things that happened at that meeting was I said, "Look. I want everyone to stay away from Mr. Whelpley. I don't want anybody to contact him. I don't want there to be any problem with that." And I

1 talked to him about witness interference and intimidation and
2 the rest of it. And, in fact, I was there when Mr. Botting
3 and my client told Mr. Roberts to stay away from this guy,
4 don't cause any more problems.
5     Then in late October, we -- I forget the sequence, but we
6 got information from, I believe originally Mr. Erickson but
7 also through Ms. Roe, that Mr. Roberts had apparently been
8 sending what I took to be inappropriate emails to
9 Mr. Whelpley, completely unbeknownst to me and completely
10 against my direct instructions that he not do anything of the
11 sort.
12     That was the primary reason that Mr. Rosenau was put
13 back -- or put into custody at that point, because of
14 Mr. Roberts' behavior and his alleged agency capacity for
15 Mr. Rosenau.
16     Since then, I've tried to distance myself as much as
17 possible from Mr. Roberts. I think we had a couple of emails
18 where he sent me things. The last email I got from him, I'll
19 tell you, he sent me an email talking, several months ago,
20 saying he wanted to try to bring complaints against Ms. Roe.
21 I wrote back and said, "Stay out of it. Don't do that. Stay
22 out of my case," and he wrote back and said, "Don't ever call
23 or email me again." That's the last exchanged I've had with
24 him.
25     THE COURT: Right. Well, Mr. Platt, take a look at

```
1  what Ms. Roe --
2          MR. PLATT:  Yeah, I've never seen it.
3          THE COURT:  She just gave you a copy, correct?
4          MR. PLATT:  No, she didn't, actually.  And to say
5  that I know about it, I've never seen it.
6          THE COURT:  Okay.  Well, that makes two of us, and
7  I'm sure Ms. Roe --
8          MR. PLATT:  Just in complete candor, I did get -- I
9  can't even keep track -- but there was an email about
10 Mr. Roberts was going to do something, and my response has
11 been the same all along.  I don't want anything to do with
12 him, I want nothing to do with this guy, I have no control
13 over him, he's a loose cannon.
14         THE COURT:  Well, Mr. Platt --
15         MR. PLATT:  So I --
16         THE COURT:  Mr. Platt, just stop.  Look at the page.
17 Okay?  It says, "Supreme Court of British Columbia, filed
18 April 24th," and on the back page it appears to have a
19 signature that says Henry Rosenau.
20    The issue is not whether or not you want to have anything
21 to do with Mr. Roberts, but it has to do more with you and
22 Mr. Rosenau, and what I'm going to be asking you is, is this
23 something that Mr. Rosenau has filed?  If he hasn't, if he's
24 not sued Ms. Roe or does not wish to sue Ms. Roe, I'd like to
25 know that at this point.
```

1    MR. PLATT:  Well, I'll be asking him for the first
2  time right now.
3    THE COURT:  Okay.  Well, why don't you take some time
4  with Mr. Rosenau, then, and see if you can sort this out.
5  Because if it's not Mr. Rosenau's doing, then we don't have
6  to go any further.  If this is somebody else and he disavows
7  it, then we'll push forward.
8    MR. PLATT:  Just one more thing.  I did call
9  Mr. Erickson.  What I asked him was, "Are there any immunity
10 formal agreements with the Canadians?  If there are, I'd like
11 a copy."  He said as far as he knows there are none.  I said,
12 "Okay.  I just don't want any surprises tomorrow."  That's
13 it.
14   THE COURT:  So everybody knows Mr. Erickson is going
15 to be here in the courtroom, and he's told Ms. Miller that he
16 represents Mr. Whelpley, and I'm assuming that he and
17 Mr. Whelpley will have a plan.  If Mr. Whelpley needs to
18 consult counsel, that Mr. Erickson will set up an ability to
19 speak to Mr. Whelpley by phone.
20   MR. PLATT:  Are we going to recess for five minutes?
21   THE COURT:  I'm going to basically tell you -- why
22 don't you -- I don't know if you want to go into lockup with
23 the marshals, but otherwise everybody is here, and the jury
24 is waiting.
25   MS. ROE:  Your Honor, I think there's a little bit

```
 1   more of a connection between Mr. Rosenau and Mr. Roberts.
 2   There's a written document filed in the Quesnel registry that
 3   Mr. Roberts acts on behalf and as the agent of Mr. Rosenau,
 4   signed by Mr. Rosenau.  So there is a legal relationship.
 5   It's filed in Rosenau v. Whelpley.
 6           THE COURT:  Do the marshals object to having
 7   Mr. Platt go into lockup?  I'm talking about right back
 8   there.
 9           THE UNITED STATES MARSHAL:  No, Your Honor.  It has
10   to be out here in the courtroom or down on the 9th floor.
11           THE COURT:  All right.  Everybody else get out, and
12   you can have the courtroom.
13                   (A RECESS WAS TAKEN.)
14           THE COURT:  Let's bring in the government, please.
15   All right.  Let's go back on the record.
16      Mr. Platt, do you have anything further that you wanted to
17   share with me?
18           MR. PLATT:  Your Honor, unfortunately, this is a very
19   lengthy document, and my client asked me to read it to him
20   before he made a decision.  I read as quickly as I could.  I
21   stopped once or twice to explain some terms, and I didn't get
22   finished with it.
23           THE COURT:  Well, Mr. Platt, it's a fairly simple
24   question.  First of all, is this Mr. Rosenau's signature, and
25   did he intend to sue Ms. Roe?
```

1  MR. PLATT: I did get a chance to ask him that
2  question. I was asking him that question when the court took
3  the bench, and he said he needed a minute to talk to me.
4  THE COURT: Well, sit down and do it.
5  MR. PLATT: Okay.
6  (OFF THE RECORD.)
7  MR. PLATT: Here's my client's answer: He tells me
8  that he authorized Mr. Roberts to do something against
9  Kachur, and that Mr. Roberts said he was going to do
10 something against Ms. Roe later. That's what he told me.
11 THE COURT: So he does not intend and he does not
12 authorize Mr. Roberts to sue Ms. Roe?
13 MR. PLATT: Based on that statement, I think that's a
14 fair conclusion.
15 THE COURT: But is this his signature?
16 MR. PLATT: I don't know. Hang on.
17 (OFF THE RECORD.)
18 MR. PLATT: Mr. Rosenau tells me that's an electronic
19 signature. And it looks like that to me, frankly.
20 Apparently, Mr. Roberts put the signature on there
21 electronically. Mr. Rosenau tells me that he authorized a
22 lawsuit against Kachur, and that's consistent with the
23 Charter Rights lawsuit as well. And that's based on a
24 violation of Charter Rights by the RCMP. That's a different
25 issue than a lawsuit against Ms. Roe. And he tells me that

```
 1  when he authorized the lawsuit against Kachur, Mr. Roberts
 2  said he would do something about Ms. Roe later.
 3       So the only conclusion I can draw is that Mr. Roberts
 4  attached the electronic signature to this lawsuit based on
 5  the authorization to sue Kachur, but apparently there wasn't
 6  a clear agreement on Ms. Roe.
 7            THE COURT:  Mr. Rosenau, I'm going to make some
 8  rulings based upon these facts:  The first fact is that you
 9  did not authorize your signature to be used in a lawsuit
10  against Ms. Roe.  Second of all, you did not authorize anyone
11  in Canada to sue Ms. Roe.  And third, you did not do that in
12  order to stop or hinder these proceedings.  Am I correct?
13            THE DEFENDANT:  I didn't do it to stop the
14  proceedings, but I wanted to --
15            THE COURT:  Am I correct, yes or no?
16            THE DEFENDANT:  Can you repeat?
17            THE COURT:  First, you did not authorize anyone to
18  put your signature on a lawsuit against Ms. Roe, yes or no?
19            THE DEFENDANT:  Not for today.  It was supposed to be
20  for later.
21            THE COURT:  So you did not authorize anyone to sue
22  Ms. Roe?
23            THE DEFENDANT:  No.  Okay, I didn't.  Okay.
24            THE COURT:  Did you authorize someone to file these
25  documents against Ms. Roe in Canada?
```

```
 1         THE DEFENDANT:  It was supposed -- no.
 2         THE COURT:  And did you participate in an attempt to
 3   try and stall or delay these proceedings?
 4         THE DEFENDANT:  No.
 5         THE COURT:  Ms. Roe, I don't think that you've been
 6   sued.
 7         MS. ROE:  Your Honor, I beg to differ, and I find
 8   that these findings are not sufficient for me, with my
 9   ethical issues, being involved in a lawsuit or prosecuting
10   someone who says -- first of all, I don't believe him, and
11   secondly, he was not under oath when he made these statements
12   to the court.  And third, he said he wasn't going to sue me
13   today but later.  And for my purposes, Your Honor, as an
14   officer of the court as well as an Assistant United States
15   Attorney, until I get approval from OPR, I feel that I cannot
16   proceed in this case.
17         THE COURT:  Well, it would be a sad day when
18   everybody can go down the line and start suing prosecutors in
19   an attempt to delay the trial.
20         MS. ROE:  I agree.
21         THE COURT:  I believe you hold full immunity and that
22   you cannot be sued.
23         MS. ROE:  Well, that's a lovely thought.
24         THE COURT:  And also, from what you've told me, you
25   have not been served.
```

1  MS. ROE: I have not been served, Your Honor.

2  THE COURT: So there is no active suit against you,
3  and Mr. Rosenau has made a representation to the court that
4  he does not intend to sue you at this time.

5  MS. ROE: At this time, Your Honor.

6  THE COURT: So here's your options: I have a jury
7  sitting back there, and what I would suggest that we do is
8  have Mr. Perez go forward with the case. I don't know what
9  your office wants to do about going to Canada tomorrow, but I
10  don't see a reason why the case should not proceed.

11  You and your office can decide whether or not you want to
12  participate, but we have two counsel on the case. Mr. Perez
13  has been an active participant. I'm not going to let
14  somebody in Canada decide whether or not the wheels of
15  justice go forward here, because I consider this
16  inappropriate use of the courts.

17  So I understand what you're trying to tell me, but at this
18  point we're going to go forward, and your office can decide
19  whether you're going participate or not.

20  MS. ROE: Your Honor, I certainly appreciate the
21  court and the idea that the defendant and his buddies are not
22  going to manipulate the courts. I hope the court understands
23  my professional bar card may be at least something that would
24  be discussed as well as my position. So at this time I will
25  not participate until I have approval. Is that all right

1  with the court?

2          THE COURT:  What I'm telling you, I'm trying to get
3  you an absolution at this point.  In order to go forward -- I
4  certainly won't hold you in contempt if you decide not to,
5  but at this point your office has to go forward with this
6  trial and put it on.  If you were to fall sick, I'd probably
7  say the same thing.  We have to push forward.  If you are
8  eliminated somehow or until we can come to a conclusion that
9  you can go forward, I don't think I have any choice.

10         Now, Mr. Perez is sitting here looking a little
11 chagrinned, and I hope that's not going to mean that we're
12 going to see another hour or two of helicopters watching cars
13 go down the freeway to lengthen the time.  But I think you
14 better get Mr. Westinghouse up here, and he can step in if he
15 has to in order to move forward.

16         Now, about going to Canada, I don't know if your office
17 wants you to cross the border in order to do that, but
18 somebody is going to go tomorrow, because otherwise I let
19 this go on.

20         MS. ROE:  I understand, Your Honor.  Some people in
21 my office, because we got this shortly around 1:00, are
22 working on the issues regarding the conflict and whether the
23 conflict is critical.  So I beg the court's indulgence to sit
24 but not participate, at least until we get some information
25 on that.

1  As to the Canadian live video testimony, I may have some
2  ideas at the end of the day. Maybe we can revisit some of
3  the arrangements.
4  THE COURT: Is there anything else you're suggesting?
5  If you want me to put Mr. Rosenau under oath and ask him the
6  same questions, I will do so.
7  MS. ROE: Yes, I would prefer that. Also, Your
8  Honor, I think we need some inquiry into this electronic
9  signature and the extent of that and how that's done, since
10 this was signed two days ago during trial, and I think the
11 timeliness raises some issues.
12 THE COURT: Well, Mr. Rosenau has been in custody,
13 and I doubt that he's been putting electronic signatures on
14 anything. Somebody else is probably doing that for him, but
15 I can ask those questions.
16 MS. ROE: Okay.
17 THE COURT: Mr. Rosenau, stand and raise your right
18 hand to be sworn.
19 MR. PLATT: With all due respect, I'm sorry, but I
20 have to object to this. He's in trial. He's got a right to
21 remain silent. And I understand -- frankly, I'm at a loss,
22 but I wasn't sure how to handle the colloquy that just
23 occurred. The court asked me to ask him, so I did. But he's
24 in the middle of a criminal trial, and he's being sworn in
25 and has to testify about events.

THE COURT: He's not being sworn in and asked to testify about anything that he's been charged with. He's being asked what his intent is for this and how it is that he wishes that I'm going to proceed in this case.

I mean, Mr. Platt, you can ask him if he's intending for this case to go forward and whether he's intending Ms. Roe to continue. But if he's done this in order to block this trial from going forward, then we've got some serious problems.

If you don't want me to swear him in, I don't know that I can force Mr. Rosenau to stand up and take the stand or to be sworn in light of your counsel to him, but we are going to go forward.

You need to do some consulting with your client tonight. Okay? I don't care if you have to read every word to him. I want some straight answers as to what this document is and what the intent is and who he's giving permission to, because it's now interjected here, and it has the capacity to derail this case.

Now, I know you're going to go to Canada tonight, and I'm expecting that you're going to do so, so I think we need to take care of this. Okay?

All right. Ms. Roe, have you notified your office, or do you want me to call down to your office and tell them that maybe somebody better come up and participate?

MS. ROE: If I may.

16

1   THE COURT: Yes.

2   MS. ROE: May I be excused for a moment?

3   THE COURT: Certainly. All right. Mr. Perez, you
4   were handling the other -- you were handling the witness on
5   the stand. Are you ready to go forward?

6   MR. PEREZ: Yes.

7   THE COURT: Let's put the witness back on the stand,
8   and let's bring out our jury.

9

10           (THE JURY RETURNED TO THE COURTROOM.)

11              (END OF REQUESTED TRANSCRIPT.)

# C E R T I F I C A T E

I, Nancy L. Bauer, CCR, RPR, Court Reporter for the United States District Court in the Western District of Washington at Seattle, do hereby certify that I was present in court during the foregoing matter and reported said proceedings stenographically.

I further certify that thereafter, I have caused said stenographic notes to be transcribed under my direction and that the foregoing pages are a true and accurate transcription to the best of my ability.

Dated this 25th day of May 2012.

/S/  Nancy L. Bauer

Nancy L. Bauer, CCR, RPR
Official Court Reporter