Chief Judge Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | NO. CR06-157MJP |
| | ) | |
| Plaintiff, | ) | |
| | ) | **GOVERNMENT'S** |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION FOR** |
| HENRY ROSENAU, | ) | **SENTENCING** |
| | ) | |
| Defendant. | ) | Scheduled for November 7, 2012 |

The United States of America, by and through Jenny A. Durkan, United States

Attorney for the Western District of Washington, and Susan M. Roe and Marc A. Perez,

Assistant United States Attorneys for said District, files this Memorandum and

Recommendation for Sentencing.

## I.    INTRODUCTION

Defendant Henry Rosenau comes before the Court for sentencing on his guilty

plea entered on the first day of his re-trial.  Given that this case went through an

extensive pre-trial process and a two-week jury trial, the Court possesses a great deal of

factual information about the defendant's criminal conduct and a strong sense of who the

defendant is as a person.

## II.    FACTS OF OFFENSE

In the Plea Agreement, Defendant Rosenau admitted to conspiring with others to

export more than 100 kilograms of marijuana from Canada into the United States.

Although the agreed facts within the Plea Agreement are a summary of the defendant's

criminal conduct, his admissions at the plea hearing, his trial testimony, and the evidence admitted at trial provide a more complete picture of the defendant.

Defendant Rosenau is an experienced and able helicopter pilot who was part and parcel of a long-standing, successful cross-border drug trafficking organization.  He worked with people in every aspect of the business -- growers, dealers, transporters, catchers, blockers, and other helicopter pilots.

During the early and mid-2000's, Defendant Rosenau made dozens of illegal flights, smuggling thousands of pounds of drugs.  He ferried hockey bags full of marijuana across the international border into Washington State and as far east as Montana.  He flew many types of helicopters, whether properly licensed or not, including a Bell Jet Ranger and Robinson 22 and Robinson 44 helicopters.  Defendant Rosenau was such a skillful pilot that he flew with weighted contraband in the cockpit, strapped to skids, hanging by short lines, and swinging by long lines.  He flew before dawn, without lights and using night vision goggles.  He landed in wooded areas or on rough and inadequate sites, and he skillfully landed his helicopters, sometimes bringing an aircraft within a couple of yards of a waiting vehicle.  He flew under the radar, through narrow valleys, and over mountains and wilderness.

In addition to smuggling drugs, Defendant Rosenau surreptitiously flew drug traffickers, such as Zachary Miraback and Dustin Haugen, into the United States because they were felons and could not legally enter the country.  As he admitted in the Plea Agreement, he was "important because he . . . could fly people and marijuana across the United States - Canadian border."  When co-conspirators needed to flee back to Canada, the defendant flew them north.  He flew some co-conspirators across the border simply because it was a more expedient method than having them stop at a Port of Entry.

Defendant Rosenau owned, possessed, controlled, stored, and flew several different helicopters in furtherance of the conspiracy.  According to Transport Canada records, on various dates, Defendant Rosenau owned at least three of the helicopters involved in smuggling drugs: the Robinson R-44 (tail identifier C-FRKM); the Robinson

GOVERNMENT'S MEMORANDUM AND
SENTENCING RECOMMENDATION - 2
CR06-157MJP; HENRY ROSENAU

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

R-22 (C-GZAR); and the Robinson R-22 (C-GRIA).  He controlled, maintained, and flew two other aircraft used in smuggling: the Bell Jet Ranger (C-FALQ) and the Robinson R-22 (C-FNMM).

Defendant Rosenau camouflaged his involvement in this conspiracy by maintaining and using an aircraft hangar in a remote area close to the international border where he hid helicopters that might have been seen or identified during smuggling runs.  He avoided detection by altering the tail identifiers on helicopters when flying them over the border (e.g., Bell Jet Ranger and Robinson 44 (C-FRKM)), or by leaving his residence in one helicopter and switching aircraft before crossing the border. As discussed above, he avoided detection by flying different aircraft, at low altitudes, over the mountains, sometimes in the dark, and landing in various remote sites in the United States (with the help of handheld GPS devices, which were then rather new technology).

Other precautionary and unlawful conduct included his failing to file flight plans, failing to seek permission to cross the border (with people or contraband), failing to land at airports or designated landing strips in the United States, and flying in and out of the United States with a loaded handgun and ammunition.

Defendant Rosenau is lucky that only an occasional load of marijuana was intercepted, surveilled, or photographed by law enforcement officers.  At trial, the government established, and since then the defendant has essentially admitted, that of the seized marijuana loads, the defendant personally smuggled a total of approximately 945 kilograms (2,085 pounds) of marijuana into the United States.  The seizures that should be considered representative of the defendant's criminal conduct occurred on June 9, 2005 (485 pounds); August 4, 2005 (500 pounds); and September 21, 2005 (1,100 pounds).  Defendant Rosenau's involvement in the criminal conspiracy, however, is more extensive.

GOVERNMENT'S MEMORANDUM AND
SENTENCING RECOMMENDATION - 3
CR06-157MJP; HENRY ROSENAU

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

### III.   CERTAIN RELEVANT TERMS OF THE PLEA AGREEMENT

In the Plea Agreement, the parties agreed that the defendant faced a base offense level "of at least Level 30," and that the government reserved the right to argue for a higher base offense level based on relevant conduct.  Plea Agreement (docket entry no. 174), ¶ 8(a).  The government acknowledged that if the defendant qualified for an acceptance of responsibility adjustment by "clearly" demonstrating his acceptance of responsibility for his offense, then the defendant's total offense level should be decreased by two levels.  *Id.* at ¶ 10.

The parties agreed that the defendant would not be prosecuted on any additional charges and that the prosecution, including the dismissed charges, were "substantially justified in light of the evidence available to the United States, were not vexatious, frivolous or taken in bad faith," and could not be a basis for a claim under the "Hyde Amendment[.]"  *Id.* at ¶ 9.

Defendant Rosenau filed three separate Canadian lawsuits against witnesses and attorneys involved in this prosecution.  The first civil suit, *Rosenau v. Whelpley*, was filed in January 2011 with the intent to prevent essential prosecution witness Kip Whelpley from testifying at any subsequent hearing or trial.  The default judgment entered in that case prohibited Mr. Whelpley from coming to the United States to testify.

The second civil suit, *Regina v. Rosenau*, filed on October 25, 2011, days before the November trial date, was intended to prevent several RCMP witnesses (essential to the prosecution's case) from testifying at trial.  That lawsuit was one of the bases for this Court's trial continuance from November 2011 until April 2012.  The third civil suit, *Rosenau v. Roe, et al.*, was against Canadian Crown Counsel, an important RCMP witness, and the undersigned federal prosecutor.  That lawsuit, which was filed on April 24, 2011, was designed to stop the trial from proceeding.

During his change of plea hearing, and as a sign of his acknowledgment of his criminal conduct, Defendant Rosenau agreed to dismiss, and not to file again in the future, "any lawsuit(s) in courts in Canada or the United States against law enforcement

GOVERNMENT'S MEMORANDUM AND
SENTENCING RECOMMENDATION - 4
CR06-157MJP; HENRY ROSENAU

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  officers or prosecutors stemming from this case and his extradition."  He agreed that his

2  lawsuits were "frivolous" and that he would undertake "finally" dismissing "all such

3  suits" before sentencing.  *Id.* at ¶ 9.

4      Defendant Rosenau's lawsuit against the RCMP has been dismissed.  A copy of

5  the voluntary dismissal of the lawsuit filed mid-trial against the prosecutor and Canadian

6  officials is attached.  Gov't Attachment 1 (Notice of Discontinuance).  There is no

7  indication whatsoever that Defendant Rosenau has voluntarily dismissed his lawsuit or

8  sought to vacate the default judgment order against witness Kip Whelpley.

9      The United States Attorney's Office agreed to "take no position" if the defendant

10 requests a treaty transfer to Canada.  *Id.*

11     Defendant Rosenau has waived his right to appeal.  *Id.* at ¶ 12.

12 ## IV.    GUIDELINE CALCULATIONS

13 ### Determining the Accurate Base Offense Level

14     Defendant Rosenau's base offense level should be at least 32, if not higher.  The

15 total weight of the seized marijuana he and his co-conspirators smuggled was no less

16 than approximately 1,185 kilograms and therefore his base offense level is 32.  *See*

17 United States Sentencing Commission, *Guidelines Manual*, § 2D1.1 (Nov. 2005) (stating

18 that level 32 corresponds to "[a]t least 1,000 KG but less than 3,000 KG").

19     In the Plea Agreement, the defendant agreed that only "a fraction of the marijuana

20 loads smuggled by this group was seized" and that those seized loads weighed 945

21 kilograms.  Plea Agreement at ¶ 7.  At trial, however, the government established, both

22 by video and testimonial evidence, that several additional smuggling loads were flown

23 by the defendant and his co-conspirators.

24     At trial, Kip Whelpley testified that he assisted with several marijuana loads

25 during 2004 (the year prior to the seizures noted above) while he was in the

26 United States, that the defendant was part of a group of smugglers, and that the

27 defendant later identified himself as the person who held Kip Whelpley's illegal earnings

28 from that summer.  Kip Whelpley testified that, in 2005, prior to the June 9 seizure, he

GOVERNMENT'S MEMORANDUM AND
SENTENCING RECOMMENDATION - 5
CR06-157MJP; HENRY ROSENAU

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

caught marijuana loads directly from the defendant and others in northeastern Washington.  Kip Whelpley also testified that, based on the weight of successful marijuana loads which he helped deliver, he made about $50,000 in the summer.  None of those marijuana loads were detected or seized by law enforcement agencies.

Lastly, Kip Whelpley testified that, after June 9, he returned to Canada and worked off his debt for the seized drug load by assisting the defendant with more smuggling loads.  Kip Whelpley testified that he moved hockey bags full of marijuana from a motor home onto a helicopter rack, that he coordinated the pick-up of the loads with co-conspirator Jonathan Senecal who had remained in the U.S., and that he helped put the equipment away after successful smuggling runs.  He estimated that the defendant flew several smuggles between June 9 and August 4 (the day of the David Mendoza seizure).  None of these flights were intercepted; all loads were at least 350 pounds.

At trial, the government also introduced evidence from trail cameras that showed a red and white Bell Jet Ranger helicopter associated with the defendant delivering loads of marijuana during the summer of 2005.  Notably, a trail camera videotape from July 21 through July 27 showed the Bell Jet Ranger helicopter (which the defendant admitted he owned, possessed, controlled or flew) making two deliveries, each of at least eight or nine hockey bags full of marijuana.  One delivery was to co-conspirator David Mendoza and the other delivery was made to co-conspirator Jonathan Senecal.  The hockey bags in the video were of the same size and shape as the seized bags that were presented at trial.  Based on trial testimony from federal agents and Kip Whelpley, each hockey bag contained approximately 50 pounds of marijuana.  These loads were not intercepted or seized, but they should be considered when determining the defendant's base offense level.

Defendant Rosenau agrees that 945 kilograms of marijuana was seized, yielding a base offense level of 30.  The relevant question before the Court, however, is whether the trial evidence demonstrated that the conspiracy to which the defendant pled involved

more than 1,000 kilograms of marijuana.  As discussed above, at trial, the government introduced video and testimonial evidence establishing that Defendant Rosenau was responsible for smuggling hundreds of additional kilograms of marijuana into the U.S.

At trial, the government introduced video and photographic evidence of the August 12, 2005, seizure of 522 pounds (237 kilograms) of marijuana, which had been flown into the United States on a Robinson R-44 (C-FNMM) helicopter, an aircraft connected to the defendant.  (At trial, the government never contended that the defendant flew this helicopter into the U.S. on either August 11 or 12.  However, the government showed that on both days this helicopter ferried loads of marijuana across the border, leading to a seizure of 522 pounds (237 kilograms) on August 12, 2005, and that this aircraft was seen parked on the defendant's property less than a month later in September 2005.)

Additionally, as discussed above, the government introduced video evidence of the Bell Jet Ranger (C-FALQ) delivering 800 - 900 pounds (363 - 409 kilograms) of marijuana on two separate days in July 2005 (each day consisting of 8-9 hockey bags at 50 pounds per bag).  Moreover, the government introduced witness testimony that the defendant was responsible for smuggling hundreds of additional pounds/kilograms of marijuana.  While the government may not be able to prove that Defendant Rosenau smuggled more than 3,000 kilograms of marijuana (threshold for a base offense level of 34), the government has presented clear and uncontested evidence that he smuggled in excess of 1,000 kilograms of marijuana.  Therefore, the correct base offense level in this case is at least 32.

### Other Appropriate Guideline Adjustments

1.      Assuming the defendant has "clearly" demonstrated his acceptance of responsibility, and assuming his frivolous civil lawsuits have been dismissed, he is entitled to a two level reduction for his acceptance of responsibility.

2.      Certain enhancements specified in Section 2D1.1 of the sentencing guidelines apply to the defendant.  He should receive a two level enhancement for

GOVERNMENT'S MEMORANDUM AND
SENTENCING RECOMMENDATION - 7
CR06-157MJP; HENRY ROSENAU

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

possessing a firearm during the crime.  *See* USSG § 2D1.1(b)(1).  This enhancement "reflects the increased danger of violence when drug traffickers possess weapons" and it "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."  USSG § 2D1.1, comment. (n.3).  During his September 21, 2005, smuggling run, in his helicopter cockpit together with other smuggling aids, the defendant possessed a loaded Smith and Wesson handgun with extra ammunition.  He knew about the firearm because he admitted to having it in the cockpit when he was confronted by RCMP after landing his helicopter following his smuggling run on September 21, 2005.

One of the leading Ninth Circuit cases on this issue is *United States v. Lopez-Sandoval*, 146 F.3d 712, 714 (9th Cir. 1998).  There, the Court of Appeals noted that a two level enhancement for weapons possession is appropriate even if there is no connection between the firearm and the offense.  Quoting the sentencing guidelines, the court noted: "[If] defendant possessed the weapon during the commission of the offense, the enhancement is appropriate."  *Id.* at 714 (affirming gun enhancement where not clearly improbable that handguns found in residence were connected with drug conspiracy); *see also United States v. Highsmith*, 268 F.3d 1141, 1142 (9th Cir. 2001) (gun enhancement reversed where defendant unaware of gun found in cohort's bedroom); *United States v. Kelso,* 942 F.2d 680, 682 (9th Cir. 1991) (gun enhancement not warranted where no evidence he was aware of its presence); *United States v. Gillock,* 886 F.2d 220, 222-23 (9th Cir. 1989) (loaded firearm found in close proximity to drugs justified gun enhancement).

Based on these cases, if this Court finds that Defendant Rosenau was aware of the handgun in his helicopter, and that it is not "clearly improbable" that the firearm was connected to his drug smuggling activity, then a two point enhancement for the firearm possession is applicable.

3.      The defendant should receive a two level enhancement for his role as a pilot.  *See* USSG § 2D1.1(b)(2) ("If the defendant unlawfully imported a controlled

GOVERNMENT'S MEMORANDUM AND
SENTENCING RECOMMENDATION - 8
CR06-157MJP; HENRY ROSENAU

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

substance under circumstances in which . . . (B) the defendant acted as a pilot, copilot, captain, navigator, . . . or any other operation officer aboard any craft or vessel carrying a controlled substance, increase by 2 levels.").

4.     The defendant should receive a two level enhancement for obstructing justice and engaging in witness tampering in connection with the investigation or prosecution of the offense.  *See* USSG § 3C1.1 (defining Obstruction or Impeding the Administration of Justice).  Section 3C1.1 states:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the  offense level by 2 levels.

Commentary and Application Notes 3 and 4 to Section 3C1.1 further explain conduct that impedes or obstructs.  Examples of conduct to which this adjustment applies include:

> (a) threatening, intimidating, or otherwise unlawfully influencing a . . . witness . . . directly or indirectly, or attempting to do so;
>
> (b) committing, suborning, or attempting to suborn perjury . . . ;
>
> .          .          .
>
> (f) providing materially false information to a judge or magistrate [judge];
>
> .          .          .
>
> (h) providing materially false information to a probation officer in respect to a presentence or other investigation for the court[.][1]

At least two separate bases for the obstruction of justice enhancement are present.

---

[1] Application Note 2 cautions: "In applying this provision in respect to alleged false testimony or statements by the defendant, the court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice."  USSG § 3C1.1, comment. (n.2).  This cautionary note is inapplicable here.

GOVERNMENT'S MEMORANDUM AND
SENTENCING RECOMMENDATION - 9
CR06-157MJP; HENRY ROSENAU

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

***Defendant Rosenau repeatedly made false representations to the Court***

1.      At trial, Defendant Rosenau testified that he did not fly helicopters with marijuana loads across the international border and, in fact, that he never possessed the smuggling helicopter with tail identifier C-FRKM during the summer of 2005.  He testified that a helicopter pilot named Richard Long had the helicopter that summer; that Long was buying it from him in "a handshake deal;" that Long had given him $20,000 cash toward the purchase; and that he saw Long fly and land it at The Shop on the morning of September 21, 2005.  That testimony, in its entirety, was false.  At the plea hearing, the defendant admitted to the Court that he flew the helicopter with the marijuana smuggles that day and during that summer.  *See* Gov't's Attachment 2 (Transcript of July 11, 2012, change of plea hearing).

Even without Defendant Rosenau's admission that he testified falsely at trial, the Court can be assured that the testimony was untrue.  According to Transport Canada, only one Richard Long was a licensed helicopter pilot in 2005.  *See* Gov't's Attachment 3 (Affidavit of Ross Bertram; Transport Canada).  Richard Long lived in British Columbia, flew for Bel Aire, and died in a helicopter crash on September 26, 2005.  Richard Long was unavailable to testify at trial and correct the defendant's falsehoods, but his family and personal records are available.

In September 2005, Richard Long and his adult son, Brennan Long, were building a  residence on property he and his wife owned near Hope, B.C.  In the few days before Mr. Long's accidental death, he and Brennan Long were installing a pump on their property.  The men were obtaining supplies for the pump installation at the time that the Robinson 44 (C-FRKM) helicopter was filmed smuggling marijuana into the United States and returning to The Shop in Canada.  *See* Gov't's Attachment 4 (Affidavit of Special Agent Jesse Miller); and Gov't's Attachment 5 (Affidavit of Brennan Long and sales receipts).

2.      Magistrate Judge Brian Tsuchida held a detention review hearing on October 28, 2012.  At that hearing, Pretrial Services Officer Julie Busic testified that, as

GOVERNMENT'S MEMORANDUM AND
SENTENCING RECOMMENDATION - 10
CR06-157MJP; HENRY ROSENAU

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

part of her supervision duties, she reviewed the list of possible government witnesses with Defendant Rosenau and advised him to have no contact with anyone on the list, which included Kip Whelpley. As Officer Busic testified, Defendant Rosenau worried aloud whether he could inadvertently violate this provision as he did not know any of the people and did not recognize the names on the list.[2]

In truth, as Defendant Rosenau knew then and as he testified under oath at the plea hearing, he knew Kip Whelpley, the Miraback brothers, and others on the witness list. The defendant conspired with them to commit these crimes.

3.   When, mid-trial on April 25, 2012, the Defendant filed his third civil lawsuit, this Court questioned him about the lawsuit. In response to the Court's questions, the Defendant said that he did not authorize anyone to sue the undersigned federal prosecutor and that he did not intend to stop or hinder the trial. However, in recorded telephone calls to Paddy Roberts and Judi Rosenau beginning on April 22, 2012, Defendant Rosenau reaffirmed that his electronic signature was at Paddy Roberts' disposal. The defendant and Paddy Roberts also discussed the civil lawsuit against the undersigned prosecutor and that the lawsuit would stop the trial. Of great concern here is that the defendant, working with Paddy Roberts and others, did try to thwart the trial and that Defendant Rosenau was less than candid with the Court when directly asked about it.[3]

### Ineligibility for Reduction Pursuant to USSG § 5K1.1

Defendant Rosenau is ineligible to receive a reduction for either a safety valve proffer or for substantially assisting the United States. His possession of a firearm eliminated the possibility of a safety valve proffer. Although a motion pursuant to

---

[2] Greater detail is set out in the Government's Response to Defendant's Motion for Revocation of Detention Order (docket entry no. 63; p. 9 - 11; and incorporated herein). This Court heard the motion on November 9, 2011.

[3] This was more fully addressed in the Government's Response to Motion for Release Pending Retrial (docket entry no. 157, and the attachments therein which are incorporated herein by this reference).

GOVERNMENT'S MEMORANDUM AND
SENTENCING RECOMMENDATION - 11
CR06-157MJP; HENRY ROSENAU

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  USSG § 5K1.1 was at one time theoretically possible, it is no longer a possibility in this

2  case.  Section 5K.1.1, Substantial Assistance, states:

3    Upon motion of the government stating that the defendant has provided
     substantial assistance in the investigation or prosecution of another person
4    who has committed an offense, the court may depart from the guidelines.

5    (a) The appropriate reduction shall be determined by the court for reasons stated
     that may include, but are not limited to, consideration of the following:

6
7      (1) the court's evaluation of the significance and usefulness of the
       defendant's assistance, taking into consideration the government's
       evaluation of the assistance rendered;

8
9      (2) the truthfulness, completeness, and reliability of any information or
       testimony provided by the defendant;

10     (3) the nature and extent of the defendant's assistance;

11     (4) any injury suffered, or any danger or risk of injury to the defendant or
       his family resulting from his assistance;

12
13     (5) the timeliness of the defendant's assistance.

14  USSG § 5K1.1.

15       The defendant has not participated in a proffer interview, although at one time he

16  had requested that the government arrange a date, time, and place for such an interview.

17  Arrangements were made and were modified as requested.  A proffer interview was

18  scheduled for August 21, 2012.  A few days before the scheduled interview, Defendant

19  Rosenau cancelled.  It had taken nearly a month to arrange the interview.  *See* Gov't's

20  Attachment 6 (E-mail).

21       More recently, defense counsel inquired whether the defendant could provide

22  information and receive the benefit of a substantial assistance motion.  At least one of

23  the  people about whom Defendant Rosenau volunteered information has already been

24  extradited from Canada, has been sentenced, and is serving a prison term in the

25  United States.  Clearly, supplying old information about that defendant's pre-extradition

26  activities cannot be of substantial assistance to the government.  Defendant Rosenau has

27  expressed an interest in supplying information on another man who has already been

28

GOVERNMENT'S MEMORANDUM AND
SENTENCING RECOMMENDATION - 12
CR06-157MJP; HENRY ROSENAU

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  arrested in Canada on a U.S. extradition request, and who, on the Internet, is associated
2  with Paddy Roberts.  The government is not willing to entertain these offers.

3      Defendant Rosenau's list of other requirements prior to participating in a proffer
4  interview has rendered the process unworkable.  *See* Gov't Attachment 7 (E-mail).

5      ***Final Guideline Calculations***

6      Defendant Rosenau has a total base offense level of 36 (32; plus two levels for the
7  firearm; plus two levels for being a pilot; plus two levels for obstruction/perjury; minus 2
8  levels for acceptance of responsibility, if he qualifies).  Defendant has no known
9  criminal history.  A total offense level of 36, with a criminal history category of I, results
10 in an advisory guideline range of 188 months to 235 months.

11 **V.    CONSIDERATION OF 18 U.S.C. § 3553 SENTENCING FACTORS**

12     In addition to the Guidelines, the Court must analyze the following:  (1) the nature
13 and circumstances of the offense; (2) the history and characteristics of the defendant;
14 (3) the need for the sentence to reflect the seriousness of the offense, to promote respect
15 for the law, and to provide just punishment for the offense; (4) the need for the sentence
16 to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect
17 the public from further crimes of the defendant; (6) the need to provide the defendant
18 with educational and vocational training, medical care, or other correctional treatment in
19 the most effective manner; (7) the types of sentences available; (8) the need to provide
20 restitution to victims; and (9) the need to avoid unwarranted sentence disparity among
21 defendants involved in similar conduct who have similar records.  18 U.S.C.§ 3553(a).

22     The nature and circumstances of this continuing and financially successful
23 offense have been discussed in detail above.  The history and characteristics of the
24 defendant reveal a man who skirts the law when he believes doing so will benefit him,
25 who prevaricates when asked what he did and why, and who believes dealing with
26 governments (from pilot and aircraft regulations to police investigations to court matters)
27 is some sort of a game.  The defendant has shown that he will say whatever he thinks is
28 expedient, whether it's misleading Transport Canada about aircraft ownership and his

GOVERNMENT'S MEMORANDUM AND
SENTENCING RECOMMENDATION - 13
CR06-157MJP; HENRY ROSENAU

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

medical status, or testifying that a dead man committed his crimes.  With some shrewdness, the defendant dealt well in the world of drug smugglers.  He flew for some of the bigger and well-known drug traffickers, such as David Mendoza and Canadian Trevor Armstrong.  He occupied an important position within that world as a top-notch pilot who could issue orders to those below him.  The defendant made a good income from his crimes, as evidenced by his large home on an expensive and expansive view lot, his purchase of additional river-front acreage, and his several aircraft.  More recently, Defendant Rosenau has played his lawyers, advisors, and family members against each other, looking to benefit from some imagined angle, then protesting to each that the others acted without his knowledge.

Of particular importance in this sentencing is the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, and to afford adequate deterrence to criminal conduct.  These factors rarely play as meaningful of a role as they do in this case.  The defendant and his cronies have been public and vocal in their contempt for the law, as evidenced by their blatant disregard of the United States' international border and their attempted manipulations of the court systems in both countries.  One result of their actions is that they have a significant audience in the press, on the Internet, and within the drug trafficking subculture.  Although the Court would not impose a sentence in order to simply send a message, a lengthy prison term is in order here to deter future criminal conduct on both sides of the border.

There is no basis for believing that the defendant will live a law-abiding life in the future.  However, it is unlikely that he will live in the United States after his release from prison.  He is not known to be violent although he countenanced violence when Kip Whelpley was threatened with a firearm by Trevor Armstrong and his thugs.  The defendant has good job skills and has no need for educational or vocational training.  He has received a medical diagnosis of diabetes, which is manageable in prison.

GOVERNMENT'S MEMORANDUM AND
SENTENCING RECOMMENDATION - 14
CR06-157MJP; HENRY ROSENAU

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

The defendant faces a minimum mandatory term of five years imprisonment and an advisory range three times as long.  No sentence other than prison is available.  The government anticipates that the defendant will apply for a treaty transfer to Canada.  The government believes that such a transfer is likely in the next few years, based on the defendant's non-violent history, the controlled substance at issue is marijuana (not cocaine), and the defendant's age.  No restitution is requested.

No other defendant in the related cases is similarly situated to Defendant Rosenau.  He is the only senior pilot and aircraft owner who was prosecuted in this investigation.  Other pilots were young men with few flight hours who flew aircraft belonging to others in hopes of obtaining flight time and some quick cash.  The other pilots were caught fairly quickly, and the government did not have evidence that they flew dozens of trips over the course of two or more years, that they supervised others, or that they stored money or helicopters on behalf of the co-conspirators.  Defendant Rosenau is the only pilot and aircraft owner who went to trial and who committed perjury.

The younger pilots generally entered guilty pleas rather quickly and made either safety valve proffers or substantially assisted the government.  Those who cooperated received relatively short terms; those who did not received longer terms.[4]

David Mendoza is a defendant similarly situated to Defendant Rosenau in scope, duration, and importance within the criminal organization in this case.  Both Defendant Rosenau and Mr. Mendoza were middle-aged men who engaged in drug trafficking as their primary occupation.  Each of them was responsible for a transportation unit -- Defendant Rosenau transported the drugs across the border and Mendoza transported the drugs within the United States.  They both directed others, generally younger recruits, to

---

[4] In this District, inexperienced cooperative pilots Timothy Smith and Shane Menzel received terms of one year and a day.  Dustin Haugen was sentenced to time served in the Eastern District of Washington.  After giving a safety valve proffer only, Jeremy Snow was sentenced to 46 months.

GOVERNMENT'S MEMORANDUM AND
SENTENCING RECOMMENDATION - 15
CR06-157MJP; HENRY ROSENAU

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

do the heavy lifting.  Neither Mendoza nor Defendant Rosenau owned the product or were end-line distributors, but both were involved in moving thousands of pounds of marijuana over multiple years.  Extradited from Spain after a lengthy hearing, Mr. Mendoza entered a negotiated guilty plea prior to litigating pre-trial motions or proceeding to trial.  He had prior drug felony convictions, but, at sentencing, he did not face enhancements for possessing a firearm, maintaining a special skill, obstructing justice or committing perjury; in turn, he was sentenced to 14 years in prison.

## VI.    RECOMMENDATION

After considering the sentencing guidelines and statutory sentencing factors, the government recommends a sentence of 188 months, which is the lowest end of the applicable guideline range.  The government takes no joy recommending this stiff sentence, but the recommendation reflects the predictable legal consequences of Defendant Rosenau's criminal conduct over the course of at least two years in 2004 and 2005 and his continued unlawful conduct by repeatedly lying to this Court and

///

///

///

GOVERNMENT'S MEMORANDUM AND
SENTENCING RECOMMENDATION - 16
CR06-157MJP; HENRY ROSENAU

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

obstructing the American and Canadian justice systems.  The defendant's term of imprisonment should be followed by five years of supervised release.  He is responsible for the $100 assessment.

DATED this 25th day of October, 2012.

Respectfully submitted,

JENNY A. DURKAN
United States Attorney

s/Susan M. Roe
SUSAN M. ROE
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, WA 98101-1271
Telephone:    (206) 553-1077
Fax:          (206) 553-0755
E-mail:       susan.roe@usdoj.gov

s/Marc A. Perez
Marc A. Perez
United States Attorney's Office
1201 Pacific Avenue, Suite 700
Tacoma, Washington 98402
Telephone:    (253) 428-3822
Fax:          (253) 428-3826
Email:        Marc.Perez@usdoj.gov

GOVERNMENT'S MEMORANDUM AND
SENTENCING RECOMMENDATION - 17
CR06-157MJP; HENRY ROSENAU

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1

<u>CERTIFICATE OF SERVICE</u>

2

   I hereby certify that on October 25, 2012, I electronically filed the foregoing with

3

the Clerk of Court using the CM/ECF system which will send notification of such filing

4

to the attorneys of record for the defendant.

5

6           *s/ Kathleen M. McElroy*
            KATHLEEN M. McELROY
7           Paralegal Specialist
            United States Attorney's Office
8           700 Stewart, Suite 5220
            Seattle, Washington 98101-1271
9           Phone:  206-553-7970
            Fax:     206-553-0755
10          E-mail: Katie.McElroy@usdoj.gov

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GOVERNMENT'S MEMORANDUM AND
SENTENCING RECOMMENDATION - 18
CR06-157MJP; HENRY ROSENAU

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970