# ATTACHMENT 2

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,      ) | |
| )  | |
| Plaintiff,   ) | CASE NO. CR06-157MJP |
| )  | |
| v.                             ) | Seattle, Washington |
| )  | July 11, 2012 |
| HENRY CARL ROSENAU,            ) | |
| )  | CHANGE OF PLEA |
| Defendant.   ) | |
| )  | |

VERBATIM REPORT OF PROCEEDINGS
BEFORE THE HONORABLE MARSHA J. PECHMAN
UNITED STATES DISTRICT JUDGE

APPEARANCES:

  For the Plaintiff:      SUSAN M. ROE
                          MARC A. PEREZ
                          ROBERT WESTINGHOUSE


  For the Defendant:      CRAIG PLATT
                          ROBERT FLENNAUGH


  Reported by:            NANCY L. BAUER, CCR, RPR
                          Federal Court Reporter
                          700 Stewart Street, Suite 17205
                          Seattle, WA 98101
                          (206) 370-8506
                          nancy_bauer@wawd.uscourts.gov

```
1                          PROCEEDINGS
     July 11, 2012                              9:30 a.m.
2

3         THE CLERK:  United States of America v. Henry

4    Rosenau, Case CR06-157MJP.

5      Counsel, please make your appearances for the record.

6         MS. ROE:  Good morning, Your Honor.  Susan Roe and

7    Marc Perez on behalf of the United States, and Jennifer

8    Hinckley, the case agent, is present at counsel table.

9         MR. PLATT:  Good morning, Your Honor.  Craig Platt

10   for Mr. Rosenau, and Robert Flennaugh is assisting today.

11        THE COURT:  Good morning.  Counsel, I've been

12   informed that the defendant wishes to change his plea this

13   morning; is that correct?

14        MS. ROE:  I've been informed of that.

15        MR. PLATT:  That's correct.

16        THE COURT:  And I have been handed a copy of a plea

17   agreement this morning, but I want to make sure that I have

18   the latest version.

19        MR. PLATT:  Actually, Your Honor, there have been

20   some last-minute modifications made.  I have the final

21   version here, which Mr. Rosenau is about to sign.  I'll hand

22   that forward, if that's acceptable.

23        THE COURT:  All right.

24        MR. PLATT:  May I approach, Your Honor?

25        THE COURT:  All right.  Counsel, I see the changes on
```

1    the plea agreement.  After we go through this process, I'm

2    going to be asking that each of you initial those changes

3    that were made, and I'm going to ask that Mr. Rosenau initial

4    them as well.

5        Shall we begin the process?  Mr. Rosenau, do you want to

6    come up to the podium, please?

7        Mr. Rosenau, I'm going to be placing you under oath, sir,

8    so can you please raise your right hand to be sworn?

9    HENRY C. ROSENAU,            HAVING BEEN FIRST DULY SWORN,
                                  ANSWERED QUESTIONS AS FOLLOWS:
10

11            THE COURT:  Mr. Rosenau, I'm going to be going

12   through a series of questions with you.  The purpose of that

13   is to ensure that you understand what you are doing and what

14   you are giving up by entering this plea with me this morning.

15   So I'm going to be asking you a series of questions to make

16   sure that you understand both the plea and what your rights

17   are.

18       Let's start with you telling me what your full and

19   complete name is.

20            THE DEFENDANT:  Henry Carl Rosenau.

21            THE COURT:  How old are you, Mr. Rosenau?

22            THE DEFENDANT:  Sixty-one.

23            THE COURT:  How far did you go in school?

24            THE DEFENDANT:  Grade 10.

25            THE COURT:  Are you able to read English?

4

1       THE DEFENDANT:  Yes.

2       THE COURT:  And can you tell me whether you have

3  suffered from any mental illness or drug addictions in your

4  past?

5       THE DEFENDANT:  Not -- I have some alcohol, but I

6  wouldn't call it an addiction, I guess.

7       THE COURT:  Have you had anything today, any pills or

8  any other stimulants that would cloud your thinking?

9       THE DEFENDANT:  No.  Well, I just have thyroid pills,

10 and for diabetes.  That's all.

11      THE COURT:  Did you take your prescribed medications

12 today?

13      THE DEFENDANT:  Yes.

14      THE COURT:  Have you received a copy of the

15 indictment against you?

16      THE DEFENDANT:  Yes.

17      THE COURT:  And let's talk a little bit about your

18 relationship with your counsel, both with Mr. Flennaugh and

19 with Mr. Platt.  Are you satisfied with their representation?

20      THE DEFENDANT:  Yes.

21      THE COURT:  Have you had enough time to speak with

22 them about the choices that you're about to make this

23 morning?

24      THE DEFENDANT:  Yeah, I guess so.

25      THE COURT:  Well, "I guess so" is not quite what I'm

1     looking for.

2          THE DEFENDANT:  It seemed kind of rushed, but it was

3     okay.

4          THE COURT:  Let's talk about that.  Are you asking me

5     for more time in which to take a look at the plea agreement?

6          THE DEFENDANT:  No.

7          THE COURT:  Have you had an opportunity to discuss it

8     with your lawyers?

9          THE DEFENDANT:  Yes.

10         THE COURT:  And were you able to read a copy of the

11    agreement yourself?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Did they read it to you, or did you read

14    it to yourself?

15         THE DEFENDANT:  They read it to me.

16         THE COURT:  And do you trust that what they were

17    reading was correct?  Were you able to read along with them

18    and check to make sure what they said was correct?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Did you understand the terms of the plea

21    agreement?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Was there any vocabulary in the plea

24    agreement that you did not understand?

25         THE DEFENDANT:  Well, I don't know.  I don't think

1   so.   I mean...

2        THE COURT:  Were you able to stop and ask what

3   certain words meant if you had a question?

4        THE DEFENDANT:  No, no, I understood the gist of it.

5        THE COURT:  When you say you "understood the gist of

6   it," I want to make sure that you understood not just the

7   gist, but that you understand what you're doing, because once

8   I accept your plea, there's no changing your mind.  Do you

9   understand that?

10       THE DEFENDANT:  Yes.

11       THE COURT:  Do you understand that according to this

12  plea agreement I'm not bound by your agreement?

13       THE DEFENDANT:  Yes.

14       THE COURT:  Let's take a look at the agreement

15  itself, shall we?  Can you explain to me -- do you have a

16  copy of it in front of you?

17       THE DEFENDANT:  Yes.

18       THE COURT:  Can you explain to me what the charges

19  are that you are about to change your plea about?

20       THE DEFENDANT:  Changing it to a lesser quantity of

21  at least 100 kilograms of marijuana.

22       THE COURT:  All right.

23       THE DEFENDANT:  And it says I agree to waive the

24  right and enter this plea of guilty on Count 1 to conspiracy

25  to import marijuana.

1    THE COURT:  Yes.  You understand that you are

2    pleading guilty to a crime that's entitled conspiracy to

3    transport marijuana?

4           THE DEFENDANT:  Yes.

5           THE COURT:  Do you understand they're going to lower

6    the amount?

7           THE DEFENDANT:  Yes.

8           THE COURT:  Can you tell me what you think that

9    significance is?

10          THE DEFENDANT:  Ten-year mandatory to five-year --

11   or, yeah.

12          THE COURT:  So one of the significant things that you

13   are gaining by the plea agreement is getting out from under

14   the ten-year mandatory; is that correct?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Let's talk about the elements of the

17   offense.  Do you understand the government has to prove that

18   there was an agreement between two or more people to commit

19   the acts that constitute the crime of conspiracy to import

20   marijuana?

21          THE DEFENDANT:  Yes.

22          THE COURT: And that you became a member of that

23   conspiracy?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Do you understand they have to prove that

1   you, Harry Rosenau, were part of this conspiracy?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Okay.  And, Ms. Roe, can you recite for

4   us, so that everybody understands, what you understand to be

5   the penalties that have been outlined here?

6          MS. ROE:  The penalties for this charge is not less

7   than five years of imprisonment, up to 40 years of

8   imprisonment, a fine of up to $5 million possible, a period

9   of supervised release following release from prison of at

10  least four years, and a special assessment of $100.

11         THE COURT:  Okay.  Do you understand that those are

12  the maximum penalties that can be imposed?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Do you have any questions about any of

15  those?

16         THE DEFENDANT:  No.

17         THE COURT:  Now, you're giving up some very important

18  rights that I want to review with you.  Let's take a look at

19  page 3.

20     Now, Mr. Rosenau, you've already been through one trial,

21  so you understand that at trials we call in jurors, that your

22  lawyers have an opportunity to question witnesses, that they

23  have the ability to subpoena witnesses.  Is there anything

24  about your first trial that you did not understand or that

25  you do not understand that you would be giving up?

```
 1              THE DEFENDANT:  No.

 2              THE COURT:  Okay.  I'm going to go through each one

 3    of those things one at a time, because I want you to

 4    understand that each of those things is something that you

 5    have a right to go forward and do.

 6         I've got 49 people waiting downstairs to come up and be

 7    seated as jurors, so you can have a trial if you want a

 8    trial.  We're ready to go.  Do you understand that you have a

 9    right not to plead guilty and to continue to maintain your

10    innocence?

11              THE DEFENDANT:  Yes.

12              THE COURT:  Do you also understand that you have a

13    right to a speedy and a public trial?

14              THE DEFENDANT:  Yes.

15              THE COURT:  Do you understand that you have a right

16    to have effective assistance of counsel; in other words, a

17    good lawyer by your side throughout all these proceedings?

18              THE DEFENDANT:  Yes.

19              THE COURT:  Do you understand that you have the right

20    to be presumed innocent until guilt has been established

21    beyond a reasonable doubt?

22              THE DEFENDANT:  Yes.

23              THE COURT:  Do you understand that you have a right

24    to confront and cross-examine witnesses?

25              THE DEFENDANT:  Yes.
```

1      THE COURT:  Do you understand you've got a right to

2 compel witnesses to come testify on your behalf?

3      THE DEFENDANT:  Yes.

4      THE COURT:  And do you also understand that you have

5 a right to remain silent and you do not have to testify?

6      THE DEFENDANT:  Yes.

7      THE COURT:  And do you understand that you also have

8 a right to appeal any finding of guilt?

9      THE DEFENDANT:  Yes.

10      THE COURT:  Now, you are going to be giving up each

11 and every one of those rights if I accept your plea of

12 guilty.  Do you understand?

13      THE DEFENDANT:  Yes.

14      THE COURT:  Has Mr. Platt talked with you about the

15 sentencing guidelines?

16      THE DEFENDANT:  A certain amount, yes.

17      THE COURT:  Do you understand that the sentencing

18 guidelines are what the court uses as a guide to begin the

19 evaluation process of what sentence should be imposed?

20      THE DEFENDANT:  More or less, I guess.

21      THE COURT:  Do you understand that the higher the

22 weight of the drug, the higher the value?

23      THE DEFENDANT:  Yes.

24      THE COURT:  And do you also understand that the court

25 will take into account your past criminal history, if there

1    is any?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Ms. Roe, do you have an estimate as to

4    what the criminal history is here?

5              MS. ROE:  We have no criminal history, none regarding

6    Mr. Rosenau.

7              THE COURT:  So Mr. Rosenau would be a category one.

8              MS. ROE:  We've operated on that assumption.

9              THE COURT:  Okay.  Now, as part of the sentencing

10   guidelines, do you understand that Mr. Platt will be able to

11   argue that the guidelines should be reduced based upon

12   certain provisions in the guidelines, and that the government

13   is probably going to argue that the guidelines should be

14   increased.  Do you understand that?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Do you understand that it's my job to

17   decide what the correct guideline calculation is?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Okay.  Has anybody promised you or

20   guaranteed you what the sentence will be?

21             THE DEFENDANT:  No.

22             THE COURT:  Is there anyone who has made any threats

23   to you in order to induce you to plead guilty?

24             THE DEFENDANT:  No.

25             THE COURT:  Is there anyone exerting any pressure

1    upon you?

2            THE DEFENDANT:  No.

3            THE COURT:  Now, Mr. Rosenau, I know that you have

4    counsel in Canada, and I know that you have others who have

5    acted as legal advocates for you.  Is anyone in Canada

6    putting pressure upon you to change your plea?

7            THE DEFENDANT:  No.

8            THE COURT:  The next section on page 5 that I want to

9    talk to you about is the statement of facts.  There are

10   several paragraphs there.  Have you had an opportunity to

11   read through them?

12           THE DEFENDANT:  Yes.

13           THE COURT:  And do you agree that all of the things

14   stated there are true?

15           THE DEFENDANT:  Yes.

16           THE COURT:  Now, in your own words, I know your

17   lawyers or the government wrote out those paragraphs, but I

18   want to hear in your own words what you did that you think

19   constitutes this crime.

20           THE DEFENDANT:  I flew loads of marijuana from Canada

21   into the U.S.

22           THE COURT:  And when did you do that?

23           THE DEFENDANT:  In '05.

24           THE COURT:  And did you use your own helicopters?

25           THE DEFENDANT:  Yes.

```
 1                THE COURT:  And did you fly alone?

 2                THE DEFENDANT:  Yes.

 3                THE COURT:  Who did you make this plan with?

 4                THE DEFENDANT:  I never even thought about it that

 5      way.

 6                THE COURT:  Obviously you picked up a load.  Somebody

 7      had to agree to give it to you, somebody had to put it on the

 8      helicopter, and somebody had to unload it, so I'm asking you

 9      in your plea agreement, you're here to name several people

10      that you participated with.  Oh, I'm sorry.  Some of them are

11      blanked out.

12          Can you tell me who it is that you conspired with to do

13      this with, who you made your plan with?

14                MR. PLATT:  For the record, we'll object to that

15      particular question.  There's a possibility of Mr. Rosenau

16      pursuing cooperation.  We've not reached an agreement on that

17      yet.

18          The paragraph at the end of the statement of facts,

19      paragraph 7 there talks about individuals that he had flown

20      across the border.

21                THE COURT:  Okay.  Well, then that's who -- some of

22      them are crossed out.  That's what I'm trying to get some

23      clarity on as to who it is that he is naming as participants

24      and who he is not.

25                THE DEFENDANT:  Well, Dustin Haugen, I flew him
```

1   across the border, but I never had anything to do with him as

2   far as any marijuana.

3          THE COURT: What about Braden Miraback?

4          THE DEFENDANT:  I flew him across the border.  He was

5   a catcher, one of them.  I don't know which one is which,

6   Braden or the other one.  I don't know which one is which.

7          THE COURT:  What do you mean by the word "catcher"?

8          THE DEFENDANT:  Somebody that catches the loads.

9          THE COURT:  Catches the loads of marijuana?

10         THE DEFENDANT:  Yes.

11         THE COURT:  Okay.  What about Zachary Miraback?

12         THE DEFENDANT:  I don't know whether it was Zachary

13  or Braden, because I don't know either of them.  I never met

14  them, but I know they were there.

15         THE COURT:  What about Kip Whelpley?

16         THE DEFENDANT:  Yeah, I know Kip Whelpley.

17         THE COURT:  What did you do with Mr. Whelpley?

18         THE DEFENDANT:  He was a catcher.

19         THE COURT:  Now, the marijuana loads, are you in

20  agreement that it was less than 100 kilos or 100 pounds,

21  counsel?

22         MS. ROE:  Kilograms.

23         THE COURT:  Are you in agreement it was more than 100

24  kilograms?

25         THE DEFENDANT:  Yes.

1       THE COURT:  Is there anything about those statements

2   that you wish to retract or that you are telling me are not

3   true at this time?

4       THE DEFENDANT:  I think they're okay.

5       THE COURT:  Sorry?  Say that again, please.

6       THE DEFENDANT:  I think they're okay.

7       THE COURT:  In other words, you've had an opportunity

8   to read it, and you're in agreement that those are the facts?

9       THE DEFENDANT:  Yes.

10       THE COURT:  Okay.  Can you tell me where it is you

11   flew this helicopter, where you started and where you landed?

12       THE DEFENDANT:  I flew it from Hope, B.C., and then

13   dropped it off somewhere in the Okanogan -- in the --

14   remember the maps we looked at?  One of those points there.

15       THE COURT:  So what I'm looking for is, you flew it

16   across the Canadian-U.S. border and landed in the Okanogan

17   area and dropped it off?

18       THE DEFENDANT:  Yes.

19       THE COURT:  Now, are there any offenses that you're

20   aware of that the government is not going to pursue?

21       THE DEFENDANT:  No, I guess.

22       THE COURT:  Ms. Roe, is the government agreeing not

23   to pursue any causes of action?

24       MS. ROE:  There's no facts other than what -- Your

25   Honor, we wouldn't be filing any other charges.  We wouldn't

1    be pursuing anything else.  This would be the end.

2             THE COURT:  Okay.  Now, I saw that there is a unique

3    agreement, Mr. Rosenau, and one of those things is that you

4    agree that you're going to dismiss and cooperate in

5    dismissing any lawsuits that you've brought in Canada --

6             THE DEFENDANT:  Yes.

7             THE COURT:  -- stemming from this case and

8    extradition.

9             THE DEFENDANT:  Yes.

10            THE COURT:  And you're agreeing that the suits are

11   frivolous?

12            THE DEFENDANT:  What does "frivolous" mean?

13            THE COURT:  Frivolous means they're without validity.

14            THE DEFENDANT:  I guess if I take the suit off, it

15   will be frivolous, I guess, if I have it removed.

16            THE COURT:  And that you're going to take steps to do

17   that?

18            THE DEFENDANT:  Yes.  I can do that from the phone,

19   from here.  I have people assigned for me.

20            THE COURT:  Well, I've listened to you talk to some

21   of the people that you have signing authority for.  The only

22   thing I'm concerned about is whether or not you can control

23   them.

24            THE DEFENDANT:  My wife has to.  The woman who was

25   here with my daughter, and she's perfectly normal, so to

1    speak.

2         THE COURT:  As contrasted to the other person who's

3    been representing you?

4         THE DEFENDANT:  Yes.

5         THE COURT:  One of the things that you are giving up

6    in this particular plea agreement is that you are giving up

7    or waiving any right to appeal.  Do you understand --

8         THE DEFENDANT:  Yes.

9         THE COURT:  -- that you will not have a right to ask

10   the Ninth Circuit Court of Appeals to correct any errors that

11   may have been made?

12        THE DEFENDANT:  Yes.

13        THE COURT:  Except if there are issues that concern

14   the effectiveness of counsel, or if there are errors made at

15   the time of sentencing.  Do you understand that?

16        THE DEFENDANT:  Yes.

17        THE COURT:  Mr. Rosenau, can you tell me in your own

18   words why it is you want to do this?

19        THE DEFENDANT:  I feel that by my telling the truth,

20   that being a Canadian I'll probably get a treaty transfer and

21   I'll probably not have to do a whole bunch of time.

22   Otherwise, I'd probably be going to trial.

23        THE COURT:  Do you understand that nobody can promise

24   you a treaty transfer?

25        THE DEFENDANT:  No, I understand that.  I'm hoping

1    and praying it will happen.

2         THE COURT:  And do you understand that the government

3    is basically, as I understand it, not going to take a

4    position one way or the other on the treaty transfer?

5         THE DEFENDANT:  Yes.

6         THE COURT:  And do you understand that there is no

7    way to know, if you are granted a treaty transfer, how long

8    you would serve in Canada?

9         THE DEFENDANT:  Yes.

10        THE COURT:  And you're still willing to give up your

11   right to a trial based upon that possibility?

12        THE DEFENDANT:  Yeah.  Well, the way I feel, in

13   Canada, once I go back to Canada, being a marijuana charge, I

14   will be working again right away.

15        THE COURT:  Do you understand you're going to be here

16   in the United States until --

17        THE DEFENDANT:  Yes.

18        THE COURT:  -- a treaty transfer is granted?

19        THE DEFENDANT:  Yes.

20        THE COURT:  Okay.  Is there anything that you need to

21   consult with Mr. Platt about before I ask you the next

22   question?

23        THE DEFENDANT:  No.  He just said "yes" for the

24   answers.

25        THE COURT:  Well, I'm the person that has to be

1   satisfied for all what you're doing.  Mr. Platt doesn't have

2   to be satisfied.  I'm the one who has to be satisfied, and

3   "yes" or "no" doesn't always cut it with me.  So I want to

4   make sure you know what you're doing.

5        THE DEFENDANT:  I think I do.

6        THE COURT:  All right.  Now, Mr. Platt, have you had

7   an opportunity to consult with your client and advise him

8   what it is that he is giving up by entering the plea?

9        MR. PLATT:  Yes, Your Honor.

10        THE COURT:  And has Mr. Rosenau exercised his rights

11   to ask you questions and demand explanations?

12        MR. PLATT:  A great deal, Your Honor, yes.

13        THE COURT:  Are you satisfied that he understands the

14   terms and conditions of the plea agreement?

15        MR. PLATT:  Yes, Your Honor.

16        THE COURT:  Are you aware of any impediment to his

17   being able to make this decision today?

18        MR. PLATT:  Not at this time.

19        THE COURT:  Mr. Rosenau, do you want to now accept

20   your plea?

21        THE DEFENDANT:  Yes.

22        THE COURT:  And what is the plea that you would like

23   to enter?

24        THE DEFENDANT:  Guilty, I guess.

25        THE COURT:  Ms. Roe, is there anything else you want

1   me to cover?

2          MS. ROE:  Your Honor, Mr. Westinghouse wishes to

3   address the court.

4          MR. WESTINGHOUSE:  May I address the court?

5          THE COURT:  Yes, go ahead.

6          MR. PLATT:  May we sit down, Your Honor?

7          THE COURT:  Well, I don't know what Mr. Westinghouse

8   is going to say.

9          MR. WESTINGHOUSE:  Your Honor, I want to bring to the

10  court's attention that prior to the court coming onto the

11  bench today, Mr. Rosenau and Mr. Platt asked if the United

12  States would agree to have Mr. Rosenau cooperate.  I

13  responded that we would certainly listen to whatever he had

14  to say, that we would advise the court as to whatever benefit

15  the United States realized from what he had to say, but there

16  were absolutely no guarantees, no commitments on the part of

17  the United States.  It was not a part of the agreement, and

18  he should not rely on any facet of cooperation in deciding

19  whether to plead guilty.

20     Mr. Rosenau stated that he understood, but I wanted to

21  make certain that was on the record, and I would respectfully

22  ask the court to inquire that that is certainly Mr. Rosenau's

23  understanding.  There is absolutely no guarantee, no

24  commitment on the part of the United States with respect to

25  any cooperation.

```
 1              THE COURT:  Except to listen.
 2              MR. WESTINGHOUSE:  Except to listen.  We have no idea
 3    what he will say or whether it will be of any benefit to the
 4    United States and further law enforcement efforts.  We're
 5    willing to listen, and we'll certainly bring to the court's
 6    attention any benefit we realize from whatever Mr. Rosenau
 7    has to say, but there's absolutely no commitment, and I
 8    wanted that to be perfectly clear to Mr. Rosenau.
 9              THE COURT:  All right.  Mr. Rosenau, you just heard
10    Mr. Westinghouse, it sounds to me, six ways from the middle,
11    telling you he's not promising you anything.
12              THE DEFENDANT:  Yes.
13              THE COURT:  But you understood that?
14              THE DEFENDANT:  Yes.
15              THE COURT:  One thing he did promise was to listen.
16              THE DEFENDANT:  Yes.
17              THE COURT:  So with that understanding that you have
18    not been promised anything by the government, do you still
19    wish to have me accept your plea?
20              THE DEFENDANT:  Yes, yes, Your Honor.
21              THE COURT:  Mr. Rosenau, is this your signature on
22    the page that I'm looking at here?
23              THE DEFENDANT:  Yes.
24              THE COURT:  And, Mr. Platt, is that your signature as
25    well?
```

1        THE DEFENDANT:  Yes, Your Honor.

2        THE COURT:  As well as Ms. Roe and Mr. Perez?

3        MS. ROE:  Yes, Your Honor.

4        MR. PEREZ:  Yes, Your Honor.

5        THE COURT:  I will accept the plea, Mr. Rosenau.  It

6    appears to me that it's knowing and voluntary and that you

7    understand what it is you're giving up and what you're

8    bargaining with the United States.

9        Now, Mr. Rosenau, we're going to be writing a report about

10   you.  The probation department is going to write me a report,

11   and they'll be coming to interview you.  Do I have your

12   promise that you'll cooperate with them with that report?

13       THE DEFENDANT:  Yes.

14       THE COURT:  I use that report in order to decide what

15   the appropriate sentence is, and so they will be writing

16   about your background, your education, any mental health

17   issues, what your family is, what your criminal history is,

18   and I'll be using that to decide what the appropriate

19   sentence is, along with the material written by defense

20   counsel, and along with the material written by the

21   government.

22       Is there anything else that you want to bring forward or

23   any other question that I can answer for you?

24       THE DEFENDANT:  I don't know of anything to ask.

25       THE COURT:  You don't have to ask anything.  I'm

1    basically giving you the opportunity.

2            THE DEFENDANT:  No, yeah.

3            THE COURT:  Thank you, sir.

4            THE DEFENDANT:  I wish I was in Canada.

5            THE COURT:  You wish you were in Canada?  Well,

6    sorry.  You're here.  You may have a seat, sir.

7        All right.  The plea agreement, I'm going to pass down.

8    I'm going to ask that Mr. Rosenau initial where it is the

9    changes have been made, and that Ms. Roe, on behalf of the

10   government, and Mr. Platt, if you could also please initial

11   the sections there.

12           MS. ROE:  Thank you, Your Honor.  If I may step

13   forward, I've initialled the changes on pages 5 and 6 on

14   behalf of the government.

15           THE COURT:  The sentencing date will be October the

16   5th at 1:30.  Is that acceptable, counsel?

17           MR. PLATT:  I believe so, Your Honor.

18           MS. ROE:  Yes, Your Honor.  Thank you.

19           THE COURT:  All right.  Counsel, I wanted to speak

20   with you about the timing of this plea and the extraordinary

21   hardship that you've put the court and your jurors through.

22   Can you explain to me why it is that this plea could not have

23   been negotiated in a more timely way?

24           MS. ROE:  Your Honor, we were contacted yesterday

25   afternoon.

1          MR. PLATT:  Your Honor, all I can inform the court is

2     that, without revealing any confidential communications, my

3     client was anticipating that the government would make a

4     last-minute offer or request a continuance or that there

5     would be some other complication with respect to the trial,

6     and the simple answer to your question is, he is being given

7     advice by a large amount of people besides myself, and,

8     frankly, I think he got confused by that.  He was listening

9     to people in detention and had been listening to people in

10    Canada and so on, and I think he allowed that to influence

11    him.  It was certainly not bad faith on his part.  He was

12    confused and worried and did the best he could in the

13    situation.  But as of yesterday, he said, well, I think maybe

14    I just want to do this, so I replied.

15          THE COURT:  Well, I'd like everybody to know what the

16    American people give up when somebody delays like this.

17    There are 49 people downstairs who have come in from all

18    parts of the district.  They've given up their work, they've

19    given up their play, they've inconvenienced their families,

20    and it costs about 5,000 bucks for the government to bring

21    them in for a single day.  So all of those people have come

22    for naught today.  If this were a civil case, I would be

23    assessing costs to both parties for failing to negotiate in a

24    timely manner.

25          Now, I can't tell you also the cost for the attorneys to

1  get ready, for Mr. Platt and Mr. Flennaugh to get ready to do

2  this, Mr. Rosenau, but the cost is significant.  I drove 430

3  miles in the past 24 hours in order to be here to be able to

4  do that.  Today there are 125 probation officers that this

5  district is hosting who are in town that I had to ask to be

6  inconvenienced in order to be here.  All of those things are

7  very significant.  So I'm asking everybody in this room, that

8  when you are working in the system, that all the parts are

9  dependent upon one another.  It's incumbent upon everybody

10 not to waste the money of the public and not to waste the

11 time of the public.  Ms. Miller came back from a conference

12 to be here with us, my law clerks were here until nine

13 o'clock last night working on the materials being filed, and

14 all of that costs the public.  So, Mr. Rosenau, I'm sorry

15 that you were listening to others, but you caused a

16 tremendous hardship for everybody here.

17         THE DEFENDANT:  I'm very sorry, Your Honor.

18         THE COURT:  Okay.  All right.  Anything else we need

19 to take care of?

20         MS. ROE:  Not from the government, Your Honor.

21         MR. PLATT:  No, Your Honor.

22         THE COURT:  Okay.  We'll be at recess.

23

24                (THE PROCEEDINGS CONCLUDED.)

25

# C E R T I F I C A T E

I, Nancy L. Bauer, CCR, RPR, Court Reporter for the United States District Court in the Western District of Washington at Seattle, do hereby certify that I was present in court during the foregoing matter and reported said proceedings stenographically.

I further certify that thereafter, I have caused said stenographic notes to be transcribed under my direction and that the foregoing pages are a true and accurate transcription to the best of my ability.

Dated this 10th day of October 2012.

/S/  Nancy L. Bauer

Nancy L. Bauer, CCR, RPR
Official Court Reporter