Chief Judge Marsha J. Pechman

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>HENRY C. ROSENAU<br><br>Defendant. | NO. CR06-157 MJP<br><br>SENTENCING MEMORANDUM<br>OF HENRY C. ROSENAU<br><br>SENTENCING DATE:<br>November 7, 2012 |

Who is Henry Rosenau, what did he do wrong and how on earth did he get to where he is today, scared to death, waiting for this Court to decide his fate and worried that he will one day die in prison before ever seeing the light of day again as a free man?

The answer to the first question is simple, like Henry.  He has always been a very simple country man, growing up in the backwoods of remote British Columbia, working hard, providing for his family and helping others in his community whenever the need arose.  Until he got involved in this mess he never committed a crime in his life.  For the first fifty plus years of life he could best be described as honest as the day is long.

SENTENCING MEMORANDUM: ROSENAU - 1
Case No. CR06-157 MJP

**PLATT & BUESCHER**
Attorneys at Law
P.O. Box 727
Coupeville, WA 98239-0727
Phone: (360) 678-6777
Fax: (360)678-0323

The second answer is also simple.  Henry Rosenau got involved with marijuana smugglers in Canada, and helped them by flying loads of marijuana over the border into the United States.

The third answer is anything but simple.   It involves a cast of characters ranging from the smugglers who brought him into their world of crime to the Canadian lawyers and activists who led him astray with their meddling and bad advice.

**A.  The Facts**

**1.  Who is Henry Rosenau?**

Henry Rosenau was born into the sort of fantasy land that many people only dream of. If Norman Rockwell had lived in British Columbia instead of New England, he might have sketched Henry and his young friends, as they played in the woods, swam in the many lakes and rivers, lazed around with their fishing poles in their little boats, and hunted in the mountains.

Henry's father schooled him in the ways of the woods, giving him a gun for his fourteenth birthday to protect him from bears when he was roaming the countryside.  The Court has seen photos of this gun.  Henry had it with him when he was searched by the RCMP on September 21, 2005.  In fact, he went out of his way to draw the gun to the police officers' attention so that they would know to be careful when searching the helicopter he had been flying.  He had it to protect himself from bears, a particular fear of his based on his experiences growing up in the wilderness.

Henry attended school at 100 Mile House.  It was a sort of an Abe Lincoln experience, as he had to drive for an hour each way every day to school.  It wasn't as bad as it could have

SENTENCING MEMORANDUM: ROSENAU - 2
Case No. CR06-157 MJP

**PLATT & BUESCHER**
Attorneys at Law
P.O. Box 727
Coupeville, WA 98239-0727
Phone: (360) 678-6777
Fax: (360)678-0323

been; his mother drove the school bus so that she could be with her son.  Still, Henry's heart was never really in his education.  Like so many of his schoolmates he left school after completing 10th Grade, to begin his career as a backwoods trucker and heavy equipment operator.  He had had a fascination with big machines since he was a little boy. He wanted to do the sort of work that is now the subject of Reality TV Shows like Ice Road Truckers.  For him it was a dream come true.

Henry was also very fond of flying.  He was only informally trained to learn how to fly, primarily by his father, and was never qualified as a commercial pilot.  In the wilds of British Columbia it was just another way to get around and thereby avoid spending hours on the sometimes treacherous roads.  Flying was a way of life for Henry and his dad and he loved it.  He never lost his wonder at the beautiful country where he grew up and he particularly enjoyed seeing it from the air.  He was a good pilot.  Unfortunately.

Henry Rosenau's first job out of high school was working for the mines, driving the giant trucks used to carry materials.  When he was eighteen he married his childhood sweetheart, Judy.  By the time he was twenty four he had saved up enough money with all of his hard work to buy his own truck to help him with his heavy equipment jobs.  Judy gave birth to the couple's only child, Jaclyn, when they were in their early thirties.  Both parents were committed to their daughter and by all accounts Henry was an excellent father and husband, working hard and providing for his family while never losing his ability to enjoy life in the woods.

By now Henry was making good money working on roads and projects in the mountains, using the heavy equipment he had been acquiring over the years.  Eventually, he

SENTENCING MEMORANDUM: ROSENAU - 3
Case No. CR06-157 MJP

PLATT & BUESCHER
Attorneys at Law
P.O. Box 727
Coupeville, WA 98239-0727
Phone: (360) 678-6777
Fax: (360)678-0323

bought a log yard and ran it for the next decade.  It wasn't always easy. When the company he was working with was forced into bankruptcy, he sold his equipment in order to pay his employees and outstanding bills out of his own pocket even though he was not made whole by the bankrupt company.  The letters submitted with this Memorandum show that this was typical behavior for him.  [Exhibit A]  It is part of why he was such a valued member of his community, liked and respected by everyone who came into contact with him.

Henry Rosenau then decided to head to the far North of British Columbia where he tried his hand at another exotic rustic pursuit: gold mining.  When that did not pan out, he returned home and spent a couple of years clearing land and working on construction projects. Once again, he saved his money and was able to buy a mini storage facility in Okanagan.  That did not suit him so he sold it and went back to clearing land and construction projects, once again operating heavy equipment.

Throughout all of these jobs and business projects Henry Rosenau was a dedicated family man, making sure to spend time with his grandchildren and going to great lengths to attend birthdays and holiday celebrations.  Unfortunately, the long absences caused by his work led to Judy and Henry Rosenau growing apart, and eventually they separated.

When Henry Rosenau was in his mid fifties, after a full, hard working, law-abiding life he was approached by Kip Whelpley and introduced to the criminal activity that led him to be where he is today.  It is important to note that, following his contact with the RCMP on September 21, 2005, Henry Rosenau immediately stopped all involvement with criminals and criminal activity, and went back to working with heavy equipment and once again living a hard working, crime free life.  This has included working two jobs at once, helping support his

SENTENCING MEMORANDUM: ROSENAU - 4
Case No. CR06-157 MJP

**PLATT & BUESCHER**
Attorneys at Law
P.O. Box 727
Coupeville, WA 98239-0727
Phone: (360) 678-6777
Fax: (360)678-0323

wife, daughter and also the, Veronica Schwarz, the woman with whom he became involved after he and Judy separated.

During the pendency of this case Henry and Judy Rosenau have reconciled and if he is ever released from prison his plan is to return to Judy Rosenau, with whom he always remained close.  However, he has continued to provide for Ms. Schwarz all along, and she continues to live in his residence.  Jaclyn and Judy Rosenau still live in the farm that Henry deeded to them shortly after the separation.    This is where Henry Rosenau will reside if he is eventually released.

Shortly after Henry Rosenau was taken into custody last Fall his mother died of a massive heart attack.  This is one of his greatest regrets and has caused him great emotional distress.  His mother's husband is sick with cancer and heart disease.

To this day Henry Rosenau has the love and support of his family and friends, co-workers and community.  If he is released he will have employment and support waiting for him.  He will not be at risk of re offending, as demonstrated by his conduct and completely crime free behavior following his contact with the RCMP in 2005.

## 2.  What Did Henry Rosenau Do?

Henry Rosenau smuggled marijuana out of Canada into the United States.   He admits this and accepts full responsibility for his crime.   [See Exhibit B]

Henry Rosenau entered a guilty plea in this case on July 11, 2012.  His plea was to Count 1 as contained in the Superseding Indictment, that is, to Conspiracy to Import Marijuana, but to a lesser quantity of at least 100 kg of marijuana, in violation of Title 21, United States Code, Sections 952, 960(a)(l) and (b)(2) and 963.

SENTENCING MEMORANDUM: ROSENAU - 5
Case No. CR06-157 MJP

**PLATT & BUESCHER**
Attorneys at Law
P.O. Box 727
Coupeville, WA 98239-0727
Phone: (360) 678-6777
Fax: (360)678-0323

Mr. Rosenau admits that he imported marijuana.   It was his decision to do that and he has no one to blame but himself.  His plea agreement speaks for itself. He was originally contacted by Kip Whelpley, who was a sort of administrative assistant for the main smugglers, who had tasked Whelpley to find a pilot who could help them.  Henry was offered a chance to make some money smuggling.  For the first time in his life Henry Rosenau made the horrendous choice to break the law and participate in the marijuana smuggling.  Which is, *first and foremost*, the reason he is where he is today.  It is all his fault to be sure.  He knows this.

But that is not the entire story.

### 3.  How did Henry Rosenau Get to this Point?

This is not the usual tale of a drug interdiction and prosecution.  There is more to it than that.

When the Government originally indicted Mr. Rosenau and sought his extradition, he did what anyone in his situation should do.  He hired a lawyer.  Unfortunately, being a simple man with a tenth grade education, he was at a total loss on how to do this.   This is where he was went astray for the second time.

Patrick Roberts, aka Paddy Roberts, aka Ty Roberts, aka Padraig Mac Roibeaird, is a self styled maverick who is committed to intervening in the prosecution of drug cases originating in Canada by U.S. authorities.  He leads a splinter political party that advocates the legalization of marijuana and the creation of a separate government for British Columbia, essentially advocating for secession.  He first became involved in this matter when he discovered that Mr. Rosenau's case might serve as a platform for venting his ideology.  Why and how did that happen?

SENTENCING MEMORANDUM: ROSENAU - 6
Case No. CR06-157 MJP

**PLATT & BUESCHER**
Attorneys at Law
P.O. Box 727
Coupeville, WA 98239-0727
Phone: (360) 678-6777
Fax: (360)678-0323

When the Government sought to extradite Mr. Rosenau they initiated extradition proceedings in Canada.  In support of the extradition they filed Record of the Case pleadings for consideration by the Canadian courts.   One of these was labeled Supplemental Record of the Case, dated October 6, 2008 and signed by AUSA Roe, the lead prosecutor on this case. [See Exhibit G] This document detailed information allegedly provided to the Government by Kip Whelpley.  Unfortunately, this document contains false information.  Specifically, in this record of the case, Ms. Roe states that in 2004 Mr. Rosenau, working with Whelpley, flew a helicopter identified as C-FRKM (id, highlighted portion of text).  This was not true.  During 2004, as established by the evidence at trial, this helicopter was owned and operated by a mining exploration company, Airborne Energy Solutions [See Exhibit D].  Therefore it is factually impossible that it was used by Rosenau for flying marijuana during 2004, as stated in the Supplemental Record of the Case submitted to the Canadian courts.

The reason this is significant is that it made a huge impact on the people in Canada who were following these prosecutions, in particular Roberts.  Roberts contacted Henry Rosenau and offered to assist him with his case.  In retrospect, it is clear that Roberts was pursuing his own agenda against the U.S. authorities; he felt they were over reaching their legal role in Canada and with this document he had the concrete support he needed to advance his agenda.  Mr. Rosenau, with his tenth Grade education, was not exactly sophisticated when it came to international legal proceedings.  Roberts offered to assist Mr. Rosenau and his offer was accepted.  Ultimately Roberts put Mr. Rosenau in touch with a Mr. Jevning, who assumed Mr. Rosenau's representation.

SENTENCING MEMORANDUM: ROSENAU - 7
Case No. CR06-157 MJP

**PLATT & BUESCHER**
Attorneys at Law
P.O. Box 727
Coupeville, WA 98239-0727
Phone: (360) 678-6777
Fax: (360)678-0323

This was the beginning of the end of this case proceeding in a way that even approached the normal path of typical prosecutions and led directly, albeit years later, to Mr. Rosenau's current predicament.  This is not to lay blame on anyone for the original mistakes made by Mr. Rosenau.  He fully accepts that his participation in the smuggling was his fault.  However, what this does explain is how this case wound up heading towards the point of no return.

Roberts told Mr. Rosenau that he was certain he would never be extradited because there was this significant error in the extradition pleadings.   Jevning promised the same.  Both men assured Mr. Rosenau that if he only did what they told him to do he would never be sent to the United States for prosecution.  Not having a clue about how these things work, Mr. Rosenau believed them.

They didn't stop with their assurances about the extradition.  They went further, telling Mr. Rosenau when it appeared that he was in fact going to be extradited that the case would be dismissed in the United States under a Rule of Specialty / Abuse of Process analysis.  Obviously, they were wrong.  Nevertheless, not being a legal expert himself, Mr. Rosenau followed their advice.  That was his next big mistake.

According to Mr. Rosenau, Roberts told Mr. Rosenau that when he came to the United States he should never agree to anything he was told by his appointed attorney, should never sign anything, never admit to anyone (including his American lawyer) that he was involved in the smuggling, and above all, never plead guilty.  Roberts assured Mr. Rosenau that if he followed this advice everything would eventually be dismissed and he would be back home in no time.

PLATT & BUESCHER
Attorneys at Law
P.O. Box 727
Coupeville, WA 98239-0727
Phone: (360) 678-6777
Fax: (360)678-0323

Roberts' position is clear from the various documents he prepared and submitted to Canadian authorities.  [See Exhibit E]  In addition, he repeatedly urged Mr. Rosenau's CJA Attorney to personally attack Susan Roe and attempt to have her disbarred.  Counsel, in consultation with Mr. Rosenau, refused to take this path even when Roberts ranted that counsel's refusal to personally attack Ms. Roe constituted incompetence.  He eventually proceeded essentially on his own in this regard.

It is true that Mr. Rosenau believed that if a lawsuit was filed against Roe following his trial that it would improve his legal position.   That is because this is what he had been told by Roberts, someone who obviously knew more about legal procdures than he.  However, he did not want any lawsuit to be filed until after the trial.  Roberts went forward with the suit on his own iniative.   Roberts' approach was described by Mr. Rosenau's appellate extradition attorney, Gary Botting, when he testified at Mr. Rosenau's Detention Hearing one year ago.  [See Exhibit F]  It is clear from the testimony that Roberts habitually exceeds the scope of his authority in these matters.

Why does any of this matter?  This part of the analysis is simple.

It is universally recognized that the federal criminal justice system is a "system of pleas".  [See Lafler v. Cooper, 132 S. Ct. 1376, 1388, 182 L. Ed. 2d 398 (2012)]  Defendants have various tools available to them to reduce their punishments, including safety valves, substantial assistance, early pleas and so on.  Everything is negotiated.  Rarely do cases proceed to trial.  However, in this case, the minute Mr. Roberts got his hands on the inaccurate Supplemental Record of the Case for Prosecution containing the mistaken reference to C-FRKM being used in smuggling in 2004 when it was not, the writing was on the wall. The erroneous extradition

**PLATT & BUESCHER**
Attorneys at Law
P.O. Box 727
Coupeville, WA 98239-0727
Phone: (360) 678-6777
Fax: (360)678-0323

pleading became the platform Roberts needed to persuade Mr. Rosenau that he must ignore the common wisdom, refuse to participate in the "system of pleas" and under no circumstances cooperate with the American authorities, including his attorney.  To his great detriment Mr. Rosenau followed this advice, thus removing himself and his case from the mainstream that would have offered him opportunities to craft a more acceptable resolution.

In addition to this, when he was offered a possible early resolution by Ms. Roe, prior to his extradition, he was never advised by his then attorney, Mr. Jevning, to seriously consider the plea offer.  Furthermore, Mr. Jevning, as a Canadian attorney was not really in a position to offer competent advice on a foreign plea offer.  Despite having retained an attorney to provide legal advice Mr. Rosenau essentially received none with respect to the advisability of accepting an early plea offer.

Mr. Rosenau continued to follow the advice he had been given prior to leaving Canada up until the day before he was scheduled to begin his re trial, on July 10, 2012.  Faced with the prospect of a second trial and conviction Mr. Rosenau finally realized in a sort of "better late than never" moment of clarity that he needed to "play ball" and admit his guilt.  He did so in court the next day.  Unfortunately he had not availed himself of the various ways to mitigate the sentence recommendation earlier since he was trying to follow the original advice he had been given, and found himself in an impossible position.  Which brings him to where he is today.

## B.  The Law

### 1.  18 U.S.C. Section 3553(a)

18 U.S.C. Section 3553(a) provides that a sentencing court shall "impose a sentence

PLATT & BUESCHER
Attorneys at Law
P.O. Box 727
Coupeville, WA 98239-0727
Phone: (360) 678-6777
Fax: (360)678-0323

sufficient, but not greater than necessary to comply" with certain purposes, including: (1) the

nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3)

the need for the sentence to reflect the seriousness of the offense, to promote respect for the

law, and to provide just punishment for the offense; (4) the need for the sentence to afford

adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from

further crimes of the defendant; (6) the need to provide the defendant with educational and

vocational training, medical care, or other correctional treatment in the most effective manner;

(7) the types of sentences available; (8) the need to provide restitution to victims; and (9) the

need to avoid unwarranted sentence disparity among defendants involved in similar conduct

who have similar records.

18 U.S.C.§ 3553(a).

   After the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125

S.Ct. 738 (2005), the guidelines are entitled to no particular deference.  They are but one

factor to be balanced among many.  The Guidelines are not only not mandatory on sentencing

courts; they are also not to be presumed reasonable.  Nelson v. United States, 555 U.S. 350,

352, 129 S. Ct. 890, 892, 172 L. Ed. 2d 719 (2009)

   The Court should consider the entire circumstances of Mr. Rosenau and of his crime in

order to arrive at a fair sentence.

   Fairness.  If one word can be said to summarize the overriding principle of the entire

Anglo-American legal system it is fairness.  Like justice, it is a two edged sword.  It includes

not only fairness to Defendants, but fairness to victims and to others similarly situated.  Of

course, as admitted by the Government in their Sentencing Memorandum there is no

**PLATT & BUESCHER**
Attorneys at Law
P.O. Box 727
Coupeville, WA 98239-0727
Phone: (360) 678-6777
Fax: (360)678-0323

identifiable victim in this case.

Although fairness and justice are used interchangeably, as in a "just" result being the equivalent of a "fair" result, the fact is that fairness really represents the conscience of the justice system.  Henry Rosenau asks that he be given a sentence that is fair, taking into account all of the relevant factors outlined below, knowing that this analysis works both ways.

**2.  Sentence Disparity**

Several defendants have been sentenced for their participation in the smuggling activity in which Mr. Rosenau also participated.  The related cases described in the Presentence Report prepared by Mr. McNickles in this case illustrate the range of sentences that have been imposed on those individuals who are the most similarly situated to Mr. Rosenau.  Five of these individuals received sentences of approximately one year, or less.  One, Kip Whelpley, received a sentence of 20 months.  The final defendant, David Mendoza, was sentenced to 168 months.  The Government describes Mr. Mendoza as being roughly equivalent to Mr. Rosenau.  This is not the case.

**a.  Mendoza**

In the Sentencing Memorandum submitted to the court by Mr. Mendoza's own attorney there is ample information illustrating why his sentence should be substantially greater than Mr. Rosenau's.  Mr. Rosenau comes before this Court with zero criminal history prior to this offence.  Not so with Mr. Mendoza.

Mendoza's Sentencing Memorandum provides the following criminal history (Case 2:06-cr-00466-TSZ  Document 50,  Filed 10/26/09,  Pages 2-3 of 34 ):

"This case is not the first time that Mr. Mendoza has been involved in possessing

SENTENCING MEMORANDUM: ROSENAU - 12
Case No. CR06-157 MJP

**PLATT & BUESCHER**
Attorneys at Law
P.O. Box 727
Coupeville, WA 98239-0727
Phone: (360) 678-6777
Fax: (360)678-0323

and distributing drugs. In 1989, Mr. Mendoza was sentenced to three years in custody after he was convicted in a Nevada state court for possession of a controlled substance. In that case, he was arrested at the security gates at McCarran Airport and found to be in possession of a brick sized package containing 1,194 grams of cocaine. After completing his sentence, Mr. Mendoza continued to be involved in distributing and importing drugs. In 1993, Mr. Mendoza was involved in a federal conspiracy to export and distribute cocaine and hashish. In that case, Mr. Mendoza was sentenced to 70 months of confinement. He served a portion of this sentence in FCI Sheridan, where he met William Renner, Danny Zylstra, and Philip Griner, who are all co-defendants in this case…… Mr. Mendoza chose to become involved again in drug trafficking. In this case, he was responsible for the importation of multiple loads of marijuana totaling about 1,000 kilograms. Mr. Mendoza employed others to help deliver and receive the marijuana, and to redistribute it to other locations within this District and elsewhere… After several people associated with Mr. Mendoza were arrested in 2006, Mr. Mendoza ceased his importing activity, left the United States, and went to Spain…"

Mr. Rosenau's prior background, with absolutely zero criminal history of any kind, much less prior involvement in major drug crimes, could not be more different.  Moreover, Mr. Rosenau's level of involvement in this case is substantially less than that of Mr. Mendoza, an experienced drug dealer with extensive contacts in the international criminal world.  The Government's Sentencing Memorandum filed in that case, prepared by AUSA Roe, amply demonstrates how much more significant Mr. Mendoza's criminal activities were when compared to Mr. Rosenau's. [See Exhibit H]

To begin with, he was one of the primary organizers and leaders of the marijuana smugglers.  In addition to his high level of sophistication, with his extensive criminal background, he was involved for many years in the smuggling, from 2003 until 2006.  Unlike Mr. Rosenau, even after being detected he continued to smuggle drugs.  Unlike Mr. Rosenau he supervised an extensive network of smugglers.  Unlike Mr. Rosenau he lied to his Pre Sentence writer, actively misrepresenting his financial circumstances.  When sentenced for his

**PLATT & BUESCHER**
Attorneys at Law
P.O. Box 727
Coupeville, WA 98239-0727
Phone: (360) 678-6777
Fax: (360)678-0323

earlier drug crimes he simply refused to participate in or cooperate with his supervision.  His education is far more extensive than tenth Grade; he holds a Bachelor's Degree in, ironically, International Business.  Whereas Mr. Rosenau left high school to drive a truck Mr. Mendoza was President of his Senior Class.  They couldn't be more different.

If Mr. Rosenau were to receive a sentence that exceeded Mr. Mendoza's, given the latter's extensive involvement in illegal drug activity literally spanning two decades, it would be beyond disparate.  It would be unjust and would certainly not promote respect for the law.  In addition, in contrast to Mr. Mendoza with his revolving-door history of criminal activity, there is absolutely no showing that Mr. Rosenau presents a risk of re offence.  Since September of 2005 he has removed himself entirely from all criminal activity, working long hours on multiple strenuous jobs and providing for his family.  Once he was caught he quit.  In sharp contrast to Mr. Mendoza, Henry Rosenau did not go right back into the smuggling business after being detected, did not scoff at his supervision and did not lie to Probation on his presentence interview.  Ms. Roe put it best herself in Mendoza's Sentencing Memorandum: "There are few defendants before the Court who supervised and directed this many subordinate drug traffickers for so long."  [id at 8]  Mr. Rosenau's conduct pales in comparison to Mr. Mendoza's ongoing, sophisticated and extensive crimes, especially in light of his supervisory role and power to control the entire operation.  Compared to Mendoza, Mr. Rosenau was exactly what he in fact was: a simple man who knew how to fly helicopters and acted at the direction of those who were far more powerful and sophisticated than he.

Still, being a pilot meant that Mr. Rosenau was more involved than smugglers like the Mirabacks.  A sentence of five years is more than sufficient to accomplish the goals of

SENTENCING MEMORANDUM: ROSENAU - 14
Case No. CR06-157 MJP

**PLATT & BUESCHER**
Attorneys at Law
P.O. Box 727
Coupeville, WA 98239-0727
Phone: (360) 678-6777
Fax: (360)678-0323

fairness, promoting respect for the law, assuring deterrence and protecting the public from future criminal activity.   Mr. Rosenau's conduct since 2005 clearly demonstrates that he will never come before a court again if he is ever allowed to return to his family and home in Canada.

Mr. Rosenau's involvement with the smuggling was substantially similar to Kip Whelpley's.   Although he was not a pilot, Whelpley recruited participants, was involved in the planning and execution of smuggling activity, and worked directly with the organizers of the smuggling.   Whelpley cooperated and received twenty months.   A sentence for Mr. Rosenau of three times that of Whelpley is more than sufficient to reflect Whelpley's position as a cooperator to accomplish the goals of sentencing.

### 3.  Medical Issues

Henry Rosenau suffers from diabetes and a thyroid disorder.   In addition, he was diagnosed with Anxiety Disorder while his extradition was pending in Canada.   Medical records confirming this have been provided to Probation for consideration.   Although "sixty may be the new thirty", the fact is that Henry Rosenau is not a well man.   He has not adjusted well to incarceration, has suffered from ongoing mood swings as a result of his thyroid condition, and his anxiety disorder has manifested in weight loss and sleeplessness.   He fears that he will die in prison and never be able to be with his family again.   Although these medical conditions are not life threatening at this point, the medical resources available in prison are at best limited.   In Canada he is eligible for free medical treatment, and would have much more comprehensive medical treatment for his disorders.

SENTENCING MEMORANDUM: ROSENAU - 15
Case No. CR06-157 MJP

PLATT & BUESCHER
Attorneys at Law
P.O. Box 727
Coupeville, WA 98239-0727
Phone: (360) 678-6777
Fax: (360)678-0323

To a large extent, these medical problems, combined with his advancing age, make incarceration much more difficult for Mr. Rosenau than it would be for younger men, including Mendoza and Whelpley.  It is part of the disparity that should be taken into account when arriving at a fair sentence.

### 4.  Attendance at Court Appearances

Mr. Rosenau demonstrated remarkable effort to attend to this case during the time he was released to live in Canada.  Ms. Busic indicated that in terms of his adjustment he was a model defendant, notwithstanding the Government's assertions to the contrary.  His actions speak for themselves.  Once released to return to Canada Mr. Rosenau complied with all requests made of him during his adjustment to pre trial supervision.  In addition to regularly driving hundreds of miles in order to meet with Ms. Busic, Mr. Rosenau drove hundreds of miles to attend court on several occasions.  He attended two different court dates voluntarily, arriving on time after travelling great distances.  In addition, he attempted to try to resolve this case prior to trial by agreeing to attend a Settlement Conference.  Unfortunately, the Government did not have his entry paperwork organized so when he arrived at the border on his way to attend the conference he was initially turned away.  Nevertheless he waited all day for the paperwork problems to be addressed and participated in an informal meeting at the end of the day that had been set aside for the conference.  This willingness to return repeatedly to court, even when he knew that there was a substantial likelihood that he would be taken into custody (which he ultimately was) amply demonstrates Mr. Rosenau's ability to comply with the court's directions and make him an excellent candidate for supervision.

SENTENCING MEMORANDUM: ROSENAU - 16
Case No. CR06-157 MJP

**PLATT & BUESCHER**
Attorneys at Law
P.O. Box 727
Coupeville, WA 98239-0727
Phone: (360) 678-6777
Fax: (360)678-0323

### 5. Appropriate Sentence

The minimum term of imprisonment is five years. The maximum term of imprisonment is 40 years. This offense is a Class B felony. 21 U.S.C. §§ 952, 960(a)(1), (b)(2), and 963.

A sentence of five years is sufficient in this case.  Henry Rosenau will be approaching seventy years of age upon completion of this term.  Although there is an agreement that the Government will not oppose a Treaty Transfer request, which would allow Mr. Rosenau to return to Canada, it is not clear that he will succeed with such a request.

All of the defendants in this case, with the exception of Mendoza, have completed their terms of incarceration.  The Government makes much of Mr. Rosenau's attempts to cooperate. Ultimately, his decision not to cooperate was based on his fear of retribution, in particular towards his family.  As described above, early on in this case Mr. Rosenau was advised to fight extradition because of the mistakes in the extradition Record of the Case submitted to the Canadian courts by the U.S. Attorney's Office.  This meant that Mr. Rosenau's case remained unresolved while other cases were settled.  Ultimately, his late arrival in the U.S. justice system, after years of contesting extradition as he had been advised to do, meant that he was unable to provide meaningful information for use by the Government.  It was simply too old. One can only speculate if those in Canada, especially Mr. Roberts, were intending this outcome.  By delaying his extradition case in the Canadian courts the end result was that Mr. Rosenau was precluded from being able to provide useful information and thereby availing himself of the benefits of cooperation.  It was simply too late for him to do so, and the Government has essentially conceded this point when making staleness a reason for their reluctance to participate in any cooperation agreement.  Once again, the early intervention of

**PLATT & BUESCHER**
Attorneys at Law
P.O. Box 727
Coupeville, WA 98239-0727
Phone: (360) 678-6777
Fax: (360)678-0323

those in Canada who were motivated by the irregularities in the extradition pleadings has

resulted in Mr. Rosenau's case being treated substantially differently than the defendants in

related cases.  Accordingly, he now faces a mandatory minimum sentence of five years, three

times that of the next highest sentence, and five times that of the rest of the related defendants.

It is sufficient.  More than five years would simply be unfair, given the totality of the

circumstances.

**6.  Sentencing Guidelines**

Although the guidelines are advisory only, they are a factor in determining the

appropriate sentence.

**a. Base Offense Level**

The Base Offense Level in the Plea Agreement of 30 should be applied here.   This

corresponds to the 945 kilograms described in the Plea Agreement.  Mr. Rosenau was not

involved with marijuana delivered on August 12, 2005 and that 'load' should not be added to

the 945 kilograms admitted to in the plea agreement.

**b. Adjustments**

**Acceptance of Responsibility**

Mr. Rosenau should receive a two level reduction for acceptance of responsibility.

[Exhibit B]

**Obstructing**

This adjustment is appropriate given the fact that Mr. Rosenau testified at trial.  However,

the Government goes too far with their argument that he repeatedly lied to the court.

With respect to statements made to Julie Busic, there was room for confusion as to which

SENTENCING MEMORANDUM: ROSENAU -
18
Case No. CR06-157 MJP

**PLATT & BUESCHER**
Attorneys at Law
P.O. Box 727
Coupeville, WA 98239-0727
Phone: (360) 678-6777
Fax: (360)678-0323

names on the list Mr. Rosenau recognized.  Even the Government states that Mr. Rosenau "worried aloud" about whether he would recognize the names on Ms. Busic's list.  The fact is that Mr. Rosenau, not being one of the organizers or supervisors of the smuggling, was just another worker, albeit one with special skill as a pilot.  He did not know everyone on the list and was concerned that he would not recognize everyone.  That is at best an ambiguous situation.  As described at trial, the individuals involved in the smuggling used aliases and nicknames.  It was not unreasonable for Mr. Rosenau to express concern that he may not know these people based solely on a list of disembodied names.

With respect to the lawsuits filed, again, this was not an attempt by Mr. Rosenau to misrepresent anything to the Court.  When asked during the trial about the lawsuit filed by Roberts, Mr. Rosenau stated quietly, but within earshot of counsel, that the lawsuit against Ms. Roe was supposed to be filed later.  Filing a lawsuit based on the erroneous extradition paperwork does not rise to the level of obstructing.

Finally, within a few days of entering his guilty plea Mr. Rosenau signed a dismissal for this lawsuit against the authorities.  There was no mention of the lawsuit against Mr. Whelpley in the Plea Agreement so that is not relevant.  In addition, even assuming that this suit was brought to prevent Whelpley from testifying against Mr. Rosenau it became moot upon entry of his guilty plea.

**Cooperation**

As described above, a variety of factors, ranging from Mr. Rosenau's fear of retribution to the staleness and limited utility of his information made cooperation impossible in this case. Therefore Mr. Rosenau faces the mandatory minimum sentence of five years, which is

SENTENCING MEMORANDUM: ROSENAU - 19
Case No. CR06-157 MJP

**PLATT & BUESCHER**
Attorneys at Law
P.O. Box 727
Coupeville, WA 98239-0727
Phone: (360) 678-6777
Fax: (360)678-0323

sufficient to punish him, promote respect for the law and deter future criminal activity.

### c. Final Guideline Calculation

Assuming a total base offense level of 34 at most (30 base level, plus two for the firearm, two for being a pilot, two for obstruction, minus two for acceptance of responsibility) the range would be 151-188 months.  However, this results in a sentence that is much more than is necessary to be sufficient punishment for this crime.

### C.  Recommendation

Henry Rosenau respectfully submits that a sentence of five years is sufficient punishment.  He has been punished already.  As noted, shortly after he was taken into custody last October his mother died of a heart attack.  His family is suffering without his financial and emotional support, which causes him enormous stress and concern.  His medical problems are not being resolved with the limited resources available to him.  He was naïve when following the direction and advice of Roberts and others and this caused him to place himself in peril legally.

Had Henry Rosenau not followed the advice of his legal counsel in Canada things would be much different.  He could have entered a plea years ago, been sentenced to something comparable to the one year terms imposed in the related cases and would now be home with his family.  Instead, he is now faced with the prospect of dying in prison, never again to be reunited with his loved ones.

The appropriate sentence in this case is five years.  This result will take into account the nature and circumstances of the offense and history and characteristics of Mr. Rosenau, while accomplishing the goals of fair punishment, deterrence, protection of the public, promoting

SENTENCING MEMORANDUM: ROSENAU - 20
Case No. CR06-157 MJP

**PLATT & BUESCHER**
Attorneys at Law
P.O. Box 727
Coupeville, WA 98239-0727
Phone: (360) 678-6777
Fax: (360)678-0323

respect for the law while reflecting the seriousness of the offense, the need to provide adequate medical care, and, most importantly, the need to avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records.

DATED this 1st day of November, 2012

Respectfully submitted,
PLATT & BUESCHER

*s/Craig Platt*
Craig Platt
Attorney for Defendant
WSBA #12396
P.O. Box 727
Coupeville, Washington 98239-0727
Telephone: (360) 678-6777
Fax: (360) 678-0323
Email: craig@plattbuescher.com

SENTENCING MEMORANDUM: ROSENAU - 21
Case No. CR06-157 MJP

PLATT & BUESCHER
Attorneys at Law
P.O. Box 727
Coupeville, WA 98239-0727
Phone: (360) 678-6777
Fax: (360)678-0323

CERTIFICATE OF SERVICE

I hereby certify that on 11/01/2012, I electronically filed the foregoing with the Clerk of the

Court using the CM/ECF system which will send notification of such filing to the attorney(s)

of record for the defendant(s). I hereby certify that I have served the attorney(s) of record for

the defendant(s) that are non CM/ECF participants via telefax.

s/Lisa Klieman
Lisa Klieman
Paralegal
Platt & Buescher, Attorneys at
Law
P.O. Box 727
Coupeville, Washington 98239-
0727
Telephone: (360) 678-6777
Fax: (360) 678-0323
Email:
reception@plattbuescher.com

SENTENCING MEMORANDUM: ROSENAU -
22
Case No. CR06-157 MJP

**PLATT & BUESCHER**
Attorneys at Law
P.O. Box 727
Coupeville, WA 98239-0727
Phone: (360) 678-6777
Fax: (360)678-0323